1   Robert S. Giolito (State Bar No. 244161)
2   rgiolito@giolitolaw.com
    LAW OFFICE OF ROBERT S. GIOLITO, P.C.
3   11755 Wilshire Boulevard, Suite 2140
4   Los Angeles, California 90025
    (310) 473-3535 (Telephone)
5   (310) 473-3533 (Facsimile)
6
7   Clark Anthony Braunstein (State Bar No. 278023)
    Clarkbraunstein@gmail.com
8   BRAUNSTEIN & BRAUNSTEIN, P.C.
    11755 Wilshire Boulevard, Suite 2140
9   Los Angeles, California 90025
10  (310) 914-4999 (Telephone)
    (310) 914-4996 (Facsimile)
11
12  Attorneys for Defendant
    Lane Lipton
13
                    UNITED STATES DISTRICT COURT
14
          NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION
15

16  JAMES MCGIBNEY, an individual; and       **CASE NO.** 5:14-cv-01059-BLF
17  VIA VIEW, INC., a corporation.           (Assigned to Hon. Beth Labson Freeman)

18                   Plaintiffs,             **DEFENDANT LANE LIPTON'S**
                                             **MEMORANDUM OF POINTS AND**
19                                           **AUTHORITIES IN SUPPORT OF**
              v.                             **HER SPECIAL MOTION TO**
20                                           **STRIKE PURSUANT TO CAL.**
21  THOMAS RETZLAFF, an individual;          **CODE CIV. PROC. § 425.16**
    NEAL RAUHAUSER, an individual;
22  LANE LIPTON, an individual; and DOES     Hearing Date: September 18, 2014
23  1-5, individuals whose true names are not Hearing Time: 9:00am
    known,                                   Dept.:  Courtroom 3
24
                     Defendants.             Amended Complaint Filed:  March 17,
25                                            2014
26                                           Trial Date:  None Set
27
28
_____

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................... ii

MEMORANDUM OF POINTS AND AUTHORITIES ........................... 1

I.      INTRODUCTION ........................................................................ 1

II.     STATEMENT OF FACTS ............................................................ 2

III.    LEGAL STANDARD .................................................................... 7

IV.     ARGUMENTS ............................................................................... 8

   A.    Plaintiffs' Claims Arise Directly from a Protected Activity ........ 8

      1.    Twitter and the Internet Constitute a Public forum .................. 9

      2.    Statements made about James McGibney and Viaview relate to matters of Public Interest. ....................................................... 11

   B.    Plaintiffs Cannot Establish a Probability of Prevailing on Their Claims ........................................................................................ 13

      1.    Plaintiffs will not be able to establish that Lipton made any statements against Plaintiffs. ................................................. 13

      2.    Plaintiffs will not be able to establish defamation claim against Lipton because McGibney is a public figure ........................... 14

      3.    Plaintiffs will not be able to establish tortious interference with contractual relation claims against Lipton ............................... 18

      4.    Plaintiffs will not be able to establish tortious interference with prospective economic advantage against Lipton ..................... 19

      5.    Plaintiffs will not be able to establish intentional infliction of emotional distress claims against Lipton ................................. 20

      6.    Plaintiffs will not be able to establish public disclosure invasion of privacy claims against Lipton ............................... 21

V.      CONCLUSION ........................................................................... 22

# **TABLE OF AUTHORITIES**

**United States Supreme Court Cases**

*Gertz v. Robert Welch, Inc.,*
418 U.S. 323 (1974)......................................................................................... 14

*Hustler Magazine v. Falwell,*
485 U.S. 46 (1988)........................................................................................... 15

*New York Times Co. v. Sullivan,*
376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)........................................... 14

*St. Amant v. Thompson,*
390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968).......................................... 18

**United States Court of Appeals Cases**

*DC Comics v. Pacific Pictures Corp.,*
706 F.3d 1009 (9th Cir. 2013) ............................................................................ 7

*Doe v. Gangland Prods., Inc.,*
730 F.3d 946 (9th Cir. 2013) ............................................................................ 11

*Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc.,*
742 F.3d 414 (9th Cir. 2014) .......................................................................... 8, 9

*Metabolife Int'l, Inc. v. Wornick,*
264 F.3d 832 (9th Cir. 2001) ............................................................................. 1

*Mindys Cosmetics, Inc. v. Dakar,*
611 F.3d 590 (9th Cir. 2010) ............................................................................. 9

*Thomas v. Fry's Elec., Inc.,*
400 F.3d 1206  (9th Cir. 2005) ........................................................................... 1

**California Court Cases**

*Ampex Corp. v. Cargle,*
128 Cal. App. 4th 1569, 27 Cal. Rptr. 3d 863, 869 (Cal. Ct. App. 2005)  14, 17, 18

