IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

JAMES MCGIBNEY, an individual; and
VIA VIEW, INC., a corporation.
     Plaintiffs,

v.                               **CASE NO.** 5:14-cv-01059-BLF

THOMAS RETZLAFF, an individual;
NEAL RAUHAUSER, an individual;    **Hearing Date**: November, 20, 2014
LANE LIPTON, an individual;            **Hearing Time**: 9:00 am
and DOES 1-5, individuals whose true   **Courtroom**:    3
names are not known,
     Defendants.

## DEFENDANT RETZLAFF'S MEMORANDUM IN SUPPORT OF
## MOTION TO DISMISS FOR PLAINTIFFS' FAILURE TO STATE A CLAIM

Defendant Retzlaff files this motion to dismiss plaintiffs' suit for failure to state a claim upon which relief can be granted, as authorized by Federal Rule of Civil Procedure 12(b)(6).

### A. INTRODUCTION

1. Plaintiffs are James McGibney and ViaView, Inc.; defendants are Thomas Retzlaff, Neal Rauhauser, Lane Lipton, and Does 1-5.

2. Plaintiffs sued defendants for (1) Tortious Interference with Contractual Relations; (2) Tortious Interference with Prospective Economic Advantage; (3) Intentional Infliction of Emotional Distress; (4) Defamation; (5) Public Disclosure / Invasion Of Privacy in the Northern District of California, San Jose Division.

3. In their complaint, plaintiffs did not state a claim upon which relief can be granted. Therefore, the Court should dismiss plaintiffs' suit.

4. The case arises from an attempt by plaintiff ViaView and its employee / CEO James McGibney to silence free speech and online criticism of plaintiff's company (which is a **revenge porn** website). Both Viaview and James McGibney are Public Figures within the meaning of the anti-SLAPP statute having inserted themselves into numerous controversies over the past several years and having made numerous media appearances regarding the subject of bullying and infidelity. As such, they are the fair subject of criticism, even intense criticism. Plaintiffs' response to this public criticism has been to file a series of lawsuits.

5. There are three lawsuits currently pending in three different forums involving similar claims against the same defendant (and groups of defendants): (1) McGibney v. Retzlaff, et al., No. 067-270669-14, Tarrant County District Court in Ft. Worth, Texas, filed February 19, 2014; (2) McGibney v. Retzlaff, et al., No. 14-cv-01059-HRL, U.S. District Court for the Northern District of California, filed March 6, 2014; and (3) Via View v. Retzlaff, No. 1-14-CH-005460, Santa Clara County Superior Court, California, filed March 17, 2014.

6. In any event, ViaView, Inc. is a company incorporated in Delaware that is owned by seven guys involved in the construction industry in Las Vegas, Nevada. Cheaterville.com is a revenge porn site that is run by ViaView. On Cheaterville people can post intimate photos and personal details about their ex- or anyone else for that matter. If you find yourself posted on Cheaterville, you will be forced to pay them $199 (or more!) if you want to ransom back your photos and get the post removed. James McGibney is the President / CEO of this revenge porn empire. At the present moment, McGibney and ViaView are both under active

investigation by the e-Crimes Unit of the California Attorney General's Office for allegations involving extortion, identity theft, and for running a revenge porn website. They have also been sued in federal court on numerous occasions for their blackmail / defamation business practices. But don't repeat any of this publicly or you will be sued by McGibney. Seriously. He just doesn't like the criticism.

### B. ARGUMENT

7. Before getting started here, defendant Retzlaff, who is appearing *pro se*, would like to remind the court that Pro se litigants' court submissions are to be construed liberally and held to less stringent standards than submissions of lawyers. If the court can reasonably read the submissions, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with rule requirements. *Boag v. MacDougall*, 454 U.S. 364, 102 S.Ct. 700, 70 L.Ed.2d 551 (1982); *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)(quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *McDowell v. Delaware State Police*, 88 F.3d 188, 189 (3rd Cir. 1996); *United States v. Day*, 969 F.2d 39, 42 (3rd Cir. 1992)(holding pro se petition cannot be held to same standard as pleadings drafted by attorneys); *Then v. I.N.S.*, 58 F.Supp.2d 422, 429 (D.N.J. 1999).

