# EXHIBIT 1

AO 440 (Rev. 06/12) Summons in a Civil Action (Page 2)

Civil Action No. 5:14-cv-10159-HRL

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)*    THOMAS RETZLAFF

was received by me on *(date)*        07/11/2014

☑ I personally served the summons on the individual at *(place)*  8312 W. Elm St. Phoenix, AZ 85037

on *(date)*    07/14/2014    ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00

I declare under penalty of perjury that this information is true.

Date:    07/16/2014

_____
Server's signature

JEFF BOURNE #5585
*Printed name and title*

1753 E. Broadway Rd. #302
Tempe, AZ 85282
480 736 1282
*Server's address*

Additional information regarding attempted service, etc:
Mr. Retzlaff was inside the house, his son opened the door, I identified myself as a process server with documents for Thomas Retzlaff, I could see the defendant clearly before he hid behind a wall, I asked him to come out and accept the documents, he declined. I dropped the documents outside the door, and service was announced in a loud clear voice.

JASON S. LEIDERMAN, SBN 203336
LAW OFFICES OF JAY LEIDERMAN
5740 Ralston St. #300
Ventura, CA 93003
805 654 0200
Attorney for Petitioner VIAVIEW, INC.

IN THE SUPERIOR COURT
COUNTY OF SANTA CLARA, STATE OF CALIFORNIA

|  |  |
|---|---|
| VIA VIEW INC. | NO. 114CH005460 |
| Petitioner | |
| vs. | PROOF OF SERVICE |
| | BY PRIVATE PROCESS SERVER |
| THOMAS RETZLAFF | |
| Respondent | |

I, Jeff Bourne, being fully qualified to serve process under ARCP 4(e) within the State of Arizona and having been appointed by Maricopa County Superior Court, did receive the following documents:

NOTICE OF NEW HEARING DATE AND ORDER ON REISSUANCE
AMENDED TEMPORARY RESTRAINING ORDER
ATTACHMENT #3 ADDITIONAL PROTECTED PERSONS
NOTICE OF COURT HEARING
TEMPORARY RESTRAINING ORDER
ORDER GRANTING INJUNCTION AGAINST RESPONDENT THOMAS RETZLAFF

In each instance I personally served a true copy of each document listed above on those named below in the manner, and at the time shown below.

Service of the above-named documents was made upon **Thomas Retzlaff** personally at 8:47pm on July 14, 2014 at 8312 W. Elm St., Phoenix, AZ 85037. Note: Mr. Retzlaff is described as a white male, approximately 62 years of age, 5'11", 180-200 lbs., brown hair, receding hairline, glasses. The door of the house was opened, I approached the door, identified myself as a process server with documents for Thomas Retzlaff, Mr. Retzlaff was clearly visible until he moved behind a wall, I asked him to come out and accept service, he declined, I dropped the documents outside the door and service was announced in a loud clear voice.

DATED: 7/14/14

JEFF BOURNE    #5585

I declare under penalty of perjury that the foregoing is true and correct and was executed on this date.

05/09/2014  10:32  6022719447                    MCSO SUBPOENAS                    PAGE  02/03



# MARICOPA COUNTY SHERIFF'S OFFICE

Civil Process Section
111 South 3rd Avenue
West Court Building 2nd Floor
Phoenix, Arizona 85003-2292



Date:  MAY 9, 2014                              Regarding:

                                                VIA VIEW INC
To:    PRIVITY INVESTIGATION SERVICES           vs.
       2390 C LAS POSAS ROAD #119               THOMAS RETZLAFF
       CAMARILLO, CALIFORNIA  93010
                                                Reference:

                                                114CH005460
                                                C0293659

This paper is being returned unserved due to:

04/29/2014 - AT 2:20 P.M. - AT LISTED ADDRESS OF 8312 WEST ELM STREET,
PHOENIX, ARIZONA - NO ANSWER.

05/02/2014 - AT 7:00 A.M., NO ANSWER, SAW SOMEONE OPEN BLINDS TO LOOK
OUT OF FRONT WINDOW BUT INDIVIDUAL WOULD NOT COME TO THE DOOR. UNABLE TO
TO MAKE OUT WHO WAS LOOKING OUT WINDOW.

05/06/2014 - 1:05 P.M., NO ANSWER, LEFT SHERIFF'S OFFICE BUSINESS CARD.

05/08/2014 - 6:10 P.M., NO ANSWER, UNABLE TO SERVE IN 4 ATTEMPTS.
RETURN, UNABLE TO SERVE THOMAS RETZLAFF.

                        DEPUTY R. HERNANDEZ #1158

FEES:
                                    Joseph M. Arpaio
Deposit              $              Maricopa County Sheriff
Less Mileage (  )    $
                     $
___ Refund or           -----------
___ Balance Due      $    NO FEES    By: _____
                                            Civil Process Unit

B0641                                                        CVLF001

IN THE SUPERIOR COURT

SANTA CLARA COUNTY, STATE OF CALIFORNIA

CASE NO.: 114CH005460

AFFIDAVIT OF NON—SERVICE

Viaview, Inc

vs.

Thomas Retzlaff

_____ /

STATE OF ARIZONA
COUNTY OF MARICOPA      ss.

I _____, being duly sworn, deposes and says that I am authorized to serve this process in the circuit/county service was attempted in.

After a careful inquiry and due diligence, I have been unable to effect service upon Thomas Retzlaff at 8312 W Elm St , Phoenix, AZ 85037

| DATE &TIME | REMARKS: |
|---|---|
| 03/19/2014—02:00 PM | No answer, no vehicles (there is a garage), 3 different signs stating there are video cameras on the property, flag out. |
| 03/19/2014—07:15 PM | No answer, no vehicles, several lights on. |
| 03/20/2014—08:25 AM | NO answer, no vehicle, flag still out, nothing looks different from attempt before. |
| 03/20/2014—08:40 PM | NO answer, no vehicle, lights are on, neighbors did not answer for me to question. |
| 03/21/2014—06:00 PM | No answer, waited from 18:00 to 19:15, neighbor to the west stated that recipient is sometimes gone from home for a couple of weeks but doesn't really know him, neighbor from across the street stated recipient ALWAYS parks his car in the garage, 3 people live there him plus a younger man and woman, when he is in town he usually come home about 7 PM. Waited till 7:15 but no one came home. |
| 03/22/2014—01:20 PM | No answer, everything looks the same as before, no vehicles, house is quiet. |

The undersigned declares under penalty of perjury that the foregoing is true, correct and my free act and deed.

x _Teresa Jones_

SKYE R. VASCONCELLOS
Notary Public - Arizona
Maricopa County
Expires on 11/30/2014

Arizona Quick Serve
7150 E Camelback Road, Suite 444
Scottsdale, AZ 85251

Sworn to and subscribed before me this
_24_ day of _March_ , 2014
by an affiant who is personally known

Cost of Attempted Service _____

## Jay Leiderman

| | |
|---|---|
| **From:** | Jay Leiderman <jay@criminal-lawyer.me> |
| **Sent:** | Wednesday, March 19, 2014 5:21 PM |
| **To:** | retzlaff@texas.net |
| **Cc:** | james.smith871003@gmail.com; deananderson714@yahoo.com; the.klansman@hotmail.com; t_retz@hotmail.com; johnny.swift@facebook.com; scott.jewels@facebook.com; kelly.swift@facebook.com; molly.santucci@facebook.com; kathy.robinov@facebook.com; franklinstud@yahoo.com; johnny76@mailinator.com; jennyduran73@yahoo.com; deb14nx05y@yahoo.com; molly14nx05y@hotmail.com; jakesdad_69@hotmail.com; delicateelf@mailinator.com; sourbobster@mailinator.com; boogerrascal@mailinator.com; mistersmith863@yahoo.co.uk |
| **Subject:** | ViaView v. Retzlaff matters |
| **Attachments:** | Retzlaff et al complaint filed 2014-03-17.pdf; Retzlaff summons filed 2014-03-17.pdf; Retzlaff Restraining Order 2014-03-18.pdf; Thomas Retzlaff RO Cover Sheet 2014-03-18.pdf |

Mr. Retzlaff;

Attached hereto please find copies of (1) the amended complaint for damages filed in the Northern District of California on the 17th of March 2014, (2) a summons therefor, (3) a restraining order obtained in the Superior Court of Santa Clara County, California on the 18th of March 2014 with a hearing date of the 8th of April, (4) a cover sheet therefor.

Thank you.

**JAY LEIDERMAN**
CERTIFIED CRIMINAL LAW SPECIALIST
CALIFORNIA BAR BOARD OF LEGAL SPECIALIZATION

LAW OFFICES OF JAY LEIDERMAN
5740 RALSTON STREET SUITE #300
VENTURA, CALIFORNIA 93003

**TEL:** (805) 654 0200
**FAX:** (805) 654 0280

**EMAIL:** JAY@CRIMINAL-LAWYER.ME
**WEB:**   WWW.JAYLEIDERMAN.COM

The information contained in this email is a communication from a law firm that may involve attorney-client privilege and is intended for the person or entity named above. This email (including any attachments) is covered by the Electronic Communications Privacy Act (ECPA), 18 U.S.C. 2510 - 2522. It may contain information that, in addition to being privileged, is confidential and exempt from disclosure under applicable law. If you are not the intended recipient or employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this message, in whole or in part, is strictly prohibited adn may subject you to action. If you have received this transmission in error, please notify me, Jay Leiderman, at (805) 654-0200 ext.24 immediately and return the original message to me. Your steadfast complaince with respect to the above is greatly appreciated. Thank you.

# EXHIBIT 2

Donna L Dancak

| | |
|---|---|
| From: | Tom Retzlaff [retzlaff@texas.net] |
| Sent: | Tuesday, March 20, 2007 1:28 AM |
| To: | Donna L Dancak |
| Subject: | RE: Personal Statement |
| Importance: High | |

To Whom It May Concern:

I am from Minnesota. I joined the U.S. Army as a Combat Military Policeman in 1984 and took part in Operations Just Cause (the invasion of Panama, 1989) and Desert Shield/Desert Storm (1990-1991). I was later assigned to the U.S. Army Criminal Investigations Division as a Special Agent, responsible for the investigation and prosecution of serious felonies and national security / counter-intelligence matters. I am a graduate of the U.S. Army Warrant Staff Course and the U. S. Army Warrant Officer Senior Staff Course. After my third combat-related injury, I was medically retired in 2004 as a Chief Warrant Officer.

When I took the GMAT, I took it without any preparation at all. While I did not do that well in the math portion of the test, I did extremely well in the other portions. You should know that I had not taken any math classes in over 20 years since high school. However, I have since taken a math class at UTSA and passed with a score of apx. 92%. My cumulative GPA is around 3.71. I am a member of the *UTSA Honors Alliance*, as well as a member of *Mortar Board, Alpha Chi*, and *Golden Key* honor societies.

I am planning on pursuing an MBA with an emphasis in either information systems or project management. My plan is to continue my service in the public sector in an effort to make governmental services as efficient and effective as possible to all in need.

I thank you for your time and most kind consideration and if you have any further questions, please do not hesitate to immediately and personally contact me.


Thomas C. Retzlaff
PO Box 92
San Antonio, Texas 78291-0092
(210) 317-9800  OFFICE
(210) 521-9146  FAX
Email: retzlaff@texas.net

**ATTACHMENT 3**

Donna –

Let me know what you think of this, please.


3/20/2007

**Donna L Dancak**

From:    Donna L Dancak
Sent:    Thursday, March 01, 2007 5:26 PM
To:      'Tom Retzlaff'
Subject: RE: Personal Statement

Looks good. I have one suggestion, it needs to be in the first person, not the third. It needs to sound like you
wrote it, not someone else. I would also cut down the first paragraph to a couple of sentences and I would
emphasize more on what you plan to do with the degree. If you want, you can also explain your GMAT score. I
hope this helps. Let me know if you have any questions.

Thanks,

Donna Dancak

From: Tom Retzlaff [mailto:retzlaff@texas.net]
Sent: Thursday, March 01, 2007 5:22 PM
To: Donna L Dancak
Subject: Personal Statement
Importance: High

Here is a personal statement. I used my military bio and then added some stuff. Let me
know what you think, please.

Mr. Retzlaff is from Minnesota. He joined the U.S. Army as a Combat Military
Policeman in 1984. Mr. Retzlaff took part in Operation Just Cause (the invasion of
Panama, 1989) and Desert Shield/Desert Storm (1990-1991). In between stints of active
duty and reserve service he was assigned to Bosnia and Herzegovina (as member of
IFOR and SFOR peacekeeping forces, 1995). Mr. Retzlaff was assigned to the U.S.
Army Criminal Investigations Division as a Special Agent, responsible for the
investigation and prosecution of serious felonies and national security / counter-
intelligence matters. Mr. Retzlaff is a graduate of the U.S. Army Warrant Staff Course
and the U.S. Army Warrant Officer Senior Staff Course. After 9/11, his Army reserve
unit was activated and he was sent first to Afghanistan and later served two tours of duty
in Iraq. He also spent some time at Camp X-Ray / Camp Delta as a part of Joint Task
Force 170 (JTF-170) at U.S. Naval Base Guantánamo Bay, Cuba. He then returned to
Iraq. After his third combat-related injury, Mr. Retzlaff was medically retired in 2004 as
a Chief Warrant Officer. Mr. Retzlaff continues to work in law enforcement at the state
and federal level. He has his Master Peace Officer certification and is a member of the
National District Attorney's Association, Texas District & County Attorney's
Association, and is an associate member of the American Enterprise Institute.

3/1/2007

Mr. Retzlaff is planning on pursuing an MBA with an emphasis in either information systems or project management. Mr. Retzlaff plans to use his degree to further himself and his community both professionally and personally. He is the first in his family to graduate college. He is a member of the *UTSA Honors Alliance*, as well as a member of *Mortar Board, Alpha Chi*, and *Golden Key* honor societies.

Thomas C. Retzlaff
PO Box 92
San Antonio, Texas 78291-0092
(210) 317-9800  OFFICE
(210) 521-9146  FAX
Email: retzlaff@texas.net

The information in this electronic mail is confidential and may be legally privileged. It is directed solely to the addressee and no one else is authorized to have access to this electronic mail. If you are not the addressee to whom it is directed, you are prohibited or it may be illegal to copy, to distribute, or take any action related to the contents of this electronic mail.

***** DISCLAIMER ***** Ce message électronique et chacune de ses annexes sont établis a l'attention exclusive du destinataire et peuvent contenir des informations confidentielles. Si vous recevez ce message par erreur, veuillez le détruire et avertir son expéditeur. Toute publication, reproduction, copie, distribution ou autre diffusion ou utilisation par des tiers est interdite sans autorisation expresse. L'expéditeur ne peut être tenu responsable d'une modification de son message qui résulterait de la transmission par voie électronique.

***** DISCLAIMER ***** Deze e-mail en al zijn bijlagen zijn uitsluitend voor de geadresseerde bestemd en kunnen vertrouwelijke informatie bevatten. Als u deze boodschap per vergissing toegestuurd kreeg, gelieve de afzender onmiddellijk te verwittigen en de e-mail te vernietigen. Publicatie, reproductie, kopie, distributie of andere verspreiding of gebruik door derden is verboden, tenzij anders vermeld. De afzender kan niet verantwoordelijk worden gesteld voor enige wijziging van zijn bericht tijdens de elektronische transmissie.

3/1/2007

The University of Texas at San Antonio
*MBA DECISION FORM*

ATTACHMENT 4

| Name: Retzlaff, Tom | | ID#: @00 18-7370 | Term: Summer 2007 |
| Degree: MBA | Major: Business | Concentration: | |

### ADVISING OFFICE COMMENTS

BA: Criminal Justice; UTSA; Spring 2007 Pending Graduation;

Cum GPA: 2.81

Last 57hrs: ~~3.58~~ 3, 66 DD
5H

GMAT: 500, 39%; Verbal: 39, 89%; Quant: 18, 6%; Analytical: 5.0, 74%; April, 2006

Advisor's Signature: _[signature]_          Date: ~~3/1/2007~~  3/20/07 (DD)

Katherine Pope, Director of Graduate Student Services

Admit ~~[strikethrough]~~ - Cond (take quant class
1st semester)
High ~~[strikethrough]~~ UTSA GPA
Low overall GPA (Spread over 20 year
period)
Good statements

Signature: _Pope_          Date: 4/17/07

### COMMITTEE DECISION

| FOR ADMISSIONS | FOR REINSTATEMENT |
|---|---|
| ACCEPT: | _____ deny reinstatement |
| | _____ reinstate & remove condition |
| _____ clear | _____ reinstate |
| ✓ conditional | |
| (all A's and B's first 12 hours & first 2 semesters) | Conditions of Reinstatement: |
| _____ special graduate | _____ B's in each course of an additional 12 hours |
| | of coursework --- if completion of degree is |
| DENY: | less than 12 hours, then condition applies to |
| | remaining hours |
| _____ | |

| Graduate Advisor's signature: _[signature]_ | Date: |

 The University of Texas at San Antonio

College of Business
Office of Graduate Studies and Research

April 23, 2007

Mr. Tom Retzlaff
PO BOX 92
San Antonio, Texas  78291-0092

Dear Mr. Retzlaff:

Congratulations on your admission into the College of Business graduate program. We have reviewed your application for admission to the College of Business at the University of Texas at San Antonio, and after careful review, are happy to inform you that you have been accepted as a Conditional Student into the MBA program for the Summer, 2007 semester *pending receipt of your official final transcript and degree.*

As a Conditional Student, you must receive a grade of "B" or better in your first twelve semester hours of coursework, and in each course completed in your first two semesters of enrollment. Please be advised that only graduate courses in the College of Business will count towards these twelve hours. However, if you earn below a "B" in any course during your Conditional time period, you will be dropped from the program. Additionally, in your first semester you must register for and successfully complete one of the following courses: ACC 5003, ECO 5003 or MS 5003. Continuation in the MBA program is contingent upon you fulfilling these conditions. To assist you in meeting the academic standards at UTSA, you should make an appointment to speak with a Graduate Adviser who will help you develop your class schedule.

Please refer to the enclosed worksheet outlining your degree plan. Also, you should obtain a Class Schedule from the Admissions Office or the UTSA website (www.utsa.edu) for registration instructions. The Summer/Fall, 2007 Graduate Student Orientation will be held on Thursday, August 16th at 5:30 p.m.-7:00 p.m. in the Business Building. You should plan to attend to receive important information and ask questions regarding policies and procedures in the College of Business at UTSA.

If you have any questions, please contact the College of Business Graduate Advising Office at: (210) 458-4641.

I wish you success in your academic endeavors.

Sincerely,

Dr. Diane Walz
Associate Dean for Graduate Studies and Research

ATTACHMENT 5

**UTSA**  The University of Texas at San Antonio

College of Business
Office of Graduate Studies and Research

November 19, 2007

### MEMORANDUM

To:       Todd Wollenzier
              Assistant Director
              Student Judicial Affairs

Fr:        Diane Walz
              Associate Dean for Graduate Studies and Research

Subject:    Description of MBA Admissions Process

RECEIVED
NOV 19 2007
OFFICE OF
STUDENT JUDICIAL AFFAIRS

---

**MBA ADMISSIONS PROCESS**
**UTSA**

Applicants to the MBA program at UTSA must submit the following:
1. A completed application,
2. Transcripts from all other universities or colleges attended, including evidence of having earned an undergraduate degree,
3. a GMAT score, and
4. A personal statement.

Applicants are encouraged, although not required, to submit:
1. An up to date resume
2. Letters of recommendation

The MBA Program Committee, including the Associate Dean, *ex officio*, as a representative for the Dean of the College, sets the standards for admission. Applications are reviewed independently by two Office of Graduate Studies & Research staff members and by the Associate Dean, who process the applications based upon the admission standards established by the MBA Committee with approval from the Dean of the College of Business. We do not have limits on the number of clear admissions to the MBA program. We do have limits on the number of conditional admissions that we can make to the MBA program in any given semester.

**ATTACHMENT 6**

Page 2

Our admission standards are designed to ensure that students accepted in to the MBA program have a good chance to succeed. Our average GMAT score is nearly 600. We look for a balance between quantitative and verbal skills. Even for conditional admissions, we do not like to go below the 15th – 20th percentile on the GMAT quantitative section (unless the applicant's previous academic reveals high grades in rigorous math courses.).

When we consider the applicant's previous academic record, we consider the quality of the undergraduate institution (or institutions), the applicant's overall grade point average, and the grade point average for the last 60 hours. We look at the number of different institutions and the distribution of grades. We consider the applicant's undergraduate performance relative to the applicant's work record, as inferred from the personal statement and/or resume.

Letters of recommendation that speak to an applicant's motivation, intelligence, and work ethic can carry weight in the process. Depending upon the credentials of the recommenders, a set of highly favorable recommendations can be a positive factor in the admissions process. Similarly, a resume that reflects a background of work experience in roles of increasing responsibility and leadership can also impact the admissions process positively.

Mr. Retzlaff's undergraduate work spanned 20 years. His overall undergraduate grade point average was not good, but his gpa for his most recent 60 hours of undergraduate work was acceptable. The length of time which Mr. Retzlaff took to complete his undergraduate degree was noted, but not considered negatively because of his extensive military service, particularly in combat.

Mr. Retzlaff did not submit letters of recommendation or a resume. His GMAT score is at the bottom of the range of scores which we admit conditionally. His score on the quantitative portion of the GMAT was at the 6th percentile. In the absence of high grades in rigorous math or statistics courses, and without evidence of extenuating circumstances, such a record would typically lead to denial of admission. In Mr. Retzlaff's personal statement, however, he described an extensive military career, with positions of increasing responsibility and leadership, as well as impressive service to the nation, involving both Gulf Wars, multiple tours of duty in combat zones, and a medical discharge caused by his multiple wounds in combat.

When I evaluated Mr. Retzlaff's application materials, I recommended that he be admitted conditionally because of his military record. The other OGS&R staff members concurred with this recommendation. In the absence of the military record described in Mr. Retzlaff's personal statement, we would have recommended denial.

cc:    Dr. Lynda de la Viña
       Dean, College of Business

# EXHIBIT 3

**606 F.Supp.2d 654 (2009)**

## Tom RETZLAFF, Plaintiff,

### v.

## Lynda Yvonne de la VIÑA, Diane Baker Walz, Kyle Merlette Snyder, Katherine Anne Pope, Defendants.

#### Cause No. SA-08-CA-170-OG.

**United States District Court, W.D. Texas, San Antonio Division.**

March 4, 2009.

655    *655 Louis D. Martinez, San Antonio, TX, for Plaintiff.

Lars Hagen, Texas Attorney General's Office, Austin, TX, for Defendants.

# ORDER GRANTING SUMMARY JUDGMENT

ORLANDO L. GARCIA, District Judge.

656    Before the Court is defendants' motion for summary judgment. (Docket *656 no. 23.) Plaintiff Tom Retzlaff has not responded. The standard to be applied in deciding a motion for summary judgment is set forth in FED. R. CIV. P. 56, which provides in pertinent part as follows:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

FED. R. CIV. P. 56(c). A nonmovant's failure to respond to a motion for summary judgment does not entitle the movant to a default judgment. _Eversley v. MBank Dallas,_ 843 F.2d 172, 174 (5th Cir.1988). Rather, the Court may accept the movant's evidence as undisputed, and may enter judgment in the movant's favor if the summary judgment evidence establishes a prima facie showing of the movant's entitlement to judgment. _Id._

Defendants are all officials at the University of Texas at San Antonio. Retzlaff is a former MBA student at UTSA who was expelled. Retzlaff sued defendants in state court alleging a variety of causes of action. Defendants removed the suit to this Court. Having reviewed the motion, the uncontested evidence, and the pertinent authorities, the Court finds that the summary judgment motion should be granted and Retzlaff's claims dismissed.

The summary judgment evidence establishes that a female foreign national from China enrolled at UTSA complained directly to school administrators and campus police that Retzlaff was harassing her. A university police captain determined that Retzlaff's behavior could amount to criminal conduct and directed Retzlaff not to contact the complainant. Retzlaff disobeyed this directive. Meanwhile, the school administration's awareness of the criminal complaint to campus police caused them to revisit Retzlaff's student file, including his application for admission. The Dean of the UTSA College of Business (Lynda de la Viña) and the its Associate Dean of Graduate Studies and Research (Diane Walz) uncovered startling public records about Retzlaff. Among other revelations, court opinions and other records showed that Retzlaff had served an eight-year prison sentence beginning in 1998 when, according to written statements he submitted in support of his MBA admission application, he claimed to have been serving in "Afghanistan and later ... two tours of duty in Iraq." When Retzlaff obtained early-release from prison in 2004, he claimed in his MBA admission application that he "medically retired" in 2004 from military service "[a]fter my third combat-related injury." Retzlaff's conduct toward another student and the many material fabrications in his application for admission to the MBA program violated the student code. After a hearing process that Retzlaff requested and then sought to avoid, his

Retzlaff v. de la VINA, 606 F. Supp. 2d 654 - Dist. Court, WD Texas 2009 - Google Scholar

wrongdoing ultimately caused a hearing officer to reach an ordinary, appropriate decision to permanently discharge him from UTSA.

Retzlaff first brings a defamation cause of action based on an email in which de la Viña relayed a report from the female Chinese student Retzlaff had been harassing that "Mr. Retzlaff carried a gun in his glove box which she had seen." De la Viña added that "I do not know if this is accurate but thought I should report to you all." She distributed the email to eight people, all of whom were UTSA administrators or UTSA law enforcement personnel by that time familiar with Retzlaff. De la Viña articulated her purpose for her actions, stating that "[a]s a member of campus administration, I feel a responsibility to help ensure the safety of our students and employees while on campus [and that] in light of the

657    responsibility *657 I feel and felt to UTSA students and employees, I firmly believed it was necessary to make a few fellow administrators and our campus law enforcement aware of my findings."

Retzlaff claims de la Viña's email defamed him. Retzlaff has offered no evidence that de la Viña acted negligently in publishing the email. Therefore, there is no evidence of defamation. See _WFAATV, Inc. v. McLemore_, 978 S.W.2d 568, 571 (Tex.1998) (to maintain a defamation cause of action, a plaintiff who is a private individual must prove, _inter alia_, that defendant acted with negligence regarding the truth of the statement). Moreover, because the email was sent by de la Viña only to other UTSA administrators and UTSA law enforcement personnel concerning a matter they shared a common interest in, the communication is protected by a qualified privilege recognized in Texas law. _Wheeler v. Miller_, 168 F.3d 241, 252-53 (5th Cir.1999). Finally, state official immunity applies to de la Viña's e-mail because it was a discretionary duty within the scope of her authority and was performed in good faith. _University of Houston v. Clark_, 38 S.W.3d 578, 580 (Tex. 2000).

Kyle Snyder's alleged description of Retzlaff as a "dangerous person" will also not support a defamation claim since there is no evidence of any negligence on Snyder's part. Also, official immunity would shield Snyder from liability.

Retzlaff also alleges that defendants violated his privacy rights when they obtained or attempted to obtain his confidential criminal history in violation of TEX. GOV'T CODE § 411.085. Defendants have shown that several court opinions outlining Retzlaff's rather extensive criminal history are freely available on the internet. Retzlaff has offered no evidence that would show a violation of § 411.085.

Retzlaff has presented no evidence that would raise a fact issue in support of his civil conspiracy claims.

Retzlaff also sued under 42 U.S.C. § 1983 alleging violations of his First, Fifth, and Fourteenth Amendment rights. He claims in his state-court petition that he became aware of spying activities of Chinese students and expressed his concerns to school officials. He also claims to have been involved in an FBI investigation of the spying activities of Chinese students. He contends that these activities led defendants to seek his expulsion to chill his First Amendment rights and to punish him for exercising those rights. He also claims defendants have used the UTSA police department to harass and retaliate against him for the exercise of his First Amendment rights. He claims that de la Viña initiated disciplinary proceedings against him in retaliation and worked to impede his ability to mount a defense against her accusations.

To establish his First Amendment retaliation claim, Retzlaff must show that his exercise of his constitutional rights was a substantial or motivating factor for defendant's actions. _Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle_, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). To defeat a plaintiff's prima facie First Amendment retaliation claim, a defendant must show that it would have taken the same action regardless of the plaintiff's protected conduct. _Dickinson Leisure Industries, Inc. v. City of Dickinson_, 329 F.Supp.2d 835, 846-47 (S.D.Tex.2004).

Defendants have presented evidence that Retzlaff lied on his application for admission to the MBA program and disobeyed the UTSA police captain's order not to contact the Chinese student who had complained that he was

658    harassing her; that such conduct constituted violations of the Student Code of Conduct; that after a *658 hearing process a hearing officer determined that his conduct required that he be permanently discharged from UTSA; and Retzlaff failed to appeal the decision, thus ending the administrative process. For his part, Retzlaff has presented absolutely no evidence that this conduct was motivated by any exercise of his Constitutional rights.

8/12/2014
Case 5:14-cv-01059-BLF   Document 35-2   Filed 08/14/14   Page 18 of 151
Retzlaff v. de la VINA, 606 F. Supp. 2d 654 - Dist. Court, WD Texas 2009 - Google Scholar

Any equal protection claims Retzlaff has brought must also fail. His complaint did not allege discrimination based on his membership in a particular class. Retzlaff's complaint is reduced to a claim that he was individually singled out for unfair treatment—that he is a "class of one." *Wheeler,* 168 F.3d at 251-52. Assuming that he has even stated a cognizable equal protection claim, Retzlaff must prove that he was treated differently than similarly-situated individuals. *Id.* at 252. Retzlaff has pointed to no individual who lied on his admission application and disobeyed an order from a university official and was not similarly disciplined.

Retzlaff's final cause of action is one for "malice." He cites to TEX. CIV. PRAC. & REM CODE § 41.001(7), which defines "malice." Chapter 41 is the damages chapter of the Civil Practice and Remedies Code. Section 41.003 permits recovery of exemplary damages if the claimant can prove malice by clear and convincing evidence. The Court does not recognize a cause of action for "malice" and can only surmise that Retzlaff pleaded malice in an attempt to recover exemplary damages. However, as Retzlaff has not raised an issue of material fact in support of any of his causes of actions, he certainly would not be entitled to exemplary or punitive damages.

Finally, defendants assert qualified immunity as a defense to Retzlaff's federal constitutional claims. Defendants have presented evidence that their actions were reasonable in light of clearly established law. *Kinney v. Weaver,* 367 F.3d 337, 346 (5th Cir.2004). As defendants have asserted their entitlement to qualified immunity in a properly supported motion for summary judgment, the burden was on Retzlaff to come forward with summary judgment evidence sufficient to sustain a determination that defendants' actions violated clearly established federal law. *Salas v. Carpenter,* 980 F.2d 299, 304, 306 (5th Cir.1992). He has failed to do so. The defendants are entitled to qualified immunity.

Defendants' motion for summary judgment is GRANTED, and all Retzlaff's claims are DISMISSED with prejudice. All pending motions are DENIED as moot. The Clerk is instructed to close this case.

Save trees - read court opinions online on Google Scholar.

# EXHIBIT 4



## Tom Retzlaff

Former Major in the US Army Military Police - Criminal Investigations Division

---

### Join LinkedIn and access Tom Retzlaff's full profile. It's free!

As a LinkedIn member, you'll join 300 million other professionals who are sharing connections, ideas, and opportunities.

- See who you and **Tom Retzlaff** know in common
- Get introduced to **Tom Retzlaff**
- Contact **Tom Retzlaff** directly

View Tom's full profile

---

### Tom Retzlaff's Overview

US Army Fighting Warrior at NATO Regional Command (Southwest) Afghanistan
White House Military Office (WHMO) at The White House
Military Police Officer MOS 31A at US Army
see all

**80 connections**

### Tom Retzlaff's Experience

**US Army Fighting Warrior**
**NATO Regional Command (Southwest) Afghanistan**
Government Agency; 10,001+ employees; Military industry
January 2005 – May 2009 (4 years 5 months)   Afghanistan, Herat Province and Nimruz Province

Assigned to the International Security Assistance Force, (ISAF), often called the Coalition Forces. I spent time along the Iranian border politely assisting those wishing to enter the Islamic Republic of Iran by bypassing or physically removing for them any kind of cross-governmental controls and man-made barriers so as to speed them upon their peaceable, westward journey.

Additionally, we would provide support to those travelers needing expeditious assistantance for their return journey due to the often unpredictable hostile conditions found to exist in-country. Said expeditious support could consist of many forms of land or air transportation, or lead being sent downrange.

**White House Military Office (WHMO)**
The White House
Government Relations industry
March 2004 – December 2004 (10 months)   Washington D.C. Metro Area

Provided military support for White House functions, including Presidential transportation and Emergency Services, as well as personal briefings to POTUS and the Chief of Staff.

**Military Police Officer MOS 31A**
US Army
Government Agency; 10,001+ employees; Military industry
2003 – 2004 (1 year)   Mosul, Iraq and ad-Dawr, Iraq

Assigned to Joint Task Force 121 (now known as JTF 6-26) - responsible for the apprehension of HVTs, including high-ranking officials of the former Iraqi Regime.

**HUMINT Officer MOS 35F as a TDY**
United States Department of Defense
Government Agency; 10,001+ employees; Military industry
2002 – 2003 (1 year)   Joint Task Force Guantanamo Bay (JTF-GTMO)

Was a member of Joint Task Force 170 (JTF-170) at Camp X-Ray, then was later assigned to Camp Platinum

### Tom Retzlaff's Languages

- English
- Bad English

### Tom Retzlaff's Skills & Expertise

| National Security | Counterintelligence | Counterterrorism | Homeland Security | Defense | Intelligence Analysis | Force Protection |
| --- | --- | --- | --- | --- | --- | --- |
| Army | | | | | | |

### Tom Retzlaff's Additional Information

Groups and Associations:   The Cato Institute in Washington, D.C.; The Brookings Institution; American Enterprise Institute; The John Birch Society.

U.S. Army

Honors and Awards:   Bronze Star with "V" device for valor; Purple Heart with two oak leaf clusters; Meritorious Service medal with a "V" device; Global

War on Terrorism Service Medal; Iraq Campaign Medal with Arrowhead device; Afghanistan Campaign Medal with Arrowhead device; Kuwait Liberation Medal (Saudi Arabia) the Naut Tahrir al-Kuwait (Arabic: ‏وسام تحرير الكويت‎); Kuwait Liberation Medal, the Wisam Al-Tahrir (Arabic: ‏وسام التحرير‎); US Army Senior Parachutist badge; the Joint Services Commendation Medal; the Army of Occupation medal – Germany for service in West Berlin prior to Reunification; Korea Defense Service Medal for service on the DMZ; German Armed Forces Badge for Weapons Proficiency (Schützenschnur) – Gold Award; US Army Expert Marksmanship Badges in categories representing various individual & crew served weapons.

Along with other various and sundry awards for showing up on time, shining my shoes, effective shuffling of papers from one pile to another, etc., etc.

## View Tom Retzlaff's full profile to...

- See who you and **Tom Retzlaff** know in common
- Get introduced to **Tom Retzlaff**
- Contact **Tom Retzlaff** directly

**View Tom's full profile**

Not the Tom Retzlaff you were looking for? View more »

LinkedIn Corporation © 2014

# EXHIBIT 5

f   Tom Retzlaff



Tom Retzlaff

Timeline    About    Photos    Friends    More ▼

Message    ⋯

## About

If you know Tom, send him a message

### Overview

Work and Education

Places He's Lived

Contact and Basic Info

Family and Relationships

### Details About Tom

⊙   Major U.S. Army Military Police - Criminal
Investigation Division at US Army Criminal
Investigation Command
Past The White House and United States Army

✕   Studied at U.S. Army Command and
General Staff College
Past Harvard Kennedy School and Stanford Law
School

⌂   Los Angeles, CA, United States

No places to show

No relationship info to show



Tom Retzlaff

Tom Retzlaff

Timeline    About    Photos    Friends    More ▼

Message ⋯

DO YOU KNOW TOM?

