### IN THE UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

**JAMES MCGIBNEY**, an individual;
and **VIAVIEW, INC**., a corporation,
    *Plaintiffs*,

      v.                              **CASE NO.** 5:14-cv-01059-BLF

**THOMAS RETZLAFF**, an individual;
**NEAL RAUHAUSER**, an individual;         **Hearing Date**:  January 22, 2015
**LANE LIPTON**, an individual;              **Hearing Time**:  9:00 AM
and **DOES 1-5**, individuals whose true         **Courtroom**: 3
names are not known,
    *Defendants*

### DEFENDANT THOMAS RETZLAFF'S MEMORANDUM IN SUPPORT OF ANTI-SLAPP SPECIAL MOTION TO STRIKE PLAINTIFFS' COMPLAINT

Defendant Thomas Retzlaff moves this Court to strike plaintiffs' complaint pursuant to California's "Anti-SLAPP" [1] statute, CAL. CODE CIV. PROC. § 425.16.

## I. INTRODUCTION

1.      Plaintiffs are James McGibney and ViaView, Inc.; defendants are Thomas Retzlaff, Neal Rauhauser, Lane Lipton, and Does 1-5.

2.      Plaintiffs sued defendants for defamation and related claims based on the exercise of free speech.  Retzlaff and Lipton, both residents of foreign states who have no minimum contacts with California, challenged the Court's personal jurisdiction.  No other defendant has been served.

---

[1]    "SLAPP" stands for "Strategic Lawsuits Against Public Participation."  As one court put it, "[SLAPP suits] are generally meritless suits brought by large private interests to deter common citizens from exercising their political or legal rights or to punish them for doing so." *Wilcox v. Superior Court*, 27 Cal. App. 4th 809, 816 (Cal. Ct. App. 1994).

# TABLE OF AUTHORITIES

## Cases

*Ampex v. Cargle*, 128 Cal.App.4th 1569, 1577 (Cal. Ct. App 2005) ............................... 25

*Barrett v. Rosenthal*, 146 P.3d 510, 514 n.4 (Cal. 2006).................................... 9

CAL. CIV. PROC. CODE § 425.16(e)(3) .............................................................. 9

*Chaker v. Mateo*, 2012 WL 4711885 (Cal. App. Ct. Oct. 4, 2012)................................. 16

*Chavez v. Mendoza* (2001) 94 Cal.App.4th 1083, 1089–1090, 114 Cal.Rptr.2d 825 ....... 27

*City of Colton v. Singletary* (4th Dist.2012) 206 Cal.App.4th 751, 767.......................... 12

*City of Los Angeles v. Animal Def. League*, 135 Cal.App.4th 606, 621, 37 Cal.Rptr.3d 632 (Cal. Ct. App. 2006)................................................................. 14

*Club Members for an Honest Election v. Sierra Club* (2008) 45 Cal.4th 309, 319.......... 12

*D.C. v. R.R.* (2d Dist.2010) 182 Cal.App.4th 1190, 1226 ................................ 17

*DC Comics v. Pacific Pictures Corp.*, 706 F.3d 1009, 1013 (9th Cir. 2013) .................. 11

*Doe v. Gangland Prods., Inc.*, 730 F.3d 946, 955 (9th Cir. 2013) ................................... 15

*Equilon Enterprises v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 67 (Cal. 2002) ............... 13

*Flatley v. Mauro* (2006) 39 Cal.4th 299, 316 .................................................. 27

*Fox Searchlight Pictures, Inc. v. Paladino* (2001) 89 Cal.App.4th 294, 305, 106 Cal.Rptr.2d 906.................................................................................. 27

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974) .................................... 23

*Governor Gray Davis Com. v. American Taxpayers Alliance* (2002) 102 Cal.App.4th 449, 458, 125 Cal.Rptr.2d 534...................................................................... 27

*Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 422 (9th Cir. 2014)............................................................................ 13

*Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* 184 Cal.App.4th 1539, 1551 (1st Dist.2010)..................................................................... 12

*Hilton v. Hallmark Cards* (9th Cir.2010) 599 F.3d 894, 907 ........................... 17

*Hustler Magazine v. Falwell.* 485 U.S. 46, 57 (1988) ....................................................... 24

*Hutton v. Hafif* (2007) 150 Cal.App.4th 527, 541 ............................................................ 28

*Ingels v. Westwood One Broadcasting Services, Inc.*, 28 Cal.Rptr.3d 933, 940 (Cal. App. 2005) ................................................................................................................................. 12

*Jones v. Dirty World Entertainment Recordings LLC*, Case No. 13-5946 ...................... 22

*Kahn v. Bower* (1991) 232 Cal.App.3d 1599, 1615, 284 Cal.Rptr. 244 .......................... 21

*Mann v. Quality Old Time Serv.* (4th Dist.2004) 120 Cal.App.4th 90, 104 ..................... 12

*Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 838 (9th Cir. 2001) ................................. 9

*Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 595-96 (9th Cir. 2010) ......................... 15

*Mullins v. Brando* (1970) 13 Cal.App.3d 409, 420, 421, 91 Cal.Rptr. 796 ..................... 21

*New York Times Co. v. Sullivan* (1964) 376 U.S. 254, 279-80 ......................................... 21

*Noonan v. Rousselot*, (1966) 239 Cal.App.2d 447, 454, 48 Cal.Rptr. 817 ...................... 21

*Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1042 (2008) ................................ 9

*Nygard, Inc. v. Uusi–Kerttula*, 159 Cal.App.4th 1027, 1042, 72 Cal.Rptr.3d 210 (Cal. Ct. App. 2008) ........................................................................................................................ 15

*Obsidian Finance Group, LLC v. Cox*, No. 12-35238 / D.C. No. 3:11-cv-00057-HZ (9th U.S. Cir. Court of Appeals, dated Jan. 2014) ............................................................... 11

*Paul for Council v. Hanyecz* (2001) 85 Cal.App.4th 1356, 1365) ................................... 28

*Prediwave Corp. v. Simpson Thacher & Bartlett LLP*, (6th Dist.2009) 179 Cal.App.4th 1204, 1219 ....................................................................................................................... 12

*Reader's Digest Assn. v. Superior Court,* 37 Cal.3d 244, 253–254 (Cal. 1984) .............. 23

*Rivero v. Am. Fed'n of State, Cnty., & Mun. Emps., AFL–CIO*, 105 Cal.App.4th 913, 924, 130 Cal.Rptr.2d 81 (Cal. Ct. App. 2003) ....................................................................... 15

*Seelig v. Infinity Broad. Corp.* (1st Dist.2002) 97 Cal.App.4th 798, 807-08 .................. 17

*Sipple v. Foundation for Nat'l Progress* (2d Dist.1999) 71 Cal.App.4th 226, 238 .......... 17

*Snyder v. Phelps*, 131 S.Ct. 1207 (2011) ........................................................................ 18

*Stewart v. Rolling Stone LLC* (1st Dist.2010) 181 Cal.App.4th 664, 677-78 .................. 17

