1  JASON S. LEIDERMAN, SBN 203336
2  jay@criminal-lawyer.me
   LAW OFFICES OF JAY LEIDERMAN
3  5740 Ralston Street, Suite 300
   Ventura, California 93003
   Tel: 805-654-0200
4  Fax: 805-654-0280

5  Attorney for Plaintiffs
   JAMES MCGIBNEY
6  VIAVIEW, INC

7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10             SAN JOSE DIVISION

11

12  JAMES MCGIBNEY, an individual, and          ) Case No.: 5:14-cv-01059 BLF
    VIAVIEW, INC, a corporation,                )
13                                              ) **PLAINTIFFS' OPPOSITION TO**
                                                ) **DEFENDANT THOMAS RETZLAFF'S**
14             Plaintiffs,                       ) **SPECIAL MOTION TO STRIKE PURSUANT**
                                                ) **TO CAL. CODE CIV. P. § 416.25**
15       vs.                                    )
    THOMAS RETZLAFF, an individual,             )
16  NEAL RAUHAUSER, an individual,              )
    LANE LIPTON, an individual, and            ) Hearing Date:    22 January 2015
17  DOES 1-5, individuals whose true names are not ) Time:           9:00 am
    known,                                      ) Place:           Courtroom 3
18                                              )
               Defendants.                       )
19  _____ )

20  **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

21        Plaintiffs James McGibney ("McGibney") and ViaView, Inc. ("ViaView") (collectively,

22  "Plaintiffs") hereby submit this Opposition to Defendant Thomas Retzlaff's ("Retzlaff" or "Defendant")

23  Special Motion to Strike Pursuant to Cal. Code. Civ. P. § 425.16.

24  //

25  //

26  //

27  //

28  //

PLAINTIFFS' OPPOSITION TO
DEFENDANT THOMAS RETZLAFF'S
SPECIAL MOTION TO STRIKE
Page i

LAW OFFICES OF JAY LEIDERMAN
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

## TABLE OF CONTENTS

TABLE OF CONTENTS .......................................................................................................... ii

TABLE OF AUTHORITIES .................................................................................................. iv

MEMORANDUM OF POINTS AND AUTHORITIES.......................................................... 1

I.     INTRODUCTION........................................................................................................ 1

II.    STATEMENT OF ISSUES. ...................................................................................... 1

III.   STATEMENT OF RELEVANT FACTS/ALLEGATIONS. ...................................... 1

    A.  THE COMPLAINT. ............................................................................................... 1

    B.  ATTRIBUTING THE ALLEGATIONS TO THOMAS RETZLAFF. ..................... 6

      1.    E-mails From Known Retzlaff E-Mail Address to his Daughter......................... 7

      2.    E-Mails From Retzlaff Aliases to Mr. McGibney and Others Associated With ViaView. 11

      3.    Internet Posts Tying Retzlaff To Various Aliases ............................................. 12

      4.    The Content and Style of the bvfiles and viaviewfiles Blogs Match the Content and Style of Retzlaff's Court Filings. ................................................................................. 13

      5.    Conversations Between Mr. McGibney and Collin Retzlaff. ............................. 14

IV.   ARGUMENT............................................................................................................. 15

    A.  DEFENDANT RETZLAFF IS PRECLUDED FROM RELITIGATING THIS MOTION; SANTA CLARA COUNTY SUPERIOR COURT ALREADY DENIED RETZLAFF'S ANTI-SLAPP MOTION BASED ON THE SAME CONDUCT. ................................................ 15

    B.  DEFENDANT'S MOTION FAILS ON BOTH PRONGS OF THE ANTI-SLAPP TEST. ..... 16

      1.    RETZLAFF HAS NOT MET HIS BURDEN TO SHOW THAT THE ACTS ALLEGED WERE IN FURTHERANCE OF HIS RIGHT TO FREE SPEECH. ........................................... 16

      2.    PLAINTIFFS' EVIDENCE DEMONSTRATES A PROBABILITY OF PREVAILING ON THE MERITS OF EACH OF THE CAUSES OF ACTION AGAINST LIPTON. .............. 18

        i.    *Retzlaff is Behind the Aliases Identified in the Amended Complaint.*................. 19

        ii.   *Mr. McGibney is Likely to Prevail on the Merits of the Defamation Claim.* .................. 20

        iii.  *Plaintiffs are Likely to Succeed on their Cause of Action for Tortious Interference With Contractual Relations.* ...................................................................................... 22

PLAINTIFFS' OPPOSITION TO
DEFENDANT THOMAS RETZLAFF'S
SPECIAL MOTION TO STRIKE
Page ii

LAW OFFICES OF JAY LEIDERMAN
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

iv.    *Plaintiffs Will Probably Prevail on Their Tortious Interference With Prospective Economic Advantage Claim*.................................................................................... 23

v.    *Plaintiff McGibney Will Probably Prevail on His Intentional Infliction of Emotional Distress Claim*.................................................................................... 23

C.  ALTERNATIVELY, PLAINTIFFS REQUEST THE HEARING BE CONTINUED TO ALLOW LIMITED DISCOVERY. ................................................................. 25

**V.    CONCLUSION. .................................................................................... 26**

PLAINTIFFS' OPPOSITION TO
DEFENDANT THOMAS RETZLAFF'S
SPECIAL MOTION TO STRIKE
Page iii

LAW OFFICES OF JAY LEIDERMAN
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

## TABLE OF AUTHORITIES

**STATE CASES**

*Barrett v. Rosenthal*, 40 Cal.4th 33 (Cal. 2006) ................................................................ 17

*Conroy v. Spitzer*, 70 Cal.App.4th 1446 (Cal. Ct. App. 1999) .......................................... 18

*Hernandez v. Gen. Adjustment Bureau*, 199 Cal.App.3d 999 (Cal. Ct. App. 1988) ................................ 24

*Hughes v. Pair*, 46 Cal.4th 1035 (Cal. 2009) ..................................................................... 24

*Kashian v. Harriman*, 98 Cal.App.4th 892 (Cal. Ct. App. 2002) ....................................... 16

*Matson v. Dvorak*, 40 Cal.App.4th 539 (Cal. Ct. App. 1995) ........................................... 18

*Navellier v. Sletten*, 29 Cal.4th 82 (Cal. 2002) ........................................................... 16, 17

*Oasis West Realty, LLC v. Goldman* 51 Cal.4th 811 (Cal. 2011) ..................................... 19

*Paulus v. Bob Lynch Ford*, 139 Cal.App.4th 659 (Cal. Ct. App. 2006) ............................ 18

*Reeves v. Hanlon*, 33 Cal.4th 1140 (Cal. 2004) ........................................................... 22, 23

*San Jose Construction, Inc. v. SBCC, Inc.*, 155 Cal.App.4th 1528 (Cal. Ct. App. 2007) ....................... 23

*Soukup v. Low Offices of Herbert Hafif*, 39 Cal.4th 260 (Cal. 2006) ............................... 19

*Wilbanks v. Wolk*, 121 Cal.App.4th 883 (Cal. Ct. App. 2004) .......................................... 19

*Wilcox v. Superior Court*, 27 Cal.App.4th 809 (Cal. Ct. App. 1994) ................................ 18

*Wilson v. Parker, Covert & Chidester*, 28 Cal.4th 811 (Cal. 2002) .................................. 20

*Yu v. Signet Bank/Virginia*, 103 Cal.App.4th 298 (Cal. Ct. App. 2002) ........................... 19

**FEDERAL CASES**

*Allen v. McCurry*, 449 U.S. 90 (1980) ............................................................................. 15

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1968) ..................................................... 25

*Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414 (9th Cir. 2014) ................................................................................................ 19, 20

*Hilton v. Hallmark Cards*, 599 F.3d 894 (9th Cir. 2009) ................................................. 16

*Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042 (9th Cir. 2008) ............................................ 15

Landis v. N. Am. Co., 299 U.S. 248 (1936) ...................................................................... 16

*Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832 (9th Cir. 2001) ...................................... 25

*Mindys Cosmetics v. Dakar*, 611 F.3d 590 (9th Cir. 2010) .............................................. 17

PLAINTIFFS' OPPOSITION TO
DEFENDANT THOMAS RETZLAFF'S
SPECIAL MOTION TO STRIKE
Page iv

LAW OFFICES OF JAY LEIDERMAN
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

*Montana* v. *United States,* 440 U.S. 147 (1979) ........................................................... 15

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) ................................................... 22

*Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979) .................................................... 15

*Rogers v. Homes Shopping Network*, 57 F.Supp.2d 973 (C.D. Cal. 1999) ...................... 25

*Snyder v. Phelps*, 131 S.Ct. 1207 (2011) ................................................................ 24, 25

*Wolfson v. Brammer*, 616 F.3d 1045 (9th Cir. 2010) ..................................................... 15

**STATUTES**

28 U.S.C. § 1738 ............................................................................................................ 15

Cal. Civ. Code § 44 ........................................................................................................ 20

