067-270669-14

FILED
TARRANT COUNTY
3/20/2014 11:57:49 AM
THOMAS A. WILDER
DISTRICT CLERK

NO. 67-270669-14

| | |
|---|---|
| **JAMES MCGIBNEY and VIAVIEW, INC.,** <br> *Plaintiffs,* <br><br> **v.** <br><br> **THOMAS RETZLAFF, LORA LUSHER, JENNIFER D'ALLESANDRO, NEAL RAUHAUSER, MISSANNONEWS, JANE DOE 1, JANE DOE 2, JANE DOE 3, JANE DOE 4, AND JANE DOE 5,** <br> *Defendants* | § IN THE DISTRICT COURT OF <br> § <br> § <br> § <br> § <br> § <br> § <br> § **TARRANT COUNTY, TEXAS** <br> § <br> § <br> § <br> § <br> § <br> § **67th JUDICIAL DISTRICT** |

## SUBJECT TO HIS SPECIAL APPEARANCE, DEFENDANT NEAL RAUHAUSER'S MOTION TO DISMISS UNDER THE CITIZEN PARTICIPATION ACT

> **The Court should dismiss all of plaintiffs' claims against Rauhauser in accordance with TEX. CIV. PRAC. & REM. CODE § 27 because: (i) Rauhauser shows that plaintiffs' claims "relate to" Rauhauser's exercise of the right of free speech; and (ii) plaintiffs cannot show "clear and specific evidence" of each essential element of each claim asserted.**

### I. INTRODUCTION

1.      Plaintiffs filed this $1,000,000, Level 3 suit against Rauhauser for defamation, defamation *per se*, harassment, stalking, intentional infliction of emotional distress, tortious interference with business relations, business disparagement, and "gross negligence *per se* in violation of TEX.

38

067-270669-14

FILED
TARRANT COUNTY
3/20/2014 11:57:49 AM
THOMAS A. WILDER
DISTRICT CLERK

PEN. CODE §§ 22.07,[1] 42.07, and 42.072" arising from alleged Internet

postings that plaintiffs characterize as "unlawful verbal acts."[2]

2.    None of the named defendants has been served.  According to

Court personnel, as of March 19, 2014, "none of the citations had even been

picked up."  Although plaintiffs seek injunctive relief after what they refer to

as a "Temporary Injunction Trial,"[3] plaintiffs have not sought a temporary

restraining order, requested a temporary injunction hearing, or taken any

other action to obtain such relief from the Court.  This is because plaintiffs

cannot make the required showings.

3.    This case has not been set for trial.

4.    Rauhauser attaches affidavits and other evidence to this motion

as **Exhibits A-F** to establish facts not apparent from the record, and

incorporates them by reference.

---

[1]    TEX. PENAL CODE §22.07 is an assaultive offense captioned "Terroristic Threat" of which intent by the actor to "place the public or a substantial group of the public in fear of serious bodily injury," *inter alia*, is a required element. *See, e.g.,* TEX. PENAL CODE §22.07(a)(5).  TEX. PENAL CODE §42.07, captioned "Harrassment," also requires intent. *See* TEX. PENAL CODE §22.07(a).  There is no provision for a private cause of action under these statutes.  Furthermore, it is unclear how a person could "negligently" violate a penal statute of which intent is a required element.

[2]    *See* Plaintiffs' Original Petition, ¶ 17, for plaintiffs' allegations of "defamation," "defamation *per se*," "harassment," and "stalking."  *See* ¶ 19 for the allegation of "intentional infliction of emotional distress."  *See* ¶ 20 for the allegations of "tortious interference with business relationships" and "business disparagement." *See* ¶ 21 for the allegation of "gross negligence *per se* in violation of TEX. PEN. CODE §§ 22.07, 42.07, and 42.072."  *See* ¶ 22 for the allegation of "unlawful verbal acts."

[3]    *See* Plaintiffs' Original Petition, ¶¶ 22-23.

