1 of 2 DOCUMENTS

MICK HAIG PRODUCTIONS E.K., Plaintiff, versus DOES 1-670, Defendants-Appellees, versus EVAN STONE, Appellant.

No. 11-10977

UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

687 F.3d 649; 2012 U.S. App. LEXIS 14263; 103 U.S.P.Q.2D (BNA) 1494; Copy. L. Rep. (CCH) P30,286

July 12, 2012, Filed

**PRIOR HISTORY:**  [**1]
Appeal from the United States District Court for the Northern District of Texas.
Mick Haig Prods., E.K. v. Doe, 2012 U.S. Dist. LEXIS 12926 (N.D. Tex., Jan. 24, 2012)
Mick Haig Prods., e.K. v. Does, 2011 U.S. Dist. LEXIS 128366 (N.D. Tex., Sept. 9, 2011)

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Appellant attorney, who was counsel for a pornographic movie company, appealed sanctions imposed by the United States District Court for the Northern District of Texas on the motion of appellees, unnamed people who allegedly downloaded a pornographic movie using an online file-sharing program, on the basis of serious misconduct in violation of Fed. R. Civ. P. 26 and Fed. R. Civ. P. 45. A motion to stay the sanctions was granted.

**OVERVIEW:** Sanctions were imposed on the attorney for issuing subpoenas on internet service providers in violation of a district court order, thereby grossly abusing his subpoena power, and for failing to comply with the district court's first sanctions order. The court held that all the issues raised by the attorney had been waived because he failed to preserve them for purposes of appeal. No miscarriage of justice would result from the sanctions imposed as a result of the attorney's flagrant violation of the Federal Rules of Civil Procedure and the district court's orders. The attorney committed those violations as an attempt to repeat his strategy of suing anonymous internet users for allegedly downloading pornography illegally, using the powers of the court to find their identity, then shaming or intimidating them into settling for thousands of dollars, a tactic that he had employed all across the state and that had been replicated by others across the country.

**OUTCOME:** The stay of sanctions was vacated, and any sanctions imposed by the district court were affirmed.

**CORE TERMS:** subpoena, ad litem, attorneys' fees, internet, expedite, sanctions imposed, subpoena power, discovery, disclose, notice, sanctions order, Federal Rules, pornographic films, pending appeal, miscarriage of justice, preservation, communicated, downloading, misconduct, illegally, directives, providers, interim, issuing, waived, Copyright Act, settlement, appointed, handling, entity

**COUNSEL:** EVAN F. STONE, Appellant, Pro se, Denton, TX.

687 F.3d 649, *; 2012 U.S. App. LEXIS 14263, **1;
103 U.S.P.Q.2D (BNA) 1494; Copy. L. Rep. (CCH) P30,286

For DOES 1-670, Defendant - Appellee: Paul Alan Levy, Esq., Public Citizen Litigation Group, Washington, DC; Matthew Zimmerman, Esq., Electronic Frontier Foundation, San Francisco, CA.

**JUDGES:** Before SMITH, GARZA, and SOUTHWICK, Circuit Judges.

**OPINION BY:** JERRY E. SMITH

 OPINION

 [*650]  JERRY E. SMITH, Circuit Judge:

Evan Stone, counsel for the plaintiff, Mick Haig Productions E.K. ("Mick Haig"), appeals sanctions imposed on him. Because he has waived all the arguments he raises on appeal, we affirm.

**I.**

Mick Haig, which produces pornographic films, identified 670 unnamed persons who it believed had unlawfully downloaded its film *Der Gute Onkel* using Bit Torrent, an online file-sharing program. Although Mick Haig had obtained their Internet Protocol ("IP") addresses and the names of their internet service providers ("ISPs"), it knew no other information about those 670 persons. Mick Haig sued them as John Doe defendants ("the Does"), alleging copyright infringement. Mick Haig then sought permission to expedite discovery in order to subpoena the Does' ISPs to disclose their names and contact information  [**2] before the required Federal Rule of Civil Procedure 26(f) discovery conference. The district court did not immediately rule on the motion but instead entered two interim orders.

