067-270669-14

NO. 67-270669-14

| JAMES MCGIBNEY and VIAVIEW, INC., <br> *Plaintiffs*, <br> v. <br><br> THOMAS RETZLAFF, LORA LUSHER, JENNIFER D'ALLESANDRO, NEAL RAUHAUSER, MISSANNONEWS, JANE DOE 1, JANE DOE 2, JANE DOE 3, JANE DOE 4, and JANE DOE 5, <br> *Defendants* | § § § § § § § § § § § § § § § | IN THE DISTRICT COURT OF <br><br><br><br> TARRANT COUNTY, TEXAS <br><br><br><br><br> 67th JUDICIAL DISTRICT |
|---|---|---|

ORDER <u>AWARDING ATTORNEY'S FEES AND SANCTI</u>

After considering the decision in ***Rauhauser v. McGibney***, 2014 Tex. App. LEXIS 13290 (Tex. App.—Fort Worth 2014, no pet.) (remanding this case for award of attorney's fees and sanctions), defendant Neal Rauhauser's motion to award attorney's fees and sanctions pursuant to TEX. CIV. PRAC. & REM. CODE § 27.001, *et seq.*, Rauhauser's "Notice of Plaintiffs' New Criminal Aggravating Misconduct and Request for Nonmonetary Sanctions," the original and supplemental affidavits for attorney's fees of Rauhauser attorney Jeffrey L. Dorrell and fee statements appended thereto, the "liberal construction" directive to Texas courts in TEX. CIV. PRAC. & REM. CODE § 27.011(b), plaintiffs' response to Rauhauser's motion, the pleadings, and other affidavits and evidence on file, the Court finds:

(i) Plaintiffs' brought this suit against Rauhauser willfully and maliciously to injure Rauhauser by deterring Rauhauser from exercising his constitutional rights—specifically, to truthfully criticize plaintiffs;

(ii) Plaintiffs brought this suit against Rauhauser with objective substantial certainty that the suit would inflict litigation costs on Rauhauser;

E-MAILED
12-30-15 KWS

Court's Minutes
Transaction #987

067-270669-14

(iii)   Plaintiffs filed multiple lawsuits in two states at substantially the same time making substantially the same allegations;

(iv)   Plaintiffs brought their suits against Rauhauser in conscious disregard of plaintiffs' duties or of Rauhauser's rights and without just cause or excuse;

(v)   Plaintiffs' filing of multiple SLAPP suits in two states at substantially the same time making substantially the same allegations manifests plaintiffs' intent to continue using baseless suits to retaliate against, punish, and deter plaintiffs' enemies, and necessitates a significant deterrent sanction;

(vi)   Plaintiffs engaged in aggravating misconduct by willfully and intentionally harassing—and using confederates to willfully and intentionally harass—both Rauhauser and Rauhauser's attorney, the objective of which was to punish the exercise of Rauhauser's constitutional rights in the past, deter the exercise of Rauhausr's constitutional rights in the future, and impair Rauhauser's ability to retain legal counsel in defense of plaintiffs' baseless claims; and

(vii)   Plaintiffs' aggressive filing of multiple lawsuits and aggravating misconduct caused Rauhauser to incur **$300,383.84** in attorney's fees to defend through trial and appeal.

As to Rauhauser's requested attorney's fees, the Court finds that affidavit evidence of Rauhauser's attorney's fees submitted complies with TEX. CIV. PRAC. & REM. CODE § 18.001(c) and was not controverted pursuant to § 18.001(e). Accordingly, the Court admits into evidence for purposes of this order the original and supplemental affidavits of attorney Jeffrey L. Dorrell and finds the amounts of attorney's fees stated therein to be reasonable in accordance with TEX. CIV. PRAC. & REM. CODE § 18.001(b). The Court has considered the factors set forth in TEX. DISCIPLINARY R. PROF. CONDUCT 1.04, STATE BAR RULES, Art. 10 § 9, Rule 1.04; see ***Arthur Andersen & Co. v. Perry Equip. Corp.***, 945 S.W.2d 812, 818 (Tex. 1997). As a result, the Court makes the following specific findings as to each:

067-270669-14

(i) **The time and labor required.**

The time spent by each attorney or staff member rendering services to Rauhauser on each specific task was contemporaneously logged and quantified to the nearest *one-tenth* of an hour, and totaled over 600 hours as of September 6, 2015, for trial, appeal, and remand.