*Barrett v. Rosenthal*,

      40 Cal. 4th 33, 146 P.3d 510 (Cal. 2006) ............................................................ 10

*City of Los Angeles v. Animal Def. League*,

      135 Cal.App.4th 606, 37 Cal.Rptr.3d 632 (Cal. Ct. App. 2006) ........................... 9

*ComputerXpress, Inc. v. Jackson*,

      93 Cal. App. 4th 993, 113 Cal. Rptr. 2d 625 (Cal. Ct. App. 2001) ....................... 9

*Equilon Enterprises v. Consumer Cause, Inc.*,

      29 Cal. 4th 53 (Cal. 2002)..................................................................................... 8

*Gilbert v. Sykes*,

      147 Cal. App. 4th 13, 53 Cal. Rptr. 3d 752 (Cal. Ct. App. 2007) ....................... 10

*Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.*,

      129 Cal. App. 4th 1228, 29 Cal. Rptr. 3d 521 (Cal. Ct. App. 2005) ................... 10

*Kronemyer v. Internet Movie Data Base, Inc.*,

      150 Cal. App. 4th 941, 59 Cal. Rptr. 3d 48 (Cal. Ct. App. 2007) ....................... 10

*Nally v. Grace Cmty. Church*,

      47 Cal. 3d 278, 763 P.2d 948, 961 (Cal. 1988). ................................................. 20

*Nygard, Inc. v. Uusi–Kerttula*,

      159 Cal.App.4th 1027, 72 Cal.Rptr.3d 210 (Cal. Ct. App. 2008) ....................... 11

*Reader's Digest Assn. v. Superior Court*,

      37 Cal.3d 244 (Cal. 1984)..................................................................... 14, 15, 18

*Reeves v. Hanlon*,

      33 Cal. 4th 1140, 95 P.3d 513, 517 (Cal. 2004) ........................................... 19, 20

*Rivero v. Am. Fed'n of State, Cnty., & Mun. Emps., AFL–CIO*,

      105 Cal.App.4th 913, 130 Cal.Rptr.2d 81 (Cal. Ct. App. 2003) ....................... 11

*Stolz v. KSFM 102 FM*,

      30 Cal. App. 4th 195 (Cal. Ct. App 1984). ......................................................... 15

*Summit Bank v. Rogers*,

      206 Cal. App. 4th 669, 142 Cal. Rptr. 3d 40 (Cal. Ct. App. 2012) ..................... 10

iii

*Taus v. Loftus*,

    40 Cal. 4th 683, 151 P.3d 1185, 1207 (Cal. 2007) ................................................ 21

*Vogel v. Felice*,

    127 Cal. App. 4th 1006, 26 Cal. Rptr. 3d 350 (Cal. Ct. App. 2005) ................... 10

*Weinberg v. Feisel*,

    110 Cal. App. 4th 1122, 2 Cal. Rptr. 3d 385 (Cal. Ct. App. 2003) ....................... 9

*Weinberg v. Feisel*,

    110 Cal.App.4th 1122, 2 Cal.Rptr.3d 385 (Cal. Ct. App. 2003) ......................... 11

*Wilcox v. Superior Court*,

    27 Cal. App. 4th 809 (Cal. Ct. App. 1994) ........................................................... 2

*Wong v. Tai Jing*,

    189 Cal. App. 4th 1354, 117 Cal. Rptr. 3d 747 (Cal. Ct. App. 2010) ................. 10

    **California Statutes**

Cal. Civ. Proc. Code § 425.16(a) ............................................................................... 7

Cal. Civ. Proc. Code § 425.16(b)(1) ........................................................................... 7

Cal. Civ. Proc. Code § 425.16(b)(2) ........................................................................... 8

Cal. Civ. Proc. Code § 425.16(e) ............................................................................... 9

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Defendant Lane Lipton ("Lipton") makes this special motion, pursuant to Cal. Code Civ. Proc. § 425.16, to strike Plaintiffs James McGibney ("McGibney") and Viaview, Inc. ("Viaview") (collectively "Plaintiffs") Amended Complaint ("Complaint") in its entirety.[1]

The special motion to strike lies here because the claims alleged in Plaintiffs' Complaint arise directly from constitutionally-protected speech concerning an ongoing and high-profile public dispute over Plaintiffs' websites and public status. Plaintiff McGibney is a high profile public figure and his website is a matter of public interest, as evidenced by the media coverage and involvement with the bullying crisis.  Moreover, Plaintiffs will be unable to establish the probability of prevailing on their claims.

Plaintiff's lawsuit is therefore precisely the type of strategic lawsuit that California's anti-SLAPP statute was designed to remedy.  *See, e.g., Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 838 (9th Cir. 2001) ("The purpose of the statute is to protect individuals from meritless, harassing lawsuits whose purpose is to chill protected expression."); *Wilcox v. Superior Court*, 27 Cal. App. 4th 809,

---

[1] Since Plaintiffs are alleging only state law claims in the Complaint, a special motions to strike is available in federal court against state law claims.  *See Thomas v. Fry's Elec., Inc.*, 400 F.3d 1206, 1206 (9th Cir. 2005).