8. The courts provide pro se parties wide latitude when construing their pleadings and papers. When interpreting pro se papers, the Court should use common sense to determine what relief the party desires. *S.E.C. v. Elliott*, 953 F.2d 1560, 1582 (11th Cir. 1992). See also, *United States v. Miller*, 197 F.3d 644, 648 (3rd Cir. 1999) (Court has special obligation

to construe pro se litigants' pleadings liberally); *Poling v. K.Hovnanian Enterprises*, 99 F.Supp.2d 502, 506-07 (D.N.J. 2000).

9. A court has authority to dismiss a suit for failure to state a claim upon which relief can be granted if the complaint does not provide fair notice of the claim and does not state factual allegations showing that the right to relief is plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 & n.3 (2007).

10. Plaintiff's complaint does not provide this defendant with fair notice of plaintiffs' claim. *Brooks v. Ross*, 578 F.3d 574, 581-82 (7th Cir. 2009). A complaint that provides only labels and conclusions or a formulaic recitation of the elements is insufficient to show grounds for the plaintiff to be entitled to relief. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555 & n.3; *Brooks*, 578 F.3d at 581.

<u>Plaintiff's First Cause of Action</u>

11. With regards to plaintiffs' first claim, Tortious Interference With Contractual Relations (see P's Amend. Complaint at ¶159 on pg. 29), plaintiffs make only conclusory allegations that the defendants (which defendants, plaintiffs do not say) "repeatedly and systematically made fraudulent and frivolous complaints to Plaintiffs' advertising partners and sponsors." See ¶162. **Not to put too fine a point on it, but so what?** Assuming that such conduct actually took place, and assuming that it was this specific defendant that did it, so what?

12. Additionally, plaintiffs' complaint includes factual allegations that do not show a right to relief that is plausible. *Brooks*, 578 F.3d at 581-82. Even if these factual allegations are

assumed to be true (that defendants made complaints to plaintiffs' advertising partners and sponsors), they do not show a right to relief that is more than mere speculation. *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678-79; *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).

13. What plaintiffs are basically complaining of is that the defendants organized a boycott of plaintiffs and their revenge porn / blackmail business. The U.S. Supreme Court upheld the right to boycott in *NAACP v. Claiborne Hardware Co. et al.*, 458 U.S. 886 (1982). The court held that the States have broad power to regulate general economic activities, but cannot prohibit peaceful political activity and organizing. This includes boycotts, which are protected under the First and Fourteenth Amendments in regards to freedom of speech and association. Also, within the right to freely associate is the right to demonstrate and align one's self with the ideals of the association or business — or not.

14. The Supreme Court has held that individuals are not responsible for business losses due a non-violent boycott — even if a business fails. The First Amendment freedoms in a boycott trump the business owner's success. In *Organization for a Better Austin v. Keefe*, 402 U.S. 415 (1971), Chief Justice Warren Burger stated:

> *"The claim that the expressions were intended to exercise a coercive impact on respondent does not remove them from the reach of the First Amendment. Petitioners plainly intended to influence respondent's conduct by their activities; this is not fundamentally different from the function of a newspaper. Petitioners were engaged openly and vigorously in making the public aware of respondent's real estate practices. Those practices were offensive to them, as the views and practices of petitioners are no doubt offensive to others. But so long as the means are peaceful, the communication need not meet standards of acceptability."* [citations omitted]

In other words, even if the goal of the boycott is coercive action against a business entity, the boycott is protected under the First and Fourteenth Amendments as long as it remains non-violent.  Thus, defendants have an absolute right to contact and make complaint to plaintiffs advertisers and sponsors.