If you know Tom  send him a message

ABOUT

TOM'S TIMELINE

To see posts on Tom's timeline, send him a friend request.

🏛 Major, U.S. Army Military Police - Criminal
Investigation Division at US Army Criminal
Investigation Command

🎓 Studied at U.S. Army Command and General
Staff College

🏠 Lives in Los Angeles, California

# EXHIBIT 6

## TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-01-00647-CV

---

### Thomas Retzlaff, Appellant

### v.

### Monica Courteau, Appellee

---

### FROM THE DISTRICT COURT OF BELL COUNTY, 169TH JUDICIAL DISTRICT

### NO. 162,752-C, HONORABLE RICK MORRIS, JUDGE PRESIDING

---

At issue in this child-custody case, is the district court's order holding that the State of Texas was an inconvenient forum for determining the best interest of the child, L.C., and declining jurisdiction over L.C. in favor of a court in the State of New York. The New York court, in an order transmitted to the Texas district court, assumed jurisdiction over L.C. and all issues related to her custody. Accordingly, the Texas district court dismissed its proceedings related to L.C.[1] Thomas Retzlaff, an inmate, appeals *pro se* and *in forma pauperis*, and contends that the district court abused its discretion in ruling that Texas was an inconvenient forum for determining the best interest of L.C. and declining to exercise jurisdiction over the child. We will affirm the district court's order declining jurisdiction over L.C. and dismissing the case.

### Background

L.C. was born in 1995 to Laura who at the time was living with Kenneth Courteau.[2] In December 1996,

Laura and Kenneth were involved in a car accident. Laura was killed; Kenneth was seriously injured and remained in a coma for some time. Shortly after the accident, Kenneth's parents, Roger and Monica Courteau, came to Texas from New York to care for Kenneth and L.C. While in Texas, the Courteaus filed suit seeking to be named L.C.'s managing conservators. Kenneth was the named respondent. Martin and Gloria Lopez, Laura's father and stepmother, intervened also seeking to be named L.C.'s managing conservators.[3] Finally, Retzlaff intervened in the suit, contending that he was L.C.'s biological father and seeking conservatorship of the child. At some point in 1997, the Courteaus, Kenneth, and L.C. moved from Texas to New York to be near family.[4]

For additional background on this custody dispute, we refer to our previous opinion. See Retzlaff v. Courteau, No. 03-00-00321-CV, 2001 Tex. App. LEXIS 1258 (Tex. App.--Austin Feb. 28, 2001, no pet.) (not released for publication). In the previous opinion, we reversed the district court's dismissal of all trial-court proceedings. In that case, this Court determined that because Retzlaff proved that he did not timely learn of the district court's dismissal, the district court abused its discretion in declining to reinstate Retzlaff's pleadings absent a showing that it considered other options. Id. In the previous opinion, we noted specifically that "the circumstances of [L.C.'s] domicile and conservatorship may have changed during the pendency of this appeal, affecting Retzlaff's ability to proceed with this suit as pled in Bell County. . . . This suit is subject on remand to those potentially changed circumstances."

Indeed, since this Court's previous opinion, circumstances related to L.C. and the parties have changed. In March 2001, Kenneth commenced a paternity and child custody proceeding in the State of New York. Kenneth submitted as evidence to the New York court a sworn statement that he had sexual intercourse with the deceased mother of L.C. during the possible time of her conception. Kenneth also presented a copy of L.C.'s birth certificate identifying him as the father, along with a DNA paternity LabCorp report reflecting a probability of 99.98% that he was L.C.'s biological father. The New York court appointed a law guardian who recommended to the court that it would be in L.C.'s best interest for the New York court to grant Kenneth's requests. In May 2001, the court declared that Kenneth is L.C.'s biological father and awarded him custody of L.C.

### Retzlaff corresponds with the New York court

On July 3, 2001, the New York court received a letter from Retzlaff requesting that the court set aside or otherwise void its order of paternity and custody. Retzlaff informed the New York court that in January 1997, a child custody proceeding was commenced in Texas and that, as a result, the State of Texas had exclusive jurisdiction over L.C. pursuant to the Uniform Child Custody Jurisdiction Act ("UCCJA") and the Federal Parental Kidnapping Prevention Act ("PKPA"). Therefore, he asserted that the New York court was acting without jurisdiction.

In light of Retzlaff's assertions, the New York court appointed another law guardian to investigate any matters pending in the Texas courts and sent letters to the Texas district court and to Retzlaff notifying them of the court's action. Retzlaff responded by letter to the New York court and law guardian on July 10. The New York court found that in his letter Retzlaff made it clear that his interest in L.C. was to exact a monetary settlement from the Courteaus by persisting in litigation. In his letter to the law guardian and the New York court, Retzlaff emphasized that he was "not going away anytime soon" and that he would "continue litigating this case, using

every legal means at [his] disposal." Also in the letter, Retzlaff stated that he hoped the law guardian "might help facilitate a fair settlement." In another letter to the New York court and the law guardian on July 27, Retzlaff moved that the paternity suit be reopened because the proceeding in Texas was not a paternity action, that "[his] paternity had already been established as a matter of law via Kenneth Courteau's [deemed] admissions in which he admitted that he is not this child's father, and also via the child's mother's Affidavit of Paternity which is equivalent to a judicial determination pursuant to Tex. Fam. Code § 160.205(a)." The New York court responded with letters to Retzlaff and the Texas district court instructing Retzlaff that if he is the legal father of L.C. under Texas law, it was his responsibility to forward a certified copy of any document evidencing his status to the New York court by August 28. The New York court informed Retzlaff that these documents were necessary for the court to determine whether he was a necessary party to the paternity action and whether he had standing to challenge the New York court's exercise of jurisdiction.

## Texas proceedings

On May 4, 2001, Monica Courteau, who was a party in the underlying district court proceeding, moved to transfer the child custody portion of the Texas case to New York, contending that L.C. had resided in New York for more than two years and that all evidence regarding the child's best interest was located in New York.

In June 2001, Retzlaff filed a second amended suit in intervention in Texas requesting that he be declared L.C.'s biological father and that he be named the child's sole managing conservator. Monica responded and moved to strike Retzlaff's second intervention on the basis that the New York court had jurisdiction over L.C., that the New York court had adjudicated Kenneth to be the biological father of L.C. such that the child's paternity was res judicata, and that the New York order disposed of any issues Retzlaff might have regarding the child. Retzlaff responded and the Texas district court held a hearing on August 16.[5] At the hearing, the district court addressed various pending motions, but focused primarily on Monica's motion to transfer, which urged that Texas was an inconvenient forum for determining what was in L.C.'s best interest and that the New York court was a more convenient forum. At the conclusion of the hearing, the court rendered an order from the bench that Texas would decline jurisdiction over L.C., and that all further proceedings in Texas regarding the child were stayed pending confirmation that the New York court would assume jurisdiction.

On August 31, 2001, the Texas district court signed a written order concluding that New York is L.C.'s home state and has a closer connection than Texas with the child who is living there with her father and grandmother; the court also concluded that evidence concerning L.C.'s welfare is more readily available in New York, and a New York court can best decide what is in L.C.'s best interest, while Texas is an inconvenient forum to make that determination. Further, the district court declined jurisdiction regarding custody of L.C., stayed all proceedings in Texas until the New York court agreed to assume jurisdiction, and announced that once the New York court assumed jurisdiction, the case pending in Texas would be dismissed. The district court also severed all other actions pending against Monica and Kenneth into a separate cause. The district court rendered findings of fact and conclusions of law related to the portion of its order declining jurisdiction.

## New York order

On August 28, 2001, at a court appearance, the law guardian reported to the New York court that despite Retzlaff's claim that an "affidavit of paternity" existed, Texas court officials were unable to produce any such

document from Retzlaff's files. The law guardian also informed the court that Retzlaff had failed to produce such a document and was now claiming that Texas court officials had lost this crucial document. Retzlaff informed the law guardian by letter that $5000 was his price for discontinuing his claims against the Courteaus and agreeing to have no further contact with the Courteau family.

On August 29, the New York court determined that it would continue to exercise jurisdiction over L.C. The court's order and decision outlined the Texas court's findings that New York was the child's home state and that New York, rather than Texas, was best suited to determine what was in L.C.'s best interest. The order provided that the Texas court's findings were consistent with New York law and that the New York court agreed with the Texas court's findings. The remaining issue for the New York court was whether its exercise of jurisdiction over L.C. was consistent with the PKPA. *See* 28 U.S.C.A. § 1738A. The court determined that any issue of whether New York could exercise jurisdiction over custody of L.C. consistent with the PKPA was resolved when the Texas court declined jurisdiction over the child. The New York court transmitted a copy of its order to the Bell County District Court. Finally, the court denied Retzlaff's motion for rehearing "without prejudice to [Retzlaff's] right to initiate appropriate proceedings in Erie County Family Court by the filing of a sufficient petition."

### *Texas dismissal*

On August 31, 2001, the Texas district court dismissed the underlying cause, noting that the New York court had assumed jurisdiction over L.C. Retzlaff raises three issues in this appeal. He contends that the district court (1) abused its discretion in ruling that Texas was an inconvenient forum to determine the best interest of L.C.; (2) erred in admitting testimony from L.C.'s attorney *ad litem* over Retzlaff's objections; and (3) erred in denying his motion for new trial.

### Uniform Child Custody Jurisdiction Act

Because this custody case commenced in 1997 and was pending on September 1, 1999, the issues before us are governed by the former Texas version of the UCCJA. *See* Act of April 22, 1999, 76th Leg., R.S., ch. 34, § 2, 1999 Tex. Gen. Laws 70; Act of April 6, 1995, 74th Leg., R.S., ch. 20, § 1, 1995 Tex. Gen. Laws 140-46 (formerly Tex. Fam. Code Ann. §§ 152.001-.025, since repealed).[6]

A Texas court with jurisdiction to make a child custody determination may, *sua sponte*, on a motion of a party or guardian *ad litem*, or on a motion of any other representative of the child, decline to exercise its jurisdiction at any time before rendering a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum. *See* Act of April 6, 1995, 74th Leg., R.S., ch. 20, § 1, 1995 Tex. Gen. Laws 143-44, (formerly Tex. Fam. Code Ann. § 152.007 (a),(b), since repealed). For convenience we refer to this governing section as "former section 152.007." In determining whether it is an inconvenient forum, the court shall consider whether it is in the best interest of the child that another state assume jurisdiction. Former § 152.007(c). The court may consider, among other factors, whether (1) another state is the child's home state; (2) another state has a closer connection with the child and the child's family or with the child and one or more of the contestants; (3) substantial evidence

concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state; (4) the parties have agreed on another forum that is no less appropriate; and (5) the exercise of jurisdiction would contravene any of the stated purposes of the UCCJA. *Id.* Before determining whether to decline or retain jurisdiction, the court may communicate with a court of another state and exchange information pertinent to the assumption of jurisdiction by either court with a view to ensuring that jurisdiction will be exercised by the more appropriate court. *Id.* § 152.007(d).

Also relevant to the issue is the UCCJA provision requiring that when a Texas court is informed, during the pendency of a custody proceeding, that a proceeding concerning custody of the same child is pending in another state, before assuming jurisdiction, the Texas court shall stay the proceeding and communicate with the other court to the end that the custody issue may be litigated in the more appropriate forum. *See* Act of April 6, 1995, 74th Leg., R.S., ch. 20, § 1, 1995 Tex. Gen. Laws 142 (formerly Tex. Fam Code Ann. § 152.006 (c), since repealed). Further, if a Texas court is informed that a custody proceeding was commenced in another state after the Texas court assumed jurisdiction, it shall likewise inform the other court to the end that the custody issues may be litigated in the more appropriate forum. *Id.*

## Discussion

### *Inconvenient forum*

All of Retzlaff's contentions center around his complaint that the district court abused its discretion in ruling that Texas was an inconvenient forum to determine custody issues regarding L.C. and that the New York court was a more appropriate forum to determine what was in her best interest. The district court's determination will not be disturbed on appeal absent an abuse of discretion. *See Coots v. Leonard*, 959 S.W.2d 299, 301 (Tex. App.--El Paso 1997, no pet.) (citing *Creavin v. Moloney*, 773 S.W.2d 698, 702 (Tex. App.--Corpus Christi 1989, writ denied)). In determining whether the Texas court abused its discretion, we review whether the court acted without reference to any guiding rules and principles and whether the court's actions were arbitrary and unreasonable. *Id.* (citing *Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124, 126 (Tex. 1939), *Smithson v. Cessna Aircraft Co.*, 665 S.W.2d 439, 443 (Tex. 1984)). The fact that the trial court may decide a matter within its discretion differently than would the appellate court does not demonstrate an abuse of discretion. *Id.* (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985)).

It was uncontested that L.C. has been living with the Courteaus in New York since 1997 and that New York is her home state. It is also undisputed that all information regarding L.C.'s current care and all of her known family relationships exist in New York. There is nothing in the record reflecting that any evidence exists in Texas regarding her care or her significant relationships. The only alleged connection between L.C. and the State of Texas is Retzlaff, who continues to purport to be L.C.'s biological father, despite a New York court order, based on paternity tests and other relevant evidence, declaring that Kenneth is L.C.'s biological father. We must give full faith and credit to the facially valid New York paternity order. *See Villanueva v. Office of Atty. Gen.*, 935 S.W.2d 953, 956 (Tex. App.--San Antonio 1996, writ denied) (citing *Durfee v. Duke*, 375 U.S. 106, 111 (1963)). Further, we afford the New York paternity order naming Kenneth the biological father of L.C. the same *res judicata* effect it would have in New York. *Id.* (citing *Durfee*, 375 U.S. at 109). Despite Retzlaff's assertions, the New York court's order is *res judicata* regarding L.C.'s paternity.

Among the stated goals of the UCCJA is the avoidance of jurisdictional competition and continued relitigation of custody decisions, and the promotion of cooperation between the states to ensure that a custody decision is rendered in the state that can better determine the best interest of the child. *See* Act of April 6, 1995, 74th Leg., R.S., ch. 20, § 1, 1995 Tex. Gen. Laws 140 (formerly Tex. Fam Code Ann. § 152.001, since repealed). In this instance, the courts in Texas and New York communicated in an exemplary fashion to meet the stated goal of the UCCJA--to determine the forum best suited to review and determine issues regarding L.C.'s custody. We hold that there was no abuse of discretion by the district court in declining jurisdiction over L.C. in favor of the New York court. Retzlaff's first issue is overruled.

In his second issue, Retzlaff contends that the district court erred in admitting testimony from Michael Gibbs, L.C.'s attorney *ad litem*, over objection. The admission of evidence is within the district court's discretion. *See City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995). To obtain reversal of a judgment based on error in the admission of evidence, Retzlaff must show that the district court's ruling was in error and that the error was calculated to cause and probably did cause the rendition of an improper judgment. *See id.* We hold that Retzlaff has failed to show that error, if any, in the district court's admission of testimony from Gibbs was calculated to cause and probably did cause the rendition of an improper judgment. *See* Tex. R. Evid. 103; Tex. R. App. P. 44.1. Retzlaff's second issue is overruled.

Finally, Retzlaff contends that the district court erred in overruling his motion for new trial.[7] In his motion for new trial, Retzlaff contended that the court's findings of fact and conclusions of law were unsupported by the evidence and that the district court abused its discretion in declining jurisdiction. Having determined that the district court did not abuse its discretion in declining jurisdiction over L.C. in favor of a New York court, we overrule Retzlaff's third issue.

We affirm the district court's order declining jurisdiction over L.C. and dismissing the case.

Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Yeakel

Affirmed

Filed: October 24, 2002

Do Not Publish

1.   Additionally, the district court severed other actions pending against other parties and transferred those actions into a new cause.

2.   L.C.'s mother is identified in court records as "Laura Courteau" and "Laura Anel Ellison." Because it is unclear what Laura's last name was, we will use her first name. Whether a common-law marriage existed is not addressed or established in the record.

# EXHIBIT 7

Cause No. 338432

| | | |
|---|---|---|
| TOM RETZLAFF, | § | IN THE COUNTY COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | AT LAW NO. 3 |
| | § | |
| GOAMERICA COMMUNICATIONS | § | |
| CORPORATION, AARON DAVID | § | |
| DUBRINSKI, JOHN and/or JANE DOE, | § | |
| | § | |
| Defendants. | § | OF BEXAR COUNTY, TEXAS |

## ORDER

ON THIS 26th day of June, 2008, came to be heard GoAmerica, Inc.'s Motion for Expedited Hearing on its Amended Motion for Rule 13 Sanctions and Motion to Declare Plaintiff a Vexatious Litigant and Request for Substituted Service on Plaintiff. The Court, having reviewed the motion and considered all matters raised, finds that it should be **GRANTED.**

**IT IS, THEREFORE, ORDERED** that Mr. Retzlaff is prohibited from appearing, contacting, communicating, or coming within 150 feet of any past or present officer, director, employee, agent or attorney of GoAmerica, Inc., including Aaron David Dobrinsky; and

**IT IS FURTHER ORDERED** that Mr. Retzlaff is prohibited from appearing or coming within 150 feet of the offices of Davis, Cedillo & Mendoza, Inc. located at 755 E. Mulberry, McCombs Plaza, San Antonio, Texas; and

**IT IS FURTHER ORDERED** that Mr. Retzlaff is prohibited from coming within 150 feet of David S. Denton, unless Mr. Retzlaff is appearing for a hearing or other court-approved matter specifically related to the administration of this lawsuit; and

NY2 - 498572.01

EXHIBIT
C

**IT IS FURTHER ORDERED** that Mr. Retzlaff is prohibited from appearing or coming within 150 feet of the offices of Chadbourne & Parke LLP, 30 Rockefeller Plaza, New York, New York; and

**IT IS FURTHER ORDERED** that Mr. Retzlaff is prohibited from filing any litigations in any court located in the State of Texas without first obtaining permission of the local administrative judge after the local administrative judge finds that the proposed litigation has merit and has not been filed for the purpose of harassment or delay; and

**IT IS FURTHER ORDERED** that *Retzlaff v. GoAmerica Communications Corporation, et al.*; Cause No. 338432; pending in the County Court at Law No. 3, is stayed pursuant to Texas Civil Practice & Remedies Code § 11.052 pending determination of GoAmerica's Motion to Declare Plaintiff a Vexatious Litigant; and

**IT IS FURTHER ORDERED** that Mr. Retzlaff is prohibited from filing any motion in the instant action without first obtaining permission from the Court.

SIGNED this $\cancel{24}$ day of June, 2008.

*Karen Crouch*

JUDGE PRESIDING

T:\17000 - 17999\17600-17699\17688.0001\Pleadings-Motions\order.temp.final.DOC

NY2 - 498572.01

 **BV Files** *said:*                        May 16, 2014 at 5:07 pm

*NOT BEING LISTED ON THE SEX OFFENDER REGISTRY AND*
*NOT BEING A "SEX OFFENDER" IS PLAYING SEMANTICS*

Actually, dumb ass, its not "semantics" its the law. Calling
someone a CONVICTED sex offender is a pretty big deal.
Especially coming from a lawyer who knows the difference.

Dealing with a vexatious litigant is like dealing with a ticking
time bomb. You don't fuck with it because any misstep on
your part will ruin your day.

Didn't McGibney sue someone for $250,000 when that
person falsely accused McGibney with being a pedophile?
So how is Thomas suing Leiderman wrong? Oh, because
you don't like Thomas so that makes it okay, right? So we
have two different kinds of law: one for people we like and
the other for people we don't like, is that it?

Leiderman is certified by the state of California as being a
Criminal Law specialist. This is him bragging about it on his
web page:

There are over 200,000 licensed attorneys in California.
As of June 16, 2008, there were 335 Certified Criminal
Law Specialists. Jay Leiderman is a certified specialist in
Criminal Law. He received his certification from the State
Bar of California's Board of Legal Specialization in 2006.

So this isn't some regular Joe Blow making this false claim –
it was a Certified Criminal Law Specialist, one of only 335 in
the state of California. And he said not just once, but he
said it repeatedly to many different people.

It doesn't matter whether you like Thomas or not. The law
is the law is the law, and it applies equally to all people –
not just those we like.

# EXHIBIT 8

**Office of Court Administration**
**List of Vexatious Litigants**
**Subject to Prefiling Orders under Section 11.101, Civil Practice and Remedies Code**

| Last Name | First Name | Suffix | Middle Name | Other Known Names Used | Date | Cause # | Court | County | Style |
|---|---|---|---|---|---|---|---|---|---|
| Alexander | Rebecca | | | | 5/24/2011 | 2008-1531-DR | 307th | Gregg | In the Interest of Madison Paige Horton, a child |
| Alpine | Charles | Willy | | | 12/15/2000 | 737,224 | CCL #2 | Harris | Charles Willy Alpine v. O.C. Bradford & Sgt. Gabardo |
| Alvarado | Alcario | | | Lucy Hernandez, representative for Alcario Alvarado | 11/4/2011 | 2011-577-282 | 237th | Lubbock | Alcario Alvarado v. Johnny Boyles and the Lubbock Health Care Center, et al |
| Amir-Sharif | Lakeith | | | | 11/12/2009 | DC-09-13818 | 101st | Dallas | Lakeith Amir-Sharif v. Quick Trip Corporation and Chester Cadieux |
| Amir-Sharif | Lakeith | | | | 3/8/2012 | DC-09-13818 | 101st | Dallas | Lakeith Amir-Sharif v. Quick Trip Corporation and Chester Cadieux |
| Annamalai | Annamalai | | | Swamiji Sri Selam Sidhar | 10/29/2013 | 2013-22070 | 151st | Harris | Annamalai Annamalai v. Sridhar Dadi, Sri Ravula, Ashirvad A blessing Temple, and Radio Hungama |
| Andrews | Tanenankhaka | | | | 4/21/2005 | 04-04346 | 193rd | Dallas | Tanenankhaka Andrews, a/k/a Kaiser Bernard Ford III v. State of Texas, et al. |
| Aranda | Roque | Tercero | | Kaiser Bernard Ford III | 7/18/2005 | 05-04-14972 | 108th | Gaines | The State of Texas v. Roque Tercero Aranda |
| Argo | Dorothy | E. | | | 8/27/2009 | 116747 | JP Pct 2 | Travis | Dorothy E. Argo, as trustee for James Argo Trust v. Toll Dallas TX, LLC |
| Atala | Rosa | Franca | | | 2/1/2012 | 003-3500-2011 | CCL #3 | Collin | Rosa Arola v. State of Texas, Its Persons, Firms, Corporations, Associations, and Political Entities, et al |
| Azqiga | Kechiayere | Franca | | | 10/16/2002 | 2002-31575 | 234th | Harris | Kechiayere Franca Azqiga v. Texas Employment Commission, et al |
| Batholie | Stacy | | | | 11/18/2011 | 324-457191-09 | 324th | Tarrant | In the Interest of Colton W. Kiely and Kaleb W. Kiely, Children |
| Barker | Wayne | Ernest | TDCJ #000987 | | 5/10/2010 | 12,850 | 12th | Walker | Wayne Ernest Barker, #000987 v. Thomas Hall, et al |
| Biali | Shelia | Sansom | | | 12/15/2009 | 2009-50674 | 129th | Harris | Shelia Sansom Biali vs. Dean Fisher |
| Bonner | Robert | Walter | | | 9/10/2012 | C20120086 | 413th | Johnson | Robert Walter Bonner v. H&K USP Compact, 45 Caliber Semi Automatic Pistol with Two Magazines Loaded with 16 Rounds of Ammunition, And Contained in a Day Planer Style Carrying Case |
| Both | Shawna | Lyn | | | 5/11/2005 | 55233-C | 251st | Randall | Shawna Lyn Borth v. John C. Kelleher, Jr., M.D. |
| Boyd | Wayne | | | | 1/23/2014 | 20,226 | 42nd | Callahan | Wayne Boyd v. Texas Workforce Commission |
| Brown | Basil | | | | 9/9/2004 | GN401204 | 261st | Travis | Basil Brown & Yvonne Brown v. Texas Board of Nurse Examiners, et al |
| Brown | Yvonne | | | Yvonne Evette Mosley Brown | 9/9/2004 | GN401204 | 261st | Travis | Basil Brown & Yvonne Brown v. Texas Board of Nurse Examiners, et al |
| Brown | Yvonne | Evette Mosley | | Yvonne Brown | 6/5/2003 | GN301491 | 126th | Travis | Yvonne Evette Mosley Brown v. Texas Board of Nurse Examiners and State Office of Administrative Hearings |
| Busch | Phil | | | | 2/25/2009 | 08-07785 | 160th | Dallas | SAS Institute Inc., Phil Strand and Jane Woyciehowsky v. Phil Busch |
| Chase | Eric | Edgar | | | 9/14/2007 | GIC-2007-01198 | CCL #2 | Denton | In the Matter of Eric Edgar Chase |
| Clifton | Robert (Bob) | T. | | | 11/3/2008 | 2008-10994-16 | 393rd | Denton | Robert T. "Bob" Clifton, et al v. Jennifer Wallers in her official capacity as City Secretary for the City of Denton, Texas |
| Cortez | Rudy | | | | 5/14/2014 | 14-03-19298 | 105th | Dawson | Rudy Cortez v. Progressive Certified Agency, Henry Norris Insurance |
| Crenshaw | Sandra | | | | 10/24/2008 | 08-03187-H | 160th | Dallas | Sandra Crenshaw v. Timolyn Smith |
| Crim | Terry | W. | | Terry Wayne Crim; Terry Crim | 9/10/2003 | 296-01948-03 | 296th | Collin | Terry W. Crim v. Collin County, Matthews, Carlton, Stein, Shinis, Pearce & Knoll, L.L.P. and Robert J. Davis |
| Daniel | Evelyn | F. | | | 5/9/2005 | 05-02754-K | 192nd | Dallas | Evelyn F. Daniel v. Mayor Laurie Miller, City of Dallas and Dallas County Commissioner John Wiley Price |
| Del Rio | Victor | | | | 8/14/2009 | 2009-17355 | 157th | Harris | Victor Del Rio v. City of Houston, Harris County, and the State of Texas |
| Dolenz | Bernard | J. | | | 3/3/2008 | 715117 | 192nd | Dallas | Bernard J. Dolenz v. John Broudy, et al |
| Doughty | Lawrence | | | | 3/20/2014 | DC-14-02081 | 160th | Dallas | Lawrence Doughty v. BLTREJV3 Dallas, LLC, J.P. Morgan Chase & Co. and Dallas County Constable Office  NOTE: Prefiling order applies only to BLTREJV3 Dallas regarding possession of property located at 1010 Sanders, Duncanville, TX. |
| Douglas | Ralph | O. | TDCJ#1004998 | | 5/23/2008 | 2008-38952 | 127th | Harris | Ralph O. Douglas v. Jimmie W. Jones and Christine Jones NOTE: Prefiling order applies only to Harris County |
| Douglas | Ralph | O. | TDCJ#1004998 | | 10/22/2012 | 12-DCV-200383 | 268th | Fort Bend | Ralph O. Douglas v. Hon. Brady G. Elliott, et al |
| Douglas | Ralph | O. | TDCJ#1004998 | | 11/4/2013 | 28268 | 12th | Walker | Ralph O. Douglas v. William Turner |
| Dowe, Jr. | Kenneth | Richard | | | 4/16/2014 | D005-16047-Z | 256th | Dallas | In the Interest of Daniel Dowe, a minor child (Note:  Prefiling order appears to limit its applicability to new litigation filed in the 256th District Court involving the son of Kenneth Dowe, Jr.) |
| Drum | Ben | Richard | | | 4/24/2007 | DC-06-12413 | 191st | Dallas | Ben Richard Drum v. Cynthia Figueroa Calhoun, et al |

Office of Court Administration
List of Vexatious Litigants
Subject to Prefiling Orders under Section 11.101, Civil Practice and Remedies Code

| Vexatious Litigant | | | | Other Known Names Used | Date | Cause # | Court | County | Style |
|---|---|---|---|---|---|---|---|---|---|
| Last Name | Suffix | First Name | Middle Name | | | | | | |
| Duffee | | Jacob | | d/b/a Texas Association of Disabled Persons | 7/11/2012 | DC-12-00694-1 | 162nd | Dallas | Texas Association of Disabled Persons v. 411 E. Hwy 67 Partners, Ltd |
| Erdman | | Dennis | Guy | | 11/25/2009 | 2008-21955 | 269th | Harris | Dennis Guy Erdman v. Daniel Gig Erdman |
| Ford | | Kenneth | | TDCJ #558289 | 4/30/2003 | 20190 | 411th | Polk | Kenneth Ford v. Brian Clendennen |
| Ford | | Kenneth | | TDCJ #558289 | 8/27/2003 | CIV20318 | 411th | Polk | Kenneth Ford v. Victor Boston |
| Fox | | Robert | James | | 8/29/2006 | 06-03320-G | 134th | Dallas | Robert James Fox v. Charles W. Cameron, Jr., et al |
| Garland | | Robert | | | 6/24/2011 | 048-252127-11 | 48th | Tarrant | Robert Garland v. National Bank of Texas, and Francis Ritchie |
| Garrett | | Michael | Lou | | 11/25/2009 | 171,007-A | 30th | Wichita | Michael Lou Garrett v. Barry L. Macha |
| Geiger | | Michael | E. | | 4/15/2009 | 08-12-18039 | 106th | Dawson | Michael E. Geiger v. Stephanie Almond, et al |
| Giannetti | | Ron | | | 6/20/2011 | 231-492540-11 | 231st | Tarrant | In the Matter of the Marriage of Ron Giannetti and Eva Giannetti and the Interest of Cindi Giannetti, a Child |
| Goetz | | Lynn | Lovit | | 4/11/2008 | 2007-71359 | 257th | Harris | Lynn Lovit Goetz v. Joseph Samuel Goetz, et al NOTE: Prefiling order applies only to litigation filed against "Dr. Joseph S. Goetz ("Dr. Goetz"), Jennifer Webb-Goetz ("Dr. Goetz's wife"), Samuel and Gertrude Goetz ("Dr. Goetz's parents"), Allan Africk, Trustee, the 1997 Goetz Family Irrevocable Trust, the 1990 Revocable Goetz Family Trust, and MSJ Partnership. |
| Goodwin | | Lisa | Dawn | | 4/16/2010 | DF-04-09284-U | 302nd | Dallas | In the Interest of Julia Katrine Fleckenstein, a child |
| Hallfke | | Eugene | R. | | 8/1/2012 | 004-1341-2012 | CCL #4 | Collin | Eugene R. Hallfke v. Rocky's Motors, Orlando Gonzalez |
| Hall | Jr. | Walter | Lee | | 12/16/2010 | D-1-GN-10-002606 | 201st | Travis | Walter Lee Hall, Jr., in all Necessary Capacity vs. Hon. J. David Phillips, et al |
| Harris | | Kenneth | L. | | 8/1/2005 | 05-00562-D | CCL #4 | Dallas | Kenneth L. Harris v. Marla E. Rosa |
| Haynes | | Theresa | | | 3/6/2006 | 04-02-01229-CV | 284th | Montgomery | Theresa Hayes in Trust for Dominique Haynes v. Constable Chumley, Montgomery County, Montgomery County Tax Office, Walden CIA, Montgomery County District Court, Susan and Arnold Escobar |
| Hornbuckle | Sr. | Estate of William | | Any and all heirs to the Estate of William Hornbuckle, Sr. | 2/10/2011 | 153-247693-10 | 153rd | Tarrant | Ronald Jones or William Hornbuckle, Jr. v. Massachusetts Mutual Life Insurance Company and Bank of America National Association and R. Dwayne Danner, Kelly Orlando and Robert Mowery (Note: Prefiling order applies only to litigation filed relating to the claims asserted in the cases listed in Exhibit A) |
| Hornbuckle | | Lurea | | | 6/10/2010 | 352-244389-10 | 153rd | Tarrant | Lurea Horbuckle or William Hornbuckle, Sr. v. Massachusetts Mutual Life Insurance Company, Bank of America National Association and Barrett Daffin Frapier & Engel [NOTE: Prefiling order applies only to litigation filed against Massachusetts Mutual Life Insurance Company, Bank of America National Association and Barrent Daffin Frapier & Engel] |
| Hornbuckle | | Lurea | | | 6/10/2010 | 352-244389-10 | 153rd | Tarrant | Lurea Horbuckle or William Hornbuckle, Sr. v. Massachusetts Mutual Life Insurance Company, Bank of America National Association and Barrent Daffin Frapier & Engel [NOTE: Prefiling order applies only to litigation filed against Massachusetts Mutual Life Insurance Company, Bank of America National Association and Barrent Daffin Frapier & Engel] |
| Hornbuckle | Sr. | William | | Any and all heirs to the Estate of William Hornbuckle, Sr. | 2/10/2011 | 153-247693-10 | 153rd | Tarrant | Ronald Jones or William Hornbuckle, Jr. v. Massachusetts Mutual Life Insurance Company and Bank of America National Association and R. Dwayne Danner, Kelly Orlando and Robert Mowery (Note: Prefiling order applies only to litigation filed relating to the claims asserted in the cases listed in Exhibit A) |
| Hylken | | Kent | | | 5/14/2009 | 08CV1246 | 405th | Galveston | Future Energy LLC vs. Frank Schaefer, Frank Schaefer Construction, Inc., Schaefer Family Trust, Edward Spooner, Galveston Shores LP |
| Jackson | | Katherine | Sue Sanchez | | 11/30/2000 | 98-12149 | 53rd | Travis | Michael J. McAuliffe v. Katherine Sue Sanchez Jackson |
| Jackson | | Reidie | James | | 6/28/2013 | 10126D-C | 251st | Potter | Reidie James Jackson v. David Ellis, et al |
| Jackson | | Reidie | James | | 11/15/2013 | 101697-E | 108th | Potter | Reidie James Jackson v. Oliver Bell, et al |
| Janecek | | Allan | | | 9/21/1998 | 20,108 | 25th | Gonzales | The Janecek Partnership, and Allen Janecek, Partner of the Janecek Partnership v. Jana Janecek |

Office of Court Administration
List of Vexatious Litigants
Subject to Prefiling Orders under Section 11.101, Civil Practice and Remedies Code