*Stolz v. KSFM 102 FM*, 30 Cal. App. 4th 195, 205 (Cal.Ct.App 1984) ........................... 24

*Tamkin v. CBS Broadcasting Inc.*, 193 Cal. App. 4th 133, 143 (2011) .............................. 9

*Vogel v. Felice*, (2005) 127 Cal.App.4th 1006, 26 Cal. Rptr. 3d 350, 359...................... 21

*Vogel v. Felice*, 26 Cal.Rptr.3d 350, 356 (2005) ................................................................ 9

*Wallace v. McCubbin* (2011) 196 Cal.App.4th 1169........................................................ 28

*Wong v. Tai Jing*, 189 Cal. App. 4th 1354, 1367, 117 Cal. Rptr. 3d 747 (Cal. Ct. App. 2010) ...................................................................................................................................... 15

## Statutes

47 U.S.C. § 230.................................................................................................................... 22

47 U.S.C. § 230(c) .............................................................................................................. 22

CAL. CIV. PROC. CODE § 425.16 ................................................................................... 8, 9

Cal. Civ. Proc. Code § 425.16(a) ...................................................................................... 11

Cal. Civ. Proc. Code § 425.16(b)(1) .................................................................................. 13

Cal. Civ. Proc. Code § 425.16(b)(2)) ................................................................................ 14

Cal. Civ. Proc. Code §425.16(e)) ...................................................................................... 15

Code Civ. Proc. § 425.16(j)(1)........................................................................................... 28

## II. FACTS

3.     Plaintiff James McGibney is the CEO of plaintiff ViaView, Inc., and the founder and operator of ViaView's controversial websites www.bullyville.com, www.cheaterville.com, and at least six others. McGibney uses the websites to (i) punish behavior he finds morally repugnant;[2] and (ii) prosecute vendettas against his personal enemies.[3]   Visitors to McGibney's www.bullyville.com will find the page emblazoned with what could be fairly described as McGibney's business philosophy: "*Sometimes you have to be a bully to beat a bully.*"   One journalist has compared what he called McGibney's "anti-bullying crusading" to "old-fashioned vigilantism."   See Exhibit 1 at ¶11.

4.     A frequent victim of McGibney's "vigilantism" is defendant Thomas Retzlaff, who has been called a "rapist" and a "pedophile" by name on www.bullyville.com.  McGibney claims it is "100% verified" that Retzlaff "threatened to rape [his] own daughter."  (*Id.*)  It is hardly surprising, therefore, that Retzlaff (and many others) allegedly participated in criticizing plaintiffs' unsavory tactics.   To chill and suppress Retzlaff's right to do this, plaintiffs sued Retzlaff—*three times* in two states. The instant suit is one of *three* "SLAPP" suits plaintiffs filed within four weeks and simultaneously maintained against Retzlaff and other defendants in courts in Texas and California pleading substantially the *same* facts:

---

[2]     Visitors to www.cheaterville.com are invited to create an account in order to post pictures and other information about a paramour they suspect to be unfaithful.

[3]     For example, on March 14, 2014, visitors to www.bullyville.com found, among other things, an article posted about the indictment and arrest of McGibney's personal enemy Hunter Moore.  McGibney sued Moore for defamation after Moore allegedly called McGibney a

(i)    Cause No. 67-270669-14; ***McGibney v. Retzlaff***; in the 67th District Court of Tarrant County, Texas (filed February 19, 2014)[4].  See Exhibit 2

(ii)   Cause No. 5:14-CV-01059; ***McGibney v. Retzlaff***; in the U.S. District Court for the Northern District of California (the instant cause, filed March 6, 2014); and

(iii)  Cause No. 114CH005460; ***McGibney v. Retzlaff***; in the Superior Court of Santa Clara County, California (filed March 17, 2014).  See Exhibit 3.

All three lawsuits remain in some stage of litigation.

5.    In the case at bar, plaintiffs identify statements alleged to have been made by Retzlaff in various electronic media appear in the First Amended Complaint at ¶¶ 32, 34-36, 39-40, 47-48, 50-51, 53-54, 64, 66, and 74.  The statements complained of are made over various *pseudonymous* identities which plaintiffs have chosen to conclude are actually Retzlaff in disguise.  However, what plaintiffs characterize as "proof" that Retzlaff is really the speaker is more correctly characterized as illogical leaps to *non sequitur* conclusions, such as:

> **[Retzlaff] often gives away his identity by discussing legal matters as he consistently frames issues by reference to Texas or Texas state law.**

First Amended Complaint, ¶ 77.  How this would enable plaintiffs to rule out anyone else who might discuss "Texas or Texas state law" is not revealed.  Retzlaff specifically denies running a blog or any of the twitter accounts at issue here.  Declaration of Retzlaff at ¶ 16.

---

"pedophile" and a "child abuser" and accused him of possessing "child pornography."  *See* Cause No. A-12-667156-C; *McGibney v. Moore*; in the District Court of Clark County, Nevada.

[4]    After defendant Rauhauser filed an anti-SLAPP motion in the Texas case, plaintiffs' claims were dismissed without prejudice.  The case is now on appeal *sub nom* ***Rauhauser v. McGibney***; No. 02-14-00215-CV, in the Second Court of Appeals of Texas. Rauhauser seeks attorney's fees of $135,000.00 and *mandatory* sanctions of $1,000,000.00.

6.      Even if the statements were, in fact, made by Retzlaff—which Retzlaff does not concede and which plaintiffs cannot prove—the statements alleged to be defamatory or otherwise tortious include nonactionable <u>statements of opinion</u> ("James McGibney is a lying piece of human garbage," ¶ 36(a); "McGibney is a lying hypocrite … [and the] scum of the earth," ¶ 64;) "McGibney … own[s] a revenge porn website Cheaterville," ¶ 36(d); "Cheaterville.com is a revenge porn website," ¶ 54; "I find this VERY DISGUESTING!" (sic) ¶54); <u>questions</u> ("Why do you support revenge porn with ur Bullyville endorsements?", ¶ 40); <u>exclamatory expressions</u> ("I am surprised no one has shot them fools yet," ¶ 32); <u>speculative warnings</u> ("Sooner or later you're going to step on the wrong set of toes and you're going to come across a real tough guy … and it's gonna cost you and your family your lives," ¶ 34); and <u>random musings</u> not easily categorized at all. ("It will be really funny seeing someone post pictures of ur wife Christina when she is shopping at Smith's with ur two kids," ¶ 50).

7.      Plaintiffs plead five causes of action against Retzlaff:

(i)      tortious interference with contractual relations (¶¶ 159-64);

(ii)     tortious interference with prospective economic advantage (¶¶ 165-70);

(iii)    intentional infliction of emotional distress (¶¶ 171-73);

(iv)     defamation (¶¶ 174-84); and

(v)      invasion of privacy by public disclosure of private facts. (¶¶ 185-88).