Cal. Civ. Code § 45 .................................................................................................... 20, 21

Cal. Code Civ. P. § 425.16 ...................................................................................... passim

Cal. Code Civ. P. § 660 .................................................................................................. 16

Cal. Penal Code § 422 .................................................................................................... 24

Cal. Penal Code § 647(j)(4) ........................................................................................... 21

**RULES**

Cal. Rules of Court Rule 8.104 ....................................................................................... 16

Fed. R. Civ. P. 56 ........................................................................................................... 25

**OTHER**

David Kushner, *Vigilanteville: James McGibney and his online army*, Al Jazeera America (October 7, 2014), http:// http://america.aljazeera.com/articles/2014/10/7/james-mcgibney-bullyville.html ......... 17

PLAINTIFFS' OPPOSITION TO
DEFENDANT THOMAS RETZLAFF'S
SPECIAL MOTION TO STRIKE
Page v

LAW OFFICES OF JAY LEIDERMAN
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

**MEMORANDUM OF POINTS AND AUTHORITIES.**

## I.   INTRODUCTION.

Defendant Thomas Retzlaff has convinced himself that he may, with impunity, ruin another person's business relationships by spreading lies about the business. He has convinced himself that issuing death threats and falsely accusing others of criminal activity is speech on a matter of public interest. He has convinced himself that, because conclusively attributing pseudonymous Internet bullying to an individual is inherently difficult, he can simply deny all of it. And he has convinced himself that he is a brilliant pro se litigator, capable of defeating all attempts to impose accountability. This court should not be so easily convinced.

California Code of Civil Procedure § 425.16 provides a remedy for defendants unfairly targeted by a SLAPP—a Strategic Lawsuit Against Public Participation. This is not a SLAPP, however. Retzlaff has not demonstrated that this suit arises from protected activity. Even so, Plaintiffs' have submitted evidence demonstrating their claims are sufficiently meritorious to survive. The Motion to Strike must be denied.

## II.   STATEMENT OF ISSUES.

The issues to be decided in an Anti-SLAPP motion under Cal. Code Civ. P. § 425.16 are:

(1) Does plaintiff's cause of action arise from an act of the defendant in furtherance of the defendant's right of petition or free speech?

(2) If yes, has plaintiff established that the lawsuit has minimal merit?

## III.   STATEMENT OF RELEVANT FACTS/ALLEGATIONS.

### A.   THE COMPLAINT.

Plaintiff James McGibney is the CEO and founder of ViaView, Inc. (Compl. ¶ 14.) Plaintiff ViaView is a private corporation which operates the websites BullyVille and CheaterVille, which aim to give voice to victims of bullying and infidelity, respectively. (*Id.* ¶ 15.) The primary revenue for ViaView is from advertising on these websites. (*Id.* ¶ 18.) Mr. McGibney is also an outspoken opponent of "revenge porn," sexually explicit pictures and movies published on the Internet without the subject's permission. (*Id.* ¶ 16.)

PLAINTIFFS' OPPOSITION TO
DEFENDANT THOMAS RETZLAFF'S
SPECIAL MOTION TO STRIKE
Page 1

LAW OFFICES OF JAY LEIDERMAN
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

Beginning in June 2013, Defendant Thomas Retzlaff, along with other named defendants and others yet unidentified (collectively, "Defendants") began a campaign aimed at destroying ViaView's business and Mr. McGibney's personal life from the safety and comfort of the seats behind their keyboards.  (*Id.* ¶ 1.)  Although these defendants were initially motivated by different things, they eventually joined forces with the common goal of harming Plaintiffs financially and personally.  (See *id.* ¶¶ 23-28, 82-86, 94-104.)  Retzlaff's participation began in late October, 2013.  (*Id.* ¶ 32.)

There are three primary aspects of Defendants' collective effort to ruin Plaintiffs.  First, the group uses numerous "sock" accounts on various social media platforms to publically publish false, threatening, harassing, and defamatory statements about Mr. McGibney and ViaView.  (See, e.g., *id.* ¶¶ 28-29, 80, 95.)  The purpose of these "socks" is to obscure Defendants' true identities and to provide the illusion of broad support for their attacks.  (*Id.* ¶ 28.)  Defendants have used Twitter, Facebook, and Wordpress blogs in an attempt to reach as wide an audience as possible.  (*Ibid.*)  As much as possible, the Complaint identifies specific examples of individual conduct in furtherance of this conspiracy.

The allegations of Retzlaff's personal involvement in these public attacks are voluminous:

- Using Twitter alias @MrTexxxan, Retzlaff stated he was "surprised no one has shot them fools [including Mr. McGibney] yet.  lots of crazy ppl in the world off their meds."  (*Id.* ¶ 32)

- Using alias "LongJohnSilver" on bullyville.com, Retzlaff threatened, "If I was listed on his website I would put a bullet in his head. . . .  So go ahead, James, keep it up. . . . it's gonna cost you and your family your lives."  (*Id.* ¶ 34.)

- Using alias "Scott Jewels," Retzlaff called Mr. McGibney a "lying piece of human garbage" and a "lying homosexual."  In the same context, Retzlaff also posted Mr. McGibney's Las Vegas address and the name of his wife to intimidate him.  (*Id.* ¶ 36.)  Retzlaff also used a different alias, "Molly Santucci," to agree with the posts of "Scott Jewels."  (*Id.* ¶ 38.)

- Again using the alias "Molly Santucci," Retzlaff contacted BullyVille celebrity spokesperson DJ Ashba of Guns 'N' Roses via Facebook, falsely stating that CheaterVille is a "revenge porn website" and encouraging Ashba to end his relationship

PLAINTIFFS' OPPOSITION TO
DEFENDANT THOMAS RETZLAFF'S
SPECIAL MOTION TO STRIKE
Page 2

LAW OFFICES OF JAY LEIDERMAN
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

with Bullyville.  (*Id.* ¶ 39.)  Retzlaff repeated this conduct using Twitter alias @KellySwift4.  (*Id.* ¶ 40.)

- Again using the alias "Scott Jewels," Retzlaff stated, "McGibney also runs REVENGE PORN website Cheaterville.  McGibney charges people $199 in order to remove their photos and posts.  McGibney is filth."  (*Id.* ¶ 48.)

- Again using Twitter alias @MrTexxxan, Retzlaff repeated his statement that "McGibney and his wife also run revenge porn site CheaterVille."  (*Id.* ¶ 51.)

- Using alias "Kelly Swift," this time via Facebook, Retzlaff contacted Plaintiffs' advertising partner Brickhouse Security, again repeating the accusation that "Cheaterville.com is a revenge porn website that charges girls $199 to remove photos."  (*Id.* ¶ 54.)

- Using Twitter alias @PedoCaptain, Retzlaff directed a tweet at Mr. McGibney: "@BullyVille I would like to bury a hatchet right in your fucking damn face.  Public info: [McGibney's Las Vegas address] – vegas ANYONE?????"  (*Id.* ¶ 57.)

- Using Twitter alias @bright_Anon, Retzlaff tweeted, "Did u know that McGibney charges girls $199 to remove their intimate photos and personal details?"  (*Id.* ¶ 60.)

- Using Twitter alias @BV_Truth, Retzlaff accused Mr. McGibney of making death threats: "And how difficult is it to send yourself a nasty email and then claim that ur enemy did it?  BV keeps sending ME death threats."  (*Id.* ¶ 69.)

- Using an account with no username, Retzlaff created an entry on www.myex.com, a site which—unlike CheaterVille—hosts "Nude Photos" of people without consent.  (*Id.* ¶ 64.) This entry again accused Mr. McGibney of "extort[ing] money from young girls and their families over the internet."  (*Ibid.*)

The second aspect of Defendants' conspiracy is the private transmission of false complaints to ViaView's partners, to its celebrity sponsors, to members of its board of directors, and even to people only tangentially related to board members.  Again, using false names to protect his true identity, Retzlaff repeated false complaints to advertising partners that CheaterVille is a "revenge porn" website. For some of these communications, Plaintiffs described the content in the Complaint or have attached

PLAINTIFFS' OPPOSITION TO
DEFENDANT THOMAS RETZLAFF'S
SPECIAL MOTION TO STRIKE
Page 3

LAW OFFICES OF JAY LEIDERMAN
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

them in full in support of this Opposition.  For others, Plaintiffs are unable to allege the precise content of these communications.  However, along with the content of Retzlaff's public statements, other e-mails from Retzlaff's aliases support the inference that he sent false complaints alleging that CheaterVille is a "revenge porn website" with the specific purpose of driving advertisers away from Plaintiffs' business.  For example:

- Using the alias James Smith (james.smith871003@gmail.com), Retzlaff sent several e-mails directly to Mr. McGibney, boasting that advertisers were "dropping [ViaView] like a bad habit."  (Compl. ¶ 59; Ex. 8 p. 49.)

- Again using the James Smith alias, Retzlaff later wrote, "I spent a total for 30 minutes—all together—with my complaints to your advertisers.  That includes time spent on hold.  And look how obviously effective it has been!!"  (Compl. ¶ 62; Ex. 8 p. 58.)