067-270669-14

FILED
TARRANT COUNTY
3/20/2014 11:57:49 AM
THOMAS A. WILDER
DISTRICT CLERK

## II. ARGUMENT & AUTHORITIES

### A. The Citizen Participation Act's Broad Protections and Procedural Requirements

5.    The Texas Legislature enacted the Citizens Participation Act ("the Act") to encourage and safeguard the constitutional rights of a defendant to speak freely and otherwise participate in government to the maximum extent provided by law.[4] TEX. CIV. PRAC. & REM. CODE § 27.002.

6.    To protect the rights of free speech by cost-effective means, the Act requires the Court to determine at an early stage whether a suit affecting such rights has merit.  Rauhuser invokes the Court's determination by filing this "motion to dismiss." TEX. CIV. PRAC. & REM. CODE § 27.003(a), (b).

7.    The filing of this motion stays all discovery until the Court rules on the motion.  *Id.* §27.003(c).  The Court must rule on the motion "not later than the 30th day following the date of the hearing on the motion." *Id.* §27.005(a).  The hearing on the motion must be held within 60 days of service of the motion, in most cases.  *Id.* § 27.004(a).

---

[4]    The Act is commonly known as an "anti-SLAPP statute," referring to the acronym for "Strategic Lawsuit Against Public Participation," or "SLAPP suits."  By definition, SLAPP suits are brought not because the plaintiffs believe they can prevail on the merits, but to discourage public exercise of constitutional rights by using the fear of a defendant's having to incur the expense to defend *even a frivolous suit*.  The widespread use of SLAPP suits—especially by well-heeled public figures like James McGibney—to squelch public criticism of them was so pervasive that the Texas Legislature adopted TEX. CIV. PRAC. & REM. CODE §27 by a unanimous vote in both houses in 2011.  To date, 26 other states and the District of Columbia have also adopted anti-SLAPP statutes.

*McGibney v. Retzlaff*
Defendant Neal Rauhauser's Motion to Dismiss Under the Citizen Participation Act

067-270669-14

FILED
TARRANT COUNTY
3/20/2014 11:57:49 AM
THOMAS A. WILDER
DISTRICT CLERK

8.     In ruling on the motion, the Court "shall consider the pleadings and supporting and opposing affidavits stating facts on which liability or defense is based." *Id.* § 27.006(a).   Upon a showing of good cause, the Court may allow "specified and limited discovery relevant to the motion." *Id.* § 27.006(b).   Even then, the Court must hold the hearing on this motion "not more than 120 days after service of the motion." *Id.* § 27.004(c).

9.     If the Court grants Rauhauser's motion to dismiss, the Court must award Rauhauser court costs, attorney fees, and other expenses incurred in defending against the action as justice and equity may require. *Id.* § 27.009(a)(1). One of the most powerful provisions of the Act—unique in Texas law—is that, in addition to court costs, attorney's fees, and other expenses incurred in defending against the action, the Court's award of sanctions to Rauhauser is not discretionary, but *mandatory*:

> **(a)     If the court orders dismissal of a legal action under this chapter, the court <u>shall award</u> to the moving party:**
>
> **...**
>
> **(2)     sanctions against the party who brought the legal action as the court determines is sufficient to deter the party who brought the action from bringing similar actions described in this chapter.**

*Id.* § 27.009(a)(2) [emphasis added]; ***Farias v. Garza***, 2014 Tex. App. LEXIS 907 at *24-25 (Tex. App.—San Antonio January 29, 2014, n.p.h.); *see also* § 27.007(a).

067-270669-14

FILED
TARRANT COUNTY
3/20/2014 11:57:49 AM
THOMAS A. WILDER
DISTRICT CLERK

10.    With only a single exception, the trial court "shall dismiss a legal action against the moving party if the moving party shows by a preponderance of the evidence that the legal action is based on, relates to, or is in response to the party's exercise of … the right of free speech." *Id.* § 27.005(b)(1); ***Rehak Creative Servs., Inc. v. Witt***, 404 S.W.3d 716, 723 (Tex. App.—Houston [14th Dist.] 2013, pet. denied).  The exception:

> **The court may not dismiss a legal action under this section if the party bringing the legal action establishes by clear and specific evidence a prima facie case for each essential element of the claim in question.**

*Id.* at 723-24; § 27.005(c); *see also **Farias v. Garza***, 2014 Tex. App. LEXIS 907 at *4-5 (Tex. App.—San Antonio January 29, 2014, n.p.h.) (reversing trial court's refusal to dismiss).