First, the court ordered the ISPs to preserve certain potentially related records and directed Mick Haig to serve the ISPs with the preservation order within thirty days. Second, the court appointed attorneys from the Electronic Frontier Foundation and Public Citizen Litigation Group (the "attorneys *ad litem*") to represent the Does in responding to the motion. Through those attorneys, the Does objected to Mick Haig's motion to expedite on jurisdictional, procedural, and constitutional grounds. Before the district court could rule on the motion to expedite, Mick Haig voluntarily dismissed its case. The notice of dismissal claimed that the delay in ruling on its motion foreclosed any relief, and it criticized the court's handling of the case.

Just before Mick Haig dropped the case, some of the Does contacted the attorneys *ad litem* because they had received notices of subpoena from their ISPs and feared that their names had been disclosed to Mick Haig in connection with a suit in which they were being accused of  [**3] illegally downloading a pornographic film. Stone even communicated with some of the Does without the presence or knowledge of the attorneys *ad litem*. After the case had been dismissed, the Does, through the attorneys *ad litem*, moved for sanctions based on Stone's "serious misconduct" in violating Federal Rules of Civil Procedure 26 and 45 by issuing subpoenas to the ISPs. The Does sought interim relief until the full scope of Stone's misconduct could be determined. In support of their motion, the Does claimed that Stone had sent subpoenas to at least two ISPs while Mick Haig's motion to expedite discovery was pending and before Mick Haig had entered a notice of dismissal. The Does also presented evidence that the ISPs construed the subpoena and preservation order as directives from the district court to provide the requested information.

After over a month and a half passed with no response from Stone, the district court granted the Does' motion in part. The court required Stone, within fourteen days,

> to disclose [under seal] all actions taken by him in connection with issuing subpoenas, including but not limited to the disclosure of: (1) any communications with or materials produced  [**4] by any Internet Service Provider; (2) any issued subpoena and accompanying documents; (3) any communications with the Defendant Does or their representatives, excluding  [*651]  the attorneys ad litem previously appointed by this Court; (4) any communications concerning settlement; (5) any funds received from or on behalf of any Doe Defendant.

Case 5:14-cv-01059-BLF   Document 156-2   Filed 03/10/15   Page 3 of 4

Page 3

687 F.3d 649, *651; 2012 U.S. App. LEXIS 14263, **4;
103 U.S.P.Q.2D (BNA) 1494; Copy. L. Rep. (CCH) P30,286

Stone partly complied with that order and confirmed that he had served subpoenas on the ISPs.[1] He also disputed the merits of the motion, claiming that the Copyright Act permitted him to serve the subpoenas on the ISPs independently of any authorization from the district court, all the while again criticizing the court's handling of the case.

> 1 Stone, however, failed to explain clearly whether he had negotiated settlements as a result of the subpoenas. In addition, Stone filed his response *ex parte* rather than sealed, in contravention of the order.

The court permitted the Does an opportunity to reply to Stone's response. Aside from his statement that the Copyright Act permitted his actions, the record reflects no effort on Stone's part to brief the court further on the legal issues related to the Does' motion. After three more months had passed, the court **[\*\*5]** granted the sanctions motion, finding that Stone had "issued subpoenas in violation of court order," thereby "grossly abus[ing] his subpoena power." The court characterized Stone's actions as a "grave" and "wanton" "abdication of responsibility," transforming the use of subpoenas "from a bona fide state-sanctioned inspection into private snooping," and noted that Stone has abused the subpoena power before in other cases. Because Stone had "egregiously violated the Federal Rules" with "staggering chutzpah," the court imposed $10,000 in sanctions on Stone and also required the following:

> 1) Stone shall serve a copy of this Order on each ISP implicated and to every person or entity with whom he communicated for any purpose in these proceedings.
> 2) Stone shall file a copy of this Order in every currently-ongoing proceeding in which he represents a party, pending in any court in the United States, federal or state.
> 3) Stone shall disclose to the Court whether he received funds, either personally or on behalf of Mick Haig, and whether Mick Haig received funds for any reason from any person or entity associated with these proceedings, regardless of that person's status as a Doe Defendant or **[\*\*6]** not, (excepting any fees or expenses paid by Mick Haig to Stone).
> 4) Stone shall pay the Ad Litems' attorneys' fees and expenses reasonably incurred in bringing the motion for sanctions. The Ad Litems shall file an affidavit or other proof of such fees and expenses with the Court within thirty (30) days of the date of this Order. Stone may contest such proof within seven (7) days of its filing. Stone shall comply with these directives and supply the Court with written confirmation of his compliance no later than forty-five (45) days after the date of this Order.