(ii) **The novelty and difficulty of the questions involved.**

The TCPA is a relatively new statute enacted on June 17, 2011. Many issues have arisen in Texas appellate courts regarding interpretation and application of its provisions. These include the constitutionality of the TCPA itself, whether a plaintiff's nonsuit can defeat application of the TCPA, whether the TCPA's provision for awarding attorney's fees is mandatory, whether the TCPA's provision for awarding sanctions "sufficient to deter the filing of similar actions" is mandatory, whether review of a trial court's failure to rule on the motion is by interlocutory appeal or petition for writ of mandamus, whether the TCPA applies to "non-public" speech, and what constitutes a "matter of public concern," and whether an appellate court can reverse and render judgment on attorney's fees and sanctions or must remand to the trial court for further proceedings. Several of these were presented in the case at bar, including, without limitation:

(A) Plaintiffs argued both in this Court and on appeal that they were immunized from the TCPA's remedies because Rauhauser chose to appear and defend their defamation SLAPP suit without ever having been served. This was an issue on which no appellate court had spoken in the context of the TCPA at the time plaintiffs raised it. The issue required extensive research and briefing in order for Rauhauser to prevail over plaintiffs' argument in the court of appeals. ***Rauhauser v. McGibney*** is now extensively cited in law review articles and practice manuals on this point.

(B) Plaintiffs argued both in this Court and on appeal that they were immunized from the TCPA's remedies because plaintiffs nonsuited their claims approximately 5 hours after Rauhauser filed his TCPA motion to dismiss. This was also an issue on which no appellate court had spoken in the context of the TCPA at the time plaintiffs raised it. The issue required extensive research and briefing in order for Rauhauser to prevail over plaintiffs' argument in the court of appeals. ***Rauhauser v. McGibney*** is now extensively cited in law review articles and practice manuals on this point, too.

(C) It was necessary for Rauhauser to show that plaintiff McGibney was a "public figure" in order for the TCPA to apply to the defamation claims made in the case at bar. This issue required

*McGibney v. Retzlaff*
Rauhauser's Reply in Support of TCPA Attorney's Fees and Sanctions

11

extensive research into James McGibney's personal background, prior statements, and litigation. This research ultimately resulted in discovery of extensive evidence of McGibney's many media appearances, and even the affidavit of a McGibney expert filed in a Nevada lawsuit admitting that McGibney was a public figure.

As a result, the novelty and difficult of the questions presented in the case at bar justifies both the more-than-600 hours expended in trial, appeal, and on remand, and the hourly rates charged.

(iii) **The skill requisite to perform the service properly.**

The area of free speech, defamation claims, and the TCPA is highly specialized and complex. After the U.S. Supreme Court began to "constitutionalize" the tort of defamation with *New York Times v. Sullivan* in 1964, the elements to be proved and which party has the burden of proof took on a complexity not seen in any other tort practice. The enactment of the TCPA in 2011 added a new layer of complexity, magnified by the fact that new appellate opinions changing or clarifying the interpretation of the statute are released on an almost weekly basis. These are not topics or issues on which "canned" briefing is available or on which the law is well-settled. Each issue requires independent research and meticulous briefing. This practice area requires an extremely high degree of skill to perform services properly. The attorneys performing services for Rauhauser possessed the high degree of skill required.