1

816 (Cal. Ct. App. 1994) ("[SLAPP suits] are generally meritless suits brought by large private interests to deter common citizens from exercising their political or legal rights or to punish them for doing so.").

The Court should grant Lipton's Special Motion to Strike for the following reasons.  First, Plaintiffs state law claims arise directly from a protected activity.  Second, Plaintiffs will be unable to establish probability of succeeding on the merits.

## II.    STATEMENT OF FACTS

Plaintiffs have asserted claims for (1) Tortious Interference with Contractual Relations; (2) Tortious Interference with Prospective Economic Advantage; (3) Intentional Infliction of Emotional Distress; (4) Defamation; (5) Public Disclosure Invasion Of Privacy against Defendants.

### A.    Parties

McGibney is the CEO and founder of ViaView, Inc. (Complaint ¶14.) ViaView, Inc. operates the websites BullyVille.com and CheaterVille.com (the "Websites"). (Complaint ¶14.)  BullyVille.com allows individuals who believe to have been subject to bullying  to post information about their alleged "bully" online. (Complaint ¶15.)  The website CheaterVille.com allows for individuals to post information relating to an individual who "cheated" on them online for the world to see.  (Complaint ¶15.)   Both McGibney and ViaView are citizens of the State of California. (Complaint ¶¶10,11.)  McGibney has been on a number of

2

television shows over the years promoting the ViaView sites and discussing the topic of bullying and revenge porn. (See Declaration of Clark Anthony Braunstein; See Affidavit of Colleen Connally-Ahern, Ph.D attached hereto as Exhibit A to the Declaration of Clark Anthony Braunstein.)  He gained national attention for his involvement with Hunter Moore and his famous revenge porn website. (See Complaint; Exhibit A.)

Plaintiffs allege that Defendant Retzlaff is a citizen and resident of Texas. (Complaint ¶4.)  Plaintiffs allege that Retzlaff uses the following internet aliases:

a. The Twitter account @MrTexxxan;

b. An account named LongJohnSilver on BullyVille;

c. A Facebook account for user Scott Jewels;

d. A Facebook account for user Molly Santucci;

e. The Twitter account @KellySwift4;

f. A Facebook account for user Kelly Swift;

g. E-mail alias James Smith: james.smith871003@gmail.com;

h. TheDirty.com alias DickHertz,

i. The Twitter account @PedoCaptain;

j. The Twitter account @bright_Anon;

k. The Twitter account @BV_Truther;

l. The Twitter account @BV_Truth;

m. The Twitter account @Klansmann;

n. E-mail alias Dean Allen: deanallen5634@outlook.com;

o. E-mail alias Dean Anderson: deananderson714@yahoo.com; and

p. Wikipedia.org alias deadgoldfish. (Complaint ¶29.

Plaintiffs allege that Defendant Neal Rauhauser is a left-wing blogger/activist/self-admitted hacker engaged in a vicious, petty, prolonged and sustained online attrition battle with a series of right-wing blogger/activists. (Complaint ¶78.)   Plaintiffs allege that Rauhauser is a resident of Washington D.C. (Complaint ¶5.)   Plaintiffs allege that Rauhauser uses the following internet aliases:

a) The Twitter account @nrauhauser

b) The Twitter account @Kookpocalypse

c) The Twitter account @OccupyRebellion

d) The Twitter account @MissAnonNews,

e) The Twitter account @MissAnonNews_

Plaintiffs allege that Lipton is a left-wing blogger involved in the online attrition war with the series of right-wing bloggers. (Complaint ¶94.)  Lipton is a citizen and resident of the State of New York. (Complaint ¶6; Declaration of Lane Lipton, ¶3.)  Lipton has not set foot in the state of California in over 10 years. (Decl. Lipton, ¶4.)  She does not own property or businesses in the State of California.  (Decl. Lipton, ¶4.)  Plaintiffs allege that Lipton uses the following internet aliases:

a) The Twitter account @LaneLipton

b) The Twitter account @qritiq

c) The Twitter account @OccupyRebellion

d) The Twitter account @MissAnonNews,

e) The Twitter account @MissAnonNews_

f) The email address she.purrs@hotmail.com

**B) Plaintiffs Claims Against Lipton**

Plaintiffs allege that "Beginning in or about June 2013 and continuing through the present, Defendants, acting individually and in concert, have engaged in a civil conspiracy to destroy Plaintiffs." (Complaint ¶1.)   Plaintiffs further allege that "In addition to launching countless personal attacks which included threats of violence, Defendants agreed to and carried out a plan to ruin Plaintiffs' relationships with advertisers and sponsors, costing Mr. McGibney and ViaView hundreds of thousands of dollars of ad revenue and other income." (Complaint ¶1.)

Plaintiffs allege that Lipton, along with Rauhauser, through the shared twitter handles @OccupyRebellion, @MissAnonNews, and @MissAnonNews_ engaged in a defamatory twitter campaign against Plaintiffs starting in June 2013 and continuing until April 2014.  (See Complaint ¶¶107-113.)