15. Plaintiff's complaint includes the following conclusory statements: that defendants repeatedly made "fraudulent and frivolous complaints to Plaintiffs' advertising partners and sponsors."  See ¶162.  Because these statements are merely conclusions, they are not entitled to an assumption of truth and should be disregarded. *Iqbal*, 556 U.S. at 679; *see Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

Plaintiff's Second Cause of Action

16.  With regards to plaintiffs' second claim, Tortious Interference With Prospective Economic Advantage (see P's Amend. Complaint at ¶165 on pg. 30), plaintiffs are just repeating the same allegations in Cause No. 1, but they just mix up the words a bit and complain that the defendants (which specific defendant, plaintiffs do not say) "intended to induce a disruption of Plaintiffs' business relationships with advertisers, and to damage the prospect of future relationships with new sponsors and advertisers" by "repeatedly and systematically [making] fraudulent and frivolous complaints to Plaintiffs' advertising partners and sponsors."  See P's Amend. Comp. at ¶¶167-168.

17.  Again, not to put too fine a point on it, but so what?  As stated by this defendant above, plaintiffs make only conclusory allegations about the defendant and his alleged conduct and the complaint includes factual allegations that do not show a right to relief that is plausible.  The defendant has an absolute right to participate and/or organize a boycott of plaintiffs blackmail and revenge porn business, and if plaintiffs' business suffers as a result, oh well – sucks to be you.

Plaintiff's Third & Fourth Causes of Action

18.  With regards to plaintiffs' third claim, Intentional Infliction of Emotional Distress (against Mr. McGibney) (see P's Amend. Complaint at ¶171 on pg. 31), and plaintiff's fourth claim, Defamation (against Mr. McGibney) (see P's Amend. Complaint at ¶174 on pg. 31-32), plaintiff makes only conclusory allegations that the defendants (which defendants, plaintiff does not say) engaged in a "campaign of harassment, death threats, and intentional and/or reckless disclosure of Mr. McGibney's sensitive personal information on various social media platforms" and that the defendants (which defendants, plaintiff does not say) defamed him by saying mean things about him on twitter and various websites.

19.  Plaintiff's complaint includes factual allegations that do not show a right to relief that is plausible.  *Brooks*, 578 F.3d at 581-82.  Specifically, plaintiff made the following factual allegations: that the defendants engaged in a campaign of harassment, death threats, and intentional and/or reckless disclosure of Mr. McGibney's sensitive personal information on various social media platforms, and that defendants defamed him.  Even if these factual allegations are assumed to be true, they do not show a right to relief that is more than mere

speculation. *Twombly*, 550 U.S. at 555; see *Iqbal*, 556 U.S. at 678-79; *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).

20. Without any shadow of a doubt, James McGibney is a Public Figure who has inserted himself into the media spotlight on numerous occasions going back many years, most recently with Reality Television "star" Kate Gosselin and McGibney's asinine claim that he was going to file a Class Action lawsuit against every single person on the planet who ever said anything mean about Kate Gosselin on Twitter or the internets in April 2013 (seriously, he actually said this). This court, by now, is thoroughly familiar with California's anti-SLAPP law codified in Cal. Civ. Proc. Code § 425.16. Because McGibney is a Public Figure, he is the fair subject of criticism, even intense criticism. Thus, the *NY Times v. Sullivan* standard applies to plaintiff's defamation & IIED claims.

21. All of the statements that plaintiff wishes to attribute to this specific defendant are public statements about a public figure, involving matters of public concern. Plaintiff's lawsuit is therefore precisely the type of strategic lawsuit that California's anti-SLAPP statute was designed to remedy. See, e.g., *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 838 (9th Cir. 2001) ("The purpose of the statute is to protect individuals from meritless, harassing lawsuits whose purpose is to chill protected expression."); *Wilcox v. Superior Court*, 27 Cal. App. 4th 809, 816 (Cal. Ct. App. 1994) ("[SLAPP suits] are generally meritless suits brought by large private interests to deter common citizens from exercising their political or legal rights or to punish them for doing so.").

22. How hateful can comment about a public figure be without losing constitutional protection? There may now be no visible limit. The right to criticize public figures harshly –

even cruelly and unfairly – is one the framers of the First Amendment used with relish. In 1983, self-described "smut peddler" Larry Flynt, the publisher of Hustler Magazine and 28 other admittedly "tasteless" publications, published a parody of a well-known print ad for Campari Liqueur running nationally under the tag line, "My First Time." In the parody, Jerry Falwell, a respected Baptist minister, was depicted as confessing that his "first time" having sex was while he was drunk and with his own mother in an outhouse. See *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 48 (1988). Hustler presented a mock interview in which Falwell says, "We were drunk off our God-fearing asses," and, "Mom looked better than a Baptist whore with a $100 donation."