Exhibit A

| Last Name | First Name | Suffix | Middle Name | Other Known Names Used | Date | Cause # | Court | County | Style |
|---|---|---|---|---|---|---|---|---|---|
| Jarrell | Emmanuel | | Edward | | 11/23/2010 | SC10-8544J11; SC10-8543J11; SC10-8541J11 | Precinct 1 Place 1 | Taylor | Emmanuel Jarrell v. Alexander Claim Service, Inc. and Barbara J. Alexander; Emmanuel Jarrell v. Moutray & Associates Insurance Agency, Inc. and Johnny F. Moutray and Emmanuel Jarrell v. Hochheim Prairie Farm Mutual Insurance Association |
| Johnson | Alfred | | Edward | | 5/8/2003 | 2001-34705 | 281st | Harris | Alfred Edward Johnson v. Shelby Ranly, et al |
| Johnson | Arthur | | | | 2/5/2003 | 2002-56659 | 164th | Harris | Arthur Johnson v. Joe Johnson, Jr., et al |
| Johnson | R. | | Wayne | "Legal Eagle" #282755 TDCJ | 6/14/2001 | B-01-1159-0-CV-B | 156th | Bee | R. Wayne Johnson v. John Cornyn and Andy Taylor |
| Johnson | R. | | Wayne | "Legal Eagle" #282757 TDCJ | 7/21/2009 | 2009-15297 | 133rd | Harris | R. Wayne Johnson v. Mary Bacon |
| Johnson | R. | | Wayne | "Legal Eagle" #282758 TDCJ | 8/26/2010 | D-1-GN10-001424 | 345th | Travis | R. Wayne Johnson v. Oliver Bell, et al |
| Jon | Ray | | | TDC-HD #626840 | 9/21/2009 | 24717 | 278th | Walker | Ray Jon, TDC-HD #626840 v. Kenneth Gaston, et al |
| Jones | Felicia | | Nicole | | 5/19/2014 | 75486-CV | 412th | Brazoria | Felicia Nicole Jones v. Louis Vuitton; Mercedes-Benz of Houston Greenway; Toll Brothers; and Mazda North American Operations, et al |
| Jones | Harvella | | | | 3/12/2014 | 14-CCV-052079 | County Civil Court #2 | Fort Bend | Harvella Jones v. This "Nina" Tran; James H. Leslund; Marc D. Markel; Clayton R. Hearn; Amy M. Vanhoose; Dawn S. Holiday; Jonathan Anderson; Clinton Favor Brown and Roberts Markel Weinberg Butler Hailey PC a/k/a Roberts Markel Weinberg PC a/k/a Roberts Markel PC |
| Jones | Ronald | | | Any and all heirs to the Estate of William Hornbuckle, Sr. | 2/10/2011 | 153-247693-10 | 153rd | Tarrant | Ronald Jones or William Hornbuckle, Jr. v. Massachusetts Mutual Life Insurance Company and Bank of American National Association and R. Dwayne Danner, Kelly Orlando and Robert Mowery [Note: Prefiling order applies only to litigation filed relating to the claims asserted in the cases listed in Exhibit A] |
| Juarez | Israel | | | | 1/23/2012 | DC-11-14931-L | 193rd | Dallas | Israel Juarez, Affiant Applicant; State of Texas, Israel Juarez, Craig Watkins, John F. Warren, Garry Fitzsimmons, Abelina "Abel" Reyna, Karen Makin, U.S. District Court for the Northern District of Texas Dallas Division, First State Bank, 170th Judicial District Court, and U.S. Marshal Northern District of Texas, Respondent |
| Kachar | Karen | | | | 2/19/2008 | 2007-50084 | 257th | Harris | In the Interest of Nikola Kaz Kachar, a Child |
| Kastner | Kristofer | | Thomas | | 8/7/2009 | 2009-CI-06774 | 407th | Bexar | Kristofer Thomas Kastner v. Martin, Drought & Torres, Inc., et al [NOTE: Prefiling order applies only to litigation filed against Martin & Drought, P.C. F/K/A Martin & Drought, Inc. and F/K/A Martin, Drought & Torres, Inc.; Gerald Drought; and/or Duin A. Dreyer] |
| Kastner | Kristofer | | Thomas | | 3/2/2010 | D-1-GN-09-004337 | 53rd | Travis | Kristofer Thomas Kastner v. The Texas Board of Law Examiners and Julie E. Vaughn [NOTE: Prefiling order applies only to litigation filed against the Texas Board of Law Examiners and Julie E. Vaughn] |
| Kastner | Kristofer | | Thomas | | 4/30/2012 | 2011-54173 | 133rd | Harris | Kristofer Thomas Kastner v. Frank Sanders; Elizabeth Bomser; Harris County; Kerri Burch |
| Kastner | Kristofer | | Thomas | | 6/25/2012 | 2011-76848 | 165th | Harris | Kristofer Thomas Kastner v. Texas Workforce Commission and Rosehill Enterprises LLC dba Houston Admiral Services |
| Kastner | Kristofer | | Thomas | | 3/4/2013 | 2011-76848 | 165th | Harris | Kristofer Thomas Kastner v. Texas Workforce Commission and Rosehill Enterprises LLC dba Houston Admiral Services |
| Kennedy | Janet | | May | | 4/10/2006 | 05-1769 | 274th | Hays | Janet May Kennedy vs. Bobby Joe Kennedy |
| Kim | Koo-Hyun (John) | | | | 3/2/2009 | D-1-GN-08-003831 | 353rd | Travis | (John) Koo-Hyun Kim v. David Evans, et al |
| King | Richard | Jr. | M. | | 5/17/2005 | 16,696HC-6 | 6th | Lamar | Richard M. King, Jr. Petitioner/Plaintiff for Writ of Habeas Corpus #6 |
| Kristofer | Karen | | Kay | | 10/7/1999 | 97-31826 | 165th | Harris | Karen Kay Kristofer and Surrogate Legal Services v. Gary Block, et al |
| Laginie | Luis | Jr. | S. | TDCJ#762508 | 4/25/2011 | 99,500E | 108th | Potter | Luis S. Laginie, Jr. vs. Steven K. McCoy, Et al, Mario T. Heitigen, Chief of Classification, Terry Rivines, Hearing Officer, Vicente R. Sallegos, Jr., Wesley Pyke and Jamie Baker |
| Laginie | Luis | Jr. | S. | TDCJ# 762508 | 9/13/2011 | 97,061-C | 251st | Potter | Luis S. Laginie, Jr. vs. Gregory C. Behrend, et al |
| Lansiek | Robert | | A. | | 4/9/2008 | 324-227932-07 | 324th | Tarrant | Robert A. Lansiek v. Lisa K. Lansiek |
| Lee | Man-Wai | | | | 10/21/2011 | 005-02277-2011 | CCL #6 | Collin | Mei Lee v. Chase Home Finance and Compass Bank, Justice Court Precinct 3, Place 1 Collin County, Stevenson & Ricker, Office of the Collin County Constable |

**Office of Court Administration**
**List of Vexatious Litigants**
**Subject to Prefiling Orders under Section 11.101, Civil Practice and Remedies Code**

| Last Name | First Name | Suffix | Middle Name | Other Known Names Used | Date | Cause # | Court | County | Style |
|---|---|---|---|---|---|---|---|---|---|
| Lee | Mel | | | | 10/21/2011 | 005-02277-2011 | CCL #6 | Collin | Mel Lee v. Chase Home Finance and Compass Bank, Justice Court Precinct 3, Place 1 Collin County, Stevenson & Ricker, Office of the Collin County Constable |
| Leonard | Erik | | | | 4/21/2003 | GN300289 | 200th | Travis | Erik Leonard v. Greg Abbott, Attorney General of Texas, the Harris County Houston Sports Authority, Harris County, and the City of Houston |
| Liptak | Virgil | | | | 6/26/2001 | 95-17218-S | 256th | Dallas | In the Matter of the Marriage of Elizabeth Thornhill and Virgil Liptak |
| Lisson | Stephen | | N. | | 9/2/2005 | GN500835 | 353rd | Travis | Stephen N. Lisson v. Mary Padgett, Ed Padgett, Chris Padgett, and Ed Padgett Company |
| Locke | Robert | (Star) | | | 4/23/2010 | 10-1685-A | 28th | Nueces | Robert (Star) Locke v. Nueces County |
| Lollice | Don | | | USA Cars Inc. | 7/3/2013 | 01-SC-13-00143 | Precinct 1 | Collin | USA Cars, Inc. v. Joe Barton, Individual and Joe Barton, Constable, Collin County; and Gary Boone, Individual and Deputy, Collin County |
| Lollice | Peggy | | | USA Cars Inc. | 7/3/2013 | 01-SC-13-00143 | Precinct 1 | Collin | USA Cars, Inc. v. Joe Barton, Individual and Joe Barton, Constable, Collin County; and Gary Boone, Individual and Deputy, Collin County |
| Lollice | Don | | | USA Cars Inc. | 8/5/2013 | JS-13-00455A | Precinct 3 Place 1 | Collin | USA Cars and USA Cars, Inc. v. Dallas County Justice of the Peace Precinct Three, Place Two Steven Seider and Robyn Klein |
| Lollice | Peggy | | | USA Cars Inc. | 8/5/2013 | JS-13-00455A | Precinct 3 Place 1 | Collin | USA Cars and USA Cars, Inc. v. Dallas County Justice of the Peace Precinct Three, Place Two Steven Seider and Robyn Klein |
| Loveless | Joyce | | | | 6/20/2008 | 3-40636 | 3rd | Anderson | Ricky Hardy DBA Ricky Hardy Auto Sales and Lela Lloreda v. Joyce Loveless, Texas Department of Transportation, Cornerstone Acceptance Corporation, Alcon-National Assignment Center, Inc. and Alsco Auto Auction, Inc. *NOTE: Prefiling order applies only to litigation filed against Rick Hardy, Rick Hardy Auto Sales, Rick Hardy Auto Sales, Inc., Lela Lloreda, The Texas Department of Transportation, its agents, attorneys and employees, Cornerstone Acceptance Corporation, its officers, directors, and employees, Alsco-National Assignment Center, Inc., its officers, directors and employees, Alsco Auto Auction, Inc., its officers, directors, and employees, Dean, Coe & Associates, P.C., its officers, directors, and employees, David F. Dean, Jeffrey L. Coe, American Landers Service Co., its officers, directors, and employers, O. Machelle Morris, Ramsey & Murray, P.C., its officer, directors, and employees, and Patrick N. Smith.* |
| Lowe | Sherrie | | | | 12/13/2004 | 04-09640-L | 192nd | Dallas | Sherrie Lowe v. Undim, Incorporated, and Charter County Mutual Insurance Company |
| Mahady | Rebecca | Lynn | | | 11/11/2009 | 233-387705-05 | 233rd | Tarrant | In the Interest of Ryan Thomas Mahady, Nicholas Martin Mahady and Andrew Liam Mahady Children |
| Martin | Loretta | J. | | | 8/29/2011 | 296-02516-2011 | 296th | Collin | Deedra Walker, Agent for Loretta Martin vs. Justice of the Peace Precinct 3-1, Office of the Constable Precinct 3-1, its Officers, Agents, Assignees, and Successors |
| Martin | Timothy | Paul | | | 11/8/2001 | B-0165244 | 60th | Jefferson | Timothy Paul Martin v. Bantam Doubleday Dell, Dell Publishing Island, Leslie Schnur, and Trina Wurst, Incorporated, Chairman and C.E.O. Gerald M. Levin, and Vice Chairman Ted Turner, or their successors in office, and all others acting in concern and participation with them |
| McCray | Donald | Ray | | TDCJ #620694 | 6/15/2006 | 23242 | 12th | Walker | Donald Ray McCray TDCJ-ID No. 620694 v. Steven Aline, et al |
| McCray | Donald | Ray | | TDCJ #620694 | 7/19/2006 | S-06-5384-CV-C | 343rd | San Patricio | Donald Ray McCray v. Mitchell Reid, Robert E. Nelson, Sylvia Mejias, Becky Tibbs, Donna Crowley |
| McCray | Donald | Ray | | TDCJ #620694 | 4/17/2008 | D-1-GN-07-004468 | 201st | Travis | Donald Ray McCray v. Dallas County, Joseph Phillips, City of Dallas, William C. Dever, Linda Wells, Michele L. Herricks, and Ron Patrick Rigby, Jr. |
| McClure | Robert | Troy | | TDCJ# 142057 | 12/10/2012 | 26040 | 12th | Walker | Robert Troy McClure, TDCJ #142057 v. Texas Department of Corrections, et al |
| McClure | Robert | Troy | | TDCJ# 142057 | 2/20/2014 | 12CO711-102 | 12h | Bowie | Robert Troy McClure, TDCJ #142057 v. Texas Department of Corrections |
| McCullough | Rose | | | | 5/26/1999 | 204-98 | 18th | Johnson | Mrs. Rose McCullough, and on Behalf of her minor son Michael Stewart McCullough v. Jonathan David Elwell and Nellie Capps Elwell |
| McIntyre | Frank | | W. | | 12/22/1998 | 97-10572-I | 162nd | Dallas | Frank W. McIntyre v. Charles M. Wilson, III, et al   *NOTE: Prefiling order applies only to litigation filed against Geary & Spencer, P.C. and their agents, directors, officers, employees, heirs, assigns, representatives, insurers, adjusters, and attorneys.* |

Office of Court Administration
List of Vexatious Litigants
Subject to Prefiling Orders under Section 11.101, Civil Practice and Remedies Code

| Last Name | First Name | Suffix | Middle Name | Other Known Names Used | Date | Cause # | Court | County | Style |
|---|---|---|---|---|---|---|---|---|---|
| McLaughlin | Jana | | Kay | | 6/17/2009 | 09-60340-FRM-13 | | U.S. Bankruptcy Ct, W Dist of Tx, Waco Division | In Re: Patrick Timothy McLaughlin, Debtor |
| McLaughlin | Patrick | | Timothy | | 6/17/2009 | 09-60340-FRM-13 | | U.S. Bankruptcy Ct, W Dist of Tex, Waco Division | In Re: Patrick Timothy McLaughlin, Debtor |
| Merrill | Lowell | | | | 9/17/2009 Amended 10/9/2009 | 380-1387-2009 | 380th | Collin | Lowell Merrill v. Robert J. Davis *NOTE: Prefiling order applies only to litigation filed against Judge Terry Douglas; Collin County; any officers, agents, servants or employees of Collin County; the State of Texas; any officers, agents, servants or employees of the State of Texas; James Andrews; James Slayton; and Robert J. Davis and his firm Matthews, Stein, Shiels, Pearce, Knott, Eden & Davis, and any officers, agents, servants or employees of the firm.* |
| Miller | Thomas | | V. | | 3/27/1998 | 98-0233 | 336th | Collin | Thomas V. Miller v. First National Bank of Van Alstyne and President and CEO Robert H. Hynds *NOTE: Prefiling order applies only to litigation filed against the First National Bank of Val Alstyne, its present or former officers, employees, directors, board members, shareholders, attorneys or agents, including but not limited to Robert H. Hynds.* |
| Miller | Thomas | | V. | | 1/11/2001 | 401-1517-00 | 401st | Collin | Thomas V. Miller v. State |
| Miller | Thomas | | V. | DBA Miller House Movers | 2/24/2010 | 416-04997-2009 | 416th | Collin | Miller House Movers v. Texas Star Bank, Robert H. Hynds, Tonie Hynds, and J. Don Gordon |
| Minnfee | Barry | | Dwayne | | 6/15/2007 | D-1-GN-07-001256 | 200th | Travis | Barry Dwayne Minnfee v. Randall C. Sims, District Attorney and Don Clemmer, Deputy Attorney General |
| Modica | Amy | | Michele | | 8/31/2010 | D-187,054 | 136th | Jefferson | Amy Michele Modica v. Mr. Ronald L. Walker, County Judge of the Jefferson County Courthouse of the City of Beaumont, Texas; the Jefferson County Courthouse; Lt. Bowls of the Beaumont Police Department; the Beaumont Police Department |
| Moody | Cordell | | | | 4/12/2010 | DC-10-017EB | 44th | Dallas | Cordell Moody v. State of Texas |
| Moody | Cordell | | | | 5/7/2010 | DC-10-01055-M | 298th | Dallas | Cordell Moody v. State of Texas Unsafe Drivers |
| Moore | Michael | | Anthony | Mikal Ali Muhammad; TDCJ #487939 | 3/12/2002 | 01-2102-C | 241st | Smith | Michael Anthony Moore, TDCJ #487939 v. Texas Dist of Criminal Justice |
| Mullins | Patrick | | Lee | TDCJ #726336 | 3/28/2005 | 8898 | CCL | Walker | Patrick Lee Mullins, TDCJ # 726336 v. Hector Ortiz, et al |
| Mulvaney | Clayton | | H. | | 4/14/2000 | 22856 | 63rd | Val Verde | Clayton H. Mulvaney v. Joe San Miguel, Del Rio News Herald Inc., Jackson Walker, LLP, and James M. McCown |
| Myers | Charles | | Henry | | 6/14/2005 | 2005-030245-1 | CCL #1 | Tarrant | Charles Henry Myers v. The Honorable Barbara Ferrell |
| Nabelek | Ivo | | | | 7/5/2002 | 2001-42336 | 334th | Harris | Ivo Nabelek v. Gary Johnson, et al. |
| Newby | Rob | | L. | TDCJ #1238216 | 1/11/2008 | 20614 | 1-A | Tyler | Rob L. Newby, TDCJ #1238216 v. Sam Chambers, et al |
| Newby | Rob | | L. | TDCJ #1238216 | 3/14/2008 | 20645 | 1-A | Tyler | Rob L. Newby, TDCJ #1238216 v. Nathaniel Quarterman, et al |
| O'Dell | Daniel | | T. | | 2/22/2001 | 2000-CI-15968 | 288th | Bexar | Daniel T. O'Dell v. Peden, Berger and Peak |
| Pandozy | Raffaele | | M. | | 7/19/2007 | DC-03-05712-E | 101st | Dallas | Raffaele M. Pandozy v. Mary Ann Beatty |
| Parker | Tommy | | L. | Rabbi Tommy L. Parker | 3/22/2001 | 48,646-A | 47th | Randall | Rabbi Tommy L. Parker v. John Mann and Judge Samuel Kiser |
| Parker | Tommy | | | | 12/1/2006 | 2000-508,867 | 72nd | Lubbock | Tommy Parker v. Ron McLaurin, Jesse Mendez and Wilson Salinas |
| Parson | Bridget | | Brown | | 8/2/2011 | 11-00854-B | 44th | Dallas | Bridget Brown Parson v. Judge Robert Price, et al |
| Patel | Niva | | M. | | 3/20/2012 | CC-11-05737-C | CCL #3 | Dallas | Wells Fargo Bank v. Niva M. Patel *NOTE: Prefiling order applies only to litigation filed against Federal Home Loan Mortgage Corporation, Wells Fargo, Wachovia Bank, America's Servicing Company and/or any related entities or any attorney or judicial officer in any Dallas County Court* |
| Patel | Niva | | | | 6/4/2012 | DC-12-002306-C | 68th | Dallas | Niva Patel v. Federal Home Loan Mortgage Corp, et al |
| Payne | Richard | | | TDCJ # 620984 | 8/17/2011 | 11-02-00040-CK | 218th | Karnes | Richard Payne, TDCJ #620984 v. Anna M. Siegrist, et al |
| Peyton | Melvin | | | | 8/30/2012 | 048-259817-12 | 48th | Tarrant | Melvin Peyton v. Judges, Melody Wilkinson, Fred Davis and Attorney John C. Galliart and the State of Texas |
| Peyton | Melvin | | | | 6/30/2012 | 141-260465-12 | 141st | Tarrant | Melvin Peyton v. Patricia G. Cannon, State of Texas, and David Troy Harlin |
| Pitts | L. | | D. | | 6/3/2002 | 2002-17775 | 129th | Harris | L.D. Pitts v. Deputy Eddie Ervin |

## Office of Court Administration
## List of Vexatious Litigants
## Subject to Prefiling Orders under Section 11.101, Civil Practice and Remedies Code

| Vexatious Litigant | | | | Other Known Names Used | Date | Cause # | Court | County | Style |
|---|---|---|---|---|---|---|---|---|---|
| Last Name | Suffix | First Name | Middle Name | | | | | | |
| Porter | | Cheryl | | | 11/8/2012 | 2012-002030-1 | CCL #1 | Tarrant | Cheryl Porter v. Malfest Bank; Midland Mortgage; JP Court PC3, its Persons, Officers, Agents, Assignees, State Bar Associations, etc.; Office of Constable Zane Hilger, Zane Hilger, Individually and dba Constable of Precinct No. 3, its Persons, Officers, Agents, Assignees; Lauren E. Christoffel, Assignees, State Bar Association, State Bar Associations, etc.; T. Ross, Substitute Trustee, Assignees, State Bar Association, State Bar Associations, etc.; Judge Russell B. Casey Justice of the Peace, Precinct Three, Office of the Justice of the Peace, Precinct Three NOTE: Prefiling order applies only to litigation filed against defendants named above and their agents, directors, officers, employees, heirs or assigns |
| Potts | | Patricia | Ann | | 2/16/2010 | 2009-74161 | 11th | Harris | Patricia Ann Potts v. Debra Harvey, MD; Mark Lehman, PhD; Patricia Jankl, MD; Avinash Patel, MD; Krishna Bhat, MD; Peter Stanfield, MD; Valasila Bhaskaran, PhD; Kirkwood Pines Hospital; and Humana Insurance Company |
| Ramsey | | Natasha | Ann | | 2/14/2014 | 153-269150-13 | 153rd | Tarrant | Natasha Ann Ramsey, as beneficiary for the Estate of Joyce L. Williams v. 2010-86592-1 County Court at Law Number One, its agents, deputies, assigns, affiants, successors, political entities, corporations, et al (applies only to SunTrust Mortgage, Inc. or its employees, agents, representatives or attorneys related to the property) |
| Reeves | | Michael | | | 11/8/2006 | DC-06-07707-G | 134th | Dallas | Michael Reeves v. Texas Department of Insurance, Division of Workers' Compensation |
| Reitzloff | Jr. | Tom | | | 10/15/2008 | 308432 | CCL #3 | Bexar | Tom Reitzloff v. GoAmerica Communications Corporation, Aaron David Dubrinski, John and/or Jane Doe |
| Rhodes | | Kevin | | | 1/26/2010 | DC 09-10153-I | 193rd | Dallas | Kevin Rhodes, Jr. v. State of Texas, Dallas County |
| Rocha | | Nick | B. | | 1/27/2005 | 2004-68660 | 215th | Harris | Nick B. Rocha v. Franklin Credit Management Corporation |
| Roland | | Lois | | | 6/29/2007 | cc-06-16997-B | CCL # 2 | Dallas | In the Matter of Roy and Lois Roland |
| Roland | | Roy | | | 6/29/2007 | cc-06-16997-B | CCL # 2 | Dallas | In the Matter of Roy and Lois Roland |
| Ruston | | Lester | Jon | | 6/14/2007 | 366-141-07 | 366th | Collin | Lester Jon Ruston v. Collin County, et al; Plano Police Department; Plano Independent School District; Haverly Place Apartments; Abernathy, Roeder, Boyd & Joplin; Dallas Police Department |
| Salazar | | Adam | E. | | 11/4/2008 | 2008-CI-16660 | 285th | Bexar | Adam E. Salazar v. Service Corp. International, Inc., SCI Texas Funeral Services, Inc., Robert L. Waltrip, Thomas L. Ryan, Curtis G. Briggs, William D. O'Brien, Judith M. Marshall, Robert Glicial Newman, Ronald David Smith, Rosemario Ransesky, and Fulbright & Jaworski, L.L.P. |
| Schiller | | David | Charles | | 7/10/2012 | 266-51835-08 | 296th | Collin | In the Interest of Brannon Foster Schiller A Child |
| Schulze | | Barbara | | Barbara B. Schulze, Barbara C. Shulze, Barbara B.C. Schulze, Barbara Clavarra Schulze, Barbara Moss Schulze, Barbara Schulze or anyone on her behalf | 1/25/2008 | 2007-CI-18007 | 73rd | Bexar | Barbara Schulze v. EMC Mortgage Corporation |
| Scott | | Dallas | Wayne | | 6/10/2002 | 02-0424B-F | 116th | Dallas | Dallas Wayne Scott v. Washington Mutual Bank |
| Scott | | Michael | | TDCJ #653064 | 4/30/2007 | 93,764-C | 251st | Potter | Michael Scott, TDCJ No. 653064 v. Richard Phillips, et al |
| Scott | | Susan | | | 1/26/2006 | 05-12216 | 193rd | Dallas | Susan Scott v. Judge Kent Sims |
| Sharp | | Leonard | | | 10/15/2007 | 2006-22191 | 295th | Harris | Leonard Sharp v. JP Morgan Chase Manhattan Bank, Vinson & Elkins LLP, and D. Bobbitt Noel, Jr. |
| Smith | | Clifford | Allen | TDCJ #576142 | 5/27/2008 | 24147 | 278th | Walker | Clifford Allen Smith TDCJ ID # 576142 v. Brad Livingston, et al |
| Solis | | Arturo | | | 6/27/2013 | CJD-11-40751 | 52nd | Coryell | Arturo Solis v. Texas Department of Criminal Justice, et al |
| Spencer | | Johnny | | | 6/8/2007 | DC-07-05981-K | 192nd | Dallas | Johnny Spencer v. Dallas District Clerk |
| Stafford | | Johnny | M. | | 6/6/2011 | 2011-792-CCL2 | CCL#2 | Gregg | Johnny M. Stafford v. J. Hull, A. Cove, Longview Economic Development Corp. Judge Vince Dulweber, Wendy Lipon and John Ovard |
| Stafford | | Johnny | M. | | 6/6/2011 | 2011-742-CCL2 | CCL#2 | Gregg | Johnny M. Stafford v. Gary Shavers, Bonn, Echols and Coleman, Judge Vincent Dulweber, Wendy Lipon, Ed Merritt, Walmart Stores, Inc., Judge Paul Bonner and Judge John Ovard, Carl Dorrough |

Office of Court Administration
List of Vexatious Litigants
Subject to Prefiling Orders under Section 11.101, Civil Practice and Remedies Code

| Vexatious Litigant | | | | Other Known Names Used | Date | Cause # | Court | County | Style |
|---|---|---|---|---|---|---|---|---|---|
| Last Name | First Name | Suffix | Middle Name | | | | | | |
| Stritzinger | John | III | S. | | 4/2/2012 | D-1-FM-04-004690 | 98th | Travis | In the Interest of Hannah Stritzinger, James Stritzinger and Lucy Stritzinger Children |
| Summers | Anthony | | Leon | TDCJ #1130913 | 8/18/2009 | B-0161638 | 60th | Jefferson | Anthony Leon Summers v. State of Texas TDCJ ID, et al |
| Surani | Habib | | | | 6/1/2012 | 342-256499-11 | 342nd | Tarrant | Habib Surani, et al v. First National Bank of Burleson, Texas |
| Sweed | James | | Lee | | 2/20/2008 | 2007-2271 | 210th | El Paso | James Lee Sweed v. Jay L. Nye, Attorney and Texas Equal Access to Justice Foundation |
| Tellkamp | Elokia | | Gomez | | 9/22/2005 | 08-05886 | 68th | Dallas | Elokia Gomez Tellkamp v. Stohmart, Inc., Leslie Sullivan, Shelly Fisher Martin |
| Thomas | Allen | | Glenn | TDCJ # 633145 | 3/31/2010 | 22100 | 258th | Jones | Allen Glenn Thomas, TDCJ #633145 v. TDCJ, et al |
| Thompson | B. | | Joe | | 9/23/2004 | 2001-47514 | 190th | Harris | B. Joe Thompson v. Robert F. Walker and William Vincent Walker |
| Torres | Maria | | | | 2/15/2012 | 005-3205-2011 | CCL#5 | Collin | Interest of Maria Torres vs. Luna Properties, LLC, M Drew Siegel and Cantu & Associates Law Offices, P.C., and County Court at Law of Collin County, Texas |
| Vorwerk | Jane | | Malyastik | | 8/13/1999 | 26,497 | 20th | Milam | Estate of Rose S. Malyastik, Deceased |
| Walker | Deedra | | | Deedra Walker Penny | 8/29/2011 | 296-02516-2011 | 296th | Collin | Deedra Walker, Agent for Loretta Martin vs. Justice of the Peace Precinct 3-1, Office of the Constable Precinct 3-1, Its Officers, Agents, Assignees, and Associations |
| Wallace | Stephen | | P. | Frank A. Wallace 1974 Trust, Ex Rel; State of Texas & the Named/Vested Successor Trustee, Stephen P. Wallace; and All Those Similarly Situated, Pauperis/Pro Se Plaintiff, Stephen P. Wallace and anyone acting on his behalf of in concert with him | 9/9/2011 | 141-254041-11 | 141st | Tarrant | Frank A. Wallace 1974 Trust, Ex Rel; State of Texas & the Named/Vested Successor Trustee, Stephen P. Wallace; Stephen P. Wallace; and All Those Similarly Situated, Pauperis/Pro Se Plaintiffs v. John R. Thlokoloau, Individually and in his Alleged Official Capacity as Fiduciary Specialist for Administration of the Frank A. Wallace 1974 Trust; Jeff King, Individually and in his Official Capacity of Managing Director of Bank One a/k/a JP Morgan Chase and Supervisor of John R. Thlokoloau; JP Morgan Chase Bank, N.A.; Allan O. Head, Jr., Individually and as Managing Partner of Jackson Walker; LLP; John Does in Alleged Collusion Not Yet Named |
| Walp | Gary | | Reed | TDCJ #3142299 | 9/4/2009; Amended 9/4/2009 | 168686-C | 89th | Wichita | Gary Reed Walp v. Eddie C. Williams |
| Walters, Jr. | Joe | | | | 1/22/2014 | 13-CV-1328 | 405th | Galveston | Joe Walters, Jr. v. Hometown Bank N.A. |
| Wanzer | Jerry | | | TDCJ #855976 | Amended | 07-09-00132-CVK | 81st | Karnes | Jerry Wanzer v. Bernard Garcia, et al |
| Wanzer | Jerry | | | TDCJ #855976 | 10/24/2008 | 07-12-00177-CVK | 81st | Karnes | Jerry Wanzer v. James Tanner, et al |
| Wanzer | Jerry | | | TDCJ #855976 | 10/24/2008 | 07-12-00179-CVK | 81st | Karnes | Jerry Wanzer v. Jerry Sanchez, et al |
| Ward | Robert | | Lewis | | 4/5/2011 | 401-50246-2010 | 401st | Collin | Robert Lewis Ward vs. Carol Ann Ward |
| Warren | Hubert | | | | 12/28/2012 | 2012-3248-5 | 414th | McLennan | Hubert Warren v. Hon. Rex Davis, et al |
| Washington | Emmett | | | | 2/2/2009 | CC-08-10406-D | CCL#4 | Dallas | Emmett Washington, Pro Se and Oralynne Washington, Pro Se v. Bank of New York, Countrywide Home Loans, Gerry Cooper, Barrett, Daffin, Frappier, Turner, & Engel, L.L.P, Gregg Lung, Janet Rochen, Michael Garland, Dwayne Kurtz |
| Washington | Michael | | G. | | 6/14/2007 | 876400 | CCL # 2 | Harris | Michael G. Washington v. Harris County, Texas and Eva Morales |
| Washington | Oralynne | | | | 2/2/2009 | CC-08-10406-D | CCL#4 | Dallas | Countrywide Home Loans, Gerry Cooper, Barrett, Daffin, Frappier, Turner, & Engel, |
| Webb-Goodwin | Deniah | | | | 12/15/2011 | 2008-28781 | 295th | Harris | Rev. Deniah Webb-Goodwin v. San Jacinto Methodist Hospital of Baytown, et al. |
| White | Anthony | | Wayne | | 8/4/1999 | 17846 | 411th | Polk | Anthony Wayne White v. Justin Fuller |
| Xuan | Bui | | Phu | | 5/27/2008 | 097372-00-8 | 181st | Potter | Bui Phu Xuan v. Fort Worth Star-Telegram |

# EXHIBIT 9

8/12/2014
Case 5:14-cv-01059-BLF    Document 35-2    Filed 08/14/14    Page 45 of 151
Retzlaff v. GOAMERICA COMMUNICATIONS CORP., 356 SW 3d 689 - Tex Court of Appeals, 8th Dist. 2011 - Google Scholar

**356 S.W.3d 689 (2011)**

## Tom RETZLAFF, Appellant,

### v.

## GOAMERICA COMMUNICATIONS CORPORATION, Aaron David Dubrinski, John and/or Jane Doe, Appellees.

### No. 08-09-00115-CV.

### Court of Appeals of Texas, El Paso.

October 7, 2011.

692    *692 **Tom Retzlaff**, San Antonio, for Appellant.

Ricardo G. Cedillo, Davis, Cedillo & Medoza, Inc., San Antonio, for Appellees.

Before CHEW, C.J., McCLURE, and RIVERA, JJ.

## *OPINION*

DAVID WELLINGTON CHEW, Chief Justice.

**Tom Retzlaff** appeals from orders dismissing a suit and declaring him a vexatious litigant. We vacate in part, affirm in part, reverse in part, and remand.

GoAmerica Communications Corporation provides telephone relay services to hearing-impaired and speech-impaired individuals.[1] **Retzlaff** sued GoAmerica in propria persona, alleging that it relayed a profane and threatening call to his telephone in the middle of the night. He sought damages for intentional infliction of emotional distress and negligence. In addition to GoAmerica, **Retzlaff** named Aaron David Dubrinski and John and/or Jane Doe as defendants. Dubrinski

693    filed a special appearance, identifying himself as the *693 chairman and founder of GoAmerica (and noting that the correct spelling of his name is "Dobrinsky"). The record does not include a ruling on the special appearance. In his petition, **Retzlaff** described John and Jane Doe as unidentified GoAmerica employees who placed the offending call. The record does not demonstrate that these defendants were ever served.

GoAmerica filed a motion to declare **Retzlaff** a vexatious litigant. The motion was served on **Retzlaff** by fax on June 24, 2008. That evening, **Retzlaff** sent David Denton, one of GoAmerica's attorneys, an email, claiming that the fax was too big for his fax machine to handle and that, as a result, he only received the first few pages of the motion. **Retzlaff** also stated that he intended to sue Denton and his law firm in small claims court for damage to the fax machine. The email, which was replete with vulgar language and exclamation points, included the following passage:

> I am really, really pissed off at you, David. So pissed off that I just may come down to your office to personally explain to you just how angry that I am! You screwed up my fax machine even though I specifically told you not to be sending me such large faxes.

Two days later, at noon on June 26th, GoAmerica filed a motion for an expedited hearing on the vexatious litigant motion. As the basis for this motion, GoAmerica relied on **Retzlaff's** email. GoAmerica characterized the email as "abusive and threatening," and requested an expedited hearing "because of the continuing threats of additional vexatious lawsuits and the continuing threats to needlessly increase the cost of litigation." The motion requested that the hearing be set for the morning of June 27, 2008. In the alternative to an expedited hearing, GoAmerica requested that the court "enter temporary orders" to prohibit **Retzlaff** from appearing at Denton's law firm's offices and from filing any litigation in any court without first obtaining permission of the local administrative judge. The motion was emailed to

Retzlaff, and GoAmerica requested permission to serve notice of the expedited hearing on Retzlaff by email.[2]

At 2:13 p.m. on June 26th, the court filed an order staying the case and prohibiting Retzlaff from filing any motions or from filing any litigation in this state unless the local administrative judge grants him permission. In addition, the order prohibits Retzlaff "from appearing, contacting, communicating, or coming within 150 feet of any past or present officer, director, employee, agent or attorney of GoAmerica, Inc.," or from coming within 150 feet of Denton, his law firm's San Antonio offices, or 30 Rockefeller Plaza in New York.[3] The order does not provide a termination date for any of these prohibitions. The court also granted the motion to expedite, allowed substituted service, and set a hearing for 10:30 the next morning—June 27, 2008.