### III. ARGUMENT & AUTHORITIES

8.      The California "anti-SLAPP" statute allows a defendant to file a special

7

motion to strike a complaint based on an "act in furtherance of his right … of free speech under the United States or California constitution in connection with a public issue." CAL. CIV. PROC. CODE § 425.16.[5]

> **The purpose of the statute [CAL. CIV. PROC. CODE § 425.16] is to protect individuals from meritless, harassing lawsuits whose purpose is to chill protected expression.**

*Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 838 (9th Cir. 2001).  The legislature has directed that the statute "shall be construed broadly" in order to "encourage continued participation in matters of public significance."  CAL. CIV. PROC. CODE § 425.16; *Vogel v. Felice*, 26 Cal.Rptr.3d 350, 356 (2005).

9.    As the first prong of his motion to strike plaintiffs' complaint, Retzlaff must show only that plaintiffs' suit arises from "any written or oral statement or writing made in … a public forum in connection with an issue of public interest."  CAL. CIV. PROC. CODE § 425.16(e)(3).   Under California law, a publicly accessible website is considered a public forum.  *See Barrett v. Rosenthal*, 146 P.3d 510, 514 n.4 (Cal. 2006). Plaintiffs admit in their complaint that Retzlaff's alleged statements were made on a publicly accessible website.  The anti-SLAPP statute does not define "public interest." *Tamkin v. CBS Broadcasting Inc.*, 193 Cal. App. 4th 133, 143 (2011).   However, California state courts have clarified the broad meaning of this term:

> **'[A]n issue of public interest is any issue in which the public is interested' and 'need not be significant to be protected by the anti-SLAPP statute.'**

*Id.*, quoting *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1042 (2008).

_____

[5]      Anti-SLAPP motions under CAL. CODE CIV. PROC. § 425.16 can be asserted to strike state law claims in federal court that qualify as SLAPP actions.  *U.S. v. Lockheed Missiles &*

**Plaintiffs' Complaint Concerns A Matter Of Public Interest**

10.  This action against defendant Retzlaff seeks to stifle his right to speak out on a matter of great public interest because the claims alleged in Plaintiffs' Complaint arise directly from constitutionally protected speech concerning an ongoing and high-profile public dispute over Plaintiffs' websites, their business practices, public status, the issues of bullying and infidelity.  Plaintiff McGibney is a high profile public figure and his website is a matter of public interest, as evidenced by the media coverage and involvement with the so-called "bullying crisis", as well as plaintiff's ownership of a revenge pornography website and the concurrent criminal investigation into plaintiffs' blackmail activities by state and federal law enforcement agencies across the country.  This is shown by the attached Declaration of Retzlaff.

A.  Defendant's Actions Of Which Plaintiff Complains Concern The Public Controversy At Issue

11.  If plaintiff's Complaint is taken as true it is clear from defendant's alleged act(s) that he was directly commenting on a public issue involving a public figure. Plaintiffs' action against defendant based upon defendant's alleged criticism of plaintiffs' revenge pornography and blackmail business is the epitome of a prohibited SLAPP suit—a disapproved kind of lawsuit designed to quash the right of a participant in issues of public interest to voice his/her opinion—for which the

---

*Space Co.* 190 F.3d 963, 973 (9th Cir.1999).

Legislature provided special protection to the defendant through its enactment of the anti-SLAPP statute.

12. McGibney has been on a number of television shows over the years promoting the ViaView sites and discussing the topic of bullying and revenge porn. (See Declaration of Thomas Retzlaff; See Affidavit of Colleen Connally-Ahern, Ph.D attached hereto as Exhibit 1.) He gained national attention for his involvement with Hunter Moore and his famous revenge porn website.  He is the subject of numerous federal lawsuits and criminal investigations.

13. Plaintiffs allege that Retzlaff is an out-of-state citizen, who resides in both Texas and/or Arizona, who is a supposed blogger who supposedly writes and says mean things about plaintiffs' and their business activities on the internet.  As an alleged blogger, pursuant to 9th U.S. Circuit Court opinions, defendant enjoys the same 1st Amendment Constitutional protections as traditional media outlets such as newspapers and television.  See *Obsidian Finance Group, LLC v. Cox*, No. 12-35238 / D.C. No. 3:11-cv-00057-HZ (9th U.S. Cir. Court of Appeals, dated Jan. 2014). Thus, the court needs to view plaintiffs' claims in this light.

**LEGAL STANDARD**

14. California Code of Civil Procedure § 425.16(a) sets forth a legislative finding "that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of constitutional rights of freedom of speech and petition," and that it is

in the public interest to encourage participation in matters of public significance, rather than have such participation "chilled through abuse of the judicial process." Cal. Civ. Proc. Code § 425.16(a).  Therefore, "[t]he statute provides for a special motion to strike that is intended to stop such lawsuits early in the litigation process." *DC Comics v. Pacific Pictures Corp.*, 706 F.3d 1009, 1013 (9th Cir. 2013).

### MIXED CAUSES OF ACTIONS

15.  The statute can be invoked against any kind of claim that is based on protected speech.  "The nature of the cause of action alleged is not dispositive." *Ingels v. Westwood One Broadcasting Services, Inc.*, 28 Cal.Rptr.3d 933, 940 (Cal. App. 2005) (applying statute to age discrimination claim).

16.  When a pleading alleges a cause of action that is supported by both protected and unprotected activity, it is the "gravamen or principal thrust" of the cause of action that determines whether the anti-SLAPP statute applies. *City of Colton v. Singletary* (4th Dist.2012) 206 Cal.App.4th 751, 767; *Prediwave Corp. v. Simpson Thacher & Bartlett LLP*, (6th Dist.2009) 179 Cal.App.4th 1204, 1219; see also *Club Members for an Honest Election v. Sierra Club* (2008) 45 Cal.4th 309, 319 (recognizing that gravamen-or-principal-thrust test has been applied to mixed causes of action).

17.  A protected act is not incidental to a cause of action when the act itself would independently support liability under the cause of action. See *Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* 184 Cal.App.4th 1539, 1551 (1st

11

Dist.2010); *see, e.g.*, *Mann v. Quality Old Time Serv.* (4th Dist.2004) 120 Cal.App.4th 90, 104 (because alleged protected activity formed "substantial part" of factual basis for liability, cause of action was subject to anti-SLAPP statute). The fact that the complaint makes far fewer allegations of protected acts than unprotected acts is irrelevant for determining whether the allegations are incidental. *Haight Ashbury*, 184 Cal.App.4th at 1553. As long as one allegation of protected activity would support liability, the cause of action is subject to the anti-SLAPP statute.  See, e.g., *id.* (Ds met their burden even though only 2 out of 16 allegations supporting breach of fiduciary duty were considered protected activity).

18.  Section 425.16(b)(1) provides that:  "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." Cal. Civ. Proc. Code § 425.16(b)(1).

**<u>TWO STEP PROCESS</u>**

19.  Section 425.16 therefore requires the court to engage in a two-step process: First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity.  *Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc.,* 742 F.3d 414, 422

(9th Cir. 2014). The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,'" as defined in the statute. *Id.*; *see also Equilon Enterprises v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 67 (Cal. 2002).