- The self-description for Retzlaff's @BV_Truther alias on Twitter states: "exposing the truth about Bullyville's lies by calling HR Dept's one at a time and getting ads on revenge porn sites shut down as soon as they pop up!"  (Ex. 7 p. 6.)  The same alias later tweeted, "I wonder what happened to all the advertisers on Bullyville & Cheaterville.  Several months ago it used to be FILLED with ads."  (Compl. ¶ 64.)

- Using the alias Dean Allen (deanallen5634@outlook.com), Retzlaff sent an e-mail to several members of ViaView's board of directors, repeating the familiar refrain, the go-to narrative: "Cheaterville.com is a revenge porn website that engages in the abuse of young women and girls (and men!) by posting their intimate photographs and personal information."  (Compl. ¶ 66; Ex. 8 p. 60.)  The same e-mail demanded that ViaView close the @BullyVille Twitter account and shutter BullyVille and CheaterVille sites or the attacks would continue.  (Compl. ¶ 67; Ex. 8 p. 65.)

- Using the alias Dean Anderson (deananderson714@yahoo.com), Retzlaff e-mailed a former ViaView board member, again issuing threats: "If you want the bleeding to stop, you need to IMMEDIATELY shut down ViaView, Bullyville, Cheaterville, - and your twitter account @BullyVille (and the other accounts) and ensure that ALL of the

PLAINTIFFS' OPPOSITION TO
DEFENDANT THOMAS RETZLAFF'S
SPECIAL MOTION TO STRIKE
Page 4

LAW OFFICES OF JAY LEIDERMAN
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

documents, posts, and photos are totally destroyed and can never been [*sic*] or used again." (Compl. ¶ 74; Ex. 8 p. 74.)

In communications to those who worked with Plaintiffs, he also often included threats of disclosing personal information—also known as "doxing." (*Id.* ¶ 47.)

Third, Defendants created and to this day maintain a blog dedicated to two issues: intimidation and death threats, plus the personal and financial ruin of James McGibney. The blog was first located at itsabouttruth.wordpress.com. (Compl. ¶ 72.) It moved to bvfiles.wordpress.com ("bvfiles"), which was ordered down by Santa Clara Superior Court Judge Derek Woodhouse due to death threats that presented an imminent prospect that Mr. McGibney and his family would suffer bodily harm. (See McGibney Decl. ¶ 27.) It migrated to mcgibneyfiles.wordpress.com in violation of that order, and was ordered down again. The blog was again reposted to viaviewfiles.wordpress.com ("viaviewfiles"), where it remains today. The very first post on bvfiles accuses Mr. McGibney of being a pedophile. (Compl. ¶ 129.) Another post accuses him of being a "criminal," or of "illegal hacking activities." (*Id.* ¶¶ 147, 150.) Another encourages readers of the site to submit the same false complaints that CheaterVille is a "revenge porn" site. (*Id.* ¶ 144.) Plaintiffs deny each of these statements. (McGibney Decl. ¶¶ 3-7.)

Unfortunately for Plaintiffs, Retzlaff's campaign achieved some success. As a direct result of Retzlaff's harassment, DJ Ashba withdrew as a celebrity sponsor of BullyVille. (Compl. ¶¶ 41-43.) So did celebrity sponsor Becca Tobin from the TV show "Glee." (*Id.* ¶ 45.) Other partners, including California public relations firm Lexicon Public Relations, have also distanced themselves from BullyVille because of Retzlaff's harassment. (*Id.*) Plaintiffs estimate the financial loss of advertising dollars at over $250,000, and loss of new investment money at least equal to that amount. (Compl. ¶¶ 21, 75.)

Out of this conduct, Plaintiffs seek injunctive and monetary relief under five different theories of liability: (1) tortious interference with contractual relations, (2) tortious interference with prospective economic advantage, (3) intentional infliction of emotional distress, (4) defamation, and (5) public disclosure invasion of privacy. (See generally, Compl.)

PLAINTIFFS' OPPOSITION TO
DEFENDANT THOMAS RETZLAFF'S
SPECIAL MOTION TO STRIKE
Page 5

LAW OFFICES OF JAY LEIDERMAN
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

**B.     ATTRIBUTING THE ALLEGATIONS TO THOMAS RETZLAFF.**

In his declaration supporting the instant motion, Retzlaff issues a blanket denial.  He states:

> I specifically deny ever using the Twitter accounts listed in the lawsuit and I specifically deny his claims that I am a blogger that made death threats or sent him death threats or ruined his business or that I run a website that makes death threats or calls him a pedophile.  I have never sent a death threat to James McGibney or his family.  I also do not know who exactly his family members are, where they live, or ever being in contact with them.

(Retzlaff Decl. ¶ 16.)

Anticipating these denials, Plaintiffs obtained declarations from Retzlaff's son, Collin, and ex-wife, Denise Hollas.  Both declarations were made under penalty of perjury and included personal observations of Retzlaff administering the bvfiles blog.  Collin's was notarized.  These were submitted under seal in the Santa Clara County restraining order case, and were submitted to this court as Exhibit 25 in support of Plaintiff's Omnibus Opposition to Retzlaff's various motions.  (Docket No. 45.) Plaintiffs requested to seal these documents but were denied, as that denied the *pro se* Retzlaff access to evidence.

Since then, Retzlaff has submitted new declarations purportedly from the same witnesses, ostensibly to withdraw their former declarations.  (Docket No. 64.)  Although neither of these new declarations state that their prior declarations were false, Retzlaff further accuses Mr. McGibney of intimidating or lying to Denise and Collin in order to secure the first declarations.  Mr. McGibney denies lying or intimidating either witness.  (McGibney Decl. ¶ 8.)

Attached to this Opposition are a number of e-mails from Mr. McGibney to Denise and text messages from Mr. McGibney to Collin, which detail Mr. McGibney's efforts to obtain the first declarations showing that Retzlaff was, in fact, administering bvfiles.  (See McGibney Decl.; see also Exs. 4, 5.)  Even a quick skim of these messages demonstrates that Mr. McGibney was far from intimidating or threatening.  Instead, he was trying to help Collin and Denise—whom he considered friends—escape from Retzlaff's decades of intimidation and abuse.  That Collin and Denise now purportedly wish to withdraw their first declarations at the behest of Retzlaff is not evidence those declarations were untruthful; rather, it is evidence of Retzlaff's force of will and successful years of abuse.  A number of the voluminous exhibits Plaintiffs previously attached to their Omnibus Opposition

PLAINTIFFS' OPPOSITION TO
DEFENDANT THOMAS RETZLAFF'S
SPECIAL MOTION TO STRIKE
Page 6

LAW OFFICES OF JAY LEIDERMAN
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

to Retzlaff's motions provide further evidence of Retzlaff's long history of abuse of his family.  (See Exs. 13-15, attached to Plaintiffs' Omnibus Opposition, Docket No. 35.)

Even aside from these competing declarations, Plaintiffs have attached to this Opposition a number of other documents which demonstrate that it is, in fact, Retzlaff behind the tweets, bvfiles and viaviewfiles blogs, and threatening private e-mails to ViaView's partners.  Because the nature of directly attributing internet conduct to individuals—showing that a person was actually at the keyboard—is inherently difficult, Plaintiffs' evidence outside of the Denise Hollas and Collin Retzlaff is circumstantial, but nevertheless convincing.

### 1.   E-mails From Known Retzlaff E-Mail Address to his Daughter

Plaintiffs have submitted the full text and metadata information of a number of e-mails Retzlaff sent to his daughter, Brittany Retzlaff, using his retzlaff@texas.net e-mail address, the very address he uses to participate in this court's ECF system. (See Ex. 1.)  These e-mails, which are authenticated by the attached Declaration of Brittany Retzlaff, contain a great deal of disturbing content, things most fathers would never dream of saying to their daughters.  The metadata accompanying these e-mails show the unique IP addresses of each e-mail server that helped send the message.  This information allows Plaintiffs to state with confidence the source IP address of the e-mails as well as the Internet Service Provider and general geographic location from which they came.  (See McGibney Decl. ¶¶ 20-29.)  The e-mails themselves also contain a number of admissions from Retzlaff about his involvement in the conduct at bottom of this suit:

- On March 18, 2014, shortly after the first Complaint was filed: "And now a federal lawsuit and investigation has started and I am right in the fucking middle of it all on account of me wanting to get YOUR fucking sex tapes and YOUR naked pictures off the internet!"  (Ex. 1 p. 2.)

- In the same e-mail, he admitted the underlying conduct: "I went and contacted all the dude's [Mr. McGibney's] advertisers on his website to complain about who they were advertising with.  Every single one of them ended up canceling their ads.  Every Single One."  (*Id.*)

PLAINTIFFS' OPPOSITION TO
DEFENDANT THOMAS RETZLAFF'S
SPECIAL MOTION TO STRIKE
Page 7

LAW OFFICES OF JAY LEIDERMAN
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

- On May 15, 2014, angry that she had been providing help to Plaintiffs in the state court restraining order case, "If u wish to get out of this mess, you have to let me know and I will draw up the proper papers for you to." (*Id.* p. 19.)