11.    In ruling on this motion, the Court must construe the Act liberally to fully effectuate its purpose and intent to encourage and safeguard a defendant's constitutional rights. *See id.* §§27.002, 27.011.

067-270669-14

FILED
TARRANT COUNTY
3/20/2014 11:57:49 AM
THOMAS A. WILDER
DISTRICT CLERK

**B. Because Plaintiffs' Suit is in Response to Rauhauser's Exercise of the Right of Free Speech, the Act Requires the Court to Dismiss**

12.     Plaintiffs' claims should be dismissed because they are based on, related to, or in response to Rauhauser's exercise of his right of free speech.  "'Exercise of the right of free speech' means a communication made in connection with a matter of public concern." *Id.* § 27.001(3); *Rehak*, 404 S.W.3d at 723.  A "'[c]ommunication' includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1); *Rehak*, 404 S.W.3d at 723.  Among other things, a "'[m]atter of public concern' includes an issue related to … environmental, economic, or community well-being.… [or] … a public figure.…" *Id.* § 27.001(7)(B), (D); *Rehak*, 404 S.W.3d at 723.

13.     As noted above, in support of their $1,000,000.00 suit for defamation against Rauhauser, plaintiffs give just four specific statements vaguely alleged to have been made by "Retzlaff and other Defendants:"

(1)     "I am simply amazed that this this BullyVille guy, James McGibney, is still alive.  If I was listed on his website, I would put a bullet in his head.  It's as simple as that.  His home address has been posted online.  And he makes scheduled public appearances.  One of these days James is going to post the name of the wrong guy and it will cost him, and his family, their lives."

43

067-270669-14

FILED
TARRANT COUNTY
3/20/2014 11:57:49 AM
THOMAS A. WILDER
DISTRICT CLERK

(2)     "I would like to bury a hatchet right in [McGibney's] f_cking damn face."

(3)     "It will be really funny seeing someone post pics of your wife Christina when she is shopping at Smith's with ur two kids."

(4)     "I have Twitter and a little bit of me dies everytime (sic) I log in.  I want to kill most people.  Starting with Bullyville. F_cking damn cesspool."

*See* Plaintiffs' Original Petition, ¶ 15.  Plaintiffs plead that they are suing Rauhauser "for the same, indivisible misconduct as Retzlaff's misconduct at issue in this case." *Id.*, ¶ 16.  Plaintiffs plead that they sue Rauhauser "for this pattern of defamation, harassment, and stalking that includes defamation *per se* and also repeatedly violates Texas Penal Codes (sic)." *Id.*, ¶ 17.

14.     Assuming that plaintiffs have the required "clear and specific evidence" linking *Rauhauser* to the alleged statements—as opposed to defendant Retzlaff—in construing the Act liberally, these allegations clearly fall within the scope of the Act because they are based on, related to, or in response to a communication made by Rauhauser on a matter of public concern.  A "matter of public concern" includes "an issue related to a public figure."  TEX. CIV. PRAC. & REM. CODE 27.001(7)(D).  As shown by the evidence appended to this motion, there is no doubt that McGibney is a "public figure."

067-270669-14

FILED
TARRANT COUNTY
3/20/2014 11:57:49 AM
THOMAS A. WILDER
DISTRICT CLERK

## C. Is Plaintiff James McGibney a Public Figure?

15.     Yes.    "The question of public-figure status is one of constitutional law for courts to decide." *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998).  The U.S. Supreme Court in *New York Times v. Sullivan*, 376 U.S. 254, 279-80 (1964), required public officials to prove actual malice when suing for defamation involving public issues.  *Bentley v. Bunton*, 94 S.W.3d 561, 590 (Tex. 2002).  Later, the court extended the *New York Times* actual-malice standard to public figures.  *Curtis Publ'g v. Butts*, 388 U.S. 130, 155 (1967).  In the wake of *Snyder v. Phelps*, 131 S.Ct. 1207 (2011),[5] it is doubtful that the public-figure status of the plaintiff remains important for protection of the defendant speaker.    However, whether McGibney is a public figure determines whether McGibney must show "clear and specific evidence" of the element of actual malice to survive Rauhauser's motion to dismiss.  As shown below, he does.