The attorneys *ad litem* then moved for $22,040 in attorneys' fees and costs. While that motion was pending, Stone appealed the order granting sanctions and responded to the Does' pending attorneys' fees motion, seeking only to reduce the quantum. Stone later unsuccessfully moved the court to stay its sanctions order pending appeal two days after the deadline for bringing such a motion, raising a range of new arguments that he also now urges on appeal.

The Does, through the attorneys *ad litem*, then moved the court to impose further **[\*652]** sanctions based on Stone's failure to comply with the first sanctions order. Three months passed, **[\*\*7]** Stone filed no response, and the court granted the motion for additional sanctions, ordering Stone to pay $500 into the court registry per day "for each day he delays compliance with the Sanctions Order, beginning one week after the date of this Order, unless or until Stone posts a supersedeas bond in accordance with this Order or the Fifth Circuit grants him a stay." A motions panel of this court granted Stone a stay on all sanctions and expedited this appeal.

**II.**

On appeal, Stone argues that the sanctions cannot be justified under Rules 26 and 45 or under Federal Rule of Civil Procedure 11 or the inherent power of the district court. He also contends that the attorneys *ad litem* lacked standing to bring the sanctions motion and are not the proper recipients of the attorneys' fees awarded by the district court. Stone raises this last argument for the first time on appeal and raised the other arguments for the first time in his untimely motion in the district court to stay sanctions pending appeal, which was filed after this appeal was initiated. None of these arguments, thus, was preserved for purposes of appeal, nor does Stone contend they were. Accordingly, all the issues Stone raises **[\*\*8]** on appeal have been waived. *Lofton v. McNeil Consumer & Specialty Pharms..*, 672 F.3d 372, 380-81 (5th Cir. 2012).

687 F.3d 649, *652; 2012 U.S. App. LEXIS 14263, **8;
103 U.S.P.Q.2D (BNA) 1494; Copy. L. Rep. (CCH) P30,286

Nonetheless, Stone asserted, at oral argument and for the first time, that this court can consider his arguments because his appeal is one of "extraordinary circumstances," involving only "pure question[s] of law [in which] a miscarriage of justice would result from our failure to consider [them]." *AG Acceptance Corp. v. Veigel*, 564 F.3d 695, 700 (5th Cir. 2009). We conclude, however, that no miscarriage of justice will result from the sanctions imposed as a result of Stone's flagrant violation of the Federal Rules of Civil Procedure and the district court's orders. Stone committed those violations as an attempt to repeat his strategy of suing anonymous internet users for allegedly downloading pornography illegally, using the powers of the court to find their identity, then shaming or intimidating them into settling for thousands of dollars--a tactic that he has employed all across the state and that has been replicated by others across the country.[2]

2 *See, e.g., Raw Films, Ltd. v. Does 1-32*, 2011 U.S. Dist. LEXIS 114996, 2011 WL 6182025, at *3 (E.D. Va. 2011) ("This course of conduct indicates that the plaintiffs [**9] have used the offices of the Court as an inexpensive means to gain the Doe defendants' personal information and coerce payment from them. The plaintiffs seemingly have no interest in actually litigating the cases, but rather simply have used the Court and its subpoena powers to obtain sufficient information to shake down the John Does. Whenever the suggestion of a ruling on the merits of the claims appears on the horizon, the plaintiffs drop the John Doe threatening to litigate the matter in order to avoid the actual cost of litigation and an actual decision on the merits.").

The stay of sanctions is therefore **VACATED**, and any sanctions imposed by the district court are **AFFIRMED**.