(iv) **The likelihood, if apparent to the client, that acceptance of the representation will preclude other employment by the lawyer.**

The over-600 hours of time expended by attorneys and staff of Hanszen Laporte over the 20 months in which that firm represented Rauhauser—through trial, then through an appeal (including oral argument), and on remand for attorney's fees and sanctions—precluded employment on other cases. Most of this time was been expended by attorney Jeffrey L. Dorrell, and represents approximately 25% of all time expended by that attorney on *all* legal matters during the relevant time period. Hanszen Laporte has 11 attorneys and a steady supply of paying clients on whose cases or matters Dorrell could have worked if he had not chosen to render services to Rauhauser. This is proven by the fact that Hanszen Laporte's revenues have grown by 178% during the three years immediately preceding the date of this affidavit, ranking it 50th out of all companies in Houston in revenue growth (the "Houston Fast 100") and 28th out of all Houston companies owned or managed by graduates of the University of Houston (the "Cougar 100").

067-270669-14

(v) **The fee customarily charged in the locality for similar legal services.**

In cases of defamation, First Amendment, and TCPA motions, there is no "locality" in the sense that attorneys in one "locality" might charge a higher price or hourly rate to draft a will for a client than attorneys in another "locality." The practice is so complex and specialized that only a small number of Texas attorneys are qualified to perform services for clients. Those highly-qualified attorneys travel to where a case is pending. Here, the "locality" is more accurately seen as the entire state of Texas. The hourly rate of **$550.00** is comparable to that of the small number of similarly-qualified attorneys in this field practicing in Texas.

(vi) **The amount involved and the results obtained.**

Plaintiffs sued Rauhauser for **$1,000,000.00** in federal and state courts of two different states, including the case at bar. The Court takes judicial notice that, as a direct result of the efforts and highly competent representation of Hanszen Laporte, all claims against Rauhauser in all suits were ultimately disposed in his favor. Considerations of the amount in controversy and results obtained weigh heavily in favor of the Court's finding that the fee charged to Rauhauser in the case at bar was reasonable and that justice and equity require it to be awarded to Rauhauser.

(vii) **Time limitations imposed by the client or by the circumstances.**

The "circumstances" of the TCPA impose several accelerated deadlines, both in the trial and appellate phases of litigation practice. These inflexible deadlines must be recognized and complied with, and take priority over more common deadlines in normal litigation. These deadlines thus require special efforts that necessarily increase the amount of attorney's fees that can be said to be "reasonable." Other circumstances include plaintiffs' aggressive abuse and harassment of Rauhauser's defense attorney—designed to deprive Rauhauser of the benefit of legal representation.

(viii) **The nature and length of the professional relationship with the client.**

Neither attorney Jeffrey L. Dorrell nor any member of Hanszen Laporte, LLP, or its staff has any prior professional relationship with defendant Neal Rauhauser. After 19 months of representation, attorney Dorrell has never met Rauhauser, who does not reside in Texas. After plaintiffs sued Rauhauser, Rauhauser's online research of Dorrell's past SLAPP-suit appellate victories led him to request Dorrell's representation. The representation was an arm's-length transaction, with no attendant considerations to call into question the reasonableness of the hourly rates charged or the number of hours expended. This was not "pro bono" representation of a past or existing client as a courtesy for past business.

067-270669-14

- (ix) **The experience, reputation, and ability of the lawyer or lawyers performing the services.**

    The experience, reputations, and abilities of the lawyers performing the services for Rauhauser were of the highest caliber and were readily apparent to the Court at all phases of the litigation.

- (x) **Whether the fee is fixed or contingent on results obtained or uncertainty of collection before legal services have been rendered.**

    The fee negotiated in the engagement letter signed by Neal Rauhauser called for payment of an initial retainer of **$1,500.00**, which Rauhauser paid, and for future billings at a rate of **$550.00** per hour for Dorrell's services. Hanszen Laporte, LLP, sent Rauhauser regular monthly bills showing services provided and amounts incurrerd. Rauhauser is contractually liable to pay these amounts. The firm of Hanszen Laporte advanced expenses on Rauhauser's behalf and carried a receivable of over **$300,000.00** with a significant risk that no payment would ever be collected. This was anticipated at the time the representation was commenced (although not to the extent it ultimately reached), and the firm's usual hourly rates for noncontingent fee cases were adjusted upward by approximately 50% to reflect this risk. These facts, too, weigh heavily in favor of the Court's finding that the fee charged in the case at bar was reasonable, and that the interests of justice and equity require that it be awarded to Rauhauser from plaintiffs in full measure.