In addition to the alleged endless barrage of defamation and harassment conducted by Defendants  through their various "sock puppet" accounts on Twitter and elsewhere, Defendants also allegedly conspired to ruin Plaintiffs' relationships

with advertisers using at least two different websites, itsabouttruth.wordpress.com
(now defunct) and bvfiles.wordpress.com (still active) ("BV blog"). (Complaint
¶126.) The bvfiles.wordpress.com site allegedly acknowledges that the
@BV_Truth Twitter account controlled by Retzlaff is also controlled by the
administrators of bvtruth.wordpress.com. (Complaint ¶127.) Both sites are
allegedly dedicated to personally attacking McGibney and his business.
(Complaint ¶128.)

Defendants allege that due to these online attacks, McGibney has been
injured and ViaView has lost advertising revenue in the amount of $19,300 per
month. (Complaint ¶21.)

### C. Lipton did not participate in any attacks against Plaintiffs

Lipton does not tweet from or have access to the Twitter accounts
@OccupyRebellion, @MissAnonNews, @MissAnonNews_, and @BV_Truth.
(Decl. Lipton ¶¶10-12.) Lipton is not an administrator of the BVfiles Blog and has
never posted a blog entry on the BVfiles Blog site. (Decl. Lipton ¶¶18-19.) Lipton
has never used an email address entitled she.purrs@hotmail.com. (Decl. Lipton
¶13.) Lipton never tweeted, retweeted or instructed other to make any of the
statements on Twitter as listed in the Complaint as alleged in ¶¶107-113. (Decl.
Lipton ¶¶10-23.) Lipton has never met or communicated with Thomas Retzlaff.
(Decl. Lipton ¶20.) Lipton has never attempted to log into BVfiles blog site as an
administrator. (Decl. Lipton ¶¶18-19.)

1

2     ## III.   LEGAL STANDARD

3

4           California Code of Civil Procedure § 425.16(a) sets forth a legislative

5     finding "that there has been a disturbing increase in lawsuits brought primarily to

6     chill the valid exercise of constitutional rights of freedom of speech and petition,"

7     and that it is in the public interest to encourage participation in matters of public

8     significance, rather than have such participation "chilled through abuse of the

9     judicial process." Cal. Civ. Proc. Code § 425.16(a). Therefore, "[t]he statute

10    provides for a special motion to strike that is intended to stop such lawsuits early in

11

12    the litigation process." *DC Comics v. Pacific Pictures Corp.*, 706 F.3d 1009, 1013

13    (9th Cir. 2013).  Such a motion to strike is also called an "anti-SLAPP motion."

14    *Id*. Section 425.16(a) further advises that its provisions "shall be construed

15

16    broadly" to further the legislative findings.  Cal. Civ. Proc. Code § 425.16(a).

17

18          Section 425.16(b)(1) provides that:  "A cause of action against a person

19    arising from any act of that person in furtherance of the person's right of petition or

20

21    free speech under the United States or California Constitution in connection with a

22    public issue shall be subject to a special motion to strike, unless the court

23

24    determines that the plaintiff has established that there is a probability that the

25    plaintiff will prevail on the claim." Cal. Civ. Proc. Code § 425.16(b)(1).

26          Section 425.16 therefore requires the court to engage in a two-step process:

27

28

First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. *Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc.,* 742 F.3d 414, 422 (9th Cir. 2014). The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,'" as defined in the statute. *Id.*; *see also Equilon Enterprises v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 67 (Cal. 2002).

Second, if the court finds such a showing has been made, then the burden shifts to the plaintiff to demonstrate a probability of prevailing on the claim. *Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc.,* 742 F.3d at 422 Under section 425.16, subdivision (b)(2), the trial court in making these determinations considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.'" *Id.* (citing Cal. Civ. Proc. Code § 425.16(b)(2)).

As we now show, Plaintiff's lawsuit meets all of the elements for a special motion to strike under § 425.16.

## IV.   ARGUMENTS

### A.   Plaintiffs' Claims Arise Directly from a Protected Activity

Lipton satisfies the first prong of the anti-SLAPP analysis because the claims alleged in the Complaint are based on conduct in furtherance of Lipton's

8

right of free speech in connection with a matter of public interest.  "California courts have interpreted this piece of the defendant's threshold showing rather loosely, and have held that a court must generally presume the validity of the claimed constitutional right in the first step of the anti-SLAPP analysis, and then permit the parties to address the issue in the second step of the analysis, if necessary." *Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d at 422 (citing *City of Los Angeles v. Animal Def. League*, 135 Cal.App.4th 606, 621, 37 Cal.Rptr.3d 632 (Cal. Ct. App. 2006)) (internal quotation marks and citations omitted).)

An "act in furtherance of a person's right of petition or free speech" includes "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest." *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 595-96 (9th Cir. 2010) (citing Cal. Civ. Proc. Code § 425.16(e)).

Plaintiffs' allegations are based on statements made on an internet blog site and twitter relating to James McGibney and the Viaview Websites.