23. Like McGibney in the case at bar, Falwell sued Hustler for defamation and intentional infliction of emotional distress. *Hustler Magazine, Inc.*, 485 U.S. at 47-48. Falwell obtained a judgment in the trial court that was upheld in the Fourth Circuit. However, in one of the most dramatic First Amendment cases of the 20th Century, the U.S. Supreme Court unanimously struck down the award and held that Hustler's ad parody was protected speech:

> Despite their sometimes caustic nature, from the early cartoon portraying George Washington as an ass down to the present day, graphic depictions and satirical cartoons have played a prominent role in public and political debate ... [and] undoubtedly had an effect on the course and outcome of contemporaneous debate. Lincoln's tall, gangling posture, Teddy Roosevelt's glasses and teeth, and Franklin D. Roosevelt's jutting jaw and cigarette holder have been memorialized by political cartoons with an effect that could not have been obtained by the photographer or the portrait artist. From the viewpoint of history it is clear that our political discourse would have been considerably poorer without them.

*Hustler Magazine, Inc.*, 485 U.S. at 54-55.

24. As the U.S. Supreme Court added in a different case:

> [T]he fact that society may find speech offensive is not a sufficient reason for suppressing it. Indeed, if it is the speaker's opinion that gives offense**, that consequence is a reason for according it constitutional protection**.

*FCC v. Pacifica Foundation*, 438 U. S. 726, 745-46 (1978) [emphasis added].

25.  In its first major free-speech decision of the 21st century, the U.S. Supreme Court extended the protection of free speech even further in *Snyder v. Phelps,* 131 S.Ct. 1207 (2011).  In *Snyder,* the court held for the first time that the target of the offensive speech *did not* have to be a public figure for the speech to be protected.  *Id.* at 1228 (dissent by Alito, J.).  *Snyder* involved Rev. Fred Phelps, whose Westboro Baptist Church of Topeka, Kansas, believes God hates and punishes the United States for tolerating homosexuality, particularly in the military.  *Id.* at 1213.  The church frequently communicates its views by picketing, often at military funerals.  *Id.*  Marine Lance Corporal Matthew Snyder was killed in Iraq in the line of duty. *Id.*  Snyder's funeral was at the Catholic church in the Snyders' hometown of Westminster, Maryland.  *Id.*  At the funeral, Phelps and his family members carried signs that read "Fag Troops," "God Hates Fags," "Fags Doom Nations," "America is Doomed," "Pope in Hell," and "Priests Rape Boys." *Id.* and at 1216.

26.  The Snyder court vacated the damages award to the dead soldier's father for intentional infliction of emotional distress, holding that Phelps' speech was protected by the First Amendment – even though the Snyders were not public figures and had never sought publicity. *Id*.  The Snyder court found Phelps' speech to be on "matters of public concern" – speech that "occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Id*. at 1215 [citation omitted].  The court concluded:

> Speech is powerful. It can stir people to action, move them to tears of both joy and sorrow, and-as it did here-inflict great pain. On the facts before us, we cannot react to

>that pain by punishing the speaker. As a Nation we have chosen a different course-to protect even hurtful speech on public issues to ensure that we do not stifle public debate. That choice requires that we shield Westboro from tort liability for its picketing in this case.

Id. at 1223. It is impossible to conclude that a court constrained by Snyder's precepts could find that Retzlaff's alleged speech is anything other than constitutionally protected comment on McGibney's controversial websites.