Retzlaff appeared on June 27th and announced not ready. He asserted that he had not received the vexatious litigant motion and that he did not get notice of the hearing until 6:30 the previous evening. He also objected to the June 26th order on the grounds that it was rendered ex parte and without any statutory authority. Denton responded to Retzlaff's

694    arguments about the order by asserting that Retzlaff *694 is an "ex-con" and, in the portion of the email quoted above, made "a threat against me."[4] Denton stated that he had provided copies of the vexatious litigant motion to Retzlaff by fax, email, and regular mail. Nevertheless, he handed another copy to Retzlaff in open court and in the judge's presence.

The court allowed GoAmerica to present its argument and evidence on the vexatious litigant motion. However, the court ordered that the hearing would reconvene at 2 p.m. on June 30th (the Monday following June 27th) so Retzlaff could present his arguments and evidence. At the June 30th hearing, Retzlaff presented argument and his own testimony.

On August 22, 2008, the judge sent counsel and Retzlaff an order stating that she had concluded that Retzlaff is a vexatious litigant and that he should be required to post security in the amount of $12,500. On October 15, 2008, the court signed an order reflecting these rulings. The order required Retzlaff to furnish the security within seven days. The order also prohibited Retzlaff "from filing, in propria persona, any new litigation in any state or federal court located in the State of Texas without first obtaining permission of the local administrative judge after the local administrative judge finds that the proposed litigation has merit and is not filed for the purpose of harassment or delay." On November 24, 2008, Retzlaff filed a motion to dismiss without prejudice, noting that he had not furnished the required security. GoAmerica filed a cross-motion to dismiss the case with prejudice as to all defendants. The court granted GoAmerica's motion and dismissed the entire suit with prejudice. Thereafter, the court entered lengthy findings of fact and conclusions of law regarding the determination that Retzlaff is a vexatious litigant, and then entered additional findings of fact and conclusions of law regarding the dismissal of the suit. This appeal followed.

In his second issue, Retzlaff asserts that the trial court conducted an ex parte, off-the-record hearing on June 26th without any notice to him. In considering this issue, it is important to understand what is—and what is not—an ex parte communication:

> An ex parte communication is one that concerns the matter, that is between a lawyer representing a client and a judicial officer, and that occurs outside of the presence and without the consent of other parties to the litigation or their representatives. A written communication to a judicial officer with a copy sent timely to opposing parties or their lawyers is not ex parte. The prohibition applies to communication about the merits of the cause and to communications about a procedural matter the resolution of which will provide the party making the communication substantial tactical or strategic advantage. The prohibition does not apply to routine and customary communications for the purpose of scheduling a hearing or similar communications, but does apply to communications for the purpose of having a matter assigned to a particular court or judge.

RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 113 cmt. c (2000).

GoAmerica contends that Denton's communication with the court was not ex parte because Denton notified Retzlaff before submitting the motion to expedite. The record reflects that Denton emailed Retzlaff the motion to expedite at 11:20 a.m. on June 26th. He stated, "I am leaving for the Courthouse right now" to request that the motion to expedite be

695   granted. *695 Denton also stated in the email that he had left a phone message for Retzlaff. No time for a hearing on the motion to expedite was stated in the email or in the motion. Even now, there is nothing in the record to indicate when the hearing was held, but it is clear that the court conducted some sort of hearing at which it considered evidence and argument beyond what was included in the motion to expedite. During the June 30th hearing, Retzlaff asked the court about the June 26th proceedings:

> The Court: All right. I am not a witness in this case. He brought an email saying that he was in fear, and he didn't want people around him.
>
> * * *
>
> Retzlaff: Was there a court reporter present?
>
> The Court: There may have been a court reporter present, but he—
>
> Denton: I don't believe—I don't believe that I requested a record, Your Honor.
>
> The Court: Yeah. All right?

Moreover, the court stated in its findings of fact that Denton "felt threatened and was visibly shaken by the comments made in . . . Retzlaff's email" and that Denton was "upset." Nothing in the motion to expedite or its attachments expressed Denton's emotional state, so these factual findings must have been based on some evidence presented to the court at the hearing. The record does not reflect when the order granting the motion to expedite was signed, but it was filed less than three hours after Denton emailed Retzlaff.

It is "[a]n elementary and fundamental requirement of due process" that notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). "The notice must be of such nature as reasonably to convey the required information and it must afford a reasonable time for those interested to make their appearance." Id., [internal citations omitted]. "[W]hen notice is a person's due, process which is a mere gesture is not due process." Id. at 315, 70 S.Ct. at 657. We conclude that the notice provided here was a mere gesture.

GoAmerica also argues that the June 26th hearing was not ex parte because the motion to expedite was not submitted to influence the trial court and because the merits of the vexatious litigant motion were not considered. GoAmerica relies on Spigener v. Wallis, 80 S.W.3d 174 (Tex. App.-Waco 2002, no pet.). That case involved a hearing to approve a receiver's proposed sale at which the judge elected not to hear the merits of the receiver's request and a hearing at which the trial court merely set a final hearing on the receiver's application for confirmation of sale. See Spigener, 80 S.W.3d at 181-82. The appellate court held that these hearings were not ex parte because they did not reach the merits of the suit. Id.

This case would be similar to Spigener if all the court had done on June 26th was to set the hearing on the vexatious litigant motion. See RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 113 cmt. c ("The prohibition [against ex parte communications] does not apply to routine and customary communications for the purpose of scheduling a hearing or similar communications. . . ."). But that is not all that the court did. Instead, it granted a portion of the ultimate relief sought in GoAmerica's vexatious litigant motion by enjoining Retzlaff from filing any future litigation

696   in Texas without obtaining the *696 approval of the administrative judge. The court also enjoined Retzlaff from going to certain places. This injunctive relief affected Retzlaff's substantive rights.

Finally, GoAmerica argues that even if the communication was ex parte, it was justified by exigent circumstances. Specifically, GoAmerica asserts, "Plaintiff Retzlaff, an undisputed convicted felon, created an extraordinary and exigent situation by threatening Defendants' counsel." GoAmerica relies on Barnes v. Whittington, 751 S.W.2d 493 (Tex.1988).

In Barnes, the Texas Supreme Court stated, "This court only allows [ex parte] communications in limited, extraordinary

emergency situations." 751 S.W.2d at 495 n. 1. As examples of exigent situations, the court cited the Texas Rules of Civil Procedure governing writs of attachment, garnishment, and sequestration. See Barnes, 751 S.W.2d at 495 n. 1. Likewise, there are rules governing injunctive relief. See TEX.R.CIV.P. 680-693a. These rules are specifically designed to allow emergency relief in exigent circumstances, while protecting the due process rights of all parties. As detailed below in our discussion of **Retzlaff's** fifth issue, the rules were not followed in this case. GoAmerica offers no reason why the rules were not followed. Without any showing as to why these rules were inadequate to protect GoAmerica or Denton, we cannot condone the ex parte hearing that took place here.

**Retzlaff's** second issue is sustained.

In his fifth issue, **Retzlaff** contends that the June 26th order violates his constitutional rights, prevented him from contacting witnesses, and was not authorized by the vexatious litigant statutes. The order contains three types of injunctions. First, it stayed this suit and prohibited **Retzlaff** from filing any motions in the suit. This part of the order was of no consequence because the litigation was statutorily stayed as soon as GoAmerica filed its vexatious litigant motion. See TEX.CIV. PRAC. & REM.CODE ANN. § 11.052(a) (West 2002).

Second, the order prohibits **Retzlaff** "from appearing, contacting, communicating, or coming within 150 feet of any past or present officer, director, employee, agent or attorney of GoAmercia, Inc.," or from coming within 150 feet of Denton, his law firm's San Antonio offices, or 30 Rockefeller Plaza in New York. GoAmerica contends that this part of the order was necessitated by **Retzlaff's** threatening email. It is, in effect, a restraining order. See BLACK'S LAW DICTIONARY 1428 (9th ed. 2009) (defining "restraining order" as "[a] court order prohibiting or restricting violence. . . an order restricting a person from harassing, threatening, and sometimes merely contacting or approaching another specified person.").

The Texas Rules of Civil Procedure set forth specific requirements for the granting of injunctive relief, including ex parte restraining orders. "Texas Rules of Civil Procedure 680 and 684 require a trial court issuing a temporary restraining order to: (1) state why the order was granted without notice if it is granted ex parte; (2) state the reasons for the issuance of the order by defining the injury and describing why it is irreparable; (3) state the date the order expires and set a hearing on a temporary injunction; and (4) set a bond." In re Office of the Attorney Gen., 257 S.W.3d 695, 697 (Tex.2008) (orig. proceeding) (internal citations omitted). "Orders that fail to fulfill these requirements are void." Id. The trial court's order does not meet these requirements.

697   Because the order is void and does not contain a termination date, we will vacate it. However, we reject **Retzlaff's** suggestion that the prohibitions prevented him *697 from rebutting GoAmerica's vexatious litigant motion. Although he points out that he had a right to contact potential fact witnesses, including GoAmerica's past employees, he does not attempt to explain how he would have been able to prevail on the motion if he had been able to contact any of these witnesses. Accordingly, we cannot conclude that the court's error probably caused the rendition of an improper judgment. See TEX.R.APP.P. 44.1(a)(1).

The third part of the order prohibited **Retzlaff** "from filing any litigations in any court located in the State of Texas without first obtaining permission of the local administrative judge after the local administrative judge finds that the proposed litigation has merit and has not been filed for the purpose of harassment and delay." This language is drawn from the vexatious litigant statutes.

Pursuant to these statutes, a defendant may move for an order determining that a plaintiff is a vexatious litigant and requiring the plaintiff to furnish security. See TEX.CIV.PRAC. & REM.CODE ANN. § 11.051. Upon the filing of such a motion, the trial court "shall, after notice to all parties, conduct a hearing to determine whether to grant the motion." Id. § 11.053(a). The statutes set forth specific criteria that must be established before a vexatious litigant motion can be granted. See id. § 11.054. The defendant must show that there is no reasonable probability that the plaintiff can prevail in the instant litigation. See id. The defendant must also show, by one of several specified ways, that the plaintiff has a history of pursuing frivolous litigation. See id. § 11.054(1), (2), (3). "[A]fter hearing the evidence on the motion," the court must order the plaintiff to furnish security for the defendant's benefit if the court determines that the plaintiff is a vexatious litigant. Id. § 11.055(a). In addition, "if the court finds, after notice and hearing" that the plaintiff is a vexatious

litigant, the court may prohibit the plaintiff from filing, in propria persona, any new litigation in this state. *Id.* § 11.101(a). If the trial court orders this prohibition, the plaintiff may still file a new suit, but only if a local administrative judge determines that the suit has merit and has not been filed for purposes of harassment or delay. *Id.* § 11.102(a).

It is apparent from reading these statutes that they attempt "to strike a balance between Texans' rights of access to their courts and the public interest in protecting defendants from those who abuse the Texas court system by systematically filing lawsuits with little or no merit." *Sweed v. Nye,* 319 S.W.3d 791, 793 (Tex.App.-El Paso 2010, pet. denied). The statutes are carefully crafted to require notice, a hearing, and evidence to establish that the very specific criteria in the statutes have been met. Nothing in the vexatious litigant statutes authorizes a trial court to enjoin a plaintiff from filing litigation based merely on the fact that the plaintiff threatened to sue the defendant's counsel. But as we are about to explain, the court did eventually conduct a valid hearing on GoAmerica's vexatious litigant motion and it entered a valid order, supported by evidence, granting the motion. Therefore, the portion of the June 26th order prohibiting **Retzlaff** from filing litigation is moot.

**Retzlaff's** fifth issue is sustained in part and overruled in part.

In his first issue, **Retzlaff** contends that he did not have proper notice of the June 27th hearing. Generally, any motion to the court for an order and any notice of a hearing on a motion must be served upon the other party at least three days 698 before the hearing. TEX.R.CIV.P. 21. The notice period is enlarged by three *698 days when service is made by fax. TEX. R.CIV.P. 21a. The trial court may, however, shorten the notice period. *See* TEX. R.CIV.P. 21. The court's decision to conduct a hearing before the notice period has expired will not be disturbed on appeal absent an abuse of discretion. *Buruato v. Mercy Hosp. of Laredo,* 2 S.W.3d 385, 387 (Tex.App.-San Antonio 1999, pet. denied). In exercising its discretion, the court may consider any exigent circumstances presented in the case. *Id.* at 388.

GoAmerica attempted to serve the vexatious litigant motion by fax on June 24th. **Retzlaff** admits that he received the first few pages of the motion at that time. This attempt at service caused **Retzlaff** to threaten additional litigation for alleged damage to his fax machine. As a result of this threat, GoAmerica sought an expedited hearing. At approximately 6:30 p.m. on June 26th, **Retzlaff** learned that the hearing on the motion would be at 10:30 the next morning. He immediately started to "put a boilerplate response together" because, as he told the trial court, "this isn't the first time somebody's tried one of these vexatious . . . litigant things on me before." If he did not receive a complete copy of the vexatious litigant motion before, he was given a copy in open court on June 27th. The court allowed GoAmerica to present its motion on June 27th, but the court did not require **Retzlaff** to come forward with his case. He mentioned that he would need witnesses, and the court invited him to subpoena anyone he wanted to appear. After the proceedings ended at 12:41 p.m. on June 27th, **Retzlaff** had until 2 p.m. on June 30th to prepare his arguments and obtain evidence. When the hearing reconvened on the 30th, **Retzlaff** did not identify any witness he was unable to subpoena or any evidence he was unable to obtain. At the end of the hearing, the trial court gave the parties until July 29th to supply additional briefing, specifically advising **Retzlaff,** "[Y]ou're also entitled to brief me on any reason you don't feel you're a vexatious litigant."

Considering all of these circumstances, we see no abuse of discretion. Although **Retzlaff's** threat of additional litigation did not justify a summary determination that he was vexatious, it did justify an expedited hearing on the issue. The hearing began with short notice, but the trial court recessed the hearing early on the first day and continued the proceedings so that **Retzlaff** would have an opportunity to prepare his defense to the motion. The court even invited **Retzlaff** to submit additional briefing after the hearing. Finally, there is nothing in the record to suggest that the ultimate outcome of the hearing would have been any different if the hearing had been delayed by a few days.

**Retzlaff's** first issue is overruled.

In his third issue, **Retzlaff** argues that the trial court abused its discretion by declaring him a vexatious litigant. A court may find a plaintiff to be a vexatious litigant if the defendant shows that (1) there is not a reasonable probability that the plaintiff will prevail in the litigation against the defendant, and (2) "the plaintiff, in the seven-year period immediately preceding the date the defendant makes the [vexatious litigant] motion . . ., has commenced, prosecuted, or maintained in propria persona at least five litigations other than in a small claims court that have been . . . finally determined

8/12/2014
Case 5:14-cv-01059-BLF   Document 35-2   Filed 08/14/14   Page 50 of 151
Retzlaff v. GOAMERICA COMMUNICATIONS CORP., 356 SW 3d 689 - Tex. Court of Appeals, 8th Dist. 2011 - Google Scholar

adversely to the plaintiff." TEX.CIV.PRAC. & REM. CODE ANN. § 11.054(1)(A). We review the trial court's determination that **Retzlaff** is a vexatious litigant for an abuse of discretion. _Sweed_, 319 S.W.3d at 793.

699 Regarding the first part of the vexatious litigant analysis, the trial court stated several grounds to support its finding that **Retzlaff** did not have a reasonable *699 probability of prevailing in this suit. **Retzlaff** only attacks one of the stated grounds—that GoAmerica is immune from suit. An appellant must attack all independent grounds that support an adverse ruling. _Fox v. Wardy_, 224 S.W.3d 300, 304 (Tex.App.-El Paso 2005, pet. denied). Because **Retzlaff** has failed to attack all of the independent grounds supporting the trial court's determination that he did not have a reasonable probability of prevailing on his claims, we must uphold the trial court's ruling on this issue. _See id._

Regarding the second part of the vexatious litigant analysis, the trial court listed twenty-six cases that **Retzlaff** commenced in propria persona within the preceding seven years. Some of these cases were dismissed or nonsuited with prejudice. The court specifically found that nine of the cases fit within the meaning of Section 11.054(1)(A). **Retzlaff** asserts that there is no proof that these suits were filed by him or that they were filed in propria persona. He also asserts that some of the cases were nonsuits that resulted from settlements. He argues that the trial court erred in concluding that cases that were dismissed or nonsuited with prejudice were "determined adversely" to him within the meaning of Section 11.054(1)(A). **Retzlaff** further argues that appeals should not be included.

GoAmerica submitted certified copies of docket sheets relating to five appellate proceedings. The trial court included these five cases in its list of cases that qualify under the statute. Because only five cases are required, we will confine our review to these cases and will examine the docket sheets to determine whether the trial court abused its discretion in concluding that these cases qualify under the statute.

Four of the docket sheets relate to appeals commenced in Texas appellate courts by **Retzlaff**, in propria persona, within the seven years immediately preceding the date that the vexatious litigant motion was filed. **Retzlaff** argues that appeals should not count because litigation is commenced in a trial court, not an appellate court. **Retzlaff** ignores the broad language used in the vexatious litigant statutes.

A litigant is vexatious if, in the applicable seven-year period, he "has commenced, prosecuted, or maintained in propria persona at least five litigations other than in a small claims court that have been . . . finally determined adversely to" him. TEX. CIV.PRAC. & REM.CODE ANN. § 11.054(1)(A). "Litigation" is "a civil action commenced, maintained, or pending in any state or federal court." _Id._ § 11.001(2). The language of these statutes plainly encompasses appeals. The statutes include "any state or federal court," excepting only small claims courts. Although "civil action" is not defined in the statutes, "action" is generally defined in law as a "civil or criminal judicial proceeding." BLACK'S LAW DICTIONARY 329 (9th ed. 2009). Thus, a person who files a notice of appeal is maintaining litigation. The primary meaning of "maintain" is "[t]o continue (something)." _Id._ at 1039. We also note that California's vexatious litigant statutes are virtually identical to ours. _See_ CAL.CIV. PROC.CODE § 391(a), (b)(1). Those statutes have been held to apply to appeals, at least when the appellant was the plaintiff in the trial court. _See In re R.H._, 170 Cal. App.4th 678, 88 Cal.Rptr.3d 650, 661-63 (2009); _McColm v. Westwood Park Ass'n_, 62 Cal.App.4th 1211, 73 Cal.Rptr.2d 288, 292-93 (1998). _But see Mahdavi v. Superior Court_, 166 Cal.App.4th 32, 82 Cal. Rptr.3d 121, 126 (2008) ("A defendant who appeals an adverse ruling is not filing 700 'new' litigation or 'maintaining' litigation, but rather, is attempting to 'undo' the results *700 of litigation that has been instituted against him or her.").

**Retzlaff** expresses concern that if appeals are included, one case could be counted more than once—first when it is filed in the trial court, again when an appeal is filed, and yet again when discretionary review is sought. We are counting only the appeals, not the underlying trial court cases. Because no double-counting is occurring here, we express no opinion regarding this concern.

Since appeals count and the docket sheets show that **Retzlaff** filed four appeals in propria persona within the applicable time frame, the only remaining issue is whether the appeals were "determined adversely" to **Retzlaff**.

Two of the docket sheets reflect that the trial court judgments were affirmed, meaning that **Retzlaff**, as the appellant, lost on the merits of his appeals. _See Retzlaff v. Tex. Dep't of Criminal Justice_, 135 S.W.3d 731 (Tex.App.-Houston [1st

8/12/2014
Case 5:14-cv-01059-BLF   Document 35-2   Filed 08/14/14   Page 51 of 151
Retzlaff v. GOAMERICA COMMUNICATIONS CORP., 356 SW 3d 689 - Tex Court of Appeals, 8th Dist. 2011 - Google Scholar

Dist.] 2003, no pet.); *Retzlaff v. Courteau*, No. 03-01-00647-CV, 2002 WL 31386042 (Tex.App.-Austin Oct. 24, 2002, pet. denied) (not designated for publication). The trial court did not abuse its discretion in determining that these appeals were determined adversely to Retzlaff.

The next two docket sheets are for appeals that were dismissed. *See Retzlaff v. Tex. Dep't of Criminal Justice*, 01-04-00409-CV, 2004 WL 2823168 (Tex.App.-Houston [1st Dist.] Dec. 9, 2004, no pet.) (mem. op.) (dismissing due to Retzlaff's failure to pay the filing fee); *Retzlaff v. Owusu*, No. 01-03-001301-CV, 2004 WL 1795146 (Tex.App.-Houston [1st Dist.] Aug. 12, 2004, no pet.) (mem. op.) (dismissing due to Retzlaff's failure to file a brief). A California appellate court has rejected the argument that dismissals should not be counted for purposes of a vexatious litigant statute because the argument runs contrary to the underlying intent of the legislation. *See Tokerud v. CapitolBank Sacramento, 38 Cal.App.4th 775, 45 Cal. Rptr.2d 345, 347 (1995)*. The court stated:

> An action which is ultimately dismissed by the plaintiff, with or without prejudice, is nevertheless a burden on the target of the litigation and the judicial system, albeit less of a burden than if the matter had proceeded to trial. A party who repeatedly files baseless actions only to dismiss them is no less vexatious than the party who follows the actions through to completion. The difference is one of degree, not kind.

*Id*. However, the court suggested that a dismissal should not count if it was part of a negotiated settlement. *See id*. Nothing on the docket sheets indicates that these dismissals were part of negotiated settlements. Although Retzlaff filed an affidavit in the trial court indicating that the *Owusu* case was voluntarily nonsuited after payment of an adequate settlement, the trial court could have rejected this averment based on the docket sheet, which shows an involuntary dismissal.

The final docket sheet is for an original proceeding commenced by Retzlaff in propria persona during the applicable time frame. After a response and a reply were filed, the appellate court denied mandamus relief to Retzlaff. Under the definitions given above, a person who seeks mandamus relief commences a civil action in the appellate court. Although the mandamus proceeding arose from the same underlying case as the appeal in *Owusu*, it was a separate, original proceeding that did not challenge the trial court's final decision in the underlying case or relate to the merits of the underlying case. *See In re Retzlaff*, 01-03-00770-CV, 2003 WL 22108920, at *1 (Tex.App.-Houston [1st Dist.] Sept.

701   4, 2003, orig. proceeding) (mem. op.) (denying mandamus relief for trial judge's purported *701 failure to rule on motions). Therefore, we think it is proper to count it as Retzlaff's fifth adverse determination.

Retzlaff's third issue is overruled.

In his fourth issue, Retzlaff argues that the trial court erred in dismissing the case because he failed to post security. Although the order requiring him to post security was signed on October 15, 2008, he claims that he did not receive a copy of it until November 18, 2008. Since the order required him to post the security within seven days, Retzlaff contends that he did not receive the order in time to comply with it.

Under the doctrine of invited error, a party may not "ask something of the trial court and then complain that the court erred in granting the relief sought." *Berry v. Segall*, 315 S.W.3d 141, 143-44 (Tex.App.-El Paso 2010, no pet.). On November 24, 2008, Retzlaff filed a motion in which he noted that he had not posted the security required by the October 15th order and "ask[ed] the court to sign an order dismissing this case pursuant to Texas Civil Practice & Remedies Code section 11.056." The referenced statute requires a trial court to dismiss if the plaintiff fails to post security after being ordered to do so. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 11.056. Thus, Retzlaff asked the court for the very thing that he complains about now—a dismissal for failure to post security.

Moreover, "[a]s a prerequisite to presenting a complaint for appellate review, the record must show that . . . the complaint was made to the trial court by a *timely* request, objection, or motion. . . ." TEX.R.APP.P. 33.1(a)(1) [Emphasis added]. Although Retzlaff objected to the lack of notice in his motion for new trial, he did not mention it any time between November 18, 2008 (which is when he claims to have received the order) and December 12, 2008 (which is when the case was dismissed). Therefore, he failed to make a timely objection. *See Low v. Henry*, 221 S.W.3d 609, 618

(Tex.2007); *Landerman v. State Bar of Texas*, 247 S.W.3d 426, 433 (Tex.App.-Dallas 2008, pet. denied).

Retzlaff's fourth issue is overruled.

In his seventh issue, Retzlaff argues that the trial court erred in dismissing the case with prejudice as to all of the defendants. Within this issue, he first argues that the vexatious litigant statutes do not authorize a dismissal with prejudice. Actually, the applicable statute does not specify whether dismissals should be with or without prejudice. It simply states, "The court shall dismiss a litigation as to a moving defendant if a plaintiff ordered to furnish security does not furnish the security within the time set by the order." TEX.CIV.PRAC. & REM.CODE ANN. § 11.056. Texas appellate courts have affirmed dismissals with prejudice pursuant to this statute. *See, e.g., Drum v. Calhoun*, 299 S.W.3d 360, 374 (Tex.App.-Dallas 2009, pet. denied), *cert. denied*, ___ U.S. ___, 131 S.Ct. 1017, 178 L.Ed.2d 843 (2011); *Nell Nations Forist v. Vanguard Underwriters Ins. Co.*, 141 S.W.3d 668, 670-71 (Tex.App.-San Antonio 2004, no pet.). However, the opinions in these cases do not indicate that the appellants argued that the dismissals should have been without prejudice.

Retzlaff offers no reasoning as to why the dismissal should have been without prejudice. *See* TEX.R.APP.P. 38.1(i). Accordingly, without deciding whether it may *ever* be error to dismiss a case under the statute with prejudice, we see no error in this case.

702    Retzlaff further argues that the trial court erred in dismissing the suit as against Dubrinski (Dobrinksy) and John and/or Jane Doe. As noted above, the *702 statute required the court to dismiss "as to a moving defendant." TEX.CIV.PRAC. & REM. CODE ANN. § 11.056. "'Moving defendant' means a defendant who moves for an order under Section 11.051 determining that a plaintiff is a vexatious litigant and requesting security." *Id.* § 11.001(4). GoAmerica is the only defendant that entered a general appearance in this case, and it is the only defendant that made a motion under Section 11.051. When Retzlaff failed to post security, it filed a motion to dismiss the case with prejudice. Within the body of this motion, GoAmerica sought dismissal "as to all Defendants," but it provided no argument to demonstrate that it had standing to obtain a dismissal for the other defendants. The statutes are very clear. Because the other defendants did not make a motion under Section 11.051, they are not entitled to a dismissal with prejudice.

Retzlaff's seventh issue is overruled to the extent that it attacks the dismissal with prejudice as to GoAmerica, but sustained as to the other defendants.

In his sixth issue, Retzlaff challenges the constitutionality of the vexatious litigant statutes on a number of grounds. He asserts that his challenges arise under the Texas Constitution, as well as the United States Constitution. When a provision of the Texas Constitution has an analogue in the United States Constitution, we generally construe the provisions the same in the absence of a showing as to why the Texas provision should be construed more broadly. *See Fort Worth Osteopathic Hosp., Inc. v. Reese*, 148 S.W.3d 94, 98 (Tex.2004). With one exception, Retzlaff does not suggest that the Texas provisions are broader than their federal analogues. Retzlaff also raises one ground that is unique to the Texas Constitution. Therefore, with these exceptions, we assume that the federal and state constitutions provide the same protections.

When we are confronted with a challenge to the constitutionality of a statute, we presume that the statute is valid and that the legislature did not act unreasonably or arbitrarily. *In re D.J.R.*, 319 S.W.3d 759, 764-65 (Tex.App.-El Paso 2010, pet. denied). The person challenging the legislation bears the burden to establish its unconstitutionality. *Id.* at 765. In a facial challenge to a statute, the challenger must establish that no set of circumstances exists under which the statute will be valid. *Id.* at 764. Since a statute may be valid as applied to one set of facts and invalid as applied to another, the challenger must first show that the statute is unconstitutional as applied to him; that the statute may be unconstitutional as applied to others is insufficient to support a facial challenge. *Id.* A claim that a statute is unconstitutional as applied is a claim that the statute, although generally constitutional, operates unconstitutionally as to the challenger. *Id.* at 765. An as-applied challenger must only demonstrate that the statute operates unconstitutionally when applied to his particular circumstances. *Id.*

One final consideration guides us through Retzlaff's challenges to the vexatious litigant statutes: There is no

constitutional right to file frivolous litigation. *Wolfe v. George*, 486 F.3d 1120, 1125 (9th Cir.2007).

Retzlaff argues that Section 11.054 is void for vagueness because it provides no guidance as to the meaning of "reasonable probability that the plaintiff will prevail" or as to who has the burden on this issue. There is no requirement that a statute define all words or terms used. *Rooms With a View, Inc. v. Private Nat'l Mortg. Ass'n Inc.*, 7 S.W.3d 840, 845 (Tex.App.-Austin 1999, pet. denied). "Courts recognize the myriad of factual situations that may arise and allow

703    statutes *703 to be worded with flexibility," as long as they provide fair notice. *Id.* "In the case of civil or regulatory statutes, no more than a reasonable degree of certainty is required." *Id.*

The statute provides that a court may find a plaintiff to be a vexatious litigant "if the defendant shows that there is not a reasonable probability that the plaintiff will prevail." TEX.CIV.PRAC. & REM.CODE ANN. § 11.054. This language clearly places the burden on the defendant. Furthermore, the term "reasonable probability" is certain enough to provide fair notice. *See Wolfe*, 486 F.3d at 1124 (rejecting general vagueness challenge to the California vexatious litigant statute, which also uses the "reasonable probability" standard); *Taliaferro v. Hoogs*, 236 Cal.App.2d 521, 46 Cal.Rptr. 147, 152 (1965) (rejecting argument that "reasonable probability" standard was fatally uncertain); *see also Leonard v. Abbott*, 171 S.W.3d 451, 456-57 (Tex. App.-Austin 2005, pet. denied) (rejecting argument that "reasonable probability" was void for vagueness as applied to the appellant). Retzlaff has not demonstrated that the term operated unconstitutionally as applied to his claims.

Retzlaff next challenges the security requirement as a denial of "access to the courts," due process, and equal protection because the statutes provide no guidance as to the amount of security and make no allowance for indigent plaintiffs. Retzlaff is simply wrong in asserting that no guidance as to the amount is provided. The legislation states that the security is to assure payment of the moving defendant's reasonable expenses, including attorney's fees. TEX.CIV. PRAC. & REM.CODE ANN. § 11.055(c).[5]

On the facts before us, we agree with those courts that have upheld a similar security requirement under rational basis review. *See Wolfe*, 486 F.3d at 1126; *Moran v. Murtaugh Miller Meyer & Nelson, LLP*, 40 Cal.4th 780, 55 Cal.Rptr.3d 112, 152 P.3d 416, 419 (2007). In this case, the security requirement did not prevent the vindication of a fundamental right, such as a right related to marriage. *See Wolfe*, 486 F.3d at 1125-26. Moreover, although Retzlaff points out that he filed an uncontested affidavit of indigency at the outset of the case, he ignores the fact that there was a contest to the affidavit of indigency that he filed at the end of the case in order to obtain a free appellate record. The court sustained this contest, finding Retzlaff's testimony not credible. Accordingly, the security requirement does not violate due process or equal protection as applied to Retzlaff.

Retzlaff does not explain what he means by the term "access to the courts." However, the term is typically used to describe the right of prisoners to attack their sentences or the conditions of their confinement. *See, e.g., Lewis v. Casey*, 518 U.S. 343, 346, 116 S.Ct. 2174, 2177, 135 L.Ed.2d 606 (1996). Retzlaff cites one of the seminal Supreme Court case recognizing this right. *See Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977). Because Retzlaff is not an inmate and is not attempting to attack a prison sentence or conditions of confinement, he cannot establish that the security requirement violates his right of access to the courts. *See Lewis*, 518 U.S. at 350-51, 116 S.Ct. at 2179-80.

704    Retzlaff further argues that the vexatious litigant statutes violate the right of *704 access to the courts, due process, and equal protection because they bar all lawsuits, not just frivolous ones. We disagree with this interpretation of the legislation. An administrative judge may grant permission for a vexatious litigant to file litigation if the litigation has merit and is not being brought for harassment. *See* TEX. CIV.PRAC. & REM.CODE ANN. § 11.102(a). And, contrary to Retzlaff's understanding, a vexatious litigant may seek review of the administrative judge's decision. *See In re Johnson*, No. 07-09-0035-CV, 2009 WL 2632800, at *1-2 (Tex.App.-Amarillo Aug. 27, 2009, orig. proceeding) (mem. op.) (providing mandamus review of administrative judge's denial of permission); *see also* TEX. CIV.PRAC. & REM.CODE ANN. § 11.102(c) (effective Jan. 1, 2012) (expressly authorizing mandamus review of administrative judge's denial). Thus, while the legislation places an additional hurdle before vexatious litigants, it does not prevent them from pursuing meritorious litigation.

Retzlaff next argues that his right to self-representation is violated by the prohibition on filing future lawsuits in propria persona. He disagrees because this restriction is rationally related to the legislature's goal of curbing frivolous litigation. See *Wolfe*, 486 F.3d at 1126 ("Frequent pro se litigants are not a suspect class meriting strict scrutiny."). As another court has stated, "Attorneys are governed by prescribed rules of ethics and professional conduct, and, as officers of the court, are subject to disbarment, suspension, and other disciplinary sanctions not applicable to litigants in propria persona." *Taliaferro*, 46 Cal.Rptr. at 151; see also *Leonard*, 171 S.W.3d at 458 (rejecting argument that banning future in propria persona suits violates equal protection).

Retzlaff contends that the legislation denies his right to freedom of expression pursuant to the First Amendment to the United States Constitution and Article I, section 8, of the Texas Constitution. In particular, he argues that the requirement of obtaining permission to file future law suits is an invalid prior restraint. See *Davenport v. Garcia*, 834 S.W.2d 4, 10 (Tex.1992) (holding that a prior restraint is presumptively unconstitutional under the Texas Constitution).

"Just as false statements are not immunized by the First Amendment right to freedom of speech, baseless litigation is not immunized by the First Amendment right to petition." *Bill Johnson's Rests., Inc. v. N.L.R.B.*, 461 U.S. 731, 743, 103 S.Ct. 2161, 2170, 76 L.Ed.2d 277 (1983) [Internal citations omitted]. Therefore, "contentions that one's freedom of speech is violated are to no avail against injunctions to prevent vexatious litigation." *Owens-Corning Fiberglas Corp. v. Baker*, 838 S.W.2d 838, 842-43 (Tex.App.-Texarkana 1992, no writ). Because Retzlaff has no right to file frivolous suits, he has not demonstrated that requiring him to obtain permission infringes any constitutionally protected form of expression. See *Bill Johnson's Rests.*, 461 U.S. at 744, 103 S.Ct at 2170 (upholding NLRB's power to enjoin baseless lawsuits); *Wolfgram v. Wells Fargo Bank*, 53 Cal.App.4th 43, 61 Cal. Rptr.2d 694, 705 (1997) (rejecting challenge to comparable California statute as a prior restraint).

Last, Retzlaff argues that the legislation's ban on lawsuits constitutes outlawry, which is prohibited by the Texas Constitution. See TEX. CONST. art. I, § 20. This prohibition forbids the government from denying a citizen all legal rights or transporting a citizen out of the state as punishment for an offense. *Peeler v. Hughes & Luce*, 909 S.W.2d 494, 499 (Tex.1995). Because Retzlaff has not been denied all legal rights or banished from the state, the "outlawry" provision is not implicated. See *id*. Accordingly, the "outlawry" provision of the Texas Constitution is not implicated.

705   '705 Retzlaff's sixth issue is overruled.

In conclusion, the trial court's order of June 26, 2008, which contained various injunctive provisions, is vacated *in toto*. The court's judgment dismissing this case with prejudice is reversed in part, as it pertains to any defendants other than GoAmerica. In all other respects, the judgment is affirmed. The cause is remanded for further proceedings consistent with this opinion. Nothing stated herein should be construed to cast doubt on the trial court's conclusion that Retzlaff is a vexatious litigant or on the court's prohibition against Retzlaff's filing any new litigation in this state. The cause is remanded solely for the purpose of disposing of the remaining defendants.