20.  Second, if the court finds such a showing has been made, then the burden shifts to the plaintiff to demonstrate a probability of prevailing on the claim. *Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc.,* 742 F.3d at 422. Under section 425.16(b)(2), the trial court considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.'" *Id.* (citing Cal. Civ. Proc. Code § 425.16(b)(2)).

### A.    Plaintiffs' Claims Arise Directly from a Protected Activity

21.  Retzlaff satisfies the first prong of the anti-SLAPP analysis because the claims alleged in the Complaint are based on conduct in furtherance of Retzlaff's right of free speech in connection with a matter of public interest. "California courts have interpreted this piece of the defendant's threshold showing rather loosely, and have held that a court must generally presume the validity of the claimed constitutional right in the first step of the anti-SLAPP analysis, and then permit the parties to address the issue in the second step of the analysis, if necessary." *Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d at 422

(citing *City of Los Angeles v. Animal Def. League*, 135 Cal.App.4th 606, 621, 37 Cal.Rptr.3d 632 (Cal. Ct. App. 2006)) (internal quotation marks and citations omitted).)

22. An "act in furtherance of a person's right of petition or free speech" includes "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest." *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 595-96 (9th Cir. 2010) (citing Cal. Civ. Proc. Code §425.16(e)).

### 1. Twitter and the Internet Constitute a Public forum

23. Websites that are accessible to the public are "public forums" for purposes of the anti-SLAPP statute. *Wong v. Tai Jing*, 189 Cal. App. 4th 1354, 1367, 117 Cal. Rptr. 3d 747 (Cal. Ct. App. 2010)

### 2. Statements made about James McGibney and Viaview relate to matters of Public Interest.

24. Statements made about James McGibney and Viaview are a matter of public interest because of the ongoing national discussion regarding bullying and revenge porn in society. A statement about a "a topic of widespread, public interest" satisfies this requirement." *Doe v. Gangland Prods., Inc.*, 730 F.3d 946, 955 (9th Cir. 2013) (citing *Rivero v. Am. Fed'n of State, Cnty., & Mun. Emps., AFL–CIO*, 105 Cal.App.4th 913, 924, 130 Cal.Rptr.2d 81 (Cal. Ct. App. 2003)); see also *Nygard, Inc. v. Uusi–Kerttula*, 159 Cal.App.4th 1027, 1042, 72 Cal.Rptr.3d 210 (Cal. Ct. App.

14

2008) (an issue of public interest is "any issue in which the public is interested"). Here, McGibney and his company ViaView are matters of public interest.

25. First, James McGibney has associated himself and injected himself into the national bullying and revenge porn debate. (Complaint; See Exhibits 1, 4, 10, and 11 attached hereto to.) McGibney has been on national television shows to discuss his websites and company.  (See Exhibit 4 at ¶7.) He was involved in a high profile lawsuit with known revenge porn peddler Hunter Moore. Mr. McGibney's involvement in these matters has made him a recognizable individual that has sparked public interest.

26. Additionally, ViaView websites are a matter of public interest. By Plaintiffs own admission, "ViaView is the owner and operator of the popular websites" that "average approximately one million individual and unique user hits per month." (Complaint p. 26, ¶8) Thus, due to ViaView's huge popularity and visitors it is a matter of public interest.

27. Moreover, the McGibney and ViaView have decided to participate in the larger social issue revolving around bullying and revenge porn. Bullying and revenge porn have become a national matter of public interest. In fact, a number of states have begun to enact legislation related to bullying and revenge porn. McGibney and ViaView have decided to participate in this public discussion.  See Exhibits 1, 5, 7, 10, and 11.

28.   In a recent decision, the California Court of Appeal construed the anti-SLAPP statute broadly, finding that defendant's posting of derogatory comments about plaintiff and his business on the *Ripoff Report* consumer review website and *Topix* social networking website was entitled to the protection of the anti-SLAPP statute, even though the statements related to ongoing paternity and child support litigation, because the statements were made in a public forum and concerned issues of public interest.  *Chaker v. Mateo*, 2012 WL 4711885 (Cal. App. Ct. Oct. 4, 2012).

29.   Statements or writings that concern a person or entity in the public eye have been held to be in connection with an issue of public interest. See *D.C. v. R.R.* (2d Dist.2010) 182 Cal.App.4th 1190, 1226; see, e.g., *Stewart v. Rolling Stone LLC* (1st Dist.2010) 181 Cal.App.4th 664, 677-78 (magazine article discussing indie rock bands was in connection with issue of public interest); *Seelig v. Infinity Broad. Corp.* (1st Dist.2002) 97 Cal.App.4th 798, 807-08 (comments made during radio program about participant in reality television show were in connection with issue of public interest); *Sipple v. Foundation for Nat'l Progress* (2d Dist.1999) 71 Cal.App.4th 226, 238 (magazine article discussing allegations of domestic violence against nationally known political consultant was in connection with issue of public interest); *Hilton v. Hallmark Cards* (9th Cir.2010) 599 F.3d 894, 907 (Hallmark card that used Paris Hilton's image and catchphrase was in connection with issue of public interest).

## COMMENTS ABOUT MCGIBNEY ARE CONSTITUTIONALLY PROTECTED

30.  During the September 18th hearing the Court expressed some concern about whether or not some of the "disgusting" or "hateful comments" about McGibney would be considered Protected Speech.  Retzlaff responds by saying that no independently verifiable evidence has ever submitted by plaintiffs showing conclusively that this defendant made any credible threats of violence towards McGibney or any defamatory statements.  But even so, as stated above, the **statements about McGibney are, in reality, rhetorical hyperbole expressing the speaker's opinion that McGibney's bullying tactics is reprehensible**.



See Exhibit 5 for clear examples of McGibney's tactics against his enemies.

31. How hateful can comment about a public figure be without losing constitutional protection?  Under the Supreme Court standard in *Snyder v. Phelps*, 131 S.Ct. 1207 (2011) there may now be no visible limit.

17

32.   The right to criticize public figures harshly—even cruelly and unfairly—is one the framers of the First Amendment used with relish. For example, in the presidential election of 1800, one political opponent wrote in the "blogs" of his day that incumbent president John Adams was "old, querulous, bald, blind, crippled, [and] toothless."[6]   An operative hired by Thomas Jefferson, who was challenging Adams for the presidency, added:

**John Adams is a hideous hermaphroditical character with neither the force and firmness of a man, nor the gentleness and sensibility of a woman.**[7]

33.   In retort, the Adams camp called Jefferson "a mean-spirited, low-lived fellow, the son of a half-breed Indian squaw, sired by a Virginia mulatto father."   Jefferson's and Adams' comments were both probably "designed to inflict as much emotional distress and anguish" upon each other as possible—just as plaintiffs in the case at bar specifically accuse Retzlaff of doing.