- Later that day: "With regards to the upcoming conflict [this suit], you need to understand that those people out you in the middle of this for a reason, and it wasn't for my reason and it wasn't for your reasons.  They have their own agendas which have nothing to do with ours.  But irrespective of that, I will have to do whatever it is that I have to do to get at and destroy these people in the same fashion that I have done so before, and if you get caught in the middle or in the cross fire, so be it." (*Id.* p. 20.)

- "This McGibney & Leiderman guys don't know who they are messing with.  I wrestled and stole away hundreds of thousands of dollars from multinational corporations in lawsuits that they did not want to give me.  But in the end I prevailed." (*Id.*)

- In another e-mail that day: "This guy is a real idiot and a clown.  Like he thinks I give a shit about his stupid lawsuits or court orders.  Seven years in prison I spent.  You think anything he does is going to change me or affect me?  Some stupid court way out in California 1,500 miles away is not going to affect me one bit.  Certainly it is an aggravation and it pisses me off.  But then so do a lot of things." (*Id.* p. 22.)

- May 26, 2014: "By the way, your 'friend' suffered a terrible defeat in Texas last Wednesday.  He filed a lawsuit against me and about 5 other people.  Someone who has a rich father paid for a lawyer on behalf of one of the defendants to file a response and to seek sanctions for violating our rights to free speech.  Your friend tried to immediately dismiss the lawsuit and make it go away, but the judge wouldn't let him.  The man with the rich father has paid out nearly $65,000 for this lawyer in Houston.  [In other emails to Brittany, Retzlaff details how rich his father is and that $65,000 is the proverbial drop in the bucket.]  He is one of the top First Amendment lawyers in Texas and is very well known in the newspaper industry.  So my guess is that someone with ties to the newspaper industry either knew this lawyer or heard about him and then got him the money needed to fight.  Since I know how you like to talk to this fool in California I

LAW OFFICES OF JAY LEIDERMAN
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

1   won't mention anything further. But it is funny as hell. Anyways the judge will make

2   his ruling on June 11th and I will be there to laugh my ass off and collect some money."

3   (*Id.* p. 29.)

4   • May 27, 2014: "I will bring enormous amounts of pressure on your mother and do

5   whatever I need to do to get her to see things my way." (*Id.* p. 30.)

6   • "Right now his websites have been shut down. All of his advertisers have been run off,

7   his twitter account banned and removed - and he blames it all on little old me, your

8   daddy. Lol" (*Id.*)

9   • June 5, 2014: "In fact, your friend, whom you call 'James', went on Twitter the other day

10  and said to someone "Well Bitch, you're so-called "rape" was YOUR OWN FAULT.

11  Keep your legs closed next time!!" And, FYI, Collin's Instagram wasn't open – it was

12  hacked. **And how do you explain the fact that it was this James follow or one of his**

13  **friends that bought a website up in your brother's name?"** (*Id.* p. 34.)

14  • "Did you think that just because this guy files some papers in court and says my name on

15  twitter that I was going to go and run away? Come on, dude, you know me better than

16  that! You think this is the first guy like this that I have come across before?" (*Id.*)

17  • "You stupid, stupid little girl. You and this retard think you're dealing with some kind of

18  amateur? I've been doing this shit for nearly 20 years and I've won hundreds of

19  thousands of dollars – all on my own against some of the biggest and best law firms in

20  TX. You don't think I know what the fuck I'm doing? And now I have one of the

21  Number One 1st Amendment lawyers in TX on my side, as well as THE TOP 1st

22  Amendment lawyer in California waiting, you think that faggot McGibney and

23  Leiderman can beat me?" (*Id.* p. 35.)

24  • June 11, 2014: "Hahahahahahahaha. This clown [Mr. McGibney] is fucked!!! By me."

25  (*Id.* p. 36.)

26  • June 20, 2014: "The guy [Mr. McGibney] actually had the temerity to think that, just

27  because he tweets my name or files a lawsuit, I was going to run and hide. I fucking live

28  in court. And seeing my name and all of his ridiculous allegations on twitter, come on

PLAINTIFFS' OPPOSITION TO
DEFENDANT THOMAS RETZLAFF'S
SPECIAL MOTION TO STRIKE
Page 9

LAW OFFICES OF JAY LEIDERMAN
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

dude, get real!  Like I give a shit what some faggots on the internet think.  'Oh a scary man said my name on twitter.  I better go run and hide.  Oh, I'm going to be sued.  Oh no!!'  hahahahhahahahaha" (*Id.* p. 49.)

- Later that day: "See the thing about lying in court is that everybody does it.  But once you get caught, you and your case are dead meat." (*Id.* p. 50.)

- July 6, 2014: "You will be destroyed because of this and there isn't a damn thing that this guy can do to stop it or save you. I am going to do whatever I want to do and there isn't anything he can do to stop it. He can file a million lawsuits in a million courts. I simply do not care. Words on a piece of paper do not impress me. In any event, he is the one facing court sanctions, not me. You were a fool to involve yourself with him." (*Id.* p. 65.)

- July 15, 2014: "Oh I filed a lawsuit against that attorney today for calling me a convicted sex offender on twitter.  [¶]  Some anti-bullying advocate, eh? This faggot can't even save himself. How the fuck is he going to save you? Lol" (*Id.* p. 75.)

In addition to his admissions to a great deal of alleged conduct, these e-mails contain a great number of statements which, when put in context, constitute threats of violence toward Mr. McGibney.  Moreover, when he made these threats, he knew that Brittany was in regular contact with Mr. McGibney, and that these threats would be immediately communicated to McGibney.  (*Id.* p. 14 ("By the way, I know exactly who has also been looking at your emails.  Like that wasn't figured out weeks ago.").)  A sample of threatening statements follows:

- On April 22, 2014, Retzlaff referred to "friends" who owe him "favors," which Plaintiffs interpret to mean Aryan Brotherhood gang members, whom Retzlaff befriended while in prison: "My friends want to take action on this. Serious action. Permanent action. The nice thing about being a guy owed favors is that you never really need to call them in. The guys who owe you know what you need (or want, which is really the same) without you even having to explicitly say anything more than, 'will no one rid me of this troublesome man?' And it's done" (*Id.* p. 11.)

PLAINTIFFS' OPPOSITION TO
DEFENDANT THOMAS RETZLAFF'S
SPECIAL MOTION TO STRIKE
Page 10

LAW OFFICES OF JAY LEIDERMAN
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

- The same day, in a separate e-mail, Retzlaff stated, "In any event, I sit here contemplating the murder of this man and his family.  In the end he knows not whom he is messing with.  Going to jail (assuming I get caught) ain't nothing but a thing to me." (*Id.* p. 12)

- On May 15, 2014:  "Dearest child Brittany, [¶] You understand, don't you, that there is not a thing that this man or lawyer can do that will help you.  You already know by now that I do not care about court orders or restraining order or cops or any of that stuff."  (*Id.* p. 21.)

- In the same e-mail, Retzlaff wrote, "But understand this, kid:  No fucking restraining order is going to stop me doing what I need to do with my children or from being with you.  Prison certainly couldn't change me, this clown hasn't a chance.  It will all end in one huge bloody mess and you won't be happy in the end." (*Id.* p. 23.)

- On June 5, 2014, Retzlaff even issued a death threat to his own daughter:  "Remember the movie Old Yeller?  You remember how it ended and why?  In the end I will do to u what needs to be done and that will be that."  (*Id.* p. 32.)

- On June 19, 2014, Retzlaff wrote, "You picked a good guy to hook up with [Mr. McGibney].  AM looking forward to reading his obituary."  (*Id.* p. 47.)

An examination of the metadata of these e-mails shows that the majority of them were sent from an IP address starting with the numbers 66.87.  (See McGibney Decl. ¶ 61; see also generally Brittany Retzlaff Decl.; Ex. 1.)  Each address matching this pattern belongs to Sprint Nextel Corporation, and trace back to locations in Phoenix, Arizona according to www.ip2location.com.  (See Ex. 3 pp. 1-21.)  The other addresses belong to Cox Communications, and also trace to locations in Arizona.  (*Id.*)

        2.    <u>E-Mails From Retzlaff Aliases to Mr. McGibney and Others Associated With ViaView.</u>

Plaintiffs have also submitted the text and some metadata information of various e-mails from "Dean Anderson," "Dean Allen," and "James Smith," two of Retzlaff's e-mail aliases.

"James Smith" openly admits to being @MrTexxxan.  (Ex. 8 p. 4.)