16.     To determine whether McGibney is a public figure, the Court should consider whether McGibney (i) actually sought publicity surrounding the controversy; (ii) had access to the media; and (iii) voluntarily engaged in activities that necessarily involved the risk of increased exposure and injury to reputation.  *See WFAA-TV, Inc.*, 978 S.W.2d at 572-73 (plaintiff invited

---

[5]     *Snyder v. Phelps*, 131 S.Ct. 1207 (2011), is discussed extensively in the

067-270669-14

FILED
TARRANT COUNTY
3/20/2014 11:57:49 AM
THOMAS A. WILDER
DISTRICT CLERK

public attention by becoming involved in Branch Davidian controversy).

*Einhorn v. LaChance*, 823 S.W.2d 405, 411-12 (Tex. App.—Houston [1st Dist.] 1992, writ dism'd) (pilots engaged public's attention in attempt to influence airborne emergency-medical-services industry).

17.   McGibney is the CEO of plaintiff ViaView, Inc.  According to a McGibney press release, McGibney is the founder of controversial websites www.bullyville.com and www.cheaterville.com, among others. **Exhibit A**.  Visitors to the bullyville.com website will find, among other things, a January 23, 2014, article posted about the indictment and arrest of McGibney's personal enemy Hunter Moore.[6]  **Exhibit B**.  Visitors to the cheaterville.com website are invited to create an account in order to post pictures and other information about a paramour they suspect to have been unfaithful to them in an intimate relationship.  **Exhibit C**.  Sworn testimony offered on behalf of McGibney in a suit styled *McGibney v. Moore*[7] attests to McGibney's status as a public figure who regularly seeks publicity for bullyville.com, cheaterville.com, and the issues of bullying and infidelity. The relevant portion of that testimony includes the following:

---

following section, "How Hateful Can Comment on Public Figures Be Without Losing Constitutional Protection?"

   [6]   *See* **Exhibit E**, McGibney's Original Complaint in Cause No. A-12-667156-C; *McGibney v. Moore*; in the District Court of Clark County, Nevada; a defamation suit filed against Moore after Moore allegedly called McGibney a "pedophile" and a "child abuser" and accused him of possessing "child pornography."

067-270669-14

FILED
TARRANT COUNTY
3/20/2014 11:57:49 AM
THOMAS A. WILDER
DISTRICT CLERK

**Plaintiff James McGibney is the main operator and public face of numerous online properties owned by ViaView, Incorporated, and its subsidiary company, Cheaterville, Incorporated. McGibney regularly talks to the press about important issues such as bullying and infidelity, and makes regular appearances on behalf of the Internet social media services BullyVille, found at bullyville.com, and CheaterVille, found at cheaterville.com. These media appearances have included <u>Univision</u>, <u>The Dr. Phil Show</u>, <u>The Anderson Cooper Show</u>, <u>The Maury Povich Show</u>, <u>Extra!</u>, <u>KSNV My News 3</u> (Las Vegas' NBC affiliate stations), <u>KXTL Fox 40</u> (Sacramento, California's FOX affiliate station), <u>The Huffington Post</u>, the <u>Las Vegas Sun</u>, [and[ <u>BetaBeat</u>, among others.**

**Exhibit D**, affidavit of expert Colleen Connally-Ahern, Ph.D., ¶ 7.

18.    In the case at bar, plaintiffs allege that defendant Retzlaff—importantly, *not* Rauhauser—"is a blogger"[8] who "terrorizes individuals online" and has tried to "destroy" plaintiff ViaView, Inc., by "posting death threats" and "engaging in other misconduct."[9]   (How a defendant could make a "death threat" against a corporation is never explained.)   Plaintiffs vaguely allege that the threats have been made "by Retzlaff and [*nine*] other Defendants," who have "joined with Defendant Retzlaff in … cyber-stalking, cyber-terrorism, defamation, and harassment."[10]   Plaintiffs do not allege a civil conspiracy or other theory of vicarious liability.