Therefore, the Court **GRANTS** Rauhauser's motion and orders that plaintiffs James McGibney and ViaView, Inc., shall, jointly and severally, pay to defendant Neal Rauhauser the following amounts:

- (i) Total reasonable attorney's fees, litigation expenses, and court costs for the trial and first appeal of **$300,383.84**, as justice and equity require;

- (ii) Sanctions sufficient to deter the filing of similar actions by plaintiffs in the future of **$1,000,000.00**;

- (iii) Conditional appellate attorney's fees of **$50,000.00** for a second appeal to the court of appeals, which such appeal does not result in a complete reversal of all amounts awarded; and

    (iv)    Conditional appellate attorney's fees of **$25,000.00** if a petition for review is filed in the Texas Supreme Court, which such petition does not result in a complete reversal of all amounts awarded.

Plaintiffs shall pay the foregoing amounts, except for the conditional awards of appellate attorney's fees, to Neal Rauhauser not later than 30 days after the date this order is signed.

Furthermore, in view of plaintiffs' history of filing numerous lawsuits with the willful, malicious intent to injure those who have spoken critically of plaintiffs, the Court finds that monetary sanctions alone will not be sufficient to deter plaintiffs from filing similar such suits in the future. Therefore, in addition to the monetary sanctions awarded above, the Court orders the following nonmonetary sanctions:

    (i)    Plaintiffs shall disclose and transfer to Rauhauser the following domain names registered and used by plaintiffs—and all other such domain names owned by plaintiffs or their agents—no later than 5 days after the date on which the Court signs its order:

            nealrauhauser.com
            nealrauhauser.exposed
            rauhauserunmasked.com
            nealrauhauser.org
            nealrauhauser.net
            nealrauhauser.info

    (ii)    Plaintiffs shall disclose all domain names that plaintiffs or their agents have registered using any form of the name of attorney "Jeffrey L. Dorrell" no later than 5 days after the date on which the Court signs its order:

067-270669-14

(iii) Plaintiffs shall publish for 365 consecutive days a written apology on the first page of all websites owned by either plaintiff for calling Rauhauser a "woman beater" and "pedophile supporter" and admitting that plaintiffs had no evidence to support such accusations when they made them.

(iv) Plaintiffs shall publish for 365 consecutive days a written apology on the first page of all websites owned by either plaintiff for calling Dorrell a "pedophile" and admitting that plaintiffs had no evidence to support such an accusation when they made it.

(v) ~~The Court orders that plaintiff James McGibney shall stand at the entrance to the civil courthouse in Fort Worth, Texas from 8:30 AM to 11:30 AM each day, for 20 consecutive business days beginning 5 days after the date the Court signs this order, wearing a sandwich sign at least 3 feet in height and reading in letters at least 3 inches in height on both sides, "I AM BEING PUNISHED FOR TELLING LIES ABOUT MY ENEMIES ON THE INTERNET AND FILING BASELESS LAWSUITS~~

This is a final, appealable order that disposes of all parties and claims in this suit.

SIGNED the 30th day of December of 2015.

_____
PRESIDING JUDGE

# Kelly M. Jones

**From:** Kelly M. Jones
**Sent:** Wednesday, December 30, 2015 10:45 AM
**To:** 'evan@stonevaughanlaw.com'; 'jdorrell@hanszenlaporte.com'
**Subject:** 067-270669-14 Order
**Attachments:** 06727066914000287.tif

Signed by the Court: Order Awarding Attorney's Fees & Sanctions

*Kelly Jones*
*Lead Clerk 67th District Court*
*817-884-1569*

1