1.   <u>Twitter and the Internet Constitute a Public forum</u>

The alleged conduct of defendants occurred in a public forum.  "A public forum is a place open to the use of the general public 'for purposes of assembly, communicating thoughts between citizens, and discussing public questions.'" *Weinberg v. Feisel*, 110 Cal. App. 4th 1122, 1130, 2 Cal. Rptr. 3d 385 (Cal. Ct.

App. 2003) (internal citations omitted); *ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1006, 113 Cal. Rptr. 2d 625 (Cal. Ct. App. 2001) (noting that a "public forum" is "traditionally defined as a place that is open to the public where information is freely exchanged.").)

The case law is clear; websites that are accessible to the public are "public forums" for purposes of the anti-SLAPP statute. *Wong v. Tai Jing*, 189 Cal. App. 4th 1354, 1367, 117 Cal. Rptr. 3d 747 (Cal. Ct. App. 2010) (holding that "it is settled that 'Web sites accessible to the public … are public forums for purposes of the anti-SLAPP statute'"; *see eg. Barrett v. Rosenthal*, 40 Cal. 4th 33, 41 n.4, 146 P.3d 510, (Cal. 2006)*; Vogel v. Felice*, 127 Cal. App. 4th 1006, 1014-1016, 26 Cal. Rptr. 3d 350 (Cal. Ct. App. 2005); *Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.*, 129 Cal. App. 4th 1228, 1247, 29 Cal. Rptr. 3d 521 (Cal. Ct. App. 2005) (noting that statements on animal rights organization's website "are accessible to anyone who chooses to visit the site, and thus they 'hardly could be more public'"); *Gilbert v. Sykes*, 147 Cal. App. 4th 13, 22–24, 53 Cal. Rptr. 3d 752 (Cal. Ct. App. 2007); *Kronemyer v. Internet Movie Data Base, Inc.*, 150 Cal. App. 4th 941, 950, 59 Cal. Rptr. 3d 48 (Cal. Ct. App. 2007); *Summit Bank v. Rogers*, 206 Cal. App. 4th 669, 693, 142 Cal. Rptr. 3d 40 (Cal. Ct. App. 2012).

Therefore, the alleged statements made on Twitter and the BV blog sites and internet constitute a public forum under the anti-SLAPP analysis.

2.     Statements made about James McGibney and Viaview relate to matters of Public Interest.

Statements made about James McGibney and Viaview are a matter of public interest because of the ongoing national discussion regarding bullying and revenge porn in society.   A statement about a "a topic of widespread, public interest" satisfies this requirement." *Doe v. Gangland Prods., Inc.*, 730 F.3d 946, 955 (9th Cir. 2013) (citing *Rivero v. Am. Fed'n of State, Cnty., & Mun. Emps., AFL–CIO*, 105 Cal.App.4th 913, 924, 130 Cal.Rptr.2d 81 (Cal. Ct. App. 2003)); see also *Nygard, Inc. v. Uusi–Kerttula*, 159 Cal.App.4th 1027, 1042, 72 Cal.Rptr.3d 210 (Cal. Ct. App. 2008) (an issue of public interest is "any issue in which the public is interested"); *Weinberg v. Feisel*, 110 Cal.App.4th 1122, 1132, 2 Cal.Rptr.3d 385 (Cal. Ct. App. 2003) (an issue of public interest is "something of concern to a substantial number of people"). Here, McGibney and his company ViaView are matters of public interest.

First, James McGibney has associated himself and injected himself into the national bullying and revenge porn debate. (Complaint ¶¶16-17; See Exhibits A & B attached hereto to Decl. Braunstein.)  McGibney has been on national television shows to discuss his websites and company.  (See Exhibits A & B attached hereto to Decl. Braunstein ¶7.) He was involved in a high profile lawsuit with known revenge porn peddler Hunter Moore. Mr. McGibney's involvement in these

matters has made him a recognizable individual that has sparked public interest. (See Exhibits A & B attached hereto to Decl. Braunstein ¶7.)

Additionally, ViaView websites are a matter of public interest. By Plaintiffs own admission, "ViaView is the owner and operator of the popular websites" that "average approximately one million individual and unique user hits per month." (Complaint ¶¶3, 19.) Thus, due to ViaView's huge popularity and visitors it is a matter of public interest.

Moreover, the McGibney and ViaView have decided to participate in the larger social issue revolving around bullying and revenge porn. Bullying and revenge porn have become a national matter of public interest. (See Exhibits A & B attached hereto to Decl. Braunstein ¶¶3-9.) In fact, a number of states have begun to enact legislation related to bullying and revenge porn. (See Exhibits A & B attached hereto to Decl. Braunstein ¶¶3-9.) McGibney and ViaView have decided to participate in this public discussion.

Since McGibney and ViaView are both matter of public interest and are part of the larger national debate around bullying and revenge porn, statements made about them concern a matter of public interest.