Plaintiffs' Fifth Cause of Action

27. With regards to plaintiffs' fifth claim, Public Disclosure of Private Facts / Invasion of Privacy (against Mr. McGibney) (see P's Amend. Complaint at ¶185 on pg. 32), plaintiff's complaint includes factual allegations that do not show a right to relief that is plausible. *Brooks*, 578 F.3d at 581-82. Specifically, plaintiff made the following factual allegations: that defendants (which defendant, plaintiff does not say), that "Defendants' publication of Mr. McGibney's personal details, including the name of his wife and his home address, constituted a public disclosure of private facts." Seriously. This is his claim. Even if these factual allegations are assumed to be true, they do not show a right to relief that is more than mere speculation. *Twombly*, 550 U.S. at 555; see *Iqbal*, 556 U.S. at 678-79; *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). In fact, even if these allegations are true, plaintiff has no cause of action for this because the name of plaintiff's wife and his home address do not qualify as a "private fact" under California law that can't ever be publicly disclosed and no relief can be granted.

28. In California, the elements of a publication of private facts claim are: (1) public disclosure; (2) of a private fact; (3) which would be offensive and objectionable to the reasonable person; and (4) which is not of legitimate public concern. California is notable for also requiring a plaintiff to show that the defendant published private facts "with reckless disregard for the fact that reasonable men would find the invasion highly offensive." *Briscoe v. Reader's Digest Ass'n*, 4 Cal. 3d 529 (1971), overruled on other grounds by *Gates v. Discovery Communications, Inc.*, 101 P.3d 552 (Cal. 2004). What this means is that a plaintiff must show more than that you were simply wrong in believing publication of the facts in question was not offensive; the plaintiff must show that you entertained serious doubts about its offensiveness and decided to publish the facts in question anyway.

29. In the case at hand, the name of plaintiff's wife, Christina, is easily found in public records (specifically, Clark County, NV marriage license records available online), and the plaintiff's home address is listed in online SEC filings for ViaView, Inc., as well as with the Nevada Secretary of State's Office online business filings for ViaView. Thus, these are clearly not private facts.

30. Specifically with regards to this claim, defendant Retzlaff finds plaintiff McGibney's complaints about this especially ironic, not to mention totally funny, when you consider the FACT that **McGibney runs a REVENGE PORN website** that publishes TENS OF THOUSANDS of intimate photographs of young women and little girls (and a few men) and that **McGibney makes his money off of BLACKMAIL and EXTORTION** of these little girls by charging them a minimum of $199 a piece to ransom back their photos and to remove the defamatory claims about them that McGibney publishes on his Cheaterville.com website.

31. Oh, and let us not forget to mention the FACT (100% VERIFIABLE, right, James?) that McGibney himself on his hate speech/bullying website Bullyville.com publishes the personal details of not only this defendant here, but ALL of the other defendants in these ridiculous, laugh-out-loud lawsuits. Defendant here would specifically like to invite the most Honorable Beth Freeman to please take a look at these two websites that plaintiffs run and you will see the kind of filth that McGibney posts (though be advised that you might get some malware and Trojans/keyloggers placed on your computer).

32. McGibney has bought up websites in the names of each of these defendants – and their attorneys, so he could harass and blackmail them, too!

### C. CONCLUSION

33. Because plaintiffs do not state a claim upon which relief can be granted, the Court should dismiss the suit.


Respectfully submitted,


/s/ Thomas Retzlaff
Thomas Retzlaff
PO Box 46424
Phoenix, AZ 85063-6424

Defendant, pro se

# CERTIFICATE OF SERVICE

I certify that on August 7, 2014, a copy of this document was electronically filed on the CM/ECF system, which will automatically serve a Notice of Electronic Filing on the following attorney in charge for plaintiffs ViaView & James McGibney:

Jason Scott Leiderman, of 5740 Ralston Street Ste 300, Ventura, CA 93003, Email: Jay@Criminal-Lawyer.me.

I certify that Jay Leiderman is a registered CM/ECF user and that service will be accomplished by the CM/ECF system.

I certify that on August 7, 2014, a copy of this document was electronically filed on the CM/ECF system, which will automatically serve a Notice of Electronic Filing on the following attorney in charge for defendant Lane Lipton:

Clark Anthony Braunstein, of 11755 Wilshire Boulevard, Suite 2140, Los Angeles, CA 90025, Email: Clarkbraunstein@gmail.com.

I certify that Clark Anthony Braunstein is a registered CM/ECF user and that service will be accomplished by the CM/ECF system.


/s/  Thomas Retzlaff
Thomas Retzlaff

Defendant, pro se