[1] According to GoAmerica, it hosts a website where individuals can instruct it to place a particular call. A GoAmerica operator "places the call to the recipient, then acts as a real time translator on behalf of the user who inputs the conversation text into a web-based dialogue box such that the . . . [o]perator can read the text to the call recipient."

[2] Retzlaff has a post office box, but refuses to divulge his street address.

[3] This is the address of a law firm that was representing GoAmerica in an "of counsel" capacity. GoAmerica's motion did not ask for this relief or for any relief for GoAmerica's pastor present personnel.

[4] Retzlaff admitted that he had served time in prison.

[5] Retzlaff also argues that there is no evidence that the $12,500 in security ordered by the trial court is a necessary or fair amount. To the contrary, GoAmerica presented evidence that it had incurred $12,500 in reasonable attorney's fees just in responding to Retzlaff's motion for sanctions. Therefore, to the extent Retzlaff is attempting to mount a no-evidence challenge, that challenge fails.

Save trees - read court opinions online on Google Scholar.

# EXHIBIT 10





★   ★   ★                                                    ★   ,   ★   ★

## MEMORANDUM OPINION

No. 04-09-00582-CV

Tom **RETZLAFF**,
Appellant

v.

Belinda **MENDIETA-MORALES**,
Appellee

From the County Court at Law No. 3, Bexar County, Texas
Trial Court No. 345077
Honorable David J. Rodriguez, Judge Presiding

PER CURIAM

Sitting:      Karen Angelini, Justice
              Sandee Bryan Marion, Justice
              Phylis J. Speedlin, Justice

Delivered and Filed: December 9, 2009

DISMISSED FOR LACK OF JURISDICTION

On July 1, 2008, a default judgment was entered against Appellee Belinda Mendieta-Morales.

On December 2, 2008, Appellee Mendieta-Morales filed an original petition for bill of review in the

trial court, seeking to vacate the default judgment. On March 5, 2009, Appellee Mendieta-Morales

filed a motion for summary judgment. On June 12, 2009, the trial court granted Appellee Mendieta-

Morales's motion for summary judgment. Appellant Tom Retzlaff then filed a notice of appeal.

04-09-00582-CV

In *Jordan v. Jordan*, 907 S.W.2d 471, 472 (Tex. 1995), the supreme court held that "[a] bill of review [that] sets aside a prior judgment but does not dispose of the case on the merits is interlocutory and not appealable." *See also Hartford Underwriters Ins. v. Mills*, 110 S.W.3d 588, 591 (Tex. App.—Fort Worth 2003, no pet.). Thus, the supreme court held that the court of appeals lacked jurisdiction over the appeal. *Jordan*, 907 S.W.2d at 472. Here, the trial court granted Mendieta-Morales's motion for summary judgment. That motion argued the following: (1) Appellant Retzlaff's service was fatally defective as a matter of law; (2) there is no genuine issue of material fact that Retzlaff engaged in fraud and wrongful conduct to prevent Mendieta-Morales from timely answering the lawsuit; and (3) there is no genuine issue of material fact that Mendieta-Morales has a meritorious defense. These arguments concern whether the bill of review should be granted and whether the prior judgment should be set aside. However, they do not relate to the merits of the underlying lawsuit. Therefore, the trial court's order granting summary judgment did not dispose of the case on the merits, and is interlocutory and not appealable.

We therefore dismiss this appeal for lack of jurisdiction.

PER CURIAM

-2-

**356 S.W.3d 676 (2011)**

# Tom RETZLAFF, Appellant,

## v.

## Belinda MENDIETA-MORALES, Appellee.

### No. 08-10-00228-CV.

#### Court of Appeals of Texas, El Paso.

October 5, 2011.

678 *678 Tom Retzlaff, San Antonio, TX, pro se.

Melanie H. Phipps, Kustoff & Phipps, L.L.P., San Antonio, TX, for Appellee.

Before CHEW, C.J., McCLURE, and RIVERA, JJ.

## *OPINION*

DAVID WELLINGTON CHEW, Chief Justice.

Tom Retzlaff appeals from a summary judgment granted in favor of Belinda Mendieta-Morales. In three issues, he challenges the granting of the summary judgment, the denial of his motion for a continuance, and the striking of his summary judgment response. For the reasons that follow, we affirm.

In 2000, Retzlaff and Morales entered into an agreed judgment that enjoined them from communicating with each other "in a harassing or threatening manner" and enjoined Morales from communicating "any false matters to any ... governmental law enforcement agency ... regarding anything having to do with" Retzlaff. In 2008, Retzlaff sued Morales for breach of contract and defamation, contending that Morales had violated the agreed judgment by making a false accusation of criminal conduct against him. This suit was docketed as cause number 339578. In July 2008, the trial court entered a default judgment, which awarded Retzlaff $100,000 in damages from Morales.

In December 2008, Morales filed a petition for bill of review, seeking to overturn the default judgment. *See Retzlaff v. Mendieta-Morales,* No. 04-09-00582-CV, 2009 WL 4692681, at *1 (Tex.App.-San Antonio Dec. 9, 2009, no pet.) (mem. op.). The bill of review was docketed as cause number 345077. *See id.* The trial court granted summary judgment on the bill of review, and Retzlaff filed a notice of appeal. *Id.* In December 2009, the San Antonio Court of Appeals dismissed the appeal, holding that the summary judgment was interlocutory because the trial court only determined that the bill of review should be granted and did not adjudicate the merits of the original suit. *Id.*

On March 9, 2010, Morales filed a motion for a no-evidence summary judgment on Retzlaff's claims for breach of contract and defamation. She filed her motion in the original cause number-339578. A hearing on the motion was set for April 9, 2010.

On April 5, 2010, Retzlaff filed his response to the summary judgment motion. He objected to having a hearing on the motion because Morales failed to obtain a bill of review in cause number 339578. In particular, he argued that Morales "did not follow the proper procedure as is required to obtain a valid bill of review and ... set aside ... the original monetary judgment because she filed her petition in a *different case number than the original judgment was obtained in.*" [Emphasis in original]. As summary judgment evidence, Retzlaff submitted his own affidavit, a copy of the agreed judgment, and a copy of a police report, which shows that Morales submitted a complaint on May 23, 2008. Retzlaff's response also included a request for a continuance to allow him to obtain additional evidence to defeat Morales's motion.

8/12/2014
Case 5:14-cv-01059-BLF   Document 35-2   Filed 08/14/14   Page 60 of 151
Retzlaff v. Mendieta-Morales, 356 SW 3d 676 - Tex Court of Appeals, 8th Dist. 2011 - Google Scholar

Morales opposed the request for a continuance, moved to strike Retzlaff's response as untimely, and objected to
679   Retzlaff's *679 use of his affidavit and the report as summary judgment evidence. The trial court denied the continuance,
sustained the objections, and granted the motion to strike and the motion for summary judgment.

In his first issue on appeal, Retzlaff asserts that the trial court erred in granting the no-evidence summary judgment. He
divides this issue into two parts.

In the first part of the issue, he argues that Morales and the trial court failed to follow the proper procedures for a bill of
review. He points out that there is no petition for bill of review or order granting a bill of review in the cause number of the
original suit (339578). This observation provides no basis for reversing the no-evidence summary judgment. "Texas
procedure has always mandated that a petition for bill of review be a new lawsuit filed under a different cause number
than the case whose judgment the bill of review complainant is attacking." _Amanda v. Montgomery, 877 S.W.2d 482,
485 (Tex.App.-Houston [1st Dist.] 1994, no writ)_. Therefore, Morales properly filed her petition in a new cause number
(345077), and the trial court properly entered its summary judgment on the petition in that cause number.

Retzlaff also argues that the court never conducted a trial on the merits of his original suit in cause number 339578 and
that he was not given the chance to prove, or offer evidence in support of, that suit. This argument is without merit. The
underlying issues in Retzlaff's suit against Morales were relitigated in the no-evidence summary judgment
proceedings, which were conducted in cause number 339578, and Retzlaff was given the same opportunity as every
plaintiff to contest the motion for summary judgment.

Retzlaff further argues that Morales did not establish her entitlement to a bill of review in cause number 339578. A bill of
review plaintiff must ordinarily plead and prove (1) a meritorious defense to the underlying cause of action, (2) that she
was prevented from making by official mistake or by the fraud, accident, or wrongful act of the opposing party, (3)
unmixed with any fault or negligence on her own part. _Caldwell v. Barnes, 154 S.W.3d 93, 96 (Tex.2004)_. Retzlaff simply
asserts, without any supporting argument, that Morales failed to satisfy these three requirements. Thus, the argument
is inadequately briefed. _See_ TEX.R.APP.P. 38.1(i); _Stewart v. Lexicon Genetics, Inc., 279 S.W.3d 364, 373 (Tex.App.-
Beaumont 2009, pet. denied)_.

More importantly, Retzlaff has failed to bring forward an adequate record to review this argument. The record does not
contain any documents pertaining to the bill of review proceedings. We assume that the trial court clerk omitted these
documents because they were filed in the bill of review cause number (345077), rather than this cause number
(339578). When the trial court grants a bill of review, subsequent proceedings on the merits of the original suit should
be conducted under the bill of review cause number. The trial court should render the final judgment in the bill of review
cause number. All of the relevant documents and transcripts concerning both the bill of review and the original suit can
then be brought before the appellate court in the event of an appeal. _See Hartford Underwriters Ins. v. Mills, 110 S.W.3d
588, 590 (Tex.App.-Fort Worth 2003, no pet.)_. Accordingly, Morales should have filed her no-evidence motion in the bill of
review cause number (345077) and all subsequent documents, including the trial court's no-evidence summary
680   judgment, should have been filed in that cause number. Retzlaff, *680 however, has not objected in the trial court or this
Court to the failure of Morales and the trial court to file these documents in cause number 345077. Instead, he has
always contended just the opposite-that the bill of review documents should have been filed in the original cause
number (339578). We therefore consider this error to be waived. _Cf. Medeles v. Nunez, 923 S.W.2d 659, 661 n. 2
(Tex.App.-Houston [1st Dist.] 1996, writ denied)_ (holding that error in filing bill of review proceedings in cause number of
original suit was waived because no one complained about the incorrect procedure), _overruled on other grounds by
Barker CATV Constr., Inc. v. Ampro, Inc., 989 S.W.2d 789 (Tex.App.-Houston [1st Dist.] 1999, no pet.)_.

Admittedly, the fact that the bill of review proceedings and the no-evidence summary judgment proceedings were
conducted under different cause numbers presents a challenge in compiling a complete record of all the proceedings
for appellate purposes. But Retzlaff has made no attempt to obtain a complete record. He did not request that the trial
court take judicial notice of the proceedings in cause number 345077, nor did he request that relevant documents from
cause number 345077 be included in the appellate record. Although Morales attached some of the bill of review
documents to her appellate brief, Retzlaff moved to strike the brief because the documents are not part of the record.

We denied the motion to strike, but, on Retzlaff's urging, noted that we would not consider documents outside the record. See *Fox v. Wardy*, 234 S.W.3d 30, 33 (Tex. App.-El Paso 2007, pet. dism'd w.o.j.) ("[A]n appellate court may not consider matters outside the appellate record."). Rather than attempting to obtain a complete record, Retzlaff seems to believe that the incomplete record entitles him to a reversal of the no-evidence summary judgment. He is mistaken. The burden was on Retzlaff, as the party seeking review, to ensure that a sufficient record is presented to show error. *Foust v. Estate of Walters ex rel. Walters*, 21 S.W.3d 495, 504 (Tex. App.-San Antonio 2000, pet. denied).

In the second part of his first issue, Retzlaff argues that the no-evidence summary judgment should not have been granted on the merits of his original suit. He argues that the court cannot grant a no-evidence summary judgment when the movant challenges the evidence to support an element on which she has the burden of proof at trial. This is true. See *Nowak v. DAS Inv. Corp.*, 110 S.W.3d 677, 680 (Tex. App.-Houston [14th Dist.] 2003, no pet.). Retzlaff, however, misunderstands the meaning of this rule. He contends that Morales had the burden of proving that he has no evidence to support his claims. This is not true. All Morales had to do was to state the elements of Retzlaff's claims for which there is no evidence. She did not need to present any evidence. See *id.* at 679. Morales's motion listed the elements of Retzlaff's claims and specified the elements as to which there is no evidence. This had the effect of shifting the burden to Retzlaff to produce summary judgment evidence raising a genuine issue of material fact regarding each challenged element. See TEX.R.CIV.P. 166a(i); *Garcia v. Vera*, 342 S.W.3d 721, 723 (Tex.App.-El Paso 2011, no pet.).

681 Retzlaff submitted three documents as summary judgment evidence: the agreed judgment, his own affidavit, and the police report. Morales objected to the affidavit, arguing that it was self-serving, conclusory, included hearsay, and opined on an ultimate issue. She objected to the police report, arguing that it was hearsay. The trial court sustained the objections and ordered these exhibits to be stricken. In a separate order, the trial court granted *681 Morales's motion to strike Retzlaff's entire summary judgment response as untimely. In his third issue on appeal, Retzlaff asserts that the trial court erred by failing to consider his summary judgment response and evidence because they were timely filed. However, he does not challenge the trial court's order sustaining Morales's objections to his affidavit and the calls for service report. As a result, we cannot consider these documents. See *Little v. Needham*, 236 S.W.3d 328, 331 (Tex.App.-Houston [1st Dist.] 2007, no pet.). Without these documents, Retzlaff's only summary judgment evidence is the agreed judgment, which does nothing to establish breach of contract or defamation.

Because Retzlaff presented no evidence to raise a fact issue in response to Morales's motion, the trial court correctly granted summary judgment. See *Rust v. Texas Farmers Ins. Co.*, 341 S.W.3d 541, 550 (Tex.App.-El Paso 2011, pet. filed) ("The trial court is required to grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact."). We overrule Retzlaff's first issue on appeal. We find it unnecessary to consider his third issue because, even if the trial court erred in striking the entire response as untimely, the court's sustaining of Morales's objections still leaves Retzlaff without any evidence to raise a fact issue.

In his second issue on appeal, Retzlaff asserts that the trial court erred by denying his request to continue the summary judgment hearing so that he could obtain additional evidence. He argues that he did not have an adequate time for discovery because the summary judgment motion was filed only one month after the San Antonio Court of Appeals issued its mandate on his interlocutory appeal.

We review the denial of a motion for continuance for an abuse of discretion. *Gallardo v. J.C. Penney Corp., Inc.*, 281 S.W.3d 51, 53-54 (Tex.App.-El Paso 2008, no pet.). "[W]hen a party seeks a continuance for responding to a motion for summary judgment, [he must file either an affidavit explaining the need for further discovery or a verified motion for continuance." *Martinez v. Leeds*, 218 S.W.3d 845, 849 n. 3 (Tex.App.-El Paso 2007, no pet.); *accord Rankin v. Union Pac. R. Co.*, 319 S.W.3d 58, 67 (Tex.App.-San Antonio 2010, no pet.); *see also* TEX.R.CIV.P. 166a(g), 251. Retzlaff did not file an affidavit explaining the need for more discovery and his request for a continuance was not verified. He also failed to identify what additional discovery was needed and how it would have assisted him in responding to the summary judgment motion. See *Finlan v. Dallas Indep. Sch. Dist.*, 90 S.W.3d 395, 412 (Tex.App.-Eastland 2002, pet. denied). Accordingly, the trial court did not abuse its discretion in denying the continuance. *Gallardo*, 281 S.W.3d at 54; *Finlan*, 90 S.W.3d at 412-13. Retzlaff's second issue is overruled.

8/12/2014
Case 5:14-cv-01059-BLF    Document 35-2    Filed 08/14/14    Page 62 of 151
Retzlaff v. Mendieta-Morales, 356 SW 3d 676 - Tex Court of Appeals, 8th Dist. 2011 - Google Scholar

The judgment of the trial court is affirmed.

Save trees - read court opinions online on Google Scholar.

# EXHIBIT 11

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

### NO. 03-05-00277-CR

**Ex parte Thomas Retzlaff**

**FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT**
**NO. 47,846-A, HONORABLE JOE CARROLL, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

We withdraw the opinion and judgment dated December 5, 2006, and substitute the following.

Thomas Retzlaff, acting pro se, applied for habeas corpus relief from a judgment of conviction ordering community supervision. *See* Tex. Code Crim. Proc. Ann. art. 11.072 (West 2005). The writ issued by operation of law, and the trial court subsequently denied relief in a written order. *See id.* art. 11.072, §§ 4(a), 6. This appeal followed. *See id.* § 8. We will affirm the order in part, and reverse and render in part.

In August 1997, Retzlaff pleaded guilty to tampering with or fabricating physical evidence. *See* Tex. Penal Code Ann. § 37.09 (West 2003).[1] The trial court deferred adjudication and placed Retzlaff on community supervision as called for in a plea bargain agreement. In March 1998, the court adjudged Retzlaff guilty and sentenced him to ten years' imprisonment and a $10,000 fine. The court suspended imposition of sentence and returned Retzlaff to community supervision for ten years. Retzlaff filed a motion to modify the conditions of supervision in October 1998, but the court took no action on the motion. He filed an amended motion to modify the supervisory conditions in July 2004. The record reflects that the court took this motion under advisement, but did not rule. Retzlaff filed his article 11.072 application in January 2005.

Enacted in 2003, article 11.072 "establishes the procedures for an application for a writ of habeas corpus in a felony or misdemeanor case in which the applicant seeks relief from an order or a judgment of conviction ordering community supervision." Tex. Code Crim. Proc. Ann. art. 11.072, § 1. At the time the application is filed, the applicant must be, or have been, on community supervision, and the application must challenge the legal validity of the conditions of community supervision or of the conviction or order in which community supervision was imposed. *Id.* § 2(b). Article 11.072 may be used to challenge a condition of community supervision on

---

[1] The information alleged that Retzlaff, knowing that an investigation of the theft of books from the Bell County law library was in progress, made, presented, and used a false book check-out slip with knowledge of its falsity and with the intent to affect the course and outcome of the investigation. It appears that Retzlaff, a prolific pro se litigator, was suspected of stealing books from the library.

2

constitutional grounds only, and the applicant must first attempt to gain relief by filing a motion to amend the conditions of supervision.  *Id.* § 3(b), (c).[2]

In his habeas corpus application, Retzlaff challenged thirty-two of the forty-six conditions of his supervision.  As it is in any habeas corpus proceeding, the burden was on Retzlaff to prove his claims by a preponderance of the evidence.  *Ex parte Peterson*, 117 S.W.3d 804, 818 (Tex. Crim. App. 2003). The trial court denied relief without conducting a hearing.  *See* Tex. Code Crim. Proc. Ann. art. 11.072, § 6.  In reviewing the order, we defer to the trial court's determinations of historical facts that the record supports.  *Peterson*, 117 S.W.3d at 819.  We conduct a de novo review of mixed questions of law and fact that do not depend on credibility and demeanor.  *Id.*

---

[2] An application may not be filed pursuant to article 11.072 "if the applicant could obtain the requested relief by means of an appeal."  Tex. Code Crim. Proc. Ann. art. 11.072, § 3(a) (West 2005).  Section 3(a) clearly prohibits the use of article 11.072 when relief by appeal is available at the time the petition is filed.  One court of appeals has construed section 3(a) also to prohibit the use of article 11.072 to challenge a condition of supervision if the challenge could have been made on appeal from the conviction.  *Ex parte Wilson*, 171 S.W.3d 925, 928 (Tex. App.—Dallas 2005, no pet.).  This is in accord with the general rule that habeas corpus cannot be used as a substitute for appeal, and that it may not be used to bring claims—even constitutional claims—that could have been brought on appeal.  *Ex parte Nelson*, 137 S.W.3d 666, 667 (Tex. Crim. App. 2004); *Ex parte Townsend*, 137 S.W.3d 79, 81 (Tex. Crim. App. 2004); *see Ex parte Clore*, 690 S.W.2d 899, 900 (Tex. Crim. App. 1985) (appropriate remedy to challenge condition of probation is by appeal from conviction).  Assuming without deciding that this is the correct interpretation of section 3(a), it does not apply here because, under the appellate rules as they were then interpreted by the court of criminal appeals, Retzlaff had no right of appeal regarding the conditions of his supervision following either the 1997 order deferring adjudication or the 1998 judgment of conviction.  *See Lyon v. State*, 872 S.W.2d 732, 736 (Tex. Crim. App. 1994); *Watson v. State*, 924 S.W.2d 711, 714-15 (Tex. Crim. App. 1996).  We also note that the court of criminal appeals has stated, albeit in an unpublished opinion having no precedential value, that challenges to conditions of community supervision must now be made pursuant to article 11.072 and that relief via direct appeal is not available.  *Beauchamp v. State*, No. 254-03, 2004 WL 3093227 (Tex. Crim. App. Sept. 22, 2004) (not designated for publication).

3

In his second point of error, Retzlaff challenges the conditions of supervision as a whole on the ground that he was not given proper notice.[3] Retzlaff did not raise this contention in his writ application and, therefore, nothing is presented for review. Point of error two is overruled.

In point of error one, Retzlaff contends that the trial court erred by overruling his challenges to eighteen specific supervisory conditions. Retzlaff's principal argument is that the imposition of each condition was an abuse of discretion because the condition has no relationship to the crime for which he was convicted, relates to conduct that is not in itself criminal, and is not reasonably related to his future criminality or does not serve the statutory ends of probation. *See Marcum v. State*, 983 S.W.2d 762, 768 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd). As previously noted, however, a condition of supervision may be challenged under article 11.072 only on constitutional grounds. Tex. Code Crim. Proc. Ann. art. 11.072, § 3(c). This requires more than a mere showing that the court abused its discretion. Retzlaff must demonstrate that the challenged condition violates a specific constitutional right or guarantee.

**Fines and fees.** Retzlaff asserts that the trial court did not consider his ability to pay as required by the probation statute, and thereby denied him due process of law, before ordering him to pay court costs (condition 11), a supervision fee (condition 13), a fine (condition 14), and a substance abuse testing fee (condition 18). *See id*. art. 42.12, § 11(b) (West Supp. 2006). The trial

---

[3] Retzlaff states the issue as follows: "Can a trial court impose conditions of community supervision upon a probationer that the probationer did not ever agree to or even know about?"

4

court found in its order that Retzlaff's ability to pay was considered before these conditions were imposed, but Retzlaff responds that there is no evidence of such consideration in the record.[4]

Although Retzlaff challenged condition 18 in his writ application, he did not do so on the ground he now asserts. Moreover, while a procedural error or statutory violation might be reversible error on direct appeal, it is not a constitutional error that requires relief on a writ of habeas corpus. *Ex parte McCain*, 67 S.W.3d 204, 209-10 (Tex. Crim. App. 2002). The failure to adhere to statutory procedures serving to protect a constitutional right violates the statute, not the constitution itself. *Ex parte Graves*, 70 S.W.3d 103, 109 (Tex. Crim. App. 2002). The trial court's alleged failure to comply with article 42.12, section 11(b), even if true, was a statutory violation that cannot be asserted to challenge the conditions of supervision in this article 11.072 proceeding. Tex. Code Crim. Proc. Ann. art. 11.072, § 3(c).

**Stay-away.** Conditions 36 and 37 prohibit Retzlaff from directly or indirectly contacting or communicating with certain named individuals, living in the same residence with these individuals, or going within four hundred yards of locations frequented by these individuals. As to each person, Retzlaff asserts that there is no basis in the record for concluding that the condition is relevant to the crime for which he was convicted, is designed to prevent future criminality, or serves

---

[4] The record before us includes the reporter's record from the August 20 and 29, 1997, proceedings at which Retzlaff pleaded guilty and was placed on deferred adjudication community supervision, and from the March 18, 1998, hearing at which he was adjudged guilty. The record does not contain the March 26, 1998, hearing at which sentence was suspended and Retzlaff was ordered back to community supervision. We are advised that the reporter's notes from this hearing have been lost or destroyed. Retzlaff does not complain of this in his brief, and the absence of the record of this hearing has not affected our consideration of the appeal. Retzlaff's motion to abate the appeal for a hearing regarding the lost record is overruled.

5

the statutory ends of probation. *See Marcum*, 983 S.W.2d at 768. This is an abuse of discretion challenge, not a constitutional one. Retzlaff's other arguments regarding these conditions were not raised in the writ application and were not preserved for appeal.

        **Litigation.** Condition 39 prohibits Retzlaff from threatening to file and condition 40 prohibits Retzlaff from filing pro se civil litigation without first demonstrating to the trial court that such litigation would not be frivolous within the meaning of the civil practice and remedies code. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 9.001-10.006 (West 2002). In its order denying relief, the trial court wrote that there is evidence Retzlaff "sought to use litigation as a weapon, and these conditions were imposed to curb these tendencies." The court added that the conditions do not prevent Retzlaff from defending himself if sued or prohibit Retzlaff from filing meritorious lawsuits. In addition to urging that these conditions are an abuse of the court's discretion, Retzlaff asserts that the conditions violate his freedom of speech, deny him meaningful access to the courts, and constitute outlawry.

        A condition of supervision is not necessarily invalid because it interferes with the exercise of a constitutional right. *Ex parte Alakayi*, 102 S.W.3d 426, 432 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd). A condition that intrudes on a probationer's constitutional rights will be upheld if it bears a reasonable relationship to the purposes of community supervision or the legitimate needs of law enforcement. *Id.*

        Condition 39 constitutes a prior restraint on Retzlaff's First Amendment freedom of speech. Prior restraints are strongly disfavored, and will be upheld against constitutional attack only in exceptional cases; for example, to prevent the publication of information about troop movements

6

during wartime or to prohibit incitement to acts of violence. *See Near v. Minnesota*, 283 U.S. 697, 716 (1931). Condition 39 bears a tenuous connection at best to the offense for which Retzlaff is on probation. The perceived need to curb Retzlaff's tendency to use litigation as a weapon can be accomplished without the extraordinary imposition of a prior restraint on his freedom of speech. We will, therefore, sustain Retzlaff's challenge to condition 39 and reverse the trial court's denial of relief.

Turning to condition 40, Retzlaff cites no authority holding that the filing of a lawsuit is an expressive activity protected by the free speech clauses. *See* U.S. Const. amend. I; Tex. Const. art. I, § 8. It has been held that there is no constitutionally protected right to file or pursue frivolous or malicious litigation. *Hicks v. Brysch*, 989 F. Supp. 797, 822 (W.D. Tex. 1997). We are unpersuaded that condition 40 constitutes a prior restraint on Retzlaff's freedom of speech and expression.

The Texas Constitution provides that "[n]o citizen shall be outlawed." Tex. Const. art. I, § 20. Outlawry, in the English common law, was the withdrawal by civil society of all legal rights and protection from one of its offending members. *Id.* interp. commentary (West 1997). Article I, section 20 "was intended to prohibit the state only from . . . denying a citizen *all* legal rights." *Peeler v. Hughes & Luce*, 909 S.W.2d 494, 499 (Tex 1995). We conclude that condition 40 does not constitute outlawry.

The Texas Constitution guarantees that "[a]ll courts shall be open, and every person for an injury done him . . . shall have remedy by due course of law." Tex. Const. art. I, § 13. Under this provision, the courts must actually be open and operating, citizens must have access to the courts

7

unimpeded by unreasonable financial barriers, and the legislature may not abrogate the right to assert a well-established common law cause of action. *Leonard v. Abbott*, 171 S.W.3d 451, 457 (Tex. App.—Austin 2005, pet. denied). To establish an open courts violation, it must be shown that the litigant has a cognizable common law cause of action being restricted by a statute, and that the restriction is unreasonable or arbitrary when balanced against the purpose of the statute. *Id.* Because Retzlaff does not challenge a legislative act that abridges a cognizable common law claim, his open courts challenge is without merit. *See Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 410 (Tex. 1997).

Retzlaff also asserts that condition 40 abridges his constitutional right to meaningful access to the courts, citing *Bounds v. Smith*, 430 U.S. 817 (1977). *Bounds* held that "the fundamental right of access to the courts" requires prison authorities to provide inmates adequate law libraries or adequate assistance from persons trained in the law. 430 U.S. at 828. This holding grew out of earlier cases recognizing that prisoners have "a right to bring to court a grievance that the inmate wishe[s] to present." *Lewis v. Casey*, 518 U.S. 343, 354 (1996). This right is limited to direct appeals from the convictions for which the prisoner is incarcerated, habeas corpus petitions, and civil rights actions to vindicate basic constitutional rights. *Id.* The challenged condition of supervision does not violate the right of access to the courts recognized in the *Bounds* line of cases.

Finally, in his motion for rehearing, Retzlaff urges for the first time that condition 40 violates his First Amendment right to petition the government for a redress of grievances. Because this contention was not presented to the trial court in the habeas corpus petition, it was not preserved for appeal.

8

**Adultery.** Condition 41 prohibits Retzlaff from "knowingly engag[ing] in any adulterous relationships at any time with anyone." Retzlaff complains that this condition is "silly" and "unenforceable," and he states that he "has absolutely no intention of obeying this bogus probation condition." Retzlaff asserts that the condition is unconstitutional, but he offers no argument in support of this assertion. None of Retzlaff's arguments are cognizable under article 11.072.

**Lawyer.** Condition 38 prohibits Retzlaff from holding himself out as a lawyer, attorney, or legal advisor at any time. Retzlaff argues that under the First Amendment, he "can call himself whatever he wants" so long as it is not done fraudulently or for financial gain. We note that falsely holding oneself out as a lawyer is a crime. *See* Tex. Penal Code Ann. § 38.122 (West 2003). Retzlaff cites no authority for his assertion that such conduct is constitutionally protected.

**Contact with wife.** Conditions 25 and 26 prohibit Retzlaff from contacting, communicating with, or going within 400 yards of the residence of Denise Retzlaff, his wife at the time the condition was imposed. Retzlaff concedes that these conditions were reasonable when imposed, but he asserts that "circumstances have changed." Specifically, he asserts that he and his now former wife "have fully and completely reconciled." Retzlaff's argument does not present a constitutional challenge to these conditions.

**Alcohol and injurious habits.** Condition 2 orders Retzlaff to "[a]void injurious or vicious habits and abstain from the use of narcotic drugs in any form; not use alcoholic beverages." *See* Tex. Code Crim. Proc. Ann. art. 42.12, § 11(a)(2) (West Supp. 2006). Retzlaff argues that the phrase "avoid injurious or vicious habits" is unconstitutionally vague. Any vagueness was

9

cured, however, by the reference to narcotics and alcoholic beverages in the same condition. *See*
*Flores v. State*, 513 S.W.2d 66, 68-69 (Tex. Crim. App. 1974).

Alcoholic beverages are also the subject of condition 32, which orders Retzlaff "not
to consume, transport, purchase, trade for, own or possess any alcoholic beverage at any time or any
place." Retzlaff complains that this condition is unreasonable because he was not shown to be an
alcoholic and because it limits his opportunities for employment. Once again, however, article
11.072 only permits constitutional challenges to the conditions of supervision.

**Truthfulness.** Condition 28 requires Retzlaff to give truthful information to his
probation officer. He contends that this violates his Fifth Amendment privilege against self-
incrimination. We disagree. Condition 28 does not prohibit Retzlaff from declining to give
incriminating information; it merely prohibits him from giving false information.

**Firearms.** Condition 31 prohibits Retzlaff from residing in a home where any
firearm or ammunition is kept. He complains that this condition is vague because "reside" is not
defined. He did not make this argument in his writ application. In any event, we believe that a
person of ordinary intelligence, applying the commonly understood meaning of the word, would
understand this condition's requirements.

**Medical treatment.** Condition 34 requires Retzlaff to attend and pay for any
psychological evaluation and treatment arranged by his supervision officer, and to make the results
of any evaluation or treatment available to the officer. Condition 35 requires Retzlaff to take the
medications prescribed by any treating physician. Retzlaff argues that these conditions are an abuse
of discretion because he was not shown to need medical treatment and cannot afford it, they do not

serve the purposes of probation, and they violate doctor-patient confidentiality.  None of these arguments is a constitutional challenge to the conditions.

The motion for rehearing and the motion for en banc reconsideration are overruled. We sustain Retzlaff's challenge to the validity of supervisory condition 39, overrule the district court's order denying relief as to that condition, and order the condition struck. The district court's order is affirmed in all other respects.

ı

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Patterson and Pemberton;
    Concurring and Dissenting Opinion by Justice Pemberton

Affirmed in part; Reversed and Rendered in part on Motion for Rehearing

Filed:   May 15, 2007

Do Not Publish

ı

11

# EXHIBIT 12



P.O. Box 480
Belton, TX 76513

(254) 933-5160
Fax (254) 933-5176

email: shelley.coston@co.bell.tx.us

**Shelley Coston**
Bell County Clerk

# MISDEMEANOR RECORD SEARCH

NAME: RETZLAFF, THOMAS CHRISTOPHER

DOB: 3/14/1966

A personal review of the records of the above named individual disclosed the following information with respect to the individual's Misdemeanor Criminal History Record.

Cause Number: MR2C971676

Original Offense: M A TAMPERING WITH GOVT RECORD

Final Offense: M A TAMPERING WITH GOVT RECORD

Date of Offense: 2/07/1997

Arresting Agency: CA

Disposition Date: 9/02/1997

Status: PG

Description: FINE AND COSTS SERVED IN JAIL

Time Assessed: 325

Fines: $100.00

Court Costs: $157.00

Balance: $0.00

It is expressly understood that there is no guarantee of correctness; that the county clerk nor deputy providing this information shall not be held liable for records listed or omitted in error.

Given under my hand and seal of office, this 7/21/14.

Shelley Coston, County Clerk
Bell County, Texas
by Deputy KETTERMA

Instruments associated with this case are available upon request for an additional charge, $1 per page (additional $1 per case for certification). For cases filed prior to 2002, only the judgment is available. Please visit or contact the County Clerk's Office at (254) 933-5170 to request copies.

bcccrsltr
CKW3PFK

CA 27-
480230                                    2413-E

480230

### IN THE NAME AND BY THE AUTHORITY OF THE STATE OF TEXAS

The Complainant, JACK G. MAZZUCA, having personally appeared and been duly sworn by me, the undersigned authority, stated upon oath that I have good reason to believe and do believe

AND I THEREFORE CHARGE THAT Thomas C. Retzlaff, hereinafter referred to as Defendant, on or about the 7th day of February, 1997 A.D., in Bell County, Texas did then and there intentionally and knowingly make a false entry in and false alteration of a governmental record, namely an appeal bond, and made, presented and used said governmental record with knowledge of its falsity and with the intent that it be taken as a genuine governmental record.

2C97  1676

AGAINST THE PEACE AND DIGNITY OF THE STATE.