34.   In its first major free-speech decision of the 21st century, the U.S. Supreme Court extended the protection of free speech even further in *Snyder v. Phelps*, 131 S.Ct. 1207 (2011). In Snyder, the court held for the first time that the target of the offensive speech did not have to be a public figure for the speech to be protected. Id. at 1228 (dissent by Alito, J.). Snyder involved Rev. Fred Phelps, whose Westboro Baptist Church of Topeka, Kansas, believes God hates and punishes the United States

---

[6] McCullough, David, John Adams, p. 500, quoting a letter written by Abigail Adams to Mary Cranch.
[7] Swint, Kerwin, "Founding Fathers' Dirty Campaign," CNN Living (Online), August 22, 2008.

for tolerating homosexuality, particularly in the military. Id. at 1213. The church frequently communicates its views by picketing, often at military funerals.  Id. Marine Lance Corporal Matthew Snyder was killed in Iraq in the line of duty. Id. Snyder's funeral was at the Catholic Church in the Snyders' hometown of Westminster, Maryland. Id. At the funeral, Phelps and his family members carried signs that read "Fag Troops," "God Hates Fags," "Fags Doom Nations," "America is Doomed," "Pope in Hell," and "Priests Rape Boys." Id. and at 1216.

35.  The Snyder court vacated the damages award to the dead soldier's father for intentional infliction of emotional distress, holding that Phelps' speech was protected by the First Amendment. Id. The Snyder court found Phelps' speech to be on "matters of public concern"—speech that "occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." Id. at 1215 [citation omitted]. The court concluded:

> **Speech is powerful. It can stir people to action, move them to tears of both joy and sorrow, and—as it did here—inflict great pain. On the facts before us, we cannot react to that pain by punishing the speaker. As a Nation we have chosen a different course—to protect even hurtful speech on public issues to ensure that we do not stifle public debate. That choice requires that we shield Westboro from tort liability for its picketing in this case.**

Id. at 1223. It is impossible to conclude that a court constrained by Snyder's precepts could find that the comments Retzlaff is sued for making are anything other than constitutionally protected comment on McGibney's "vigilantism" and the controversial websites he uses to practice it on.

**Plaintiff fails to plead actual malice**

36.  The complaint here is legally insufficient on its face. For one thing, it fails to plead that defendant made the challenged statements with "actual malice" as that term is used in Sullivan, supra, 376 U.S. at pages 279-280, 84 S.Ct. 710 i.e., "with knowledge that it was false or with reckless disregard of whether it was false or not." Such a mental state must be pleaded and proved by any public figure suing for defamation.  *New York Times Co. v. Sullivan* (1964) 376 U.S. 254, 279-80.  The complaint here makes no attempt to plead a knowing and reckless falsehood. With regards to defendant Retzlaff, it contains only the conclusory boilerplate allegations that:  [this] *statement is false and, as with all of the others, it was made with the knowledge of its falsehood and with actual malice* (Complaint at ¶ 49); *[t]his claim is, of course, absolutely false and without any merit whatsoever, was made with the knowledge of its falsehood and with actual spite, ill will and malice* (Complaint at ¶ 60); *defendants are acting in concert with malice, spite and ill will towards Mr. McGibney* (Complaint at ¶ 145).  Of particular note is that McGibney only these allegations with regards to his claim that Retzlaff called his *Cheaterville* website a revenge porn website, and nothing more.

37. As this Court already knows, such conclusory boilerplate allegations are insufficient to state a cause of action in a case where "actual malice" of the Sullivan type is required.  *Vogel v. Felice*, (2005) 127 Cal.App.4th 1006, 26 Cal. Rptr. 3d 350, 359 (citing *Noonan v. Rousselot*, (1966) 239 Cal.App.2d 447, 454, 48 Cal.Rptr. 817; *Kahn v. Bower* (1991) 232 Cal.App.3d 1599, 1615, 284 Cal.Rptr. 244; cf. *Mullins v.*

*Brando* (1970) 13 Cal.App.3d 409, 420, 421, 91 Cal.Rptr. 796 [holding sufficient an allegation that defendants published "with wanton and reckless disregard for the truth or falsity of the statements made"].)

### CDA SECTION 230 IMMUNITY

38.  With regards to the anonymous comments posted on the *BV Files* website that plaintiffs use to support their claims of "death threats", violence, or defamation, defendant would remind the court that Section 230 of the Communications Decency Act ("CDA") immunizes providers of interactive computer services against liability arising from content created by third parties. "No provider ... of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c).  Thus, this defendant is not responsible under the law for 3rd party comments made by other people that were posted as comments on that website.  This position has clearly been affirmed due to the recent decision coming from the U.S. 6th Circuit Court of Appeals in *Jones v. Dirty World Entertainment Recordings LLC*, Case No. 13-5946, decided June 16, 2014.  See Exhibit 14.

39.  In the case at hand, that *Long John Silver* statement, as well as the Twitter posts (assuming that it was even made by defendant, as opposed to some other random person) are clearly a commentary on plaintiffs' business practices which consist of revenge porn, blackmail, bullying and extortion via the posting of intimate

photographs of thousands of young women and girls, as well as the posting of their personal information, and then demanding payment of monies in order to remove said information.  See Exhibits 5, 6, 8, and 9 that establish that McGibney runs bullying and revenge porn / blackmail websites (or that an arguable claim can be made that he does so).

### a. McGibney is a Public Figure

40.  James McGibney is a Public Figure who has gained national notoriety with his Websites and advocacy against bullying and revenge porn, which are matters of Public Concern.  During the September 18th hearing the Court made this specific finding, too.

41.  Courts have distinguished between two classes of public figures. *Reader's Digest Assn. v. Superior Court,* 37 Cal.3d 244, 253–254 (Cal. 1984); see *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 351 (1974). The first is the "all purpose" public figure who has "achiev[ed] such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts." *Reader's Digest Assn. v. Superior Court,* 37 Cal.3d at 253–254. The second category is that of the "limited purpose" public figure, an individual who "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." *Id.*  Unlike the "all purpose" public figure, the "limited purpose" public figure loses certain protection for his reputation only to the extent that the allegedly defamatory communication relates to his role in a public controversy." *Id.*

42. Here, James McGibney is an all-purpose public figure as well as a limited public figure in relation to his role with Bullying and Revenge Porn.

43. First, McGibney is an all-purpose figure. An example of an all-purpose public figure can be found in *Hustler Magazine v. Falwell.* 485 U.S. 46, 57 (1988). In *Hustler Magazine v. Falwell*, a minister, Jerry Falwell, with a nationally syndicated television show was concededly an all-purpose public figure. *Id.* Another example can be seen in *Stolz v. KSFM 102 FM*. In *Stolz,* the court concluded that a radio station was an all-purpose public figure because it broadcasted itself daily to the community. *Stolz v. KSFM 102 FM*, 30 Cal. App. 4th 195, 205 (Cal.Ct.App 1984).