PLAINTIFFS' OPPOSITION TO
DEFENDANT THOMAS RETZLAFF'S
SPECIAL MOTION TO STRIKE
Page 11

LAW OFFICES OF JAY LEIDERMAN
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

1    Using alias Dean Allen, Retzlaff wrote a very lengthy e-mail to Scott Ryan, then a board member

2    of ViaView.  This e-mail presented an "ultimatum" to ViaView: shut down BullyVille, CheaterVille,

3    and BullyVille's Twitter account, or suffer.  Retzlaff threatened to tell "[e]very person who does

4    business" with Ryan's construction company, "[e]very member of the AZ, IL, and NV state bar

5    associations," "[e]very construction company in the Las Vegas Southern California area," "[e]very

6    single media outlet in Southern California, Nevada, and Arizona," and "[e]very social organization that

7    [Ryan] belong[s] to," that ViaView and Ryan personally were responsible for "revenge porn, personal

8    privacy violations, internet bullying, abuse and all the rest."  (*Id.* p. 30.)  Retzlaff promised to "do this

9    for every single investor in ViaView and every single employee of ViaView."  (*Id.*)

10    Using alias "Dean Anderson," Retzlaff e-mailed the human resources department of an employer

11    of another ViaView board member, Dave Suder.  (*Id.* p. 31.)  Again, Retzlaff repeated the false

12    allegations that CheaterVille is a "revenge porn" website, asking Suder's employer to investigate him.

13    Dean Anderson admits in several e-mails to be an administrator of the bvfiles site.  (*Id.* p. 47, 50.)

14    Using an e-mail address spoofing counsel's name and business, likely created for the sole

15    purpose of sending a single e-mail, Retzlaff sent a disturbing message to the administration of a Suder's

16    child's school.  This e-mail stated that "David Suder's son is an alleged **Child Rapist**."  (*Id.* p. 47-48

17    (emphasis in original).)  This e-mail makes no mention of CheaterVille or ViaView or bullying or

18    revenge porn, but does include a link to Retzlaff's bvfiles blog.

19                    3.    Internet Posts Tying Retzlaff To Various Aliases

20    Finally, Plaintiffs have submitted an overwhelming number of posts collected from websites all

21    over the Internet.  Retzlaff uses the same aliases repeatedly in many different contexts: Johnny Swift,

22    Mark14nx05y, Albert14nx05y, James Smith, the.klansman@hotmail.com, t_retz@hotmail.com, Todd,

23    Molly Santucci, Scott Jewels, and James Smith appear on sites as diverse as Twitter, VentureBeat, legal

24    blogs, Facebook, CNN.com, The Examiner, The Washington Times, yourhoustonnews.com,

25    thepiratebay.se, Wikipedia, thedirty.com, even white supremacist site stormfront.org.  (See generally Ex.

26    3.)

27    These aliases often reference each other, or interact with each other.  In fact, this is one of the

28    primary uses of Retzlaff's "sock" accounts.  For example, the @Klansmann Twitter alias identified in

PLAINTIFFS' OPPOSITION TO
DEFENDANT THOMAS RETZLAFF'S
SPECIAL MOTION TO STRIKE
Page 12

LAW OFFICES OF JAY LEIDERMAN
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

1  the Complaint tweeted to a woman about a sexually explicit video of her, at the same time it was posted

2  to file-sharing site by mark14nx05y.  (*Id.* p. 57.)  "Molly Santucci" used e-mail address molly14nx05y,

3  which uses the repeated and familiar suffix 14nx05y, used by Retzlaff in other contexts.  (*Id.* p. 107.)

4  One of the commenters on Retzlaff's daughter's Cheaterville post registered with

5  the.klansman@hotmail.com.  (*Id.* p. 154.)  The Klansman youtube account has a video of Retzlaff's son

6  singing karaoke.  (*Id.* p. 71.)

7      These aliases post remarkably similar—sometimes verbatim—content.  Retzlaff enjoys legal

8  arguments.  He often references Texas law, even claiming several times to be an attorney himself, as

9  confirmed by court opinions.  The Johnny Swift and mark14nx05y aliases both commented on

10  California legislation criminalizing revenge porn—in totally different contexts, but nevertheless word-

11  for-word—"This is a stupid law.  If I own the pictures (either cuz I took them myself or cuz u sent them

12  to me), then why can't I do whatever I want to with MY PROPERTY?"  (*Id.* pp. 32, 53.)  One minute

13  apart, on different websites discussing the same story, "Klansman" and "Todd" both wrote, "I'd rape

14  and murder her in a heartbeat."  (*Id.* pp. 73, 74.)

15      The alias' posts also share a number of consistent stylistic quirks also present in Retzlaff's e-

16  mails.  He uses capital letters for emphasis.  His rhetorical style relies on questions rather than direct

17  statements; he loves to ask questions and immediately answer them.  He often punctuates with multiple

18  exclamation points or question marks.  He makes liberal use of parenthetical asides.

19      Plaintiffs even have some IP address metadata about these postings.  To the extent Plaintiff has

20  been able to collect such data, many of these IP addresses are owned by Cox Communications and trace

21  back to the same IP address blocks in Phoenix, Arizona.  (See, e.g., *Id.*  p. 60, 148.)  This evidence,

22  while circumstantial, provides powerful support for Plaintiffs' allegations that Retzlaff is a prolific user

23  of Internet aliases, and that Plaintiffs have correctly identified them.

24      4.      The Content and Style of the bvfiles and viaviewfiles Blogs Match the Content

25              and Style of Retzlaff's Court Filings.

26      Plaintiffs have also submitted a great deal of content that was originally posted on the bvfiles and

27  viaviewfiles blogs.  (See generally, Ex. 6.)  Like the posts Retzlaff makes under his various other aliases,

28  the posts on the blogs are absolutely consistent with Retzlaff's writing style and perspective.  Moreover,

PLAINTIFFS' OPPOSITION TO
DEFENDANT THOMAS RETZLAFF'S
SPECIAL MOTION TO STRIKE
Page 13

LAW OFFICES OF JAY LEIDERMAN
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

Retzlaff repeats the accusations from the blog *in his court filings*. Even in the instant Motion to Strike, Retzlaff maintains the position that Plaintiffs run a "revenge pornography and blackmail business." (Mot. p. 9.) He continues to claim that Plaintiffs' business practices "consist of revenge porn, blackmail, bullying and extortion." (*Id.* p. 21.) He has previously accused Plaintiff of being a military and academic fraud, just like on the blog.

Retzlaff wants the court to believe that he is not responsible for any of the conduct alleged in the Complaint; and that specifically he is not responsible for any content on the blogs. Yet Retzlaff has precisely the same views of Plaintiffs as does the primary administrator of the blogs. He uses the exact same language to describe Plaintiffs. His rhetorical style is identical, which is obvious even to a lay person. Either Retzlaff is administering the blogs, or his clone is.

5.     Conversations Between Mr. McGibney and Collin Retzlaff.

In two separate documents in this case, Retzlaff has accused Plaintiffs of "witness tampering" in obtaining statements from Retzlaff's son, Collin, and ex-wife, Denise Hollas. These statements, submitted as Exhibit 25 to Plaintiff's Omnibus Opposition to Retzlaff's various motions, provide direct, concrete evidence of Retzlaff's operation of the bvfiles blog. Collin declared that he personally saw Retzlaff working on the bvfiles blog, and that he used Collin's Internet connection to do so. Denise stated that Retzlaff showed her that he received alerts from viaviewfiles.wordpress.com, the successor to Retzlaff's bvfiles blog. She also explained why she thought that "Dean Anderson," dean714@yandex.com, was in fact Retzlaff. These declarations were made under penalty of perjury. They provide what is often impossible to get in Internet cases like this: direct evidence that a specific person authored an anonymous or pseudonymous statement.

Knowing that these statements devastate his self-serving denials, Retzlaff has convinced Denise and Collin to submit new statements on his behalf. Retzlaff accuses Mr. McGibney of intimidating these witnesses into submitting their declarations. These accusations are plainly false. To show that Retzlaff's accusations are meritless, Mr. McGibney has submitted e-mails and text messages detailing verbatim his interactions with both Collin and Denise. (See McGibney Decl. ¶¶ 74-75; Exs. 4, 5.) These communications demonstrate that Mr. McGibney was not coercive, not threatening, not in any way attempting to get either party to commit perjury. Notwithstanding Retzlaff's claims, this court

LAW OFFICES OF JAY LEIDERMAN
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

1  should consider the prior declarations from Denise and Collin in evaluating whether Retzlaff is who

2  Plaintiffs say he is.

3  **IV.    ARGUMENT.**

4        A.    **DEFENDANT RETZLAFF IS PRECLUDED FROM RELITIGATING THIS**

5              **MOTION; SANTA CLARA COUNTY SUPERIOR COURT ALREADY DENIED**

6              **RETZLAFF'S ANTI-SLAPP MOTION BASED ON THE SAME CONDUCT.**

7        As a threshold matter, Retzlaff's Motion to Strike is an attempt to relitigate issues that have

8  already been decided against him; it should be denied on that basis.  Under the doctrine of issue

9  preclusion, also known as collateral estoppel, "once a court has decided an issue of fact or law necessary

10  to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action

11  involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (citing *Montana* v. *United*

12  *States,* 440 U.S. 147, 153 (1979)).  The doctrine is based on the idea that "once an issue has been

13  resolved in a prior proceeding, there is no further fact-finding function to be performed." *Parklane*

14  *Hosiery Co. v. Shore*, 439 U.S. 322, 336, fn. 23 (1979).  "Under this doctrine, a party is precluded from

15  relitigating an issue if four requirements are met: (1) there was a full and fair opportunity to litigate the

16  issue in the previous action; (2) the issue was actually litigated; (3) there was final judgment on the

17  merits; and (4) the person against whom collateral estoppel is asserted was a party to or in privity with a

18  party in the previous action." *Wolfson v. Brammer*, 616 F.3d 1045, 1064 (9th Cir. 2010) (citing *Kendall*

19  *v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1050 (9th Cir. 2008)).  Indeed, the preclusive effect of state court

20  judgments in federal court was codified by Congress in 28 U.S.C. § 1738: "[J]udicial proceedings [of

21  any court of any State] shall have the same full faith and credit in every court within the United States

22  and its Territories and Possessions as they have by law or usage in the courts of such State . . . ." *Allen*

23  *v. McCurry*, 449 U.S. at 96 (alterations in original).