---

[7]      *See supra*, n. 4.

[8]      . The word "blog" is a shortened version of the term "web log," and refers to a website on which authors offer free and continuously updated opinion, information, or satirical comment concerning topics of interest to readers who usually share similar political or philosophical viewpoints.  A "blogger" is a person who creates a "blog."

[9]      *See* Plaintiff's Original Petition, ¶ 15.

[10]      *See* Plaintiff's Original Petition, ¶¶ 15-16.

47

067-270669-14

FILED
TARRANT COUNTY
3/20/2014 11:57:49 AM
THOMAS A. WILDER
DISTRICT CLERK

## D. Is Corporate Plaintiff ViaView, Inc., a Public Figure?

19.    No—but it is not a proper defamation plaintiff, either.  When a corporation is defamed, the defamation is of the owner of the business and not of the business itself.  *Newspapers, Inc. v. Matthews*, 339 S.W.2d 890, 893 (Tex. 1960); *Langston v. Eagle Publ'g*, 719 S.W.2d 612, 618 (Tex. App.—Waco 1986, writ ref'd n.r.e.).  A corporation also cannot suffer "emotional distress."  A proper plaintiff in such causes of action must be a person seeking relief in his individual capacity.[11]

## E. How Hateful Can Comment About a Public Figure Be Without Losing Constitutional Protection?

20.    There is now no visible limit.  The right to criticize public figures harshly—*even cruelly and unfairly*—is one the framers of the First Amendment used with relish.  For example, in the presidential election of 1800, one political opponent wrote in the "blogs" of his day that incumbent president John Adams was "old, querulous, bald, blind, crippled, [and] toothless."[12]  An operative hired by Thomas Jefferson, who was challenging Adams for the presidency, added:

---

[11]    *See, e.g.*, *Haygood v. Chandler*, No. 12-02-00239-CV (Tex. App.—Tyler 2003, pet.denied) (memo. op.; October 31, 2003) (intentional infliction of emotional distress); *Chair King, Inc. v. GTE Mobilnet*, 135 S.W.3d 365, 395 (Tex. App.—Houston [14th Dist.] 2004), *rev'd on other grounds*, 184 S.W.3d 707 (Tex. 2006) (invasion of privacy).

[12]    McCullough, David, *John Adams*, p. 500, quoting a letter written by Abigail Adams to Mary Cranch.

067-270669-14

FILED
TARRANT COUNTY
3/20/2014 11:57:49 AM
THOMAS A. WILDER
DISTRICT CLERK

> **John Adams is a hideous hermaphroditical character with neither the force and firmness of a man, nor the gentleness and sensibility of a woman.**[13]

In retort, the Adams camp called Jefferson "a mean-spirited, low-lived fellow, the son of a half-breed Indian squaw, sired by a Virginia mulatto father."[14]  Jefferson's and Adams' comments were both probably "designed to inflict as much emotional distress and anguish" upon each other as possible—just as plaintiffs in the case at bar specifically accuse Rauhauser of doing.[15]  This is not actionable.  Here is why.

21.    "Public figures" are not limited to those who, like Jefferson and Adams, hold public office.  In 1983, self-described "smut peddler" Larry Flynt, the publisher of *Hustler Magazine* and 28 other admittedly "tasteless" publications, published a parody of a well-known print ad for Compari Liqueur running nationally under the tag line, "My First Time."   In the parody, Jerry Falwell, a respected Baptist minister, was depicted as confessing that his "first time" having sex was while he was drunk and with his own mother in an outhouse.  *See **Hustler Magazine, Inc. v. Falwell***, 485 U.S. 46, 48 (1988).  *Hustler* presented a mock interview in which Falwell

---

[13]     Swint, Kerwin, "Founding Fathers' Dirty Campaign," CNN Living (Online), August 22, 2008.
[14]     *Id.*
[15]     *See* Plaintiff's Original Petition, ¶ 19.