Therefore, Lipton has satisfied the first prong of the anti-SLAPP analysis and the burden shifts to the Plaintiffs to establish their claims with admissible evidence.

**B.     Plaintiffs Cannot Establish a Probability of Prevailing on Their Claims**

Plaintiffs have asserted claims for (1) Tortious Interference with Contractual Relations; (2) Tortious Interference with Prospective Economic Advantage; (3) Intentional Infliction of Emotional Distress; (4) Defamation; (5) Public Disclosure Invasion Of Privacy against Lipton.  Plaintiffs' claims are all predicated on the defamation claim.  However, Plaintiffs will be unable to establish a probability of prevailing on the merits on any of these claims.

1.     <u>Plaintiffs Will Not Be Able to Establish that Lipton Made any Statement Against Plaintiffs.</u>

All of Plaintiffs claims fail against Lipton because Plaintiffs will not be able to prove that Lipton committed any tortious act.  Plaintiffs' claims are all premised on the misguided notion that Lipton participated on the BVfiles site and posted the defamatory tweets about Defendants from the twitter handles @OccupyRebellion, @MissAnonNews, and @MissAnonNews_. (See Complaint.)  However, the declaration from Lipton shows that she has never used or had access to these Twitter handles or BV Sites.  (Decl. Lipton¶¶9-23.)

Moreover, Plaintiffs' strange attempt to link Lipton to the BVfiles Blog also fails because Plaintiffs only evidence in the complaint is about an individual accessing a different website.  Plaintiffs will be unable to prove that Lipton even participated in BVfiles Blog because Lipton has never posted or instructed anyone to Post on the BVfiles Bog. (Decl. Lipton ¶¶9-23.)

1    Therefore, all of Plaintiffs claims against Lipton fail as a matter of law.

2    2.    <u>Plaintiffs will not be able to establish defamation claim against Lipton because McGibney is a public figure</u>

3

4    Besides the glaring issue that Plaintiffs will be unable to prove that Lipton

5    made any statement, Plaintiffs will be unable to establish a defamation claim

6

7    because Public Figures are held to a higher standard in establishing Defamation.

8    Public Figures must prove by clear and convincing evidence that an allegedly

9    defamatory statement was made with knowledge of falsity or reckless disregard for

10

11   truth. *Ampex Corp. v. Cargle*, 128 Cal. App. 4th 1569, 1577, 27 Cal. Rptr. 3d 863,

12   869 (Cal. Ct. App. 2005) (citing *New York Times Co. v. Sullivan* 376 U.S. 254,

13

14   279–280, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)).

15   **a.  McGibney is a Public Figure**

16   James McGibney is a Public Figure who has gained national notoriety with

17

18   his Websites and advocacy against bullying and revenge porn.

19   Courts have distinguished between two classes of public figures.  *Reader's*

20   *Digest Assn. v. Superior Court,* 37 Cal.3d 244, 253–254 (Cal. 1984); see *Gertz v.*

21

22   *Robert Welch, Inc.,* 418 U.S. 323, 351 (1974).  The first is the "all purpose" public

23   figure who has "achiev[ed] such pervasive fame or notoriety that he becomes a

24   public figure for all purposes and in all contexts."  *Reader's Digest Assn. v.*

25

26   *Superior Court,* 37 Cal.3d at 253–254.  The second category is that of the "limited

27   purpose" public figure, an individual who "voluntarily injects himself or is drawn

28

14

into a particular public controversy and thereby becomes a public figure for a limited range of issues." *Id.*   Unlike the "all purpose" public figure, the "limited purpose" public figure loses certain protection for his reputation only to the extent that the allegedly defamatory communication relates to his role in a public controversy." *Id.*

Here, James McGibney is an all purpose public figure as well as a limited public figure in relation to his role with Bullying and Revenge Porn.

First, McGibney is an all purpose figure.  An example of an all purpose public figure can be found in *Hustler Magazine v. Falwell.* 485 U.S. 46, 57 (1988). In *Hustler Magazine v. Falwell*, a minister, Jerry Falwell, with a nationally syndicated television show was concededly an all purpose public figure. Id) Another example can be seen in *Stolz v. KSFM 102 FM*.  In *Stolz,* the court concluded that a radio station was an all purpose public figure because it broadcasted itself daily to the community.  *Stolz v. KSFM 102 FM*, 30 Cal. App. 4th 195, 205 (Cal.Ct.App 1984).