_____
COMPLAINANT

Sworn to and subscribed before me this 5th day of March, 1997 A.D.,


_____
JUSTICE OF THE PEACE
PRECINCT __5__, PLACE ___
BELL COUNTY, TEXAS


ASSISTANT COUNTY ATTORNEY
BELL COUNTY, TEXAS


NOTARY PUBLIC IN AND FOR
BELL COUNTY, TEXAS
MY COMMISSION EXPIRES_____


OFFENSE:  TAMPERING WITH GOVERNMENTAL
          RECORD

STATUTE:  PENAL CODE 37.10

PENALTY:  CLASS


FILED FOR RECORD

MAR 2 0 1997

VADA SUTTON
CO. CLK. BELL CO. TX

2C97 1876

NO. ___2413-E___

| THE STATE OF TEXAS | * | IN THE JUSTICE COURT |
| VS. | * | OF |
| Thomas C. Retzlaff | * | BELL COUNTY, TEXAS |

## APPLICATION AND AFFIDAVIT FOR ARREST WARRANT

THE STATE OF TEXAS      *

COUNTY OF BELL          *

The undersigned Affiant, a Peace Officer licensed in the State of Texas, herein requests this Court to issue a warrant of arrest for the above named Defendant, and in support thereof, and being duly sworn, upon oath, makes the following statements and accusations in support of said request:

1. There is herein described, the following suspected party, to wit:   Thomas C. Retzlaff, White Male, DOB: ███████, height 5'9", weight 165.

2. It is the belief of the Affiant and he hereby charges and accuses that the said Defendant has violated the laws of the State of Texas, as follows:

That the said Defendant, on or about the 7th day of February, 1997, and before the making and filing of this affidavit, did then and there, in Bell County, Texas, knowingly make a false entry in and false alteration of a governmental record, namely an appeal bond, and made, presented and used said governmental record with knowledge of it's falsity and did further make present, and use said governmental record with knowledge of its falsity and with the intent that it be taken as a genuine governmental record.

AGAINST THE PEACE AND DIGNITY OF THE STATE.

3. Affiant has probable cause for said belief by reason of the following facts, to wit:   I am a certified peace officer licensed in the State of Texas and employed as criminal investigator with the Bell County Attorney's Office.   I have reviewed a traffic appeal bond filed with County Court at Law #2, Bell County, Texas and submitted by the above described suspect Thomas C. Retzlaff. (Attached as exhibit "A" and incorporated in this affidavit for all purposes).   I have personally interviewed Denise Foster, who is also known to me as Denise Retzlaff.   She informed me that she is still married to suspect, although currently separated from him. She told me that she did not sign exhibit "A".   She informed me that the suspect "forge's her name frequently".   Brenda Weaks,

FILED FOR RECORD

MAR 2 0 1997

VADA SUTTON
CO. CLK. BELL CO. TX

3.  Probable cause, cont'd

**2C97**    1676

Temple Municipal Court co-ordinator, whom I believe to be a reliable and credible person, told me that she informed the suspect that his wife could not be a surety on exhibit "A" prior to suspect submitting exhibit "A".  I have reviewed a Court of Appeals case No. 03-96-00617-CV a copy of which was sent to the suspect on January 30, 1997, prior to execution of exhibit "A", which states that a spouse cannot act as surety on an appeal bond.  I was informed by Denise Foster, that the second surety on Exhibit "A" Brittany Retzlaff is the name of their nine year old daughter.  The address listed on exhibit "A" for Brittany Retzlaff is the same as the suspect's.  The suspect told Brenda Weaks that Brittany Retzlaff was his "cousin".  Denise Foster did not mention any cousin by that name when examing exhibit "A"  I have consulted with the County Attorney, Rick Miller who informed me that a nine year old child could not be a surety or enter into a contract in this situation as a matter of law.

WHEREFORE, Premises Considered, Affiant asks for issuance of a warrant of arrest for the above named Defendant for the foregoing misdemeanor offense.

_____
Affiant

SUBSCRIBED AND SWORN TO before me this 5th day of March, 1997.

DENNIS W. STEVENS
Notary Public - State of Texas
Commission Expires: 06/09/97

_____
Notary Public, State of Texas
My commission expires 6-9-97

ORDER

On this the 5th day of March, 1997, having considered the above application and affidavit, the Court finds the same should be granted.

It is therefore ORDERED that the County Clerk of Bell County, Texas, issue a warrant of arrest for the above named Defendant.

_____
Judge Presiding

FILED FOR RECORD
MAR 2 6 1997
VADA SUTTON
CO. CLK. BELL CO. TX

2C97*1676*

INFORMATION - GENERAL

IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:

I, Richard J. Miller, County Attorney, of the County of Bell, State of Texas, on the written affidavit of Jack G. Mazzuca, a competent and credible person herewith filed in the County Court-At-Law No. 2, of Bell County, Texas, do present in and to said Court: That in the County of Bell, State of Texas, on or about the 7th day of February, 1997, A.D., and anterior to the filing of this information, one Thomas C. Retzlaff, the defendant, did then and there intentionally and knowingly make a false entry in and false alteration of a governmental record, namely an appeal bond, and made, presented and used said governmental record with knowledge of its falsity and with the intent that it be taken as a genuine governmental record.

AGAINST THE PEACE AND DIGNITY OF THE STATE.

Richard J. Miller
County Attorney, Bell County, Texas

By: _Dianne Header_
    Assistant County Attorney

FILED FOR RECORD

MAR 2 0 1997

VADA SUTTON
CO. CLK. BELL CO. TX

*4H*
*5147*
*2. 00*

NO. 2C97-1676

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE COUNTY COURT |
| | § | |
| VS. | § | AT LAW, NO. 2 |
| | § | |
| THOMAS CHRISTOPHER RETZLAFF | § | BELL COUNTY, TEXAS |

FILED FOR RECORD

MAY 07 1997

VADA SUTTON
COUNTY CLK., BELL CO. TEXAS

MOTION TO DISMISS

TO THE HONORABLE JUDGE OF THIS COURT:

THOMAS CHRISTOPHER RETZLAFF, Defendant in the above cause, excepts to and moves the Court to set dismiss the prosecution based upon the information filed herein on the following grounds:

I.

On or about April 18, 1997 Bell County Sheriff's deputies seized all defendant's notes and documents. The documents seized include defendant's recordings of his thought processes and preparation for trial in this cause, the other pending criminal cases, and other pending legal actions. Also included in the items seized were notes of information defendant intended to pass along to his attorney, correspondence from his attorney, and communications defendant intended for his spouse.

II.

Said seizure of information violates the protections afforded the defendant by the Constituions of the State of Texas and the United States; as well as the Texas Code of Criminal Procedure. Specifically, the seizure and review of items complained of herein violated defendants rights to be free from unreasonable search and seizure, right to counsel and rights against self-incrimination.

III.

The nature and level of intrusion is such that mere supression of the evidence seized is insufficient. By intruding upon defendant's thought processes and trial strategies, the State has gained illegal insight into the manner by which defendant intended to refute the State's allegations. Beyond the mere possession of protected evidence, this case involves the monitoring of defendant's thoughts and preparations for trial. Because the State has penetrated defendant's theories about the approach to trial and seized his preparation, it has the defense strategy, which is strictly protected under our entire justice system.

WHEREFORE, Defendant prays that this motion to dismiss be granted and the prosecution be dismissed.

RESPECTFULLY SUBMITTED,

PAUL L. LePAK
106 N. EAST STREET
BELTON, TX 76513
(817) 933-2255
FAX: (817) 933-3421
SBN: 12216750

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion has been hand-delivered to the Office of the County Attorney for Bell County, Texas, Bell County Courthouse, on this the 7th day of ___May___, 1997.

Paul L. LePak

2C97–1676

| | | |
|---|---|---|
| THE STATE OF TEXAS | † | IN THE COUNTY COURT AT LAW #2 |
| VS. | † | IN AND FOR |
| Thomas Christopher Retzlaff | † | BELL COUNTY, TEXAS |

## JUDGMENT

On this the  2nd day of September, 1997, the above entitled and numbered cause was regularly reached and called for trial when came the State of Texas by her County Attorney and the Defendant in person WITH~~A WITHOUT~~ counsel and both parties announced ready for trial; thereupon the Defendant waived a jury and the Court consented to the waiver of jury herein; and thereupon the Defendant waived the reading of the information and the Court consented to the waiver of the reading of the information; thereupon when asked by the Court as to how the Defendant pleaded, the Defendant entered a plea of "Guilty" to the offense in the information relied upon by the State and thereupon the Defendant was admonished by the Court of the consequences of said plea including the maximum and minimum punishment attached to the offense relied upon by the State, that any recommendation of the prosecuting attorney as to the punishment assessed by the Court does not exceed the punishment recommended by the State and agreed to by the Defendant and his attorney, the Court must give its permission to the Defendant before he may prosecute an appeal on any matters in the case except for those matters raised by written motion filed prior to trial and that were ruled on by the Court; and it appearing to the Court that the said Defendant is competent to stand trial and that the Defendant is not influenced in making said plea out of fear or persuasion or delusive hope of pardon promoting him to confess his guilt, the said plea of "Guilty" is by the Court received now entered of record in the minutes of the Court as the plea herein of said Defendant; and the Court, after having heard all evidence for the State and Defendant and the argument of counsel, is of the opinion and so finds that the said Defendant is guilty as confessed of the offense alleged in the information herein.

It is therefore Considered, Ordered, Adjudged, and Decreed by the Court that the said Defendant is guilty of the offense of **TAMPERING WITH GOVERNMENTAL RECORD,**                    and that the said Defendant committed the said offense on the  7th day of  February, 1997, as confessed in said plea of guilty herein made, and that the punishment be fixed as determined by the Court, by confinement in the Bell County Jail for a period of 325 days and by a fine of    $100.00, plus costs of court.

SIGNED AND ENTERED ON THIS THE  2nd day of September, 1997.

_____
JUDGE PRESIDING

2C97–1676

| | | |
|---|---|---|
| THE STATE OF TEXAS | ⏐ | IN THE COUNTY COURT AT LAW #2 |
| VS. | ⏐ | IN AND FOR |
| Thomas Christopher Retzlaff | ⏐ | BELL COUNTY, TEXAS |

## SENTENCE

On this the  2nd day of September, 1997, this cause being again called, the State appeared by her County Attorney and the Defendant appeared in open Court in person WITH/~~WITHOUT~~ counsel present for the purpose of having the sentence of law pronounced in accordance with the Judgment herein rendered and entered against him. And thereupon the Defendant was asked by the Court whether he had anything to say why said sentence should not be pronounced against him and he answered nothing in bar thereof. Whereupon the Court proceeded, in the presence of the said Defendant to pronounce sentence against Defendant as follows:

It is the Order of this Court that the Defendant who has been adjudged to be guilty of **TAMPERING WITH GOVERNMENTAL RECORD,**                           and whose punishment has been assessed at a fine of   **$100.00,** plus   **$157.00** costs of court, and at confinement in the Bell County Jail for 325 days, be delivered to the Sheriff of Bell County, Texas, today, to be confined in the said Bell County Jail in accordance with the provisions of the law governing the jail and the keeping of prisoners. It is the further order of this Court that the Defendant shall be given credit for _170_ days towards the completion of this sentence which is the time the Defendant served in jail waiting trial in this cause up to and including the day of this sentence.

Said fine and costs shall be paid by the Defendant to the County Clerk as follows:
Pay $257.00 in jail, fine and court cost are to run concurrent with jail sentence.

ENTERED AND SIGNED ON THIS THE  2nd day of September, 1997.

_____
JUDGE PRESIDING

| | |
|---|---|
| Court Costs––––––––– | $103.00 |
| State Costs–––––––– | $19.00 |
| Crime Fund Costs–––– | $35.00 |
| Total––––––––––––– | $157.00 |

Restitution:
To:

FILED FOR R...

SEP – 3 1997

VADA ...
CO. CLK. BELL CO. TX

CR–74R–85

# EXHIBIT 13

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-03-00319-CV
### NO. 03-03-00320-CV

**Thomas Retzlaff, Appellant**

v.

**Joel S. McDonald, Appellee**

&

**George R. Hollas, Jr. and Denise A. Retzlaff, Appellees**

## FROM THE COUNTY COURT AT LAW NO. 3 OF BELL COUNTY, NOS. 45,524 & 42,950 HONORABLE GERALD M. BROWN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant, Thomas Retzlaff, obtained judgments in the county court at law against his ex-wife Denise A. Retzlaff, George R. Hollas, Jr., and Joel S. McDonald for civil conspiracy to commit conversion/theft, defamation, and malicious prosecution.[1] In each case, appellees were held jointly and severally liable for $9,575 in actual damages on the conversion/theft count and nominal damages of $10 for the defamation count and general damages of $10 on the malicious prosecution

---

[1] The causes of action against appellees were initially brought as one lawsuit, but were severed after default judgments were obtained against Hollas and Denise Retzlaff. The cases have been consolidated on appeal.

count. An additional $905 in damages were awarded against McDonald for his appropriation of appellant's property. The court declined to award exemplary damages. Appellant contends that the trial court's award of damages in an amount less than he requested was against the great weight and preponderance of the evidence and was manifestly unjust. He further raises an issue that the trial court abused its discretion in choosing not to consider, or deem admitted, certain requests for admissions sent to the appellees' last known addresses. We affirm the judgments of the trial court.

### Factual Background

In early 1997, appellant and his wife, Denise Retzlaff, decided to divorce. Before any legal division of their marital assets, appellant was arrested for unlawfully carrying a weapon in a prohibited place. He was placed on deferred adjudication community supervision, but was required to first serve 180 days in the Bell County jail. While appellant was in jail, Denise Retzlaff obtained the services of an attorney and filed for divorce. She also alleged that appellant had raped her, and appellant was indicted for sexual assault. These allegations were supported by an edited videotape purporting to record the assault. The sexual assault charges were eventually dismissed. During this time, an action to terminate appellant's parental rights to his two children was also initiated.

In August 1997, after serving 180 days in the Bell County jail, appellant was released and began working for a local mortuary. By October 1997, allegations were made that appellant had committed several burglaries and he was arrested pursuant to a motion to revoke his probation. The motion included the burglary and sexual assault allegations. The motion was granted and appellant was sentenced to 8 years in prison; no burglary charges were brought. The termination proceeding went to trial before a jury and appellant's parental rights to his two children were terminated.

2

Appellant sued his ex-wife, her attorney Michael White, White's law firm, McDonald, and Hollas, alleging that they had (i) conspired to steal property awarded to appellant in the divorce proceedings, (ii) defamed him by falsely accusing him of sexual assault and burglary, and (iii) maliciously caused him to be prosecuted for sexual assault. Denise Retzlaff and George Hollas did not answer the suit and a default judgment was obtained by appellant in September 1999. Joel McDonald filed a general denial to the claims in appellant's petition but did not timely respond to appellant's first and second requests for admissions. These requests, which contained concessions of liability, were deemed admitted by the court and appellant's motion for partial summary judgment against McDonald was granted. McDonald subsequently filed for bankruptcy protection in November 2001, but the federal district court abated the bankruptcy proceedings until appellant's claims in state court were resolved. Appellant informed this Court in his brief that his case against White was proceeding to trial and that he and White's law firm had reached a settlement agreement.

On May 24, 2002, appellant mailed his third request for admissions to McDonald at his last known address. Soon after, he mailed a request for admissions to Hollas at his last known address. These documents requested McDonald and Hollas admit to liability and to economic and exemplary damages totaling at least $300,000. The record reflects that appellant was aware that neither address was current and that neither Hollas or McDonald actually received the requests.

In January 2003, the court held separate hearings on damages in both cases. Paul LePak, appellant's attorney in the termination and criminal proceedings, and appellant were the only witnesses called at the hearings. LePak testified primarily regarding his visits with appellant at the Bell County jail. He confirmed that the criminal allegations against appellant had a negative effect

3

and that appellant was hostile, angry, and frustrated. He also stated that the sexual assault allegations played a big role in the termination proceedings and that appellant was more upset about the termination of his parental rights than his incarceration.

Appellant testified that the appellees' actions caused him great mental anguish. He stated that the allegations of sexual assault caused him problems in the Bell County jail and distressed his parents. He explained that he has been treated for depression since the allegations were made and that he had attempted suicide. He stated that the medication he takes for depression causes him fatigue, drowsiness, and confusion. He also complained that the appellees had ruined his relationship with his children. At both hearings, appellee detailed the property awarded him in the divorce proceedings. A final judgment awarding damages in both cases was rendered by the trial court in February 2003 and modified judgments and findings of fact and conclusions of law were signed that March.

**Discussion**

Appellant contends in his first issue that the trial court abused its discretion in failing to consider, or deem admitted, requests for admissions that were mailed to McDonald and Hollas. Appellant mailed the requests for admission to the last known addresses of both McDonald and Hollas and he argues that, therefore, he properly served the requests. Thus, appellant contends that Hollas's and McDonald's failure to respond to the requests should have been deemed an admission and the trial court's failure to consider these admissions resulted in an improper judgment as evidenced by the court's decision to award only nominal damages on his defamation and malicious prosecution claims.

4

Rule 198 of the Texas Rules of Civil Procedure entitles a litigant to serve requests for admissions on another party in a civil action. If a response to the request is not timely served on the requesting party, the request is considered admitted. Tex. R. Civ. P. 198(c). However, a request for admission must actually be served on the party in order to trigger the obligation to respond. *Id.* Appellant argues that he effectively served Hollas and McDonald by sending the request, via certified mail, to their last known addresses. *See* Tex. R. Civ. P. 21(a). Indeed, such compliance with Rule 21(a) creates a presumption of receipt by the party. *Thomas v. Ray*, 889 S.W.2d 237, 238 (Tex. 1994); *Cliff v. Huggins*, 724 S.W.2d 778, 780 (Tex. 1987); *Payton v. Ashton*, 29 S.W.3d 896, 898 (Tex. App.—Amarillo 2000, no pet.). Evidence of non-receipt of a document served through the mail in compliance with Rule 21(a), however, negates that presumption. Tex. R. Civ. P. 21(a) ("Nothing herein shall preclude any party from offering proof that the notice or instrument was not received."); *Thomas*, 889 S.W.2d at 238 (presumption of receipt rebutted by proof to the contrary).

The trial court's findings of fact in the case against McDonald state that a notice of hearing sent by the court to McDonald's last known address was returned by the post office marked "attempted-not-known" with a note that the box holder denied being the addressee and stated that he does not know the addressee. Appellant's requests for admission were sent to the same address. Similarly, the trial court's findings of fact in the case against Hollas and Denise Retzlaff state that notices sent to their last known address were returned marked "not deliverable." Appellant's request for admission was sent to Hollas at the same address and appellant stated at the hearing that the request was also returned in the mail undelivered.

5

The fact that the trial court's notices to McDonald and Hollas were returned with indications that they had not been received is evidence that the requests for admissions sent to the same addresses were not received as well. The trial court was entitled to rely on this evidence in concluding that the requests for admission were not actually received by McDonald and Hollas and, therefore, not properly served under Rule 21(a). The trial court did not abuse its discretion in failing to consider, or deem admitted, appellant's requests for admission. *See Payton*, 29 S.W.3d at 898-99. We overrule appellant's first issue.

Appellant contends in his second issue that the trial court's decision to award only nominal damages, and no exemplary damages, on his claims of defamation and malicious prosecution was against the great weight and preponderance of the evidence. In considering a challenge that a verdict is against the great weight and preponderance of the evidence, we must weigh all the evidence; we will set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *In re King's Estate*, 244 S.W.2d 660, 661 (Tex. 1951). A trial court's findings of fact have the same force and dignity as a jury's verdict. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). It is the role of the trial court to determine the credibility of the witnesses and the weight to be given their testimony. *White v. Chamberlin*, 525 S.W.2d 273, 275 (Tex. Civ. App.—Austin 1975, no writ). Generally, the trier of fact may believe all, part, or none of a witness's testimony and is not required to believe even witnesses who are unimpeached or uncontradicted. *Gray v. Floyd*, 783 S.W.2d 214, 216 (Tex. App.—Houston [1st Dist.] 1989, no writ); *Tatum v. Huddleston*, 711 S.W.2d 367, 369 (Tex. App.—Texarkana 1986, no writ).

6

In this case, appellees either defaulted or were deemed to have admitted liability and did not appear at the hearings on damages. When a judgment is taken by default, the defaulting party admits to all allegations of fact set out in the petition except for the amount of damages. *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 733 (Tex. 1984). A plaintiff must show, by competent evidence, a causal nexus between the event sued upon and his injuries. *Id.* The court may award no damages when the injuries sustained are subjective in nature. *Biggs v. GSC Enters., Inc.*, 8 S.W.3d 765, 769 (Tex. App.—Fort Worth 1999, no pet.); *Lamb v. Franklin*, 976 S.W.2d 339, 341 (Tex. App.—Amarillo 1998, no pet.); *Blizzard v. Nationwide Mutual Fire Ins. Co.*, 756 S.W.2d 801, 805 (Tex. App.—Dallas 1988, no writ). Here, appellant presented some evidence of injury, but his and LePak's testimony demonstrated that injury, excluding the loss of property, was subjective and did little to show the required causal nexus with the appellees' tortious conduct.

Both appellant and LePak testified that appellant was hostile, upset, and distressed by the termination of parental rights proceeding and the allegations of sexual assault. Appellant testified that he has been treated for depression since the allegations were made, has attempted suicide, and takes medication which causes fatigue, confusion, and drowsiness. He also stated that the sexual assault allegations had ruined his relationship with his children. LePak testified that the allegations played a big role in the termination proceeding, but did not provide any details regarding the proceeding or how the sexual assault allegations may have affected the outcome.[2]

---

[2] Although we will not consider it for the purposes of this appeal, we note that our opinion affirming the judgment terminating Retzlaff's parental rights recites facts inconsistent with the testimony presented at the hearing on damages. *See Retzlaff v. Texas Dept. of Protective & Regulatory Services*, No. 03-98-00201-CV, 1999 Tex. App. LEXIS 5547 (Austin July 29, 1999, pet. denied). In discussing the sufficiency of the evidence to support the termination we summarized the

7

# EXHIBIT 14

NO. 03-98-00201-CV

IN THE

COURT OF APPEALS

OF THE

THIRD SUPREME JUDICIAL DISTRICT

PERMANENT COURT COPY
DO NOT REMOVE

THOMAS RETZLAFF,
APPELLANT

V.

TEXAS DEPARTMENT OF PROTECTIVE AND REGULATORY SERVICES,
APPELLEE

On Appeal from the 146th Judicial District Court
of Bell County, Texas

BRIEF OF APPELLEE

Edith A. Strickland,
Assistant County Attorney
SBN: 19390600
RICHARD J. MILLER
BELL COUNTY ATTORNEY
P. O. Box 1127
Belton, Texas 76513

ATTORNEY FOR TEXAS
DEPARTMENT OF PROTECTIVE
AND REGULATORY SERVICES

Third Court of Appeals
Diane O'Neal, Clerk
NOV 2 5 1998
FILED

RECEIVED
98 NOV 23 PM 2:31

NO.  03-98-00201-CV

IN THE

COURT OF APPEALS

OF THE

THIRD SUPREME JUDICIAL DISTRICT

---

THOMAS RETZLAFF,
APPELLANT

V.

TEXAS DEPARTMENT OF PROTECTIVE AND REGULATORY SERVICES,
APPELLEE

---

On Appeal from the 146th Judicial District Court
of Bell County, Texas

---

BRIEF OF APPELLEE

---

TO THE HONORABLE JUSTICES OF THE COURT OF APPEALS:

Come now the Texas Department of Regulatory Services, hereinafter referred

to as Appellee, and submits this brief in reply to the Appellant in this matter,

pursuant to the provisions of the Texas Rules of Appellate Procedure, requesting that

the relief prayed for by Appellant be denied.

# TABLE OF CONTENTS

<u>Page</u>

IDENTITY OF PARTIES AND COUNSEL .................................................. iv

INDEX OF AUTHORITIES ........................................................................ v

STATEMENT OF THE CASE .................................................... viii

GENERAL OBJECTION ........................................................................ 1

REPLY POINT NO. ONE:

    The trial court correctly admitted the videotape and the photographs of magazines found in Appellant's home.......................................................... 1

REPLY POINT NO. TWO:

    There was no error in the submission of Dr. Pugliese's testimony as an expert witness at trial due to a lack of reliability and relevance.  There was no failure to supplement discovery by Appellees.......................................... 13

REPLY POINT NO. THREE:

    The trial court did not err in refusing to grant Appellant's requests for another court-appointed psychologist, for a mistrial, or to allow Appellant additional time to review Dr. Pugliese's testimony ................................................................. 20

REPLY POINT NO. FOUR:

    There was no error in the trial court's limitation of Appellant's voir dire ..................................................................................................... 25

REPLY POINT NO. FIVE:

    The testimony of Dr. Pugliese was properly admitted at trial........ 29

REPLY POINT NO. SIX:

The lower court decision should be affirmed because Appellee proved by clear and convincing evidence that Appellant knowingly placed the children in conditions and surroundings which endanger the physical and emotional well-being of the children; knowingly allowed the children to remain in conditions and surrroundings which endanger the physical and emotional well-being of the children; or that Appellant engaged in conduct which endangers the physical or emotional well-being of the children and that it is in the best interest of the children that the parent-child relationship should be terminated between the father and the children.  The trial court did not err in denying Appellant's motion for Judgment Non Obstante Veredicto.......................................................... 29

REPLY POINT NO. SEVEN:

The decision should be affirmed because there was no violation of Appellant's U.S. and State Constitutional rights.......................................... 46

PRAYER FOR RELIEF ............................................................................... 49

CERTIFICATE OF DELIVERY.................................................................... 49

APPENDIX .................................................................................................. 50

Charge of the Court ........................................................ A590

Decree of Termination signed January 22, 1998 ............................. A635

## IDENTITY OF PARTIES AND COUNSEL

The following is a complete list of all parties to the trial court's final judgment, a well as the names and addresses of all trial and appellate counsel.

PARTIES                                    COUNSEL

Petitioner:                                Michael White
                                           106 W. Central Ave.
Denise A. Retzlaff                         Belton, Texas 76513


Respondent/Appellant:                      Trial Counsel for Respondent:

Thomas C. Retzlaff                         Paul LePak
                                           106 N. East St.
                                           Belton, Texas 76513


                                           Appellate Counsel for Appellant:
                                           Michael J. Nelson
                                           P. O. Box 2699
                                           Harker Heights, Texas 76548

Intervenor:

Texas Department of                        Edith A. Strickland
Protective and Regulatory                  Assistant Bell County Attorney
Services                                   Richard J. Miller,
                                           Bell County Attorney
                                           P. O. Box 1127
                                           Belton, Texas 76513

Attorney ad litem:                         Guardian ad litem:

Neale Potts                                Carey Casey
P. O. Box 969                              P. O. Box 351
Belton, Texas 76513                        Belton, Texas 76513

iv

# INDEX OF AUTHORITIES

## Cases

*Babcock & Wilcox Co. v. PMAC Ltd*, 863 S.W.2d 225 (Tex. App. - Houston [14th Dist.] 1987, writ denied.)............................................................... 1

*Brandon v. American Sterilizer Co*, 880 S.W.2d 488 (Tex. App. - Austin 1994, no writ)....................................................................................... 1

*City of Houston v. Leach*, 819 S.W.2d 185 (Tex. App. - Houston [14th Dist.] 1991, no writ)...................................................................... 17

*Daubert v. Merrell Dow Pharmaceuticals, Inc.* 113 S.Ct. 2786 (1993)......... 19

*D.O. v. Texas Dept. of Human Services*, 851 S.W.2d 351 (Tex. App. - Austin 1993, no writ )......................................................... 39

*Downer v. Aquamarine Operators, Inc.*, 701 S.W.d 238 (Tex. 1985), cert. denied, 106 S.Ct. 2279 (1986)........................................................ 23

*Fibreboard Corp v. Pool*, 813 S.W.2d 658 (Tex. App. - Texarkana 1991, writ denied)Second Reh. Overruled.............................................. 5, 6, 8

*Gee v. Liberty Mutual Fire Ins. Co.*, 765 S.W.2d 394 (Tex. 1989)............... 8

*Heddin v. Delhi Gas Pipeline Co.*, 522 S.W.2d 886 (Tex. 1975).................. 5, 6

*Holly v. Adams*, 544 S.W.2d 367 (Tex. 1976)............................................... 42

*In re S.H.A.*, 728 S.W.2d 73 (Tex. App. - Dallas 1987, writ ref'd n.r.e.)........ 46, 47

*Litton v. Hanley*, 823 S.W.2d 428 (Tex. App. - Houston [1st Dist.] 1992, no writ)....................................................................................... 8

*Most Worshipful Prince Hall v. Jackson*, 732 S.W.2d 407 (Tex. App. - Dallas 1987, writ ref'd n.r.e.).............................................................................. 1

*Pitman v. Lightfoot*, 937 S.W.2d 496 (Tex. App. - San Antonio 1996, writ denied)................................................................................. 22

*Quinonez-Saa v. State*, 860 S.W.2d 704 (Tex. App. - Houston
[1st Dist.] 1993, writ ref'd)...................................................................... 9

*Ratliff v. State*, 690 S.W.2d 597 (Tex. Crim. App. 1985)............................. 26

*Remington Arms Company Inc. v. Caldwell*, 850 S.W.2d 167 (Tex. 1993)... 17

*Syndex Corp v. Dean*, 820 S.W.2d 869 (Tex. App. - Austin 1991,
writ denied)............................................................................................. 9

*Texas Dept. of Human Services v. Boyd*, 727 S.W.2d 531 (Tex. 1987).......... 41, 42

*Texas Dept. of Human Services v. Green*, 855 S.W. 2d 136 (Tex. App. -
Austin 1993, writ denied)....................................................................... 9, 18

*Wetzel v. Wetzel*, 715 S.W.2d 387 (Tex. App. - Dallas 1986, no writ)....... 41

*Wheatfall v. State*, 746 S.W.2d 8 (Tex. App. - Houston [14th Dist.]
1988, writ ref'd )................................................................................... 26

*Wolfe v. Wolfe*, 918 S.W.2d 533 (Tex. App. - El Paso 1996, writ denied ).. 7, 12

## Constitutions

*Tex. Const. art. II, Sec. 101*.................................................................... 26

## Statutes

*Tex. Fam. Code Ann. Sec. 107.013 (Vernon 1996)*.................................... 26

## Rules

*Tex. R. App. P. 33(a)*.............................................................................. 18

*Tex. R. App. P. 38.1(h)*........................................................................... 1

*Tex. R. Civ. P. 166b(2)(e)(1)*.................................................................. 15

*Tex. R. Civ. P. 166b(6)(a)*....................................................................... 16

*Tex. R. Civ. P. 215*............................................................................................ 16

*Tex. R. Civ. P. 215(5)*........................................................................................ 16

*Tex.R. Civ. P. 301*............................................................................................. 39

*Tex. R. Evid. 103(a)*........................................................................................... 5, 18

*Tex. R. Evid. 103(a)(1)*....................................................................................... 5

*Tex. R. Evid. 403*............................................................................................... 4, 12

*Tex. R. Evid. 1001*............................................................................................. 9

*Tex. R. Evid. 1003*............................................................................................. 9

*Tex.R. Evid. 1009*.............................................................................................. 9

## STATEMENT OF THE CASE

Appellant's Statement of the Case is substantially correct, except for the error that Petitioner, Denise Retzlaff filed the original divorce action on March 11, 1997. Appellant admitted under oath that he was the one who actually paid Ted Potter, his criminal attorney, for filing the divorce, even though his wife, Denise Retzlaff, was listed as the petitioner for the divorce [RR III:38]. The Texas Department of Protective and Regulatory Services sought to terminate the parent-child relationship between Appellant and the children, but did not seek to terminate the parent-child relationship between Petitioner, Denise Retzlaff, and the children. The case went to a jury trial on the merits on January 12, 1998. A unanimous verdict was returned by the jury on January 16, 1998 that Appellant had committed at least one of the grounds for involuntary termination, and further, that it was in the best interest of the children that the parent-child relationship between Appellant and the children be terminated. The Texas Department of Protective and Regulatory Services was continued as temporary managing conservator of the children at that time. A decree of termination was signed by the judge on January 22, 1998.

viii

## GENERAL OBJECTION

<u>Inadequately Briefed</u>

The Appellant has inadequately briefed each point in his brief. The Appellant has not

applied the authorities he cites to the facts as required under Tex. R. App. Pro. 38.1 (h). Appellant

fails to refer the Court to specific places in the record in support of his authorities, and he fails to

argue applying the law to the facts in this case. Appellant merely makes proclamations without

any support. The Appellant has the burden to show that the record supports his contentions and to

point out where in the record the matters complained of are shown. *Brandon v. American*

*Sterilizer Co.* 880 S.W.2d 488 (Tex.App.--Austin 1994, no writ); *See Babcock & Wilcox Co. V.*

*PMAC, Ltd.*, 863 S.W.2d 225, 234 (Tex.App.--Houston [14th District]1993, writ denied) and *Most*

*Worshipful Prince Hall*, 732 S.W.2d 299, 412 (Tex.App.--Dallas 1987, writ ref'd n.r.e.).

Appellant has failed to meet this burden.

## APPELLEE'S STATEMENT OF POINTS

## REPLY POINT NO. 1

THE TRIAL COURT PROPERLY ADMITTED THE VIDEOTAPE AND THE

PHOTOGRAPHS OF MAGAZINES FOUND IN APPELLANT'S HOME.

### STATEMENT OF FACTS

During the course of Appellant's ten-year marriage to Denise Retzlaff, Petitioner, Appellant

participated in several extra-marital affairs which his wife learned about, as well as his children did

in the latter part of the marriage [RR VIII:6,7]. He also owned a collection of pornographic books,

1

magazines, and videotapes which were often left in areas of the home accessible to the children, including an end table in the living room [RR V:3,44]. He kept these materials for the purpose of masturbation [RR V:64]. Appellant often masturbated in the living room using a can of Crisco while the children were home and able to observe him [RR IV:138,139; V:65,66; and VIII:6].

Appellant owned video equipment consisting of a camcorder and two video cassette recorders [RR V:67, 144,145]. He would use the equipment to videotape himself and his wife, or his girlfriend, having sex [RR IV:103,104]. On at least one occasion, he videotaped himself and his girlfriend having sex in the living room naked, while his children were at home in their bedrooms [RR IV:128-131]. Collin Retzlaff witnessed Appellant videotaping himself and his girlfriend having sex in the living room [RR VIII:6]. On another occasion, Appellant videotaped himself forcibly sodomizing his wife in the living room while the children were in their bedrooms. Towards the end of the videotaped scene, his wife is screaming in pain [RRV:55,56,61]. Appellant used his video equipment to transfer the 8 millimeter tape onto a VHS tape and splice it into other scenes [RR IV:62-65]. This VHS tape was kept in the living room on the entertainment center, and was recovered by Temple Police Department in a consent search in March of 1997 [RR V:26-29, 44]. The videotape was then given to the Bell County District Attorney's office, the videotape secured from changes by popping out the tab and kept in the evidence vault until the time of trial [RR V:22,23]. An extrapolation of the scene showing Appellant sodomizing his wife was made for the purposes of trial and was entered into evidence as Petitioner's Exhibit No. 46 [RR IV:62,63].

During the consent search, Temple Police Department also located a number of books and magazines of a pornographic nature in the end table in the living room. They were taken out of the end table and placed on the floor and photographed [RR V:30,44,45]. These photographs were

2

entered into evidence as Intervenor's Nos. 37 and 38 [RR IX:210-215].

## SUMMARY OF APPELLEE'S ARGUMENT

Appellant's point of error regarding his Rule 403 objection that the danger of unfair prejudice outweighed the probative value of the admission of the videotape and the photographs was not preserved for review on appeal. Appellant's attorney failed to make a Rule 403 objection at the time of the trial on the merits. Appellant's attorney had initially made a Rule 403 objection to the videotape during a pre-trial hearing, but a ruling on his Rule 403 objection had been expressly reserved by the trial court for the admission of the videotape at the time of trial. The trial court never made a ruling on the Rule 403 objection to the videotape.