44. Mr. McGibney has been on nationally syndicated television broadcasts to discuss his involvement with Hunter Moore, Cheaterville, BullyVille and the topics of Revenge Porn and Bullying. Mr. McGibney's own expert witness filed an affidavit discussing his national recognition which supports Lipton's Premise that he is an all-purpose public figure. In this Affidavit, Colleen Connally-Ahern, Ph.D stated the following:

> Plaintiff James McGibney is the main operator and public face of numerous online properties owned by Via View, Incorporated, and its subsidiary company, Cheaterville, Incorporated. McGibney regularly talks to the press about important issues such as bullying and infidelity, and makes regular appearances on behalf of the Internet social media services BullyVille, found at bullyville.com, and CheaterVille, found at cheaterville.com. These media appearances have included <u>Univision</u>, <u>The Dr. Phil Show</u>, <u>The Anderson Cooper Show</u>, <u>The Maury Povich Show</u>, <u>Extra!</u>, <u>KSNV My News 3 (Las Vegas' NBC affiliate stations)</u>, <u>KXTL Fox 40 (Sacramento, California's FOX affiliate station)</u>, <u>The</u> <u>Huffington Post</u>, <u>Las Vegas Sun</u>, [and] <u>BetaBeat</u>, among others.

Affidavit of Colleen Connally-Ahern, Ph.D, ¶7, attached hereto as

23

Exhibit 1.

45.  Moreover, McGibney's own expert goes further and states that "A search of McGibney's name via any major search engine (google.com, bing.com and yahoo.com) results thousands of hits indicating his position as an advocate for personal responsibility." (See Affidavit of Colleen Connally-Ahern, Ph.D, ¶7, Exhibit 1.) Clearly, McGibney is an all- purpose public figure.

46.  However, even if McGibney is not an all-purpose public figure he is clearly a limited purpose public figure with respect to his websites and the national debate surrounding bullying and revenge porn. There are three elements that must be satisfied in order to properly characterize a person as a "limited purpose public figure":

47.  First, there must be a public controversy, which means the issue was debated publicly and had foreseeable and substantial ramifications for nonparticipants. Second, the plaintiff must have undertaken some voluntary act through which he or she sought to influence resolution of the public issue. In this regard it is sufficient that the plaintiff attempts to thrust him or herself into the public eye. Third, the alleged defamation must be germane to the plaintiff's participation in the controversy.  *Ampex v. Cargle*, 128 Cal.App.4th 1569, 1577 (Cal. Ct. App 2005).

48.  Here, all of the elements are met that McGibney is a limited Purpose Public Figure. First, there is an ongoing national debate about Hunter Moore, bullying and revenge porn websites. (See Decl. Retzlaff ¶8; Exhibit 1  attached thereto.)

49.  Second, McGibney has taken the voluntary act of participating in this national debate by "vigorously exert[ing] social and financial pressure on owners, operators and purveyors of "revenge porn" websites with the intent of shuttering those websites." (Complaint  ¶16.)   Moreover, McGibney has appeared on national television shows to discuss these topics. (See Exhibit 1.)

50.  Finally, the alleged defamatory statements / claimed "death threats" all relate to his involvement with the websites, bullying, revenge porn and Hunter Moore controversy. Therefore, McGibney is a limited purpose public figure in this action.

**b. Plaintiffs will be unable to prove that Retzlaff's alleged statements were illegal acts.**

51.  Besides the fact that Retzlaff did not commit violence or make any credible threats to commit violence, Plaintiffs will be unable to prove that any of the alleged statements were by defendant with **<u>admissible evidence</u>**, as opposed to statements made by any one of  numerous enemies of McGibney and his revenge porn / blackmail company have collected over the years.   Remember, as stated above. Cheaterville.com is a revenge porn, or just plain old revenge website that posts the intimate photographs of young women, girls, and even some men, along with very defamatory statements about them.   In order to remove a Cheaterville post you are required to pay some money.   See attached Cheaterville exhibits, Exhibits 6, 8 & 9;

25

declaration of Retzlaff.  The number of individuals who would have motive for posting such things numbers in the hundreds of thousands, if not millions!

52.  In anticipation that plaintiff will argue that threats and other illegal activities are unprotected activity, defendant would explain to this court that this is a nonissue or a red herring thrown out by plaintiffs' counsel.  Specifically, as the California Supreme Court has previously held, "The Legislature did not intend that in order to invoke the special motion to strike the defendant must first establish [his or] her actions are constitutionally protected under the First Amendment as a matter of law." *Fox Searchlight Pictures, Inc. v. Paladino* (2001) 89 Cal.App.4[th] 294, 305, 106 Cal.Rptr.2d 906.  "**Instead, under the statutory scheme, a court must generally presume the validity of the claimed constitutional right in the first step of the anti-SLAPP analysis, and then permit the parties to address the issue in the second step of the analysis**, if necessary. [Citation.]  Otherwise, the second step would become superfluous in almost every case, resulting in an improper shifting of the burdens."  *Chavez v. Mendoza* (2001) 94 Cal.App.4[th] 1083, 1089–1090, 114 Cal.Rptr.2d 825; see *Governor Gray Davis Com. v. American Taxpayers Alliance* (2002) 102 Cal.App.4th 449, 458, 125 Cal.Rptr.2d 534.

53.  Moreover, the fact that a defendant's conduct was alleged to be illegal, or that there was some evidence to support a finding of illegality, does not preclude protection under the anti-SLAPP law.  *Flatley v. Mauro* (2006) 39 Cal.4th 299, 316.  An exception exists **<u>only</u>** where "the defendant concedes the illegality of its conduct or the illegality is conclusively shown by the evidence."  *Wallace v. McCubbin*

26

(2011) 196 Cal.App.4th 1169 (citing *Flatley*, supra, 39 Cal.4th at p. 316, 320 [defendant's conduct was criminal extortion as a matter of law]; *Hutton v. Hafif* (2007) 150 Cal.App.4th 527, 541; *Paul for Council v. Hanyecz* (2001) 85 Cal.App.4th 1356, 1365).

54. In the case at hand, defendant vigorously insists that any alleged actions or communications against plaintiffs were well within the law; thus, Retzlaff does not concede the illegality of his alleged conduct. Furthermore, nor has any of this alleged illegality been conclusively shown by the evidence to be the result of Retzlaff's specific conduct (as opposed to the conduct of some other random person or even, most likely, done by James McGibney himself as a part of his public relations scheme!), or that the alleged conduct was even illegal at all.

### IV. MOVING PARTY HAS COMPLIED WITH NOTICE AND TIMING REQUIREMENTS FOR THIS ANTI-SLAPP MOTION

55. Any party who files a special motion to strike pursuant to this section, and any party who files an opposition to a special motion to strike, shall promptly upon so filing, transmit to the Judicial Council, by e-mail or facsimile, a copy of the endorsed-filed caption page of the motion or opposition, a copy of any related notice of appeal or petition for a writ, and a conformed copy of any order issued pursuant to this section, including any order granting or denying a special motion to strike, discovery, or fees. Code Civ. Proc. § 425.16(j)(1).