24        Retzlaff admits filing an Anti-SLAPP motion in the state court restraining order case in his

25  declaration, and further admits that the state case arises "from the same basic set of facts."  (Retzlaff

26  Decl. ¶¶ 24-25.)  He characterizes the motion as "pending"; however, the judge denied it on the merits

27  on July 29, 2014.  Retzlaff has filed a motion for a new trial, but this does not mean the motion is

28  "pending."  Indeed, the time to appeal has come and gone, and the motion for new trial was, has been,

PLAINTIFFS' OPPOSITION TO
DEFENDANT THOMAS RETZLAFF'S
SPECIAL MOTION TO STRIKE
Page 15

LAW OFFICES OF JAY LEIDERMAN
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

1   and will continue to be ignored, as is the purview of the trial court.  Cal. Rules of Court Rule 8.104

2   (appeal must be filed within 60 days of notice of entry of judgment); see also Cal. Code Civ. P. § 660

3   ("If such motion is not determined within said period of 60 days, or within said period as thus extended,

4   the effect shall be a denial of the motion without further order of the court.").  The trial court considered

5   the motion, held an evidentiary hearing at which Retzlaff appeared, and ruled against Retzlaff.    This

6   court is bound to give preclusive effect to the state court's denial of his Anti-SLAPP motion.  *See Landis*

7   *v. N. Am. Co.*, 299 U.S. 248, 256 (1936).  Mr. Retzlaff must admit that his time to appeal is past and that

8   the motion for new trial need not be set or considered at all, but if it is, it must be considered within 60

9   days of judgment.  It was not. This case is final. The issue is precluded.

### B.    DEFENDANT'S MOTION FAILS ON BOTH PRONGS OF THE ANTI-SLAPP TEST.

12          Should the court nevertheless wish to proceed to adjudicate the merits of Retzlaff's Motion,

13   § 425.16 requires the trial court to undertake a two-step process.  *Hilton v. Hallmark Cards*, 599 F.3d

14   894, 903 (9th Cir. 2009); *Kashian v. Harriman*, 98 Cal.App.4th 892, 906 (Cal. Ct. App. 2002). First, the

15   court must decide whether the defendant has made a prima facie showing that the acts of which the

16   plaintiff complains were taken "in furtherance of the [defendant's] right of petition or free speech . . . ."

17   § 425.16(b)(1); *Hilton v. Hallmark*, 599 F.3d at 903. Second, if the defendant makes that showing, the

18   burden shifts to the plaintiff to show "a probability of prevailing on the claim."  *Hilton v. Hallmark*, 599

19   F.3d at 903 (quoting *Havellier v. Sletten*, 29 Cal.4th 82, 124 (Cal. 2002)).  As a matter if primacy, one

20   that should be dispositive, Retzlaff has made so many death threats—crimes—that his motion to strike

21   should be summarily denied.

### 1.    RETZLAFF HAS NOT MET HIS BURDEN TO SHOW THAT THE ACTS ALLEGED WERE IN FURTHERANCE OF HIS RIGHT TO FREE SPEECH.

24          Retzlaff focuses exclusively on the first prong, arguing that the alleged conduct meets § 425.16's

25   definition of an "act in furtherance of a person's right of petition or free speech."  The statute defines the

26   phrase as:

27          (1) any written or oral statement or writing made before a legislative, executive, or judicial

28                  proceeding, or any other official proceeding authorized by law;

PLAINTIFFS' OPPOSITION TO
DEFENDANT THOMAS RETZLAFF'S
SPECIAL MOTION TO STRIKE
Page 16

LAW OFFICES OF JAY LEIDERMAN
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

(2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law;

(3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest;

(4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Cal. Code Civ. P. § 425.16(e). "In the anti-SLAPP context, the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity." *Mindys Cosmetics v. Dakar*, 611 F.3d 590, 597 (9th Cir. 2010) (emphasis in original) (quoting *Navellier v. Sletten*, 29 Cal.4th at 89). Retzlaff argues that the alleged conduct falls under (3).

In some respects, Retzlaff's argument is well-taken. A publically accessible website is a public forum. *Barrett v. Rosenthal*, 40 Cal.4th 33, 41 fn. 4 (Cal. 2006). Revenge pornography and bullying are matters of public interest. And McGibney is a limited purpose public figure, in the context of bullying and revenge porn.

However, Retzlaff's claim that "the alleged defamatory statements / claimed 'death threats' all relate to [McGibney's] involvement with the websites, bullying, revenge porn and Hunter Moore controversy" is simply untrue. (Mot. p. 25.) Under different circumstances, a small minority of Retzlaff's statements, cherry-picked from the tremendous volume of material he has created, might fairly be interpreted to be harsh criticism of McGibney and his role in shaping the conversation about revenge porn and bullying. (*Id.* p. 7.) Indeed, McGibney regularly receives such criticism about the methods he uses to fight bullying, as a recent article in Al Jazeera America makes clear. *See* David Kushner, *Vigilanteville: James McGibney and his online army*, Al Jazeera America (October 7, 2014), http:// http://america.aljazeera.com/articles/2014/10/7/james-mcgibney-bullyville.html. Here, however, Retzlaff's "criticism" takes the form of threats of death and violence and targeted lies about Plaintiffs. Falsely accusing someone of being a pedophile is not commentary on the important issue of bullying; it *is* bullying. Threatening to hang Mr. McGibney's kids and burn them with a blowtorch contributes

nothing to any legitimate discussion.  Retzlaff addresses the issue of revenge porn only by falsely accusing Plaintiffs of it.  These false accusations that Plaintiffs are purveying revenge porn—a crime under California law—have nothing to do with the actual issues of public interest.

Moreover, many of the allegations stem from communications made far from any public forum, and thus are outside the scope of § 425.16(e)(3).  Private, threatening e-mails to Mr. McGibney, to supporters of Mr. McGibney, to members of ViaView's board of directors, and even to the school principal of one board member's child are not statements "made in a place open to the public."  (See Compl. ¶¶ 47, 66-67, 73, 74, Ex. 8.)

In short, Retzlaff has failed to show that the causes of action in this suit are based on any "act in furtherance of a person's right of petition or free speech" as defined in Cal. Code Civ. P. § 425.16(e).  His Motion to Strike should be denied.

### 2.   <u>PLAINTIFFS' EVIDENCE DEMONSTRATES A PROBABILITY OF PREVAILING ON THE MERITS OF EACH OF THE CAUSES OF ACTION AGAINST LIPTON.</u>

Even if the court finds that Retzlaff has satisfied his burden on the first prong of the Anti-SLAPP test, it should nevertheless deny his motion because Plaintiffs' submitted evidence demonstrates a probability of prevailing on the merits.  Where § 425.16 applies, the cause of action "shall be subject to a special motion to strike, *unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim*."  Cal. Code Civ. P. § 425.16(b)(1) (emphasis added).  In making that determination, the court "shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based."  *Id.* § 425.16(b)(2).  "To establish such a probability, a plaintiff must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited."  *Matson v. Dvorak*, 40 Cal.App.4th 539, 548 (Cal. Ct. App. 1995); *Conroy v. Spitzer*, 70 Cal.App.4th 1446, 1451 (Cal. Ct. App. 1999); *Wilcox v. Superior Court*, 27 Cal.App.4th 809, 823 (Cal. Ct. App. 1994).  The plaintiff's burden on this issue is akin to that of a party opposing nonsuit, directed verdict, or summary judgment.  *Paulus v. Bob Lynch Ford*, 139 Cal.App.4th 659, 672 (Cal. Ct. App. 2006).  However, a "motion to strike under section 425.16 is not a