49

067-270669-14

FILED
TARRANT COUNTY
3/20/2014 11:57:49 AM
THOMAS A. WILDER
DISTRICT CLERK

says, "We were drunk off our God-fearing asses," and, "Mom looked better than a Baptist whore with a $100 donation."[16]

22.    Like McGibney in the case at bar, Falwell sued *Hustler* for defamation and intentional infliction of emotional distress.  ***Hustler Magazine, Inc.***, 485 U.S. at 47-48.  Falwell obtained a judgment in the trial court that was upheld in the Fourth Circuit.  However, in one of the most dramatic First Amendment cases of the 20th Century, the U.S. Supreme Court unanimously struck down the award and held that *Hustler's* ad parody was protected speech:

> **Despite their sometimes caustic nature, from the early cartoon portraying George Washington as an ass down to the present day, graphic depictions and satirical cartoons have played a prominent role in public and political debate … [and] undoubtedly had an effect on the course and outcome of contemporaneous debate.  Lincoln's tall, gangling posture, Teddy Roosevelt's glasses and teeth, and Franklin D. Roosevelt's jutting jaw and cigarette holder have been memorialized by political cartoons with an effect that could not have been obtained by the photographer or the portrait artist.  From the viewpoint of history it is clear that our political discourse would have been considerably poorer without them.**

***Hustler Magazine, Inc.***, 485 U.S. at 54-55.  As the U.S. Supreme Court added in a different case:

---

[16]    *Hustler Magazine*, November 1983, inside front cover.

067-270669-14

FILED
TARRANT COUNTY
3/20/2014 11:57:49 AM
THOMAS A. WILDER
DISTRICT CLERK

> [T]he fact that society may find speech offensive is not a sufficient reason for suppressing it. Indeed, if it is the speaker's opinion that gives offense, *that consequence is a reason for according it constitutional protection.*

*FCC v. Pacifica Foundation*, 438 U. S. 726, 745-46 (1978) [emphasis added].

23.    In its first major free-speech decision of the 21st century, the U.S. Supreme Court extended the protection of free speech even further in *Snyder v. Phelps*, 131 S.Ct. 1207 (2011). In *Snyder*, the court held for the first time that the target of the offensive speech *did not* have to be a public figure for the speech to be protected. *Id.* at 1228 (dissent by Alito, J.). *Snyder* involved Rev. Fred Phelps, whose Westboro Baptist Church of Topeka, Kansas, believes God hates and punishes the United States for tolerating homosexuality, particularly in the military. *Id.* at 1213. The church frequently communicates its views by picketing, often at military funerals. *Id.* Marine Lance Corporal Matthew Snyder was killed in Iraq in the line of duty. *Id.* Snyder's funeral was at the Catholic church in the Snyders' hometown of Westminster, Maryland. *Id.* At the funeral, Phelps and his family members carried signs that read "Fag Troops," "God Hates Fags," "Fags Doom Nations," "America is Doomed," "Pope in Hell," and "Priests Rape Boys." *Id.* and at 1216.

51

067-270669-14

FILED
TARRANT COUNTY
3/20/2014 11:57:49 AM
THOMAS A. WILDER
DISTRICT CLERK

24.    The *Snyder* court vacated the damages award to the dead

soldier's father for intentional infliction of emotional distress, holding that

Phelps' speech was protected by the First Amendment—even though the

Snyders were not public figures and had never sought publicity. *Id*.  The

*Snyder* court found Phelps' speech to be on "matters of public concern"—

speech that "occupies the highest rung of the hierarchy of First Amendment

values, and is entitled to special protection." *Id*. at 1215 [citation omitted].