Here, Mr. McGibney has been on nationally syndicated television broadcasts to discuss his involvement with Hunter Moore, Cheaterville, BullyVille and the topics of Revenge Porn and Bullying.  Mr. McGibney's own expert witness filed an affidavit discussing his national recognition which supports Lipton's Premise that he is an all purpose public figure.  In this Affidavit, Colleen Connally-Ahern, Ph.D stated the following:

1
2
3
4
5
6
7
8
9

"Plaintiff James McGibney is the main operator and public face of numerous online properties owned by Via View, Incorporated, and its subsidiary company, Cheaterville, Incorporated. McGibney regularly talks to the press about important issues such as bullying and infidelity, and makes regular appearances on behalf of the Internet social media services BullyVille, found at bullyville.com, and CheaterVille, found at cheaterville.com. These media appearances have included <u>Univision</u>, <u>The Dr. Phil Show</u>, <u>The Anderson Cooper Show</u>, <u>The Maury Povich Show</u>, <u>Extra!</u>, <u>KSNV My News 3 (Las Vegas' NBC affiliate stations)</u>, <u>KXTL Fox 40 (Sacramento, California's FOX affiliate station)</u>, <u>The Huffington Post</u>, <u>Las Vegas Sun</u>, [and] <u>BetaBeat</u>, among others."

10

Affidavit of Colleen Connally-Ahern, Ph.D, ¶7, attached hereto as Exhibit A to the Decl. Braunstein.

11
12

Moreover, McGibney's own expert goes further and states that "A search of

13

McGibney's name via any major search engine (google.com, bing.com and

14

yahoo.com) results thousands of hits indicating his position as an advocate for

15
16

personal responsibility." (See Affidavit of Colleen Connally-Ahern, Ph.D, ¶7,

17

attached hereto as Exhibit A to the Decl. Braunstein.)  Clearly, McGibney is an all-

18

purpose public figure.

19
20

However, even if McGibney is not an all-purpose public figure he is clearly

21

a limited purpose public figure with respect to his websites and the national debate

22

surrounding bullying and revenge porn.  There are three elements that must be

23
24

satisfied in order to properly characterize a person as a "limited purpose public

25

figure":

26
27
28

First, there must be a public controversy, which means the issue was debated publicly and had foreseeable and substantial ramifications for nonparticipants. Second, the plaintiff must have undertaken some voluntary

act through which he or she sought to influence resolution of the public issue. In this regard it is sufficient that the plaintiff attempts to thrust him or herself into the public eye. Third, the alleged defamation must be germane to the plaintiff's participation in the controversy.

*Ampex v. Cargle*, 128 Cal.App.4th 1569, 1577 (Cal. Ct. App 2005).

Here, all of the elements are met that McGibney is a limited Purpose Public Figure.  First, there is an ongoing national debate about Hunter Moore, bullying and revenge porn websites. (See Decl. Braunstein ¶8; Exhibits A and B attached thereto.)

Second, McGibney has taken the voluntary act of participating in this national debate by "vigorously exert[ing] social and financial pressure on owners, operators and purveyors of "revenge porn" websites with the intent of shuttering those websites." (Complaint ¶16.)  Moreover, McGibney has appeared on national television shows to discuss these topics.  (See Exhibit A.)

Finally, the alleged defamatory statements all relate to his involvement with the websites, bullying, revenge porn and Hunter Moore controversy.  Therefore, McGibney is a limited purpose public figure in this action.

### b.  Plaintiffs will be unable to prove that Lipton statement was made with reckless disregard for the truth.

Besides the fact that Lipton did not make any statement, Plaintiffs will be unable to prove that any of the alleged defamatory statements were made with reckless disregard for the truth

The reckless disregard test requires a high degree of awareness of the probable falsity of the defendant's statement. *Ampex Corp. v. Cargle*, 128 Cal. App. 4th at 1579.  "'There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.' " *Reader's Digest Assn. v. Superior Court,* 37 Cal.3d at p. 256, 208 Cal.Rptr. 137, 690 P.2d 610, quoting *St. Amant v. Thompson* 390 U.S. 727, 731, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968).) This is a subjective test, focused on the defendant's attitude toward the veracity of the published material, as opposed to his or her attitude toward the plaintiff. *Reader's Digest Assn. v. Superior Court*, 37 Cal.3d at p. 257. Actual malice may be proved by circumstantial or direct evidence. *Ampex Corp. v. Cargle*, 128 Cal. App. 4th at 1579.  However, the court cannot not infer actual malice solely from evidence of ill will, personal spite or bad motive.  *Ampex Corp. v. Cargle*, 128 Cal. App. 4th at 1579.

Here, plaintiffs will be unable to prove any of these facts necessary to establish reckless disregard for the truth and that Lipton acted with actual malice.

3.   Plaintiffs will not be able to establish tortious interference with contractual relation claims against Lipton

Plaintiffs will be unable to establish any facts to prove that Lipton interfered with any of Plaintiffs' contracts.

To prevail on a cause of action for intentional interference with contractual relations, a plaintiff must plead and prove (1) the existence of a valid contract

between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. *Reeves v. Hanlon*, 33 Cal. 4th 1140, 1148, 95 P.3d 513, 517 (Cal. 2004). To establish the claim, the plaintiff need not prove that a defendant acted with the primary purpose of disrupting the contract, but must show the defendant's knowledge that the interference was certain or substantially certain to occur as a result of his or her action.