Further, even if a Rule 403 objection had been properly made by Appellant's attorney and error preserved for review on appeal, there would be no error, because any potential for prejudice regarding the videotape is outweighed by its probative value. The videotape is relevant evidence on the issue of the children's exposure to the father's inappropriate sexual conduct, family violence, and the environment in which the children were knowingly placed by their father and in which they were knowingly allowed to remain.

The videotape was properly authenticated by Denise Retzlaff in that she testified that it was an accurate representation of the scene it purported to depict and that she was personally familiar with the scene. Appellant's argument that the videotape was not authenticated because it did not include scenes which occurred after the fifteen minute scene is an argument wholly without merit. Any error would have been cured, because Appellant testified to what his version of the events were that took place after the end of the fifteen minute scene.

3

As with the videotape, no Rule 403 argument was made as to the photographs entered into evidence, therefore no error was preserved for review on appeal.  Even if error had been properly preserved for review on appeal to a denied Rule 403 objection, the photographs were relevant to the fact issue of the accessibility of the pornographic materials to the children.

## ARGUMENT AND AUTHORITIES

I.    Multifarious Points

Appellant has addressed more than one legal issue involving more than one ruling of the trial court in this point of error. Appellant in his summary argues that the trial court erred in denying Appellant's Motions in Limine Nos. 6, 7, 8, 9, 10, and 11; Appellant's objections to the use of the term "rape"; and admission of the video tape and other (unspecified) sexually explicit materials.  Appellant, in his argument and authorities, addresses only the points that the trial court erred in the admission of the videotape and the photographs of the pornographic materials taken by Temple Police Department based on Texas Rules of Civil Evidence 403, and that the videotape was not properly authenticated [AB 11].  Appellee will address only the two points that Appellant addressed in his argument and authorities.

II.    Prejudicial versus Probative Value

The rule of evidence pertaining to the exclusion of otherwise relevant evidence on special grounds, reads in pertinent part:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice...." *Vernon's Texas Rules of Evid., rule 403.*

A.    Error not preserved

4

Although Appellant's trial counsel did make a Rule 403 objection during pre-trial testimony regarding the admissibility of the videotape, and the trial court overruled Appellant's arguments as to authentication, the trial court reserved his ruling on the Rule 403 objection until the time the video tape was offered [RR XII:81,82]. Appellant's trial counsel failed to renew his Rule 403 objection during the trial on the merits [RR XII:59,60].

The rule of evidence pertaining to the preserving of error for review on appeal as applies to the exclusion of evidence reads as follows: "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected", and "(i)n case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context." *Vernon's Texas Rules of Evid., rule 103(a) and (a)(1)*. The question of whether or not a substantial right of the Appellant was affected is not reached because Appellant's attorney failed to renew his Rule 403 objection during the trial on the merits and failed to obtain a ruling from the trial court, thereby failing to preserve error for review on appeal.

B.    No Error

Appellant admits that the trial court has broad discretion in allowing photographs into evidence, citing *Fibreboard Corp. v. Pool*, 813 S.W. 2d 658 (Tex. App.--Texarkana 1991, writ denied),but relies on *Heddin v. Delhi Gas Pipeline Co.*, 522 S.W. 2d 886 (Tex. 1975)[photographs of dead animals] for the propositioin that photographic reproductions that are merely calculated to arouse the sympathy, prejudice or passion of the jury should not be admitted. The Supreme Court in *Heddin* found that "(t)he photographs of the dead animals introduced on behalf of the landowners here had no relevance to the disputed issues; they were not calculated to

5

aid the jury in its understanding of the case." *Heddin*, supra at 890. The Court held that the

"(a)dmission of these highly inflammatory and irrelevant photographs was such error as was

reasonably calculated to cause and probably did cause the rendition of an improper judgment."

The admissibility of photographs generally is set out in *Fibreboard Corp.*:

> The general rule is that pictures or photographs that are relevant to any issue in the case are admissible. *Texas Employers Ins. Ass'n v. Agan*, 252 S.W. 2d 743 (Tex. Civ. App. – Eastland 1952, writ ref'd). When a photograph is a proper representation of an important fact issue, the admission or rejection of it is a matter which rests largely within the discretion of the trial judge, and that decision will not be disturbed on appeal unless an abuse of discretion is shown. *Richardson v. Missouri-K.-T.R. Co. of Texas*, 205 S.W. 2d 819, 824 (Tex. Civ. App. – Fort Worth 1947, writ dism'd). Relevant evidence will not be excluded simply on the ground that it would create prejudice if permitted. *Sherwin-Williams Co. v. Perry Co*, 424 S.W. 2d 940 (Tex.Civ. App. – Austin 1979. Writ ref'd n.r.e.). The fact that the photographs are gruesome does not render them inadmissible. *Texas Employers Ins. Ass'n v. Crow*, 218 S.W. 2d 230 (Tex. Civ. App. – Eastland 1949), aff'd, 148 Tex. 113, 221 S.W. 2d 235 (1949). Therefore the question in the present case is whether the pictures were relevant and otherwise admissible." *Fibreboard Corp., id at 671.*

If a proper objection had been made and properly preserved for consideration on appeal,

the question to be considered at this point is whether or not the videotape was relevant and

otherwise admissible. The actions on the videotape, and the videotape itself in its presence in areas

accessible to the children, are relevant to the grounds for involuntary termination of the parent-

child relationship, i.e., (1) whether or not Appellant knowingly placed or knowingly allowed the

child to remain in conditions or surroundings which endangers the physical or emotional well-

being of the children, and (2) whether or not Appellant engaged in conduct which endangers the

physical or emotional well-being of the children. The videotape is also relevant to the issue as to

what is in the best interest of the children. The videotape depicts the forcible sodomy of Denise

Retzlaff by Appellant against her will. The fact that Appellant chose to videotape the sodomy of

6

his wife in the living room while his children were at home is highly relevant to the issues in this trial.

Appellant argues that the videotape was inadmissible because there was no evidence that the children were ever exposed to the acts depicted on the videotape, and therefore the videotape was not relevant, relying on *Wolfe v. Wolfe*, 918 S.W.2d 533 (Tex.App.—El Paso, 1996, writ denied). However, there is evidence that the children were exposed to the acts depicted on the videotape. Even Appellant admits that the children were in their bedrooms when the events exposed on the videotape took place. The testimony established that the apartment was approximately 1600 square feet and that all bedrooms were on a hallway leading from the liiving room, where the assault occurred. Appellant testified that the bedrooms were twenty or thiry feet off of the living room [RR IV:65,66]. The son's bedroom was where the patio door was - the closest to the living room [RR V:84]. As indicated by the questions of the Attorney for Petitioner, and the videotape itself, Denise Retzlaff screamed loudly during the assault, and it is reasonable to draw the conclusion that the children could not have ignored the activity in the living room [RR IV:65,66]. Further, Detective Price testified that a search of the Retzlaff home resulted in this videotape being found in the entertainment center next to the television in the living room, which was easily accessible to the children [RR V:26-29, 44]. It is clear that the children were exposed to the events depicted on the videotape at the time they occurred and had access to the vido tape itself as well.

Appellant argues that *Wolfe* is on point. However, *Wolfe* is easily distinguished in that the trial court "clearly was of the opinion that Marta failed to make a threshold showing that Freddy was exposed to Robert's sexual practices, and that therefore the demonstrative evidence of those

7

practices ws irrelevant," and that "(a)s such, the trial court's ruling does not constitute an abuse of discretion." *Wolfe*, supra at 540. It is clear in this case that the children <u>were</u> exposed, over and over again, to Appellant's sexual practices, and that the trial court was of that opinion. The videotape is relevant in the instant case.

Even if the children had not been exposed to the videotape, it would be admissible as evidence of Appellant's propensity for family violence. Steve Hughes testified that in his opinion the conduct he observed in his review of the videotape, coupled with the sworn statement he had from Mrs. Retzlaff, constituted the offense of sexual assault. [RR V:22].

Even if the videotape is inherently prejudicial, the danger of unfair prejudice does not substantially outweigh the probative value of the videotape, and the trial court did not abuse its discretion in allowing the admission of the videotape. As set out in *Fibreboard Corp., id .,* the fact that a photograph, or as in the instant case, the videotape, is gruesome does not render it inadmissible, nor will relevant evidence be excluded simply on the ground that it would create prejudice if admitted. As such, the trial court's ruling does not constitute an abuse of discretion.

B.    If Error, Harmless

Even if one were to assume that the danger of unfair prejudicial value of the videotape substantially outweighed its probative value, it was not an error such that probably caused the rendition of an improper judgment. Reversible error does not usually occur in connection wtih rulings on questions of evidence unless the appellant can demonstrate that the whole case turns on the particular evidence that was admitted or excluded. *Litton v. Hanley*, 823 S.W.2d 428, 430 (Tex.App.–Houston[1st Dist.] 1992, no writ). Also, the exclusion of evidence is harmless if it is cumulative of other evidence that was admitted on the same issue. *Gee v. Liberty*

8

*Mut. Fire Ins. Co.,* 765 S.W.2d 394, 396 (Tex.1989). *See Reply to Point of Error No. 6* for a discussion of the evidence that was admitted on the issue of Appellant's exposure to the children of his inappropriate sexual activities, as well as his tendency towards family violence.

II.    Authentication of Videotape

    A.    No Error

        To prevail on this point of error, Appellant must show that the trial court abused its discretion and that any error was reversible error. *Syndex Corp. v. Dean*, 820 S.W. 2d 869, 873 (Tex. App. -- Austin 1991,writ denied); *Texas Department of Human Services v. Green*, 855 S.W. 2d 136, 148 (Tex. App. -- Austin 1993, no writ).

    Appellant argues that the admission of the videotape of the Appellant and his wife was an abuse of discretion by the trial court because it violated the premise that it was a true and complete depiction of the event as it took place.

    *Quinonez-Saa v. State*, 860 S.W. 2d 704,706 (Tex.App.--Houston[1st Dist.],1993, writ refused), stands for the proposition that the only identification or authentication required for photographs is that the offered evidence properly represents the person, object, or scene in question, and can be testified to not only by the photographer, but by any other witness who knows the facts, even though the witness did not take the photograph himself or see it taken. Videotapes are authenticated in the same manner as photographs. Under *Texas Rules of Evidence*, rule 1001, the definition of photographs includes videotapes. As it pertains to this case, *Texas Rules of Evidence*, rule 1003, allows the admissibility of a duplicate the same as if it were the original unless a question is raised as to the authenticity of the original. The videotape was properly authenticated in a pre-trial hearing held on December 31, 1997 [RR XII:59-82].

Although there is some discussion on the record of a truck briefly appearing during the videotaped scene in the Retzlaff's living room [RR XI:59-82], there is no argument that the scene depicted on the videotaped failed to properly represent the scene in question. As a matter of fact, Appellant's Attorney made it quite clear that Appellant was not denying that the scene took place, but merely the characterization of it as rape [RR XII:59,60]. The argument by Appellant that the entire episode was not contained within the fifteen minute segment, and therefore was not a complete and accurate depiction of that episode, is fallacious. It is indisputable that whether it is a photograph that has been taken or a videotape which has been filmed, other events occur after the shutter closes and the camcorder shuts off; events don't freeze in time and space with a void taking the place of reality. This is not the plain meaning of the requirement that the videotape fairly and accurately depict what it purports to represent. What happens on the videotape is clear, no matter what happened after it ended. There was no error in the admission of the videotape

B. If error, waived.

Appellant would have the jury as well as the Appellate Court believe that "the depiction of the situation" had been edited from approximately two hours to fifteen minutes [AB 13]. The pre-trial hearings show that the original videotape identified as Petitioner's Exhibit No. 47 was several hours in length, as many as five hour [RR XI:13,14), consisting of several different scenes before and after the excerpt, and that Petitioner's Exhibit No. 46 was an excerpt of one scene from the original video tape [RR XIII:9-12). Appellant was given access to the video tape and could have offered under the rule of optional completeness any additional portion of Exhibit No. 47 which he felt would have "completed" the scenes contained in Petitioner's Exhibit No. 46[RR XIII:18]. Further, Appellant could have listed Petitioner's Exhibit No 47 as his own exhibit,

10

and offered it into evidence if he felt it would support his contentions. Appellant failed to do either of these things.

Appellant further argues in support of his argument that the video tape was not properly authenticated that "(t)he fifteen minute segment was designed to show Appellant in an extremely harsh manner while minimizing any detrimental effect to Appellee"[AB 13]. The evidence produced at trial does not support Appellant's contentions. Although Appellant denied copying the original taping from the eight-millimeter film to Exhibit 46, he admits that Exhibit 46 is an excerpt of a tape that "my wife and I made" [RR IV:63] and admitted to splicing "adult movies"[RR IV:64, 65]. Although in reference to a momentary glimpse on the videotape of a truck, Appellant denies knowing "where that came from" [RR IV:78], although he previously failed to deny taping trucks [RR IV:62]. Denise Retzlaff testified during the trial on the merits that Appellant would hook up two VCR's and record videotapes that he had rented in order to keep copies for himself, as well as recording programs on television, such as the "Miss U.S.A. Pageant" and "Miss Teen Pageant" [RR V:6]. The evidence indicates that Appellant spliced and edited the original videotape himself, and therefore he has no room to complain about the point where the videotape ends.

C.    If Error, Harmless

Further, if there was any harm in admitting the videotape with it ending abruptly, the harm was cured when Appellant was allowed to testify as to his recollection of events that occurred after the end of the videotape. [RR IV:61,77].

III.    Admission of Photographs

The only argument Appellant makes regarding Intervenor's Exhibit 37 and 38 was that they

11

were photos of adult magazines in the Appellant's home that were "arranged by parties unknown", but not Appellant [AB 15]. There appears to be some reference to *Wolfe*, supra, and a Rule 403 argument, so Appellee will attempt to answer the inferential arguments by Appellant.

Lila Price, investigator for Temple Police Department, testified that Intervenor's No. 37 and No. 38 are photographs that were taken in the living room at the Retzlaff apartment; that she was present when the photos were taken; and that the items displayed in the photos had been in the end table and were pulled out so that the photographs could be taken of them [RR VII:43-45]. The only objections made by Appellant's counsel at the time of their offer at trial was that the proper foundation was not laid and that the evidence was cumulative [RR VII:44]. Again, as there was no Rule 403 objection made at the time of the trial on the merits, this point was not preserved for review on appeal.

Even if the point had been preserved for review on appeal, this case is easily distinguished from *Wolfe*, supra, in that the children were exposed to the items displayed in the photographs in that those items were kept in an unlocked table in a common room of the apartment, easily accessible to the children, and there is a plethora of evidence tending to show that the children were repeatedly exposed to their father's sexual practices. Therefore, the evidence was highly relevant to the issues to be decided by the jury.

12

## REPLY POINT NO. 2

THERE WAS NO ERROR IN THE SUBMISSION OF DR. PUGLIESE'S TESTIMONY
AS AN EXPERT WITNESS AT TRIAL DUE TO A LACK OF RELIABILITY AND
RELEVANCE. THERE WAS NO FAILURE TO SUPPLEMENT DISCOVERY BY
APPELLEES.

## STATEMENT OF FACTS

Failure to Disclose and Supplement

Several requests were made for discovery by Appellant while he represented himself pro-se. In Appellant's First Set of Interrogatories to Denise Retzlaff, petitioner, Appellant requested in his number 3, "(p)lease identify the names and locations of all expert witnesses that may be used" [CR 164]. In Appellant's First Set of Interrogatories to the Texas Department of Protective and Regulatory Services, Appellee, Appellant had an identical request to the number 3 above [CR 167]. Appellant, in his "Respondent's Second Set of Interrogatories" filed with the clerk on August 12, 1997, requested that Denise Retzlaff, Petitioner "...please tell me what the subject matter of your expert witness will be (Dr. Frank Pugliese, the doctor who has been treating you), along with his mental impressions and opinions held and the facts known to him which relate to or form the basis of these opinions or impressions"[CR 214].

On August 26, 1997, Petitioner filed her "Answers to Respondent's Second Set of Interrogatories". Petitioner stated in answer, "Psychological and mental status of Respondent."[CR 246]. Appellee and Petitioner answered in their respective "Supplement(s) to Respondent's First Set of Interrogatories and Intervenor's List of Direct Witnesses,"filed November

13

14, 1997 the information that Frank Pugliese would testify as a fact witness concerning "Thomas C. Retzlaff's psychological examination, mental state, and suitability as a father", and that as an expert witness he would also testify to "post-traumatic stress syndrome, and battered-wife syndrome"[CR 406, 422].

The only motion filed in response to Appellee's responses was Appellant's "Respondent's Second Motion to Compel Production of Documents and Motion for Sanctions under rule 215 TRCP", filed August 12, 1997, in which he demanded under his 'III' "that the Court order the production of all tangible reports, physical models, notes, data compilations and other material prepared by the Expert witness, Dr. Frank Pugliese, that was identified by the Petitioner as her Expert witness." He further demanded that the Court order that these matters be reduced to tangible form within the next five days, "regarding his treatment and/or evaluation of the Petitioner" [CR228, 229].

## SUMMARY OF APPELLEE'S ARGUMENT

Appellant never objected to the form or substance of the response given to Appellant's discovery requests, only one of which requested the subject matter of Dr. Pugliese's testimony. Petitioner listed the subject matter of Dr. Pugliese's testimony as the mental status of the Respondent. Both Petitioner and Appellee, Intervenor, without request from Appellant further describe the subject matter of Dr. Pugliese's testimony, including the mental status of Respondent, as well as the psychological evaluation of Respondent, and also listed various other matters to which Dr. Pugliese would testify. Because there was no request for the subject matter of Dr. Pugliese's testimony to be listed in discovery requests to Intervenor, there was no obligation to

14

supplement. Further, there should have been no surprise on the part of Appellant, because the mental status of Respondent was listed as the subject matter, the subject of Respondent's interest in children was discussed in Dr. Pugliese's second psychological examination of Respondent, which was both disclosed to Respondent and listed as an exhibit. Further, Appellant had the right and opportunity to depose Dr. Pugliese, which he failed to do, if he wanted the specifics of his testimony as to his mental status.

### ARGUMENT AND AUTHORITIES

Appellant argues that "(t)he trial court erred in overruling Appellant's objections to the speculative testimony of Dr. Pugliese as to possible future acts and that these tendencies had actually occurred, citing the Reporters Record, Vol. 6, Pages 37-39 [AB 16]. Appellant makes two arguments: first, that it was an abuse of discretion to allow Dr. Pugliese's testimony on areas not previously disclosed; second, that "Dr. Pugliese's testimony should not have been allowed due to the fact that his 'expert' speculation of Appellant's future behavior was not scientific and unreliable" [AB 18].

I.    Failure to Disclose and Supplement

    A.    Error Not Preserved for Review on Appeal

Appellant claims that subject matter of Dr. Pugliese's testimony was not disclosed in discovery, either initially or by supplementation. Rule 166b(2)(e)(1) of the *Texas Rules of Civil Procedure* provides that (a) party may obtain discovery of the identity and location(name, address and telephone number) of an expert who may be called as an expert witness, the subject matter on which the witness is expected to testify, the mental impressions and opinions held by the experts,

15

and the facts known to the expert (regardless of when the factual information was acquired) which relate to or form the basis of the mental impressions and opinions held by the expert. Rule 166b(6)(a) requires that a party is under a duty to reasonably supplement his response if he obtains information upon the basis of which he knows that the response was incorrect or incomplete when made, or, though correct and complete when made, is no longer true and complete, and the circumstances are such that failure to amend the answer is in substance misleading. Further, under Rule 166b(6)(b), if the party expects to call an expert witness when the identity or the subject matter of such expert witness' testimony has not been previously disclosed in response to an appropriate inquiry directly addressed to these matters, such response must be supplemented to include the substance of the testimony concerning which the expert witness is expected to testify, as soon as is practical, but in no event less than thirty days prior to the beginning of trial except on leave of court. Under the *Texas Rules of Civil Procedure,* rule 215, a party may apply for sanctions or an order compelling discovery by motion, after notice and hearing, to the court. Under Rule 215(5) "(a) party who fails to respond to or supplement his response to a request for discovery shall not be entitled to present evidence which the party was under a duty to provide in a response or supplemental response or to offer the testimony of an expert witness or of any other person having knowledge of discoverable matter, unless the trial court finds that good cause sufficient to require admission exists. The burden of establishing good cause is upon the party offering the evidence and good cause must be shown in the record."

It is clear from the record, including the language of the Respondent's Motion itself, that Respondent's "Second Motion to Compel Production of Documents and Motion for Sanctions under rule 215 TRCP" which was filed August 12, 1997 was the first time that Respondent had

16

requested by Appellant. It is also clear from a perusal of the record that Appellant failed to have

the matter heard and ruled on by the trial court. Therefore, Appellant failed to preserve this point

of error for review on appeal. Appellant filed a number of motions and participated in numerous

hearings in which Appellant could have addressed his motion, but he failed to do so. In

*Remington Arms Company, inc., v. Caldwell*, 850 S.W. 2d 167, 170 (Tex. 1993), the court held

"that the failure to obtain a pretrial ruling on discovery disputes that exist before commencement of

trial constitutes a waiver of any claim for sanctions based on that conduct."

      B.    No Error

          Appellee and Petitioner listed the subject matter of Dr. Pugliese's testimony as the

mental state of Respondent and suitability as a father, psychological and mental status of

Respondent, as well as the psychological examination of the Respondent. Appellant never

complained as to the sufficiency of the answer. Further, Appellant had the right to depose Dr.

Pugliese in order to discover in detail his testimony as to the psychological and mental status of

Appellant, as well as Dr. Pugliese's testimony as to his suitability as a father, and he did not do so.

He also could have requested the production of documents from Dr. Pugliese in connection with a

deposition, and he did not take advantage of this tool of discovery. Appellant merely argues that

Dr. Pugliese should not have been allowed to testify to anything that was not contained in his

evaluation [AB 16]. Appellee and Petitioner properly disclosed that matters outside of the

evaluation would be the subject matter of Dr. Pugliese's testimony, that Appellant's mental status

and suitability as a father would also be testified to.

      In *Texas Department of Human Services v. Green*, 855 S.W. 2d 136, at 149, (Tex.

App.–Austin 1993, writ denied), the Court relying on *City of Houston v. Leach*, 819 S.W. 2d 185,

17

190, (Tex.App.–Houston,1991, no writ), restated the proposition that "(t)he trial court has broad discretion in determining whether to allow expert testimony and the court's action will not be disturbed absent a clear abuse of discretion." In *Texas Department of Human Services v. Green*, an expert witness was allowed to give his opinion about retaliation which was not timely objected to and thus any complaint on appeal was waived. *See Tex.R.App.P. 33(a)*; and *Tex.R.Civ.Evid. 103(a)*. As to the production of Dr. Pugliese's notes, etc., in spite of numerous pre-trial hearings, this motion was never heard, nor argued by counsel, and the trial court never made a ruling on it.

Appellant never objected to Dr. Pugliese's testimony on the subject of pedophilia, the use of the word "pedophilia", or the risk of danger to Brittany if contact were continued with Appellant. There was clearly no surprise on the part of Appellant during trial, shown by a lack of any objection to the testimony. Only after the recess until the next day did Appellant claim surprise.

Appellant was very dilatory in claiming surprise. Appellant has failed to make a showing of a clear abuse of discretion on the part of the trial court.

C.    If Error, Waived

Even if the admission of Dr. Pugliese's testimony was error, Appellant waived error. Appellant was willing to stipulate to Dr. Pugliese's qualifications as an expert [RR VI:26], and the second psychological evaluation of Appellant by Dr. Pugliese was entered **without objection** by Appellant's attorney as Petitioner's Exhibit No. 16 [RR VI:35]. Further, when Appellant questioned Dr. Pugliese on the issue of pedophilia, he waived any complaint as to the use of that term and Dr. Pugliese's expert qualifications on the subject.

D.    If Error, Harmless

Even if the trial court clearly abused its discretion and should have invoked the

18

mandatory sanction of excluding Dr. Pugliese's testimony, any error was not reversible error. Under Tex.R.App.P. Rule 44, no judgment may be reversed unless the court of appeals concludes that the error probably caused the rendition of an improper judgment. Dr. Pugliese's testimony was merely cumulative of the other evidence of Appellant's unnatural interest in children and the admission of the testimony by Dr. Pugliese did not cause the rendition of an improper judgment. *See* Appellee's Reply Points No. 3 and No. 6 for a discussion of the evidence which was not objected to by Appellant, and often admitted to by Appellant, clearly showing the Appellant's sexual interest in children. Even totally disregarding Dr. Pugliese's testimony, the evidence was clear that Appellant had an unnatural interest in young female children, and that there was a high probability of risk to his daughter if she remained in contact with him.

II    Not Scientific and Unreliable

    A.    Error Not Preserved for Appeal

        At the time of the examination of Dr. Pugliese, no objection was made by Appellant based on ***Daubert v. Merrell Dow Pharmaceuticals, Inc.*** 113 S. Ct. 2786 (1993), to challenge Dr. Pugliese's testimony as unscientific and unreliable. As a matter of fact, Appellant's attorney stipulated to the qualifications of Dr. Pugliese as an expert and did not raise a ***Daubert*** objection to any of the evidence presented by Dr. Pugliese [RR VI:26].

    B.    No Error

        A ruling on the admissibility of evidence is within the discretion of the trial court, and only on a showing of a clear abuse of discretion will the decision be reversed. Appellant has made no showing that the admission of Dr. Pugliese's testimony was not scientific and unreliable and Appellant further failed to show that it was a clear abuse of discretion on the part of the trial

court to admit his testimony, therefore there is no reversible error.

### REPLY POINT NO. 3

THE TRIAL COURT DID NOT ERR IN REFUSING TO GRANT APPELLANT'S REQUESTS FOR ANOTHER COURT-APPOINTED PSYCHOLOGIST, FOR A MISTRIAL, OR TO ALLOW APPELLANT ADDITIONAL TIME TO REVIEW DR. PUGLIESE'S TESTIMONY

#### STATEMENT OF FACTS

In the first pre-trial hearing on December 10, 1997, the attorney ad litem for the children, in the hearing on his motion for a protective order requiring the children's testimony to be taken only by deposition, indicated that, "I feel that with the allegations of the fondling of Brittany by Mr. Retzlaff, the additional evidence of—- that is -- being found to have been in Mr. Retzlaff's possession, various magazines that tend to show that he has an interest in -- sexual interest in children..that the children can only be additionally harmed ... by ... Mr. Retzlaff being allowed to call them and give testimony in front of a jury"[RR X:9]. Appellant's attorney, himself, referred to Dr. Pugliese's evaluation as disclosing allegations of "abuse and fondling" [RR X:11]. In previous discovery disclosures, the evidence held by Temple Police Department was listed as potential exhibits for trial. That evidence included a number of photos, magazines, and books which either had incest and sex with young girls as its subject matter, or were photos of young girls in provocative poses, or were photos of young girls cut out of catalogs in bras and panties or bathing suits, mixed in with cut outs of nude, exposed women.

Dr. Pugliese's report on his second court-ordered evaluation of Appellant was filed with the

20

Clerk of the Court on December 8, 1997 and was marked for evidence as Petitioner's Exhibit No.

16 on December 16, 1997 [RR VIII:3]. There are numerous references to Appellant having a

sexual interest in children in the report including that Collin Retzlaff reported that his father would

say "nasty stuff to my sister's friend", "acted weird" in front of his sister's friends, and "acted like

they were cute or something"[RR VIII:6]. Brittany also "indicated that she often felt

uncomfortable when her father kissed her and said he routinely 'put his hands inside my shirt and

held me close to him.' Although she noted he never rubbed her breasts or genital area, she made it

clear she felt very uneasy when he placed his hands inside her shirt and 'rubbed my back'." [RR

VIII:7].

Additionally, Petitioner's opening statement included such statements as, "The evidence

will show that the perversion and pedophilia involves girls Brittany's age," and "(T)hose children

will be the victims of Thomas C. Retzlaff's power, perversion, and pedophilia"[RR II:12,13].

Appellant's attorney discussed pedophilia in his cross-examination of Dr. Pugliese and

made it clear that Appellant had not been diagnosed as a pedophile, but that persons with

pedophiliac tendencies can function adequately in society [RR VI:64,65]. And on his **re-cross**

examination of Dr. Pugliese, Appellant's Attorney further questions Dr. Pugliese as to how to

minimize the risk of the children being exploited by Appellant [RR VI: 90]. The next day at trial

that Appellant's attorney requested that the court appoint an expert to test Appellant on the issue of

pedophilia and to declare a mistrial, both of which motions were denied by the court [RR VII:3,4].

## SUMMARY OF APPELLEE'S ARGUMENT

The evidence revealing Appellant's interest in young girls was disclosed more than thirty

21

days prior to trial. Appellant's attorney was well aware that Appellant's unnatural interest in young girls would be an issue at trial, and specifically, the issue of his possibly fondling Brittany would be addressed. Appellant had proper discovery prior to trial. Appellant further had no objection to Petitioner's use of the term "pedophilia" twice during opening statement and claimed no surprise at that time. Appellant further stipulated to Dr. Pugliese's qualifications, did not object to the use of the term "pedophile" or "pedophilia" in the direct and cross examination of Dr. Pugliese, used the term "pedophilia" himself in his cross examination of Dr. Pugliese, and even asked Dr. Pugliese how risk might be reduced to the children in their contact with Appellant. Appellant then claimed surprise the next day, requesting a court-appointed expert, and when that was denied, requesting a mistrial. Appellant has failed to show that the trial court abused its discretion. Further, Appellant has failed to show that if the admission of Dr. Pugliese's testimony was error, that it resulted in an improper judgment.

## ARGUMENT AND AUTHORITIES

Appellant cites *Pitman v. Lightfoot*, 937 S.W.2d 496, 537 (Tex.App.–San Antonio 1996, writ denied), for its review of the authorities in the standard for review of the granting or denying of a motion for mistrial.

> "Generally, the granting or denying of a motion for mistrial is reviewed under an abuse of discretion standard. *See Ussery v. Gray*, 804 S.W.2d 232, 237 (Tex.App. - - Fort Worth 1991, no writ) (disqualification of attorney); *Mendoza v. Ranger Ins. Co.*, 753 S.W.2d 779, 781 (Tex. App. - - Fort Worth 1988, writ denied) (jury selection). In addition to showing an abuse of discretion, appellants must also show that the trial court's error, if indeed there was error, 'was reasonably calculated to cause and probably did cause rendition of an improper judgment in the case.' *See* Tex.R.App.P. 81(b)(1)."

22

I.    No Error

Appellant refers the Court to Point of Error 3 (which one must assume Appellant means Point of Error 2) for a discussion of the improper admission of testimony by Dr. Pugliese. Other than that, there are no references to the record in his argument and no **argument** applying authorities to the facts. Appellant simply assumes in his argument that the testing is prejudicial [AB 20,21]. Appellant has failed to show that the trial court has abused its discretion and that the error was such that it was reasonably calculated to cause and probably did cause rendition of an improper judgment in the case.

Appellant indicates that the trial court failed to set forth its guiding rules [AB 20]. There is no requirement that a Court set forth its guiding rules, just that it be apparent that the Court acted without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42, (Tex.1985)cert. denied, 106 S. Ct. 2279 (1986).

In the direct examination of Dr. Frank Pugliese, a number of questions leading up to the sexual exploitation of children were all asked without objection by Appellant [RR VI:38-41]. Further, when Dr. Pugliese testified that his expert opinion about someone who has books about incest, sex with children, or a person who collects, pastes and is diligent about cutting and pasting collages such as in Intervenor's Exhibit No.37 [RR IX:190-209] and Petitioner's Exhibit Nol 64 [RR VIII:91-210] would give him some concern that the individual may have some pedophilia tendencies, there was no objection by Appellant either to the question or to the answer [RR VI:40]

Appellant also did **not** object to Attorney for petitioner's questions, "What is pedophilia ?" and "Does Thomas C. Retzlaff fit that profile of being a pedophile?" As a matter of fact, although Appellant's argument is that he should have been appointed a court-appointed expert to counter the

23

label of a pedophile, Dr. Pugliese did not label Thomas Retzlaff as a pedophile, but said that he had some pedophiliac tendencies, all without objection from Appellant [RR VI:41].

The issue of pedophilia was clearly raised early on in the trial. In the first pre-trial hearing, when the children's attorney ad litem was concerned about the issue that Appellant had a sexual interest in children [RR X:9]. What else is "a sexual interest in children", other than pedophilia? The argument that Appellant was surprised by the issue of pedophilia is wholly without merit.

II.    If Error, Waived

Any error was waived when Appellant failed to object to Dr. Pugliese's qualifications and to the nature of his testimony. Appellant never objected to the use of the term "pedophilia" during trial, from Petitioner's opening statement to the questions asked of Dr. Pugliese. Appellant's Attorney himself, waived any error when he further asked Dr. Pugliese about pedophilia. Appellant's Attorney never questioned Dr. Pugliese's qualifications to answer these questions, and totally waived any objection to them. It was only after a recess of the trial to the next day that the issue came up[RR VII:3].

III.    If Error, Harmless

If there was error, any error was rendered harmless by the admission of other relevant evidence on the issue of Appellant's pedophiliac tendencies. *See* Appellee's Reply Point No. 6. The cumulation of other relevant, admissible evidence renders any error that was committed, harmless. The jury verdict was unanimous in this case, and a retrial without the testimony of Dr. Pugliese without the use of the term pedophilia would result in the same verdict.

24

## REPLY POINT NO. 4

THERE WAS NO ERROR IN THE TRIAL COURT'S LIMITATION OF

APPELLANT'S VOIR DIRE.

### STATEMENT OF FACTS

The parties were instructed that they would have thirty minutes each for voir dire, that the court would control the flow of the questions, and would have the trial begin early and end late in an effort to keep it moving along [RR XIII:77-79]. An examination of Appellant's voir dire reveals that Appellant's attorney first spent time on comparing this "custody" case to political campaigns and that "negative stuff tends to be more attention grabbing" [RR II:40-46]. The Court tells Appellant's Attorney that he is out of time, after giving him a five-minute warning and a one-minute warning, and Appellant's Attorney objects [RR II:73]. Appellant's Attorney presents his bill of review, listing the questions that he wished to ask and the jurors he wanted to ask them of [RR II:120].

### SUMMARY OF APPELLEE'S ARGUMENT

Appellant was made aware of the time limitation on voir dire well ahead of the trial on the merits and could plan his voir dire to fit the trial court's proper limitation on the time. Even if the reviewing court applies the three-pronged test which is applied to the time limitations on voir dire in criminal cases, it is clear that Appellant was attempting to prolong voir dire by asking improper and immaterial voir dire questions. Appellant spent more time trying to color the jurors perception of the Department's case against Appellant as mud-slinging than in trying to ask proper voir dire questions in order to intelligently exercise his peremptory strikes. Further, he spent an unnecessary

25

amount of time individually questioning potential jurors outside the "strike zone".  Appellant could have asked all of his proper and relevant questions of the jurors in the time allotted him; however, he misused his time asking immaterial and unnecessary questions.