56.  As shown in the attached Declaration of Thomas Retzlaff, defendant has/or will be transmitting a copy of the endorsed-filed caption page of the motion, by e-mail/facsimile, to the Judicial Council in accordance with Code Civ. Proc. § 425.16(j)(1).

## V. ATTORNEY FEES AND COSTS SHOULD PROPERLY BE AWARDED TO DEFENDANT UNDER THE ANTI-SLAPP STATUTE

57. The prevailing party on a Motion to Strike under the **Anti-SLAPP** statute is entitled to recover attorney fees and costs associated with making the **anti-SLAPP** motion and assertion of alternative defenses in response to a meritless litigation. (Code Civ. Proc. § 425.16(c)(1).) This is a mandatory award of costs and fees.

## VI. CONCLUSION

58.  Based upon the foregoing facts and authorities, Retzlaff respectfully requests that the court strike plaintiffs' Complaint against defendant pursuant to Code Civ. Proc. § 425.16, and issue an award of attorney fees and costs in his favor, in an amount to be demonstrated in subsequent declarations.


Respectfully submitted,


/s/  Thomas Retzlaff
Thomas Retzlaff
PO Box 46424
Phoenix, AZ 85063-6424

Defendant, pro se

## <u>DECLARATION OF THOMAS RETZLAFF</u>

I, Thomas Retzlaff, declare as follows:

1.  I am the defendant in this case.  I have personal knowledge of the matters stated herein and, if called as a witness, I could and would testify competently thereto.

2.  This Declaration is submitted in support of my Special Motion to Strike Pursuant to California Code of Civil procedure Section 425.16, said motion being forwarded to the Judicial Council on this date, and said motion having been filed in a timely fashion.

3.  Mr. McGibney has been involved in a number of high profile litigation cases over the past two years.  One case is McGibney vs. Hunter Moore, in Nevada District Court, Clark County, Case No.:Al2-667156-C.   In this Nevada Action, Mr. McGibney filed an affidavit of Colleen Connally-Ahem, Ph.D.  Dr. Ahern was his expert witness and the affidavit was provided to support his claim of damages. Attached hereto as Exhibit 4 is a true and correct copy of the Affidavit of Colleen Connolly-Ahems.

4.  In Paragraph 7 of this affidavit Dr. Ahem states:

*"Plaintiff James McGibney is the main operator and public face of numerous online properties owned by Via View, Incorporated, and its subsidiary company, Cheaterville, Incorporated. McGibney regularly talks to the press about important issues such as bullying and infidelity, and makes regular appearances on behalf of the Internet social media services BullyVille, found atbullyville.com, and CheaterVille, found at cheaterville.com. These media appearances have included Univision, <u>The Dr. Phil Show, The Anderson Cooper Show</u> The Maury Povich Show, Extra!,<u>KSNV My News 3</u> (Las Vegas' NBC affiliate stations), <u>KXTL Fox 40</u>*

*(Sacramento, California's FOX affiliate station), The <u>Huffington Post</u>, Las Vegas Sun, [and] BetaBeat, among others."*

5.   Dr. Ahrens further states: "A search ofMcGibney's name via any major search engine (google.com, bing.com and yahoo.com) results thousands of hits indicating his position as an advocate for personal responsibility."

6.   After doing a search for Mr. McGibney on google.com, I was able to locate a number of news articles about Mr. McGibney.

7.   On October, 10, 2013, *The Daily Beast* published an article about McGibney and ViaView, Inc.   Attached hereto as Exhibit 1 is a true and correct copy of the October 10, 2013 article entitled "The Bully Waging War Against Bullies."

8.   In that article, the author states: "The media has paid attention to McGibney's war.   In May 2012, the Associated Press quoted him as a bullying expert, describing Bullyville.com as a place "where [bullying] victims can find help." He partners with celebrities (Guns N' Roses guitarist "DJ" Ashba and Glee actress Becca Tobin are Bullyville's spokespeople) and consults as a "Life Changer" on Dr. Drew's daytime talk show."

9.   The Daily Beast Article further discusses the national debate on Bullying and Revenge Porn by stating: "Currently, 49 states enforce some sort of anti-bullying laws, 18 of which have specific legislations against "cyberbullying." And while revenge porn legislation exists in only three states, California Gov. Jerry Brown

30

recently signed a bill banning circulation of such material, making it a misdemeanor carrying a sentence of up to six months in jail. Three New York state legislators proposed a similar bill this week."

10.  I have also found out that James McGibney and ViaView have two Hollywood Public Relations firms on their payroll, thus further substantiating the fact that they are Public Figures.  ZTPR and Lexicon are their names.  See attached Exhibit 15.

11. Over the past five years, I have not engaged in any business in or involving the State of California or with any person or firm located in that state.

12. I have not set foot in State of California in probably 5 or 6 years, and I have never been anywhere near San Jose, CA ever.

13. I do not own any property in the State of California.

14. I have no intention to reside or own property in the state of California.

15.  I have never had any kind of personal communication with either James McGibney or any of his family members, and I have never committed any acts of violence towards him, nor made any credible threats of harm.  I specifically deny ever making the *Long John Silver* post that McGibney references in his lawsuit.  The website that this comment was posted on is McGibney's very own Bullyville.com website.  That website has comment moderation enabled, meaning that NO comments ever get posted without the direct approval of the website's owner, James McGibney. In order to post a comment on Bullyville one must first create an account with a valid

email address, then verify that email address, then post a comment, which then goes into the moderation queue.  At which point the website owner decides whether or not to post the comment.  It is my belief that this *Long John Silver* comment was a fake comment created by McGibney himself as a way of stirring up drama.  If he really thought it was a legitimate death threat, then why did he allow the comment to get posted in this first place instead of deleting it?  That makes no sense.

16.  In Mr. McGibney's lawsuit he labeled me as a "prolific user" of revenge porn. That is a lie, assuming I even understand what he means here.  Unlike McGibney, I do not own and operation a so-called revenge porn websites.  McGibney claims that all these women are supposedly suing me and such.  That is a lie.  The only person suing me here is McGibney himself in his quest to increase publicity for his failing company.  No one else is suing me or has obtained a restraining order or anything else like that against me; just McGibney.  McGibney claims that all these law enforcement investigations against me are taking place.  That, too, is a lie.  **I have never once been contacted by any law enforcement officials regarding any criminal allegations made against me by plaintiffs since all of this nonsense first started with him about a year ago.**  I specifically deny ever using the Twitter accounts listed in the lawsuit and I specifically deny his claims that I am a blogger that made death threats or sent him death threats or ruined his business or that I run a website that makes death threats or calls him a pedophile.  I have never sent a death threat to James McGibney or his family.  I also do not know who exactly his family members are, where they live, or ever being in contact with them.

17. In plaintiffs' lawsuit, plaintiff states: On October 30, 2013, Retzlaff publicly tweeted from the @MrTexxxan account (an account plaintiff claims is associated with a "revenge porn" website www.texxxan.com) that he was "surprised no one has shot them fools [Mr. McGibney] yet. lots of crazy ppl in the world off their meds".  I completely deny this and I deny ever using that twitter account or running that website.  McGibney is a lunatic.