PLAINTIFFS' OPPOSITION TO
DEFENDANT THOMAS RETZLAFF'S
SPECIAL MOTION TO STRIKE
Page 18

LAW OFFICES OF JAY LEIDERMAN
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

substitute for a motion for a demurrer or summary judgment.  [citation]  In resisting such a motion, *the plaintiff need not produce evidence that he or she can recover on every possible point urged.  **It is enough that the plaintiff demonstrates that the suit is viable***, so that the court should deny the special motion to strike and allow the case to go forward."  *Wilbanks v. Wolk*, 121 Cal.App.4th 883, 905 (Cal. Ct. App. 2004) (emphasis added).  "The causes of action need only be shown to have 'minimal merit.'"  *Yu v. Signet Bank/Virginia*, 103 Cal.App.4th 298, 318 (Cal. Ct. App. 2002); *see also Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 425 (9th Cir. 2014) (hereinafter, "*GLAAD*") (plaintiff must show "only a minimum level of legal sufficiency and triability").  A court determining whether a plaintiff "has satisfied this low burden" neither weighs credibility nor compares the weight of the evidence.  *GLAAD*, 742 F.3d at 425.  Plaintiff need only proffer evidence sufficient to permit an inference in her favor.  *Oasis West Realty, LLC v. Goldman* 51 Cal.4th 811, 822 (Cal. 2011).  Courts "'"accept as true the evidence favorable to the plaintiff . . . and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law."'"  *GLAAD*, 742 F.3d at 425.  (alteration added) (quoting *Soukup v. Low Offices of Herbert Hafif*, 39 Cal.4th 260, 269 n.3 (Cal. 2006)).

Here, the factual allegations in the Complaint, combined with the facts in the attached declaration of James McGibney, demonstrate that each cause of action has far more than "minimal merit."  Retzlaff's evidence in support of his Motion to Strike does not defeat Plaintiffs' claims "as a matter of law."  The court should find for the Plaintiffs on the second prong of the Anti-SLAPP test, and deny Retzlaff's Motion to Strike.

   *i.*    *Retzlaff is Behind the Aliases Identified in the Amended Complaint.*

First, and most importantly, Plaintiffs' evidence shows that, contrary to his denials, Retzlaff is behind the accounts identified in the Complaint.  A summary of that voluminous evidence follows:

- Retzlaff's e-mails from his ECF-registered e-mail address to his daughter contain a number of admissions from Retzlaff that he is in fact responsible for complaining to Plaintiff's advertising partners.

- Declarations from Retzlaff's son and ex-wife demonstrate his involvement with the bvfiles and viaviewfiles blogs dedicated to ruining Plaintiffs.

- Statements from "Dean Anderson" contain admissions that he is an administrator of the bvfiles / viaviewfiles blogs.
- The declaration from Retzlaff's daughter and Retzlaff's ex-wife explains their belief that "Dean Anderson" is in fact Retzlaff.
- An enormous number of IP address evidence, gathered from many different corners of the Internet from a huge number of aliases, which—with very few exceptions—indicate that the user of the aliases was located in Phoenix area of Arizona, where Retzlaff is currently residing.
- The statements attributed to Retzlaff are stylistically identical, matching even the rhetorical style Retzlaff has used in his court filings in this case.

More than merely support an inference that Retzlaff was the person behind the alleged aliases, this evidence all but conclusively establishes it. Though Retzlaff has submitted affidavits which purport to contradict those submitted by Plaintiff, the court "does not *weigh* the credibility or comparative probative strength of competing evidence[.]" (*Wilson v. Parker, Covert & Chidester*, 28 Cal.4th 811, 821 (Cal. 2002) (emphasis in original).) Even in the absence of Plaintiff's evidence establishing that the initial affidavits were obtained without coercion (as is now claimed by Retzlaff), that Retzlaff has a long history of abuse of the affiants, (see Exs. 13-15 filed in Docket No. 35), and other evidence tying Retzlaff to the blog, the affidavits are *alone* enough to demonstrate that Retzlaff indeed operates the blog. *See GLAAD*, 742 F.3d at 425 (courts evaluating the second prong of an Anti-SLAPP motion "accept as true the evidence favorable to the plaintiff").

      ii.    *Mr. McGibney is Likely to Prevail on the Merits of the Defamation Claim.*

Defamation can be either by slander or libel. Cal. Civ. Code § 44. As detailed above, McGibney's cause of action arose out of Retzlaff's libelous statements, both on publically available websites and in private communications to Plaintiffs' business partners. California Civil Code § 45 provides that "Libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." Cal. Civ. Code § 45.

1    Plaintiffs can satisfy each element of the tort.  First and most obviously, Retzlaff's accusation
2    that Mr. McGibney is a pedophile is false, and tends to expose him to hatred.  Furthermore, Retzlaff's
3    communications that (1) CheaterVille is a "revenge porn site" and (2) CheaterVille charges people $199
4    to remove their information is unprivileged and false.  "Revenge porn" is a specific illegal act.
5    California Penal Code § 647(j)(4), which was added in 2014 and prohibits distribution of pictures of a
6    person's "intimate parts" where intended to cause serious emotional distress.  In fact, facing criticism
7    that § 647(j)(4) did not go far enough to punish those distributing nude pictures on the Internet,
8    California recently passed an amendment (Senate Bill 1255) which expands the statute to prohibit
9    distributing "selfies" which include "intimate parts."

10   While some may see CheaterVille as a revenge site, is *not* a revenge *porn* site.  It does not allow
11   users to post photos of its subjects' intimate parts.  Further, as its FAQ explains and Retzlaff evidence
12   acknowledges, CheaterVille does not charge people to remove content.  (See Retzlaff Ex. 8.)  Users may
13   make their own posts "not visible" to the public.  Furthermore, in an effort to maintain neutrality and to
14   promote the very purpose of the site—giving voice to those victimized by infidelity—CheaterVille does
15   not remove *any* posts upon mere request.  Instead, CheaterVille relies on independent, neutral parties
16   such as arbitrators or courts to settle any disputes about the truthfulness of posts of other people.
17   CheaterVille has partnered with one of these neutral parties, Truth In Posting ("TIP"), because it is
18   familiar with TIP's process.  TIP charges a fee for its services—at a discount from the typical court
19   filing fee—but neither ViaView nor Mr. McGibney see a penny of the arbitration fees.  As the FAQ
20   states, "We have no influence over the process nor decision and do not make any money off of it."  It is
21   simply false that Plaintiffs charge anyone any amount of money to remove posts.

22   Finally, allegations of revenge porn and extortion surely injure Plaintiffs' reputation.  Mr.
23   McGibney has worked very hard to build a business and a reputation fighting against revenge
24   pornographers and bullies.  To be accused of the very things he fights against not only undermines his
25   credibility, it has a "tendency to injure him in his occupation."  Cal. Civ. Code § 45.  Indeed, the injury
26   is obvious: because of Retzlaff's false complaints, Plaintiffs' advertisers have left the site.

27   Retzlaff also objects to the defamation claim, arguing that Plaintiffs have not pleaded that
28   Retzlaff made the defamatory statements with knowledge that they were false or with reckless disregard

PLAINTIFFS' OPPOSITION TO
DEFENDANT THOMAS RETZLAFF'S
SPECIAL MOTION TO STRIKE
Page 21

LAW OFFICES OF JAY LEIDERMAN
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

for the truth.  But Plaintiffs did allege this so-called "actual malice."  (Compl. ¶ 183.)  And Retzlaff's own filings prove that the statements that CheaterVille is a "revenge porn site" or extorts money from people were, at the very least, made with reckless disregard for the truth.  *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964).  In one of his e-mails, Retzlaff admits that CheaterVille "doesn't have nudes" then inexplicably dismisses that fact as irrelevant.  (See Ex. 8 p. 12.)  CheaterVille's FAQ very specifically spells out the options for someone wishing to take down a CheaterVille post; none of the options involve paying any money to Plaintiffs.  For Retzlaff to suggest that CheaterVille is a "revenge porn" site or that Plaintiffs charge people to remove posts is contrary to stated policy, and Retzlaff cannot point to any evidence that that policy is not followed.  All this, while Retzlaff's own evidence shows he had actual notice of the site's FAQ: he knew revenge porn and extortion are not part of CheaterVille's policies.  A clearer example of "actual malice" is difficult to imagine.

Plaintiffs have shown a likelihood they will prevail on the defamation claim.

> iii.   *Plaintiffs are Likely to Succeed on their Cause of Action for Tortious Interference With Contractual Relations.*

Plaintiffs have submitted sufficient evidence to proceed with their cause of action for tortious interference with contractual relations.  The elements of the tort are: "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage."  *Reeves v. Hanlon*, 33 Cal.4th 1140, 1152 (Cal. 2004).