The court concluded:

> **Speech is powerful. It can stir people to action, move them to
> tears of both joy and sorrow, and—as it did here—inflict great
> pain. On the facts before us, we cannot react to that pain by
> punishing the speaker. As a Nation we have chosen a different
> course—to protect even hurtful speech on public issues to ensure
> that we do not stifle public debate. That choice requires that we
> shield Westboro from tort liability for its picketing in this case.**

*Id*. at 1223.  It is impossible to conclude that a court constrained by *Snyder's*

precepts could find that Rauhauser's speech is anything other than

constitutionally protected comment on McGibney's controversial websites.

067-270669-14

FILED
TARRANT COUNTY
3/20/2014 11:57:49 AM
THOMAS A. WILDER
DISTRICT CLERK

### F. Are Plaintiffs' Nondefamation Tort Claims Outside the Ambit of the Citizen Participation Act's Requirement of Dismissal?

25.    No.  As noted above, in addition to defamation, plaintiffs allege harassment, stalking, intentional infliction of emotional distress, tortious interference with business relations, business disparagement, and "gross negligence *per se* in violation of TEX. PEN. CODE §§ 22.07,[17] 42.07, and 42.072" arising from alleged Internet postings that plaintiffs characterize as "unlawful verbal acts."[18]  Occasionally, respondents to motions to dismiss under the Act argue that such non-defamation allegations are outside the Act's requirement that a court dismiss them.  Texas courts reject such a tactic, referring to a plaintiff's kitchen-sink pleading of all possible wrongs as "tag-along torts," and pointing out that the Act "broadly encompasses a 'cause of action; that 'relates to'[19] the movant's 'exercise of ... the right of

---

[17]    TEX. PENAL CODE §22.07 is an assaultive offense captioned "Terroristic Threat" of which intent by the actor to "place the public or a substantial group of the public in fear of serious bodily injury," *inter alia*, is a required element. *See, e.g.,* TEX. PENAL CODE §22.07(a)(5).  TEX. PENAL CODE §42.07, captioned "Harrassment," also requires intent. *See* TEX. PENAL CODE §22.07(a).  There is no provision for a private cause of action under these statutes.  Furthermore, it is unclear how a person could "negligently" violate a penal statute of which intent is a required element.

[18]    *See* Plaintiffs' Original Petition, ¶ 17, for plaintiffs' allegations of "defamation," "defamation *per se*," "harassment," and "stalking."  *See* ¶ 19 for the allegation of "intentional infliction of emotional distress."  *See* ¶ 20 for the allegations of "tortious interference with business relationships" and "business disparagement." *See* ¶ 21 for the allegation of "gross negligence *per se* in violation of TEX. PEN. CODE §§ 22.07, 42.07, and 42.072."  *See* ¶ 22 for the allegation of "unlawful verbal acts."

[19]    "In ordinary use, 'relates to' means to have a connection with, to refer to, or to concern."  ***Tex. Dept. of Pub. Safety v. Abbott***, 310 S.W.3d 670, 674-75 (Tex. App.—Austin 2010, no pet.).

067-270669-14

FILED
TARRANT COUNTY
3/20/2014 11:57:49 AM
THOMAS A. WILDER
DISTRICT CLERK

free speech.' *See Rehak*, 404 S.W.3d at 733, citing TEX. CIV. PRAC. & REM.

CODE ANN. §§ 27.001(6), 27.005(b)(1).

> **The same protections which the First Amendment affords
> defendants from libel claims also protect them from non-libel
> claims based on the same publication.**

*Rehak*, 404 S.W.3d at 733, quoting ***Provencio v. Paradigm Media, Inc.***, 44

S.W.3d 677, 682-83 (Tex. App.—El Paso 2001, no pet.).  The scope of free

speech protection "do[es] not depend on the legal theory asserted by an

inventive plaintiff." ***Wavell v. Caller-Times Pub. Co.***, 809 S.W.2d 633, 635

(Tex. App.—Corpus Christi 1991, writ denied), *abrogated on other grounds*

*by* ***Cain v. Hearst Corp.***, 878 S.W.2d 577 (Tex. 1994); *see also* ***MKC***

***Energy Invs. v. Sheldon***, 182 S.W.3d 372, 378 (Tex. App.—Beaumont

2005, no pet.); ***KTRK Television v. Felder***, 950 S.W.2d 100, 107-08 (Tex.