Here, Plaintiffs will be unable to establish facts proving any of these elements. Specifically, Plaintiffs will be unable to prove that Lipton had knowledge of any contracts between defendants and any third parties. (Decl. Lipton ¶24.) Moreover, Plaintiffs will be unable to prove that Lipton engaged in any wrongful action against Defendants. Additionally, Plaintiffs will be unable to prove that there was any disruption of any contract with Defendants by any third party that resulted in damages.

### 4. Plaintiffs will not be able to establish tortious interference with prospective economic advantage against Lipton

Plaintiffs will be unable to establish a claim for Tortious Interference with a Prospective economic advantage.

To prevail on a cause of action for intentional interference with prospective economic advantage in California, a plaintiff must plead and prove (1) an

economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) the defendant's intentional acts designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the defendant's acts.  *See Reeves v. Hanlon*, 33 Cal. 4th 1140, 95 P.3d 513, 517 (Cal. 2004).

Here, Plaintiffs will be unable to establish that Lipton had knowledge of any relationships with third parties.  Moreover, Lipton did not commit any act with intent to disrupt these relationships.

5.    Plaintiffs will not be able to establish intentional infliction of emotional distress claims against Lipton

Plaintiffs will be unable to prove that Lipton committed intentional infliction of emotional distress.

The elements of a cause of action for intentional infliction of emotional distress are (i) outrageous conduct by defendant, (ii) an intention by defendant to cause, or reckless disregard of the probability of causing, emotional distress, (iii) severe emotional distress, and (iv) an actual and proximate causal link between the tortious conduct and the emotional distress. *Nally v. Grace Cmty. Church*, 47 Cal. 3d 278, 300, 763 P.2d 948, 961 (Cal. 1988).

James McGibney will be unable to plead any facts to demonstrate that he suffered any emotional distress as a result of the alleged actions by Lipton.

6.   <u>Plaintiffs will not be able to establish public disclosure invasion of privacy claims against Lipton</u>

Plaintiffs will be unable to establish a claim for Public disclosure of Private Fact because personal details about his wife and his home address are not private facts.

The elements of the public-disclosure-of-private-facts tort are as follows: (1) public disclosure, (2) of a private fact, (3) which would be offensive and objectionable to the reasonable person, and (4) which is not of legitimate public concern. *Taus v. Loftus*, 40 Cal. 4th 683, 717, 151 P.3d 1185, 1207 (Cal. 2007) (internal quotations and citations omitted.).

Here, Plaintiffs will be unable to prove that Defendant Lipton disclosed any private fact.  The only private fact that Plaintiff' alleges was disclosed is the name of his wife and his home addresses.  Both of these are not private facts and are not objectionable to a reasonable person because they are a matter of public knowledge.

Moreover, ViaView also seems to seek relief under this tort; however, the complaint is silent as to any private facts published about ViaView.  Therefore, ViaView's claim fails as well.

\\

\\

1

## V.     <u>CONCLUSION</u>

2

For the reasons stated above, Plaintiffs' Complaint against Lipton should be

3

4

dismissed with prejudice.

5

Respectfully submitted,

6

DATED.     July 3, 2014             BRAUNSTEIN & BRAUNSTEIN, P.C.

7

8

By:   ___/s/ Clark Anthony Braunstein___.

9

Clark Anthony Braunstein
Attorneys for Defendant
Lane Lipton

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

22

**CERTIFICATE OF SERVICE**

I hereby certify that, on July 3, 2014, I caused a true and correct copy of the documents listed below to be served by electronic transfer to the CM/ECF System in accordance with the Federal Rules of Civil Procedure 5(d)(3), Local Rule 5-1, and the Northern District's General Order governing electronic filing by uploading via electronic transfer a true and correct copy scanned into an electronic file in Adobe "pdf" format to the United States District Court Northern District of California Case Management and Electronic Case Filing (CM/ECF) system on this date. It is my understanding that by transmitting these documents to the CM/ECF system, they will be served on all parties of record listed below according to the preferences chosen by those parties within the CM/ECF system.

1. Defendant Lane Lipton's Defendant Lane Lipton's Notice Of Special Motion To Strike Pursuant To California Code Of Civil Procedure Section 425.16

2.  Defendant Lane Lipton's Memorandum Of Points And Authorities In Support Of Her Special Motion To Strike Pursuant To California Code Of Civil Procedure Section 425.16

3.  Declaration Of Lane Lipton In Support Of Her Motion To Dismiss Complaint And Special Motion To Strike

4.  Declaration Of Clark Anthony Braunstein In Support Of Defendant Lane Lipton's Special Motion To Strike Pursuant To California Code Of Civil Procedure Section 425.16

4.  [Proposed] Order On Defendant Lane Lipton's Special Motion To Strike Pursuant To California Code Of Civil Procedure Section 425.16

LAW OFFICES OF JAY LEIDERMAN
Jason Scott Leiderman, Esq.
5740 Ralston Street Ste 300
Ventura, CA 93003
Email: Jay@Criminal-Lawyer.me

/s/ Clark Anthony Braunstein
Clark Anthony Braunstein