ARGUMENT AND AUTHORITIES

<u>No Error</u>

In *Wheatfall v. State* ,746 S.W.2d 8-10 (Tex.App. – Houston [14th Dist.] 1988, writ ref'd), the Court states the well accepted proposition "that a trial court may control the conduct of voir dire by imposing reasonable restrictions."  The Court this goes on to state that it is equally well recognized that the right to be represented by counsel, guaranteed by Article 1, Section 10 of the Texas Constitution, encompasses the right of counsel to question the members of the jury panel in order to intelligently exercise his peremptory challenge.  The Court then lists three factors established by the Court of Criminal Appeals in *Ratliff v. State*, 690 S.W.2d 597, 599-600 (Tex.Crim.App. 1985) in determining whether the trial court has abused its discretion in limiting the voir dire examination.

First, the Constitutional guarantee of the right to be represented by counsel is a right guaranteed to a criminal defendant and does not extend in most cases to a civil litigant.  An indigent respondent in a termination of the parent-child relationship does have the right under Section 107.013 of the *Texas Family Code* to have appointed counsel, but that right is not guaranteed by the Constitution.  Second, the burden of proof in a criminal case is beyond a reasonable doubt, whereas the burden of proof in a termination case is clear and convincing.  The clear and convincing standard is greater than by a preponderance, but less than beyond a

26

reasonable doubt required in criminal cases. While a termination case may require strict scrutiny, the same constitutional guarantees afforded a criminal defendant are not afforded the parent in a termination case.

It is appropriate before beginning an analysis of the record in the instant case, to show that the trial court made it quite clear that each party would be restricted in time in his voir dire in order to keep the trial moving along. The parties were also instructed that they would begin early and end late, and that the testimony would be moved along in a timely manner [RR XIII:77-79]. In analyzing the instant case using the three-pronged test, one must first determine whether appellant's voir dire examination reveals an attempt to prolong the voir dire, by asking irrelevant, immaterial, or unnecessarily repetitious questions.

An examination of Appellant's voir dire reveals that more time was spent trying to color the jurors' perception of the case than it was asking questions which would help Appellant intelligently exercise his peremptory challenges. These questions comparing a custody case to a political campaign and mud-slinging were irrelevant, immaterial, and a waste of time on the part of Appellant, considering the time limits that were set by the Court in advance [RR II:40-46]. Allowing Appellant to prolong voir dire in this manner would have made a mockery of the well-established standard that the trial court can make appropriate limitations on voir dire. Unlike some cases in which the tie limit was held to be unreasonable, there were no challenges for cause or discussions at the bench which contributed to a lengthy voir dire examination. Counsel should have some duty to tailor voir dire to fit the trial court's limitations, and should not be allowed to complain on appeal that his waste of time should not be held against him. It is obvious that Appellant attempted to prolong voir dire by saving his relevant and material questions for the latter

27

part of his voir dire.

He also spent an inordinate amount of his time in individual jurors outside the "strike zone" [RR II:49,56-58,59-60,69-70]. In this case, no one had been challenged for cause so far in the trial, and none were challenged during Appellant's Attorney's voir dire, therefore anyone past Juror No. 24 was outside of the strike zone.

Although one would not reach the second-prong of the three-prong test, considering the Appellant's attempt to prolong voir dire, Appellee concedes that at least some of the questions set out in Appellant's Bill of Review were proper, relevant, material, and not unnecessarily repetitious. However, he could have asked those questions with a more judicious use of the time allotted him by the court.

In an analysis of the third-prong, it appears that counsel was allowed to individually question at least eight of the twelve jurors who served on the jury. The fact that spent an inordinate amount of time questioning jurors outside the strike zone affected Appellant's ability to individually question the jurors who would actually serve on the jury. Appellant should have some duty to manage his time and his questions appropriately in order to fit the trial court's reasonably-imposed limitations on voir dire. If he unreasonably questions jurors outside the strike zone on immaterial and irrelevant questions, it should only be held against him, and not against appellee.

## REPLY POINT NO. 5

THE TESTIMONY OF DR. PUGLIESE WAS PROPERLY ADMITTED AT TRIAL

This issue was totally covered under Reply Points No. 2 and 3. A repetition of those points here would be superfluous.

## REPLY POINT NO. 6

THE LOWER COURT DECISION SHOULD BE AFFIRMED BECAUSE APPELLEE PROVED BY CLEAR AND CONVINCING EVIDENCE THAT APPELLANT KNOWINGLY PLACED THE CHILDREN IN CONDITIONS AND SURROUNDINGS WHICH ENDANGER THE PHYSICAL AND EMOTIONAL WELL-BEING OF THE CHILDREN; KNOWINGLY ALLOWED THE CHILDREN TO REMAIN IN CONDITIONS AND SURROUNDINGS WHICH ENDANGER THE PHYSICAL AND EMOTIONAL WELL-BEING OF THE CHILDREN; OR THAT APPELLANT ENGAGED IN CONDUCT WHICH ENDANGERS THE PHYSICAL OR EMOTIONAL WELL-BEING OF THE CHILDREN AND THAT IT IS IN THE BEST INTEREST OF THE CHILDREN THAT THE PARENT-CHILD RELATIONSHIP SHOULD BE TERMINATED BETWEEN THE FATHER AND THE CHILDREN. THE TRIAL COURT DID NOT ERR IN DENYING APPELLANT'S MOTION FOR JUDGMENT NON-OBSTANTE VEREDICTO.

### SUMMARY OF FACTS

Physical Abuse

Appellant was convicted for assaulting on his wife, Denise Retzlaff, which Appellant

29

admitted to [RR IV:36; RR IV:37]. The testimony of Denise Retzlaff indicated that he began hitting her while she was pregnant with Brittany. He would hit her on her head, with a fist on her arm, and he would also shake her [RR V:53]. Denise Retzlaff also testified that Appellant would choke her and would cover her mouth so that she couldn't scream. She indicated that, "He liked rough sex." She further testified that he would often do this while the children were at home [RR V:83] She further testified that the children were used to hearing her scream and would sometimes try to intervene in order to protect her [RR V:84]. The videotape displayed the Appellant very violently sodomizing his wife against her will, physically restraining her. [RR IV:65]. Appellant admitted that the children were in bed in the house during the videotaping of the rape scene. [RR IV:65]. Helen Huff, a former co-worker of Denise Retzlaff, testified that she had witnessed injuries to Denise, including bruises on her face and a bruise on her arm which looked like a hand print, and also that Denise Retzlaff had complained to her of a bruise on her back. [RR VII:30]. Denise Retzlaff testified that she suffered hand marks on her neck from Appellant's choking her, bruises on her arms, bruises on her legs from his fists, rug burns from being dragged, a bruised back, and a fractured finger [RR V:135, 136]. In Petitioner's Exhibit 16, Collin Retzlaff indicated to Dr. Pugliese that "...he observed his father 'smack my mom lots of times'." He also indicated that his father "...routinely 'slapped us when we acted up' and (h)e conceded he often worried that his father might 'shoot my mom' during periods of anger and added he experienced a considerable amount of nervousness and anxiety when he was at school or when he was in his room 'hearing him beat her up'." [RR VIII:5]

Denise Retzlaff testified that Appellant would slap Brittany and Collin on the head and would spank Collin with a belt on the rear, the back, or the legs and that it would sometimes leave

marks. [RR V:82, 134]. In Petitioner's Exhibit No. 17, Brittany Retzlaff indicated to Dr. Pugliese that she didn't want to live with her dad because he couldn't control his anger, was mean, would start fights with her mom, and that he would follow her mom around and push and slap her and punch her in the arm. She further indicated to Dr. Pugliese that "...she often felt unsafe and insecure around her father because of his explosive temper and tendency to 'spank us real hard' and mentioned she preferred to avoid him as much as possible when he was in the home." She also stated that "...she rarely felt comfortable around her father because 'he would start all the commotion and have a deep voice that was mean and scary' that would cause her and other family members to 'think he was going to hurt us again.'" [RR VIII:6,7]

Verbal Abuse

Appellant admitted to calling his wife a bitch, stupid, and a slut in front of his children. [RR IV:141]. Appellant admitted to having a problem with impulse control, anger, and hostility. [RR IV:134]. Denise Retzlaff testified that Appellant called her a "f_ _ _ing bitch" and "whore" in front of the children, and that Collin had started copying his behavior around the age of four or five calling her "stupid" and "you bitch." [RR V:63]. Denise also testified that Appellant told Brittany to "(g)o tell your mommy she's a f_ _ _ ing bitch." [RR V:122]. Denise Retzlaff further testified that Appellant "cut (her) down" in public. [RR V:141]. Denise also testified that Appellant would call Brittany "stupid bitch" and would call Collin, "You idiot, you stupid idiot!" [RR V:81,82]. Denise Retzlaff also testified that Appellant had threatened to kill her. [RR V:78] In Petitioner's Exhibit 16, Brittany Retzlaff indicated to Dr. Pugliese that Appellant would call her mother names, make fun of her weight, and use lots of cuss words to criticize her.[RR VIII:6,7]. Collin Retzlaff indicated to Dr. Pugliese in Petitioner's Exhibit 16, that Appellant would criticize

31

his mother by using vulgar and obscene language, including words such as "mother f___er, f___king bitch, and bitch."[RR VIII:5].  Robert Retzlaff, paternal grandfather testified that he had witnessed Appellant "hollering" at the children and that he had a problem with controlling his anger. [RR VI:231].  Judy Hicks, Principal of Cater Elementary testified that she had witnessed Appellant yelling at the children.  [RR VII:68], and Wendy Beard, Collin's kindergarten teacher observed Appellant yelling at Brittany while she was attempting to run down the hallway carrying bags, books, coat, etc. [RR VII:75].

Endangering Physical Safety

        Appellant admitted to keeping a loaded pistol on the headboard of his bed in 1991[RR III:150].  Appellant admitted to keeping a "sometimes" loaded gun in the house [RR III:151] He admitted that having a loaded gun around a 3-year old and an 11-month old was a problem. [RR III:158.] Evidence indicated that at the time of the search of the Retzlaff home by Temple Police Department in March 1997 both of the guns were loaded.  [RR V:45].  Denise Retzlaff indicated that Appellant kept the revolver either in the night stand in the bedroom or on the shelf of the headboard of the bed and was kept loaded  [RR V:56].  She further testified that she had found Collin holding the revolver once when Collin was 5 years old and again when he was 6 years old. Appellant's response to this was to tell Collin that it was wrong for him to touch the gun – that it kills people.  Denise also testified that she would take the bullets out and put them in the drawer, and Appellant would put the bullets back in the gun and put the gun back on the headboard in spite of her protestations [RR V:57].  Tom Ferman, a police officer for Temple Police Department, testified that in 1991 when he discovered 3-year old Brittany and 11-month old Collin alone in the apartment, he had found a .357 Magnum in the headboard of the bed which is depicted with

32

Brittany in Petitioner's Exhibit No. 36 at R VIII:48 [RR VII:52]. Appellant admitted to leaving Brittany alone at the age of 3 with her 11-month old brother [RR III:150.] Appellant admitted to leaving Brittany alone in the house while he ran errands in 1992 [RR III:158.]. Brittany indicated that she watched the entire movie *Bambi* while she was home alone [RR IX:158]. Denise Retzlaff testified that the first time Brittany was left alone was when she was three weeks old, because Appellant said it was okay to leave her for two hours to go to a movie. She testified that it was not an isolated incident, but that it happened often. [RR V:142,143]. Denise Retzlaff testified that Appellant had been alone with the children in 1991 when she went to work that day in the first reported incident with CPS [RR V:59].

Physical Neglect

Collin would come to school with his hair not combed, wearing pants he wore the day before, clothes not washed, face, hands, and fingernails dirty  [RR VII:73].  Appellant would pick the children up late from school.  School let out at 2:45 p.m., and he would pick them up anywhere from 3:00 p.m. to as late as 4:45 p.m. His only excuse was that he had business [RR VII:60].

Exposure to Pornography

Intervenor's Exhibit No. 5, the certified copy of the conviction of Appellant for the display of harmful to a manner, was entered into evidence [RR IX:64]. Appellant admitted to owning Petitioner's Exhibits No. 48 through 63, which were books and magazines with titles such as, *Loving Daddy*, Exhibit 48 [RR IX:58], *High School Sluts*, Exhibit 49 [RR IX:60], *Hot and Naughty Daughter*, Exhibit 50  [RR IX:62],  *Family Orgy* , Exhibit 51 [RR IX:64], *Raped Daughter*, Exhibit 52 [RR IX:66], *A Sister to Rape*, Exhibit 54 [RR IX:71], *Incest Poker*, Petitioner's Exhibit 57  [RR IX:77], and *Schul-Madchen*, Exhibit 62 [RR IX:87]. Appellant

33

admitted that books he purchased approximately four years prior to trial were partly about incest. [RR III:43]. Evidence indicated that the videotape of the rape scene between Appellant and his wife, as well as other pornographic-type films, was found in the entertainment center close to the television in the living room and that it was accessible to the children [RR V:26-29, 44]. Evidence also indicated that some of the collages and pornographic magazines were found in a small table with unsecured doors in the living room [RR V:44], and that others were found throughout the apartment [RR V:3]. Denise Retzlaff testified that Appellant always had pornographic materials in the master bedroom in the night stand or under the bed that he used when he masturbated [RR V:64.] She further testified that he often masturbated in front of the television in the living room and kept Crisco in the entertainment center or next to it for the purpose of masturbation. She also testified that the children knew about the Crisco and what it was for [RR V:65,66]. Denise Retzlaff testified that Appellant would keep the collages contained in Petitioner's Exhibit No. 64 in the night stand in the bedroom or under the bed, both areas which were accessible to the children. She further testified that Appellant took the photographs in Intervenor's Exhibit No. 36, cut them out, and pasted them on paper. Appellant indicated that he kept them because he thought they were "fine" and "babes". Denise testified that the photos were taken no more than seven years ago and were photographs of young girls, ages 7 or 8 to 11 or 12. Denise Retzlaff testified that he used to masturbate to them [RR V:70-72.] Denise Retzlaff testified that she discovered Collin with Appellant's pornographic magazines in his bedroom at age 6. She testified that Collin had a bottle of lotion and was playing with himself [RR V:147]. Collin indicated he observed his father 'doing gross stuff' on numerous occasions i the home and said his dad kept many "dirty magazines and dirty movies all around the house", and acknowledge that he occasionally looked through some of

34

the pornographic magazines and watched X-rated movies from his bedroom while his dad was "scrubbing his private parts with cooking cream." He said there were numerous occasions when he saw his father "pull down his pants, put this cooking cream on his private part, scrub it, and his private part would stick up and he would say come on baby do it, come on, come on as he would rub his private part" [RR VIII:6]. Brittany indicated that her father "would do nasty stuff" in the living room while she and her brother were getting ready for bed and that she often saw him "watching gross movies on TV." She also had witnessed her father on numerous occasions when he "put Crisco on himself and rubbed his privates" as he watched pornographic movies and that he "moaned and groaned all the time." She also indicated that he left many of his pornographic magazines on the table or on the coach and seemed to have little concern about her and her brother having access to them. She recalled one occasion when her father would "keep flipping back and forth to this program on nude people." In spite of the fact that she requested that he change the channel, he simply ignored her and kept watching that channel. [RR VIII-7]. Collin told the staff at Cedar Crest that "(h)is Dad has touched his sister's older friends in their private places", and also indicated to the staff that his dad would put "cream" on his "hot dog" [RR IX:183].

Exposure to Inappropriate Sexual Behavior

Appellant admitted to having sex in his apartment while the children were in their bedrooms, and at least on one occasion having sex in the living room while the children were in their bedrooms [RR IV:127]. Appellant admitted to videotaping at least one sexual encounter with Belinda Mendieta in the living room [RR IV:128]. Appellant indicated that he tried to protect the children from any exposure by telling them to stay in their bedrooms and to knock on their doors first before coming out [RR IV:12-131]. Appellant denies that he thinks Collin is making up what

35

he told Dr. Pugliese [RR IV:104] Appellant admitted to liking porno movies and to owning porno movies [RR IV:132,134]. Appellant admitted to watching *Heavy Metal* while the children were at home, while there is other evidence that Appellant called the four minor children who were in the home at the time to watch the movie which contained scenes of animated characters fully nude and engaging in sexual intercourse [RR IX:68]. Appellant admitted to masturbating in the living room while he was watching pornography on television [RR IV:138,139] Appellant admitted to keeping

magazines such as *Playboy* under the bed and in the living room [RR IV:142, 143]. Appellant admitted to cutting out the pictures displayed in Petitioner's Exhibit No. 64 [RR IV:91] which are photographs of young girls from age 7 to 12. Appellant admitted that he was interested sexually in young girls [RR IV:111] and that he had been sexually excited by the photos of the younger girls. Appellant further admitted to using the photos to masturbate with [RR IV:112]. Appellant admitted to creating the collages of young girls in bras and panties from magazines and Sears catalogues and admitted to using them as part of his sexual fantasies [RR IV:114]. Denise Retzlaff testified that Brittany would ask her to tell Appellant to put his clothes on around the house, but that Appellant would refuse to do so [RR V:150, 151].

Exposure to Inappropriate Relationships

Appellant admitted to holding hands with Laura Ellison in front of the children [RR IV:117]. In Petitioner's Exhibit No. 16, it was stated that Collin was aware that his dad had a girlfriend, dated their babysitter, Belinda, and witnessed his father and Belinda kissing, and on one occasion, that Appellant videotaped Belinda when she was naked. He also indicated that his father encouraged him to view the video tape of Belinda [RR VIII:6] Brittany also indicated that she saw her father with two different girls, Laura and Belinda [RR VIII:7].

36

Engaging in Criminal Conduct

In addition to Appellant testifying that he was residing in jail at the time of the trial [RR III:22], following certified copies of his criminal records were entered into evidence:

Intervenor's No. 1 - an order deferring adjudication for the felony offense of carrying a prohibited weapon on school premises [RR IX:5,6];

Intervenor's No. 2 - an order deferring adjudication and a judicial confession for the felony offense of tampering with or fabricating physical evidence [RR IX:20-27];

Intervenor's No. 3 - an order deferring adjudication on a Class C criminal attempt for harassing communications by telephone against Belinda Mendieta [RR IX:30-36];

Intervenor's No. 4 - a misdemeanor conviction for violation of a protective order [RR IX :44-60];

Intervenor's No. 5 - a misdemeanor conviction for the display of harmful material to a minor [RR IX: 64-86];

Intervenor's No. 6 - a misdemeanor conviction for Class A theft [RR IX:90-109];

Intervenor's No. 7 - a misdemeanor conviction for tampering with a governmental record [RR IX:113-133];

Intervenor's No. 8 - A misdemeanor conviction for assault with bodily injury on a family member, namely his wife, Denise Retzlaff [RR IX:137:153]

Appellant further testified that he was presently residing in Bell County Jail on a contempt charge for violating the court's order [RR III:22]. Steve Hughes testified that Appellant had potentially committed hundreds of violations of his felony probation orders while in jail [RR V:20]

Anti-social behavior

37

Appellant treated women without respect [RR VII:73,74], would carry a gun to the door to answer it [RR VIII:5], indicated to his children that law enforcement is not trustworthy [RR VIII:5]; failed to follow court orders - continuously calling Denise Retzlaff's home in violation of the court's orders [RR VI:172-175; Appellant admitted to writing letters against the conditions of his community supervision to the children [RR III:53-54]; Appellant admitted he dialed Dawn Engelke's phone number when he was court-ordered not to contact her [RR IV:52-54]; Denise Retzlaff testified that Appellant got kicked out of Drury College for stalking and harassing Beverly Santucci, a girlfriend Retzlaff had had an affair with early in their marriage [RR V:79]; Robert Retzlaff, paternal grandfather of the children, admitted that Appellant had a "level of defiance" for authority [RR VI:231]; In dealing with an incident where Collin took a knife to school, Appellant reacted by asking Collin why he took his property, not by reprimanding him for doing something dangerous or against school rules [RR VII:61, 62].

## SUMMARY OF APPELLEE'S ARGUMENT

In considering all of the evidence tending to support the findings of the jury, and disregarding all of the evidence to the contrary, it is clear that there is an overwhelming amount of clear and convincing evidence tending to prove the high probability that Appellant had knowingly placed the children in conditions and surroundings that endangered their physical and emotional well-being; knowingly allowed the children to remain in conditions and surroundings that endangered their physical and emotional well-being; or engaged in conduct which endangered the children's physical and emotional well-being, **and** that it was in the best interest of the children that the parent-child relationship between Appellant and the children be terminated. Only one of the

three grounds for termination  must be proven, as well as that it is in the best interest of the children that the relationship be terminated.

Even considering **only** Appellant's admissions which was corroborated by other evidence, there is still much greater than a scintilla of proof that there was a high probability that Appellant had committed at least one of the grounds for termination, if not all three, and that it was in the best interest of the children that the parent-child relationship between Appellant and the children be terminated.

If one were to totally disregard Dr. Pugliese's testimony, the videotape, and the photographs complained of by Appellant, and weighing all of the evidence, including the credibility of Appellant, the judgment is still not so contrary to the overwhelming weight of the evidence that the judgment is clearly wrong and unjust. The jury verdict was unanimous, and the overwhelming weight of the evidence supports the jury's findings.

## ARGUMENT AND AUTHORITIES

I.     No Error - Judgment Non Obstante Veredicto

The Court did not err in denying Appellant's Motion for Judgment Non-Obstante Veredicto.  Rule 301 of the *Texas Rules of Civil Procedure* provides that "...upon motion and reasonable notice the court may render judgment non obstante veredicto if a directed verdict would have been proper...."  A directed verdict is proper only if there is no evidence on which to submit an issue to the jury.

II     No Error

In *D.O. v. Texas Dept. of Human Services*, 851 S.W.2d 351,353 (Tex.App.- - Austin

39

1993, no writ) this court set out the standard for review in a termination case:

> TDHS had the burden to prove the elements necessary for termination by clear and convincing evidence. *In re G.M.*, 596 S.W.2d 846, 847 (Tex.1980); *Neal v. Texas Dept. of Human Servs.*, 814 S.W.2d 216, 222 (Tex.App. - - San Antonio 1991, writ denied) *see Addington v. Texas*, 441 U.S. 418, 423, 99 S.Ct. 1804, 1808, 60 L.Ed.2d 323 (1979) (function of standard of proof is to instruct the factfinder concerning the degree of confidence society thinks it should have in correctness of factual conclusions). The clear and convincing standard of proof requires 'that measure and degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.' *In re G.M.*, 596 S.W.2d at 847.

> When both no-evidence and factual-sufficiency challenges are raised, we must first examine the legal sufficiency of the evidence. *Glover v. Texas Gen.' Idem. Co.*, 619 S.W.2d 400, 401 (Tex.1981). In deciding a no-evidence point, we consider only the evidence and inferences tending to support the finding and disregard all evidence to the contrary. *Alm v. Aluminum Co. of Am.*, 717 S.W.2d 588, 593 (Tex.1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965); *In re S.H.A.*, 728 S.W. 2d 73, 90 (Tex.App. – Dallas 1987, no writ).

> In deciding whether the evidence is factually sufficient, this Court considers and weighs all the evidence and should set aside the judgment only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951); *see also Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex.1986). The clear and convincing standard of proof required to terminate parental rights does not alter the appropriate standard of appellate review. *State v. Turner*, 556 S.W.2d 563, 565 (Tex.1977); *Meadows v. Green*, 524 S.W.2d 509, 510 (Tex.1975)(evidence is reviewed by only two standards: factual and legal sufficiency); *Browning-Ferris Indus., Inc. v. Zavaleta*, 827 S.W.2d 336, 341 (Tex. App. – Corpus Christi 1991, writ denied); *see Director of the Dallas County Child Protective Servs. Unit v. Bowling*, 833 S.W.2d 730, 732 9Tex.App. - - Dallas 1992, no writ) (clear and convincing evidence standard is correct standard for jury evaluation and not standard for instructed verdict).

A.    Legal Sufficiency

In examining a legal sufficiency question, the reviewing court should consider only

evidence and inferences tending to support the finding and disregard all evidence to the contrary.

Court must determine whether trier of fact could reasonably conclude that the existence of

a given fact is highly probable. *Wetzel v. Wetzel*, 715 S. W. 2d 387 (Tex. App—Dallas·1986, no

writ). The Appellant avers that "the trial court could not have determined that it was highly

probable that Appellant had engaged in conduct which endangered the child" [AB 28]. However,

the Appellant has neither made any reference to the record in support of his proposition,

summarized the evidence, nor discussed it as applied to the facts relating to the  law given by

Appellant, except with reference to "highly inflammatory and prejudicial evidence proffered by

Appellee" [AB 29].

     In an evaluation of the evidence produced at trial tending to support the jury's findings, the

charge of the court directed the jury as follows:

> "For the parent-child relationship between **Thomas C. Retzlaff**, the father
> of the children, and the children, **Brittany A. Retzlaff** and **Collin A. B. Retzlaff**, to
> be terminated, it must be proven by clear and convincing evidence that at least one
> of the following events has occurred:
>
> 1.    That **Thomas C. Retzlaff** has knowingly placed the child in conditions and
> surroundings which endanger the physical and emotional well-being of the
> child;
> 2.    That **Thomas C. Retzlaff** has knowingly allowed the child to remain in
> conditions and surroundings which endanger the physical and emotional
> well-being of the child;
> 3.    That **Thomas C. Retzlaff** has engaged in conduct which endangers the
> physical and emotional well-being of the child"[CR 197].

*Texas Dept. of Human Services v. Boyd*, 727 S.W.2d 531, 534 (Tex. 1987) holds "that if

the evidence, including the imprisonment, shows a course of conduct which has the effect of

endangering the physical or emotional well-being of the child, a finding under section 15.02(1)(E)

is supportable." The Court further found that "endanger" means to expose to loss or injury; to

jeopardize; that it is not necessary that the conduct be directed at the child or that the child actually

suffers injury, and that imprisonment is a factor to be considered by the trial court on the issue of

41

endangerment. *Id*. At 533. Although Appellant was only temporarily jailed at the time of the trial, he had engaged in a course of conduct which had gained him two felony probations and in which he had violated potentially hundreds of times for which the potential for his being sent to prison was great. His course of conduct clearly exposed the children to loss and injury in numerous ways, emotionally and physically.

Considering the plethora of evidence in this case, it would be difficult to argue that the trial court could not have determined that it was highly probable that Appellant had engaged in conduct which endangered the physical and emotional well-being of the children and/or knowingly placed or knowingly allowed the children to remain in conditions and surroundings which endangered the physical and emotional well-being of the children.

E.   Best Interest

Appellant argues without reference to the record or authoritative cites that it is in the best interest of the children to have two parents. There are several cases which stand for the proposition that there is a presumption that it is in the best interest of the child to be with its natural parents. It is well established that the factors to be considered in determining the best interest of the children as set forth in *Holly v. Adams*, 544 S. W. 2d 367 (Tex. 1976) includes, without excluding other factors, the desires of the child; the emotional and physical needs of the child now and in the future; the emotional and physical danger to the child now and in the future; the parental abilities of the individuals seeking custody; the programs available to assist these individuals to promote the best interest of the child; the plans for the child by these individuals or by the agency seeking custody; the stability of the home or proposed placement; the acts or omissions of the parent which may indicate that the relationship is not a proper one; and any excuse for the acts or

42

omissions of the parent.

The desires of the child - The evidence indicates that the children are more comfortable with their mother and are afraid of their father, and although there was a statement that Brittany missed her mother and her father, the children are protective of their mother and angry at their father. Brittany would sometimes tell Denise Retzlaff that she wished Appellant were dead [RR V:84].

The emotional and physical needs of the child now and in the future - The testimony of both psychologists made it clear the children would need a lot of counseling in the future in order to overcome the emotional damage they have suffered.

The emotional and physical danger to the child now and in the future - The testimony of both psychologists also made it clear that a relationship with their father would be emotionally, and potentially physically dangerous, in the present and in the future [RR VI:83-84]. Dr. Pugliese made it clear that there was a risk that Appellant would act out on his sexual proclivities for young girls towards his own daughter, Brittany [RR VI:86-87,90, 92}. Collin was already exhibiting disturbing behaviors imitative of his father's behavior: being disrespectful of women, slapping children, stealing, carrying weapons, cursing, and using pornography [RR VII:61,71-74,76-78]. A jury could draw its own conclusions as to how a relationship with Appellant could permanently scar Collin and be an emotional and physical danger to him now and in the future.

The parental abilities of the individuals seeking custody - The jury could easily compare Appellant's self-description of his parental abilities with the reality that was presented by other witnesses. He indicated that he took the children to the baseball games and taught them swimming, when it was really his father who did it. He indicated that he was very active in school

43

activities, when he couldn't even remember the teachers' names and failed to attend parent-teacher conferences. He indicated that he took care of the children's physical needs, kept them clean and well-dressed, when the testimony showed that Collin showed up dirty and unkempt. He indicated that he was the one who had Brittany baptized, but it was at his parents' church with his parents that she was baptized. He indicated that he took them on outings with friends, but the evidence showed that they were isolated in their apartments from other people, and he couldn't get along with other people, unless it was for his self-aggrandizement or pleasure. The children indicated it was their mother that they felt comfortable with and were concerned about. The psychologist indicated that Denise Retzlaff had the potential for being a good parent and was making some gains in her parental abilities.

The programs available to assist these individuals to promote the best interest of the child - The evidence indicated that the Department was in the process of helping Denise Retzlaff get on her feet and gain better parenting skills with which to better handle the children [RR V:160]. The evidence also indicated that Appellant was in jail, was incapable of seeking help when he was out of jail, but was fixated on revenge.

The plans for the child by these individuals or by the agency seeking custody - The evidence indicated that the Department wanted temporary custody so that they could eventually return the children to their natural parent, Denise Retzlaff. Appellant had no real plans for the children.

The stability of the home or proposed placement - The evidence showed that although being in foster placement had been somewhat emotionally hard on them, the children had benefitted. Brittany Retzlaff was on the A honor roll for the first time. Denise Retzlaff had made

44

some progress in her life [RR V:160]. Obviously, jail is no place for children, therefore the stability of Appellant's "home" was not suitable.

The acts or omissions of the parent which may indicate that the relationship is not a proper one - There was plenty of evidence showing the acts of Appellant [and omissions] which indicated that his relationship with his children was not a proper one, and that a continued relationship with them would cause them further harm.

Any excuse for the acts or omissions of the parent - The battered-wife syndrome is the excuse for the omissions of Denise Retzlaff [RR V:159]; there was no excuse in the evidence for the acts and omissions of Appellant.

B.    Factual Sufficiency

There were no facts given by Appellant in support of his argument that the decision lacked factual sufficiency. The fact finder had the right to consider the credibility of the witness in determining what the facts were. In determining Appellant's credibility, the jury could consider Appellant's admission that he is not a truthful person all of the time [RR IV:42], his convictions for theft, tampering with a governmental record, his assault with bodily injury on a female, and his admission that he would sometimes grossly exaggerate, lie, and manipulate people [RR IV:73]. As a review of Appellant's testimony would reveal, Appellant would quibble about words, give evasive answers, deny an act, then change his testimony while on the stand. Even considering **only** Appellant's testimony which was corroborated by other evidence, there would be sufficient evidence to survive a factual sufficiency point.

45

## REPLY POINT NO. 7

THE DECISION SHOULD BE AFFIRMED BECAUSE THERE WAS NO VIOLATION OF APPELLANT'S U.S. AND STATE OF TEXAS CONSTITUTIONAL RIGHTS.

## STATEMENT OF FACTS

There had been three prior referrals by Child Protective Services and an open Family Preservation Case on the Retzlaff family, due to Appellant leaving his young children at home alone for an extended period of time [R III:150-151; V:59]. He commonly kept loaded weapons in the home and accessible to the children, while they were at home alone [R VII:52; IX:158]. He refused services from the Department. During the short period of time that he was out of jail, he failed to seek counseling, but violated his felony probation numerous times [R V:19].

## SUMMARY OF APPELLEE'S ARGUMENT

Appellant was afforded all due rights under the U.S. and Texas Constitutions. He was provided a court-appointed attorney, both for the trial on the merits and for the appeals process. A showing was made that an important state right was promoted by the termination of Appellant's parent-child relationships. Finally, it was shown that there were no less restrictive means to achieve the proper state goal to protect the children.

## ARGUMENT AND AUTHORITIES

Appellant relies on *In Interest of S.H.A.,* 728 S.W.2d 73 (Tex.App.–Dallas 1987, writ ref'd n.r.e.) for an explanation of the constitutional dimensions and requirements before

46

termination will survive constitutional scrutiny.  The Court in *S.H.A.*, Id. At 91, states that "because fundamental constitutional rights are involved, severance of the parent-child relationship will survive constitutional scrutiny only if: the asserted governmental interest is compelling; a particularized showing is made that the state interest is promoted by terminating the relationship; it is impossible to achieve the goal through any less restrictive means; and procedural due process protections are met." As in that case, each of these requirements have been satisfied.

First, Appellant was represented by an attorney both at trial and on appeal, and an attorney ad litem and a guardian ad litem were appointed to represent the children's interests.  Appellant was afforded a jury trial and were afforded due process.

Second, witnesses in the trial testified as to the necessity of the termination of Appellant's rights, and a particularized showing was made that protecting the children's life and well-being would be promoted by the termination of Appellant's rights.

Finally, it was very clear that the only way that the children would be safe from Appellant because of the sociopathic nature of his tendencies and his fixation on revenge would be to terminate the parent-child relationship between him and the children.  Anything less would not achieve the necessary goal of protecting the children legally from any ties with Appellant.

Appellant argues that the record contains no evidence that the Appellee did all they could to prevent termination.  The record does contain evidence of three prior referrals on the home of Appellant, an offer of services to Appellant, and a refusal on his part to accept services or to cooperate with the Department.  Indeed, it shows the opposite of an intention to cooperate. Further, there is evidence that during the short period of time that Appellant was out of jail during the summer, he failed to attend counseling, but managed to violate innumerable times more than

47

one court order, thereby landing back in jail.

Appellant further argues that he was forced to represent himself pro se until four months before trial. A scrutiny of the court transcript will reveal that Appellant never requested a court appointed attorney until that time, however, he did file a request for a free transcript [CR 223]. A petition for termination was filed just prior to his requesting a court-appointed attorney. Prior to that the petition requested only temporary orders. The evidence further shows that he filed numerous In Forma Paupers affidavits on civil cases he was pursuing [RR III:109-116].

Finally, the parent-child relationship was only terminated as to one parent in order to afford the other parent a chance to release herself and her children from the environment of physical and emotional abuse they had been placed in. The relationship with the mother was maintained because it was felt that it would be in the children's best interest that they eventually be returned to her. The only way to protect her and the children from Appellant's legal ties, would be to break those legal ties.

## PRAYER FOR RELIEF

For the reasons stated herein, the Texas Department for Protective and Regulatory Services requests that this Honorable Court uphold the unanimous verdict of the jury, affirm the decision to terminate the parent-child relationship of Appellant and the children, and deny all relief requested by Appellant.

Respectfully submitted,

Edith A. Strickland
Assistant Bell County Attorney
SBN: 19390600
RICHARD J. MILLER, Bell County Attorney
P. O. Box 1127
Belton, Texas 76513
Telephone: (254)933-5732
Fax No.    (254)933-5445

ATTORNEY FOR THE TEXAS DEPARTMENT
OF PROTECTIVE AND REGULATORY
SERVICES

## CERTIFICATE OF DELIVERY

I certify that a true and correct copy of the foregoing Brief for Appellee, the Texas Department of Protective and Regulatory Services, was delivered this date to the parties or their attorneys of record, as required by the Texas Rules of Appellate Procedure.

SIGNED: _November 20, 1998_

Edith A. Strickland
Attorney for Appellee

49