18. In plaintiffs' lawsuit, plaintiff states that defendant uses the email address James Smith, Twitter alias @PedoCaptain and @BV_Truther or all these other accounts.  I absolutely deny this.  I have never called McGibney a pedophile.  I have no personal knowledge of his pedophiliac tendencies (whatever they may be); that is something you would have to ask his wife and children about.

19. I further deny that I contacted anyone's school or made any threats towards any school, as alleged by plaintiff in his various lawsuits against me.  I have never communicated with some guy named *DJ Ashba* (a supposedly "world famous" musician that I have never heard of), nor some other guy called *Becca Tobin* (whoever he is), or any PR firms associated with McGibney.  I have never posted any pictures on a website called *MyEx.com*.  I do not have any naked pictures of Mr. McGibney (yuck!), nor any of his wife; thus, I never posted any on that website. Prior to the filing of McGibney's stupid lawsuits, I never heard of Neal Rauhauser or Lane Lipton, nor had I ever been in any contact with them or would associate with them.  From my understanding, these people are all Democrats.

20. I find it totally ironic that McGibney comes into this court complaining about how his home address and such were posted online when McGibney himself runs a revenge website that does the exact same thing to tens of thousands of people. I, myself, have had my home address, photos, and other personal information posted online by Mr. McGibney. **He has also posted the personal information about my children, as well as photographs of them.** It seems he comments about me on Twitter at least twice a day – that is until Twitter finally got around to banning his account. Then twitter banned eight other accounts McGibney used for harassment and stalking. So now McGibney uses alias or *sock accounts* to tweet about me. He is a really strange person in obvious need of mental help.

21. The only person here creating websites and harassing people is James McGibney. McGibney bought website domains in the names of my wife and two children, and two websites in my name, as well as a website in the name of Texas attorney Jeffery Dorrell! Mr. McGibney has done this in the names of each of the lawsuit victims here, as well, which you can plainly see from my attached exhibits. See Exhibit 16. His idiot attorney Jason (Jay) Leiderman also likes to Tweet about me, too. He has made public statements calling me a convicted sex offender, says that I am a member of the KKK and the Aryan Brotherhood, that I have murdered several people (to include police officers), that I went to prison for rape, that I have ordered a "hit" on McGibney, his family, and against Leiderman himself.

22. I had one email contact with the ViaView company way back in September 2013, I think, when I asked them to take down photographs they had of my daughter

on their website.  I sent one email to a general email address.  But Cheaterville has a specific policy of non-removal unless you pay money to a "service" that is affiliated with them to get the posts down.  See Exhibits 8 & 9.  At least three people have sued Cheaterville and McGibney in federal court over their blackmail and extortion activities:  Jared Powers and Winona Valdez Case, a husband and wife from Sacramento, case 2:13-cv-01701-JAM-CKD; and Ebenezer Quainoo, a medical doctor from Maryland, case 1:14-cv-00674-JKB.  See Exhibits 12 & 13.  There is presently a RICO lawsuit pending in Atlanta, GA against the Take Down "services" McGibney is involved in with his Cheaterville site that was filed by a female Georgia attorney who was posted and defamed by these websites, and then forced to pay money to remove the posts.

23.  At around the same time that I sent that one email, all those lawsuits were filed against McGibney and his company, which then resulted in several news articles about his business practices.  See Exhibit 17 & 18.  Because a lot of this, (and the loss of his advertisers), all took place at around the same period of time, I think McGibney blames me for this and, thus, I because his next target to hatred.  See, because every six or so months McGibney needs someone new to focus his angry on and to rally his "troops" and to keep up the buzz on his websites.

24.  McGibney has filed a bunch of lawsuits against me and about ten other people all over the country.  Specifically, there are three lawsuits currently pending in three different forums involving similar claims against the same defendant (and groups of defendants): (1) McGibney v. Retzlaff, et al., No. 067-270669-14, Tarrant County

District Court in Ft. Worth, Texas, filed February 19, 2014; (2) McGibney v. Retzlaff, et al., No. 14-cv-01059-HRL, U.S. District Court for the Northern District of California, filed March 6, 2014; and (3) Via View v. Retzlaff, No. 1-14-CH-005460, Santa Clara County Superior Court, California, filed March 17, 2014.  Attached as Exhibits are true copies of these lawsuits.

25.  There are currently FOUR anti-SLAPP motions for sanctions pending: two in federal court here, the one I filed in the restraining order case, and one in Texas state court.  In the Texas case there is a request for $1 million in monetary penalties (which is allowed under Texas' version of the anti-SLAPP law).  The very definition of a SLAPP is the filing of multiple lawsuits against the same people for the same basic set of facts, which is true here in each of these cases.

26.  If McGibney thought that I was a real threat to him or his family, then why has he been blasting out my name and personal information on Twitter nearly every day for the past twelve months?  Why is he creating harassment websites in my name and in the names of my wife and children if he feels that I am so dangerous to him?

27.  It is my belief that this is nothing but a publicity stunt for James McGibney. He had some reporter named David Kushner from Rolling Stone magazine contact me and my son about two months ago wanting comments on the supposed "feud" between myself and McGibney.  If I am this terrible and great danger to James McGibney, why is he referring all these news reporters to come talk to me?  That is the most ridiculous thing that I have ever heard!!!

28.  Restraining orders and injunctions for Workplace Violence are there for real people suffering real harm, not for publicity seeking revenge porn operators who are trying to make their move into the mainstream.  Again, never once have I ever sent Mr. McGibney a death threat or had any kind of personal communication with him.

29.  Attached exhibits are true and correct copies of the originals.  The screen shots of websites are ones that I made myself and they accurately depict the things I saw on my computer screen.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

EXECUTED this 21st day of September, 2014.

/s/  Thomas Retzlaff

37

## <u>CERTIFICATE OF SERVICE</u>

I certify that on September 21, 2014, a copy of this document was electronically filed on the CM/ECF system, which will automatically serve a Notice of Electronic Filing on the following attorney in charge for plaintiffs ViaView & James McGibney:

Jason Scott Leiderman, of 5740 Ralston Street Ste 300, Ventura, CA 93003, Email: Jay@Criminal-Lawyer.me.

I certify that Jay Leiderman is a registered CM/ECF user and that service will be accomplished by the CM/ECF system.

I certify that on September 21, 2014, a copy of this document was electronically filed on the CM/ECF system, which will automatically serve a Notice of Electronic Filing on the following attorney in charge for defendant Lane Lipton:

Clark Anthony Braunstein, of 11755 Wilshire Boulevard, Suite 2140, Los Angeles, CA 90025, Email: Clarkbraunstein@gmail.com.

I certify that Clark Anthony Braunstein is a registered CM/ECF user and that service will be accomplished by the CM/ECF system.

/s/  Thomas Retzlaff
Thomas Retzlaff

Defendant, pro se

38