Plaintiffs have sufficiently alleged each element.  Plaintiffs had contracts with various advertisers.  (Compl. ¶ 20; McGibney Decl. ¶¶ 9-12.)  Retzlaff's knowledge of the contracts is easily inferred by (1) common sense and (2) his repeated statements demonstrating his intent to ruin Plaintiffs' relationships with advertisers.  Retzlaff deliberately and systematically contacted each of Plaintiff's advertising partners, spreading the lie that CheaterVille is a "revenge porn site" that charges people money to remove posts.  These lies caused the partners to stop advertising on CheaterVille.  And the loss of advertising partners predictably resulted in a loss of advertising revenue.  In sum, Plaintiffs are likely to succeed on this tort.

LAW OFFICES OF JAY LEIDERMAN
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

iv.     *Plaintiffs Will Probably Prevail on Their Tortious Interference With Prospective Economic Advantage Claim.*

Plaintiffs are similarly likely to prevail on a theory of tortious interference with prospective economic advantage.  This tort shares elements with the contractual interference tort, and "similarly compensates for the loss of an advantageous economic relationship but does not require the existence of a legally binding contract." *Reeves v. Hanlon*, 33 Cal.4th at 1152.  The elements are: "(1) an economic relationship with the project owners . . . ; (2) defendants' knowledge of this relationship; (3) defendants' intentional acts designed to disrupt that relationship; (4) actual disruption of the relationship; and (5) economic harm . . . proximately caused by defendants' acts." *San Jose Construction, Inc. v. SBCC, Inc.*, 155 Cal.App.4th 1528, 1544 (Cal. Ct. App. 2007).  Instead of a contract, the interference-with-prospective-economic-advantage tort requires a showing that the defendant committed "independently wrongful" act.  *Ibid.*  An "act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Reeves v. Hanlon*, 33 Cal.4th at 1152.

The argument under this cause of action parallels the argument supporting Plaintiff's tortious contractual interference claim: (1) Plaintiffs had economic relationships with a number of advertisers; (2) Retzlaff's knowledge of those relationships is easily demonstrated by his explicitly stated desire to ruin them; (3) Retzlaff actually did contact Plaintiffs' advertising partners, spreading the lies that CheaterVille is a revenge porn site which extorts money from little girls; (4) many of Plaintiffs' advertising partners discontinued advertising (5) as a direct result of Retzlaff's (and his co-conspirators') false complaints.  The "independently wrongful act" required to prevail on this tort is defamation, a long-proscribed common-law tort.   In short, Plaintiffs have met their burden and established that they are likely to prevail on their second cause of action for tortious interference with prospective economic advantage claim.

v.     *Plaintiff McGibney Will Probably Prevail on His Intentional Infliction of Emotional Distress Claim.*

Finally, Mr. McGibney has submitted sufficient evidence to establish a probability of prevailing on his claim for intentional infliction of emotional distress.  The elements of that tort are: "(1)

PLAINTIFFS' OPPOSITION TO
DEFENDANT THOMAS RETZLAFF'S
SPECIAL MOTION TO STRIKE
Page 23

LAW OFFICES OF JAY LEIDERMAN
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) plaintiff's suffering of emotional distress; and (3) causation." *Hernandez v. Gen. Adjustment Bureau*, 199 Cal.App.3d 999, 1007 (Cal. Ct. App. 1988).

Retzlaff's conduct here was—and continues to be—extreme and outrageous.  The most extreme of Retzlaff's conduct includes:

- Posting as LongJohnSilver, Retzlaff threatened to "put a bullet" in Mr. McGibney's head if he were listed on BullyVille.  (Compl. ¶ 34.)
- Retzlaff stated his desire to "bury a hatchet right in [Mr. McGibney's] fucking damn face," then immediately posted Mr. McGibney's home address.  (Compl. ¶ 11.)
- Retzlaff stated that "It would be so much fun to kill all of mc-stupids kids, one by one while he watches me go over them with a blowtorch. . . .  I will kill your kids, slowly.  I will enjoy watching them bleed out.  Extinguishing your half-breeds will be a highlight of anyone's day."  (McGibney Decl. ¶ 67.)
- Retzlaff's made explicit threats to ViaView's board members, stating he would spread the same "revenge porn" lies to their communities, unless they took down all of their websites.  (Ex. 8 pp. 60-66.)

This conduct is legally speaking, "extreme and outrageous."  It is "so 'extreme as to exceed all bounds of that usually tolerated in a civilized community.'"  *Hughes v. Pair*, 46 Cal.4th 1035, 1050-51 (Cal. 2009) (internal quotation marks omitted).  Indeed, issuing these kinds of threats of violence is a crime under California state law.  (See Cal. Penal Code § 422 (criminal threats).)  This conduct also caused Mr. McGibney severe emotional distress: Defendants' conduct in this case has aggravated Mr. McGibney's painful bleeding ulcer; it has caused Mr. McGibney to lose sleep; it has caused Mr. McGibney to be very paranoid; it has caused Mr. McGibney to fear for his safety and for the safety of his family.  (McGibney Decl. ¶¶ 68-71.)  Because Retzlaff has posted Mr. McGibney's home addresses and has encouraged racist gangs (the KKK and the Aryan Brotherhood prison gang) to seek him out, Mr. McGibney has had to move twice in the last year.  (*Id.* ¶ 72.)

Retzlaff cites the Supreme Court's recent decision in *Snyder v. Phelps*, 131 S.Ct. 1207 (2011), arguing that the First Amendment protects his conduct in this case.  The cases are easily distinguishable,

PLAINTIFFS' OPPOSITION TO
DEFENDANT THOMAS RETZLAFF'S
SPECIAL MOTION TO STRIKE
Page 24

LAW OFFICES OF JAY LEIDERMAN
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

however.  The Supreme Court was motivated by the fact that the Westboro Baptist Church defendants' picketing, however offensive, was speech "at a public place on a matter of public concern," which is entitled to "special protection" under the First Amendment.  *Id.* p. 1219.  Here, as argued fully *infra*, Part I.B.1, this suit is not based on Retzlaff's speech on a matter of public concern.  The alleged tortious conduct is tied to the actual matters of public concern—bullying and revenge porn—only by Retzlaff's bald assertions.  This court should not permit Retzlaff to use the First Amendment to shield his tortious conduct from scrutiny merely by uttering the magic words "free speech."

Of further relevance to the court was the fact that, as distasteful as the Westboro Baptist Church's protests were, they remained at all times within the law.  *Id.* p. 1213.  They remained in a designated area.  *Id.*  They complied with police instructions.  *Id.*  They "did not yell or use profanity, and there was no violence associated with the picketing."  *Id.*  Here, in contrast, Retzlaff has refused to honor the California state court restraining order.  He has not complied with court orders.  And his threats amount to criminal activity under California law.  Retzlaff's reliance on *Snyder v. Phelps* is unpersuasive.

In sum, Plaintiffs are likely to succeed on their intentional infliction of emotional distress claim.

## C. ALTERNATIVELY, PLAINTIFFS REQUEST THE HEARING BE CONTINUED TO ALLOW LIMITED DISCOVERY.

In the case that the court finds for Retzlaff on both prongs of the Anti-SLAPP inquiry, Plaintiffs respectfully ask it to stay a final ruling to permit limited discovery.  Although the statute by its own terms prohibits discovery, see Cal. Code Civ. P. § 425.16(g), that provision directly conflicts with Rule 56 of the Federal Rules of Civil Procedure, which allows a plaintiff "the opportunity to discovery information that is essential to his opposition."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1968).  As such, the discovery prohibition in the state statute does not apply in federal court.  *See Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846-47 (9th Cir. 2001) (remanding to the district court to allow for discovery, despite Anti-SLAPP provisions prohibiting it); *Rogers v. Homes Shopping Network*, 57 F.Supp.2d 973, 982 (C.D. Cal. 1999) ("Because the discovery-limiting aspects of § 425.16(f) and (g) collide with the discovery-allowing aspects of Rule 56, these aspects of subsections (f) and (g) cannot apply in federal court.").

PLAINTIFFS' OPPOSITION TO
DEFENDANT THOMAS RETZLAFF'S
SPECIAL MOTION TO STRIKE
Page 25

LAW OFFICES OF JAY LEIDERMAN
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

1    Therefore, for example, if the court believes that Plaintiffs have a cause of action, but is not

2  convinced that Retzlaff is the tortfeasor, the court should grant Plaintiffs the opportunity to conduct

3  reasonable discovery into the ownership of bvfiles (or any other issue on which the court believes

4  Plaintiffs' evidence insufficient) *before* dismissal under the Anti-SLAPP statute.

5  **V.    CONCLUSION.**

6    For the foregoing reasons, Retzlaff's Motion to Strike should be denied in its entirety.  Or,

7  alternatively, the court should stay its ruling pending limited discovery.

13  Dated: 10 October 2014                LAW OFFICES OF JAY LEIDERMAN

15                                        By:___/s/_Jay Leiderman_____
                                          Jason S. Leiderman
16                                        Attorney for Plaintiffs
                                          James McGibney
17                                        ViaView, Inc.
                                          jay@criminal-lawyer.me

LAW OFFICES OF JAY LEIDERMAN
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280