App.—Houston [14th Dist.] 1997, no pet.).

26.    Plaintiffs cannot avoid the Act's requirement that the Court

dismiss their unsupported claims by simply overpleading their case.

067-270669-14

FILED
TARRANT COUNTY
3/20/2014 11:57:49 AM
THOMAS A. WILDER
DISTRICT CLERK

## G. What is Plaintiffs' Burden in Responding to Rauhauser's Motion to Dismiss?

27.    Because Rauhauser establishes by a preponderance of the evidence that plaintiffs' petition is based on, related to, or in response to the exercise of constitutionally protected rights under the Act, the burden shifts to plaintiffs—*each* of them—to establish by *clear and specific* evidence a prima facie case for *each* essential element of *each* of their approximately eight causes of action, which they denominate as follows:

  (i)     defamation;

  (ii)    defamation *per se*;

  (iii)   harassment;

  (iv)    stalking;

  (v)     intentional infliction of emotional distress;

  (vi)    tortious interference with business relations;

  (vii)   business disparagement; and

  (viii)  gross negligence *per se*.

Needless to say, such evidence would have to begin with "clear and specific evidence" that *Rauhauser* was the alleged tortfeasor—as opposed to the vague allegation of plaintiffs' pleading that what plaintiffs call "indivisible" torts were committed by "Retzlaff and other Defendants."

18
55

067-270669-14

FILED
TARRANT COUNTY
3/20/2014 11:57:49 AM
THOMAS A. WILDER
DISTRICT CLERK

### III. Conclusion

28.    Because Rauhauser proves by a preponderance of the evidence that plaintiffs' suit impinges on his exercise of the right of free speech, the Court must dismiss the suit unless *each* plaintiff produces "clear and specific evidence" establishing a prima facie case for *each* element of *each* of plaintiffs' eight causes of action.

### IV. Prayer

29.    For these reasons, Rauhauser asks the Court to set his motion to dismiss plaintiffs' claims for a hearing, and, after the hearing, grant Rauhauser's motion; dismiss plaintiffs' suit with prejudice; award Rauhauser his court costs, reasonable attorney fees, and other expenses incurred in defending against plaintiffs' legal action as justice and equity may require; and impose sanctions that the Court determines are sufficient to deter plaintiffs from bringing similar actions in the future.

067-270669-14

FILED
TARRANT COUNTY
3/20/2014 11:57:49 AM
THOMAS A. WILDER
DISTRICT CLERK

Respectfully submitted,

# HANSZEN✦LAPORTE

By: _____ /s/ Jeffrey L. Dorrell _____
Jeffrey L. Dorrell
State Bar No. 00787386
jdorrell@hanszenlaporte.com
Philip A. Meyer
State Bar No. 00784597
pmeyer@hanszenlaporte.com
11767 Katy Freeway, Suite 850
Houston, Texas 77079
Telephone: 713-522-9444
FAX: 713-524-2580
**ATTORNEYS FOR DEFENDANT NEAL RAUHAUSER**

067-270669-14

FILED
TARRANT COUNTY
3/20/2014 11:57:49 AM
THOMAS A. WILDER
DISTRICT CLERK

## CERTIFICATE OF SERVICE

I hereby certify that on _____ 3-20 _____, 2014, a true and correct copy of the foregoing was sent by:

_____ Hand delivery
_____ Certified mail
_____ Telephonic document transfer
__X__ E-service in accordance with TEX. R. CIV. P. 21a(a)(1)

in accordance with TEX. R. CIV. P. 21a to the following counsel of record:

Mr. John S. Morgan
jmorgan@jsmorganlaw.com
Morgan Law Firm
2175 North Street, Suite 101
Beaumont, Texas 77701
Telephone: 409-239-5984
**FAX: 409-835-2700**
**COUNSEL FOR PLAINTIFFS**

_____
        /s/ Jeffrey L. Dorrell

**JEFFREY L